UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE HOMESOURCE, CORP.<br><br>Plaintiff,<br><br>vs.<br><br>RETAILER WEB SERVICES, LLC<br><br>Defendants. | Civil Action No. _____ |

# COMPLAINT

1.  Plaintiff The HomeSource, Corp. ("HomeSource") brings this complaint against defendant Retailer Web Services, LLC ("RWS") for false advertising, defamation, tortious interference with commercial relationships, and unfair competition.

2.  RWS and HomeSource both provide e-commerce solutions for retail stores and a pricing-lookup tool.  Within the last year, HomeSource launched a product that directly competes with RWS's product and began to quickly acquire RWS customers.  On July 16, 2018, for example, HomeSource moved approximately 200 customers from RWS's platform to HomeSource's platform.

3.  The same day, RWS began a smear campaign designed to unfairly disparage HomeSource and deceive its customers.  RWS published false and misleading statements about HomeSource in newsletters distributed via email over the next few days to HomeSource's customers and potential customers.  RWS further contacted HomeSource's customers and potential customers by telephone regarding the same issues.

4.  In addition, RWS misrepresented security vulnerabilities of HomeSource's data and intellectual property to third parties.  RWS emailed HomeSource notice of a "security hole"

6820275 v1

in HomeSource's software at 11:59 p.m., and then uploaded a video at 1:33 a.m. just hours later advertising the "security hole" to the public.

5. Upon information and belief, RWS also impersonated a potential customer asking for a demo and access to the HomeSource platform.

6. As a result of RWS's unlawful actions, HomeSource has lost customers and its reputation has been unfairly damaged in an amount to be determined at trial.

## PARTIES

7. Plaintiff HomeSource is a New Jersey corporation with its principal place of business at 420 Ganttown Road, Sewell, NJ 08080.

8. Defendant RWS is an Arizona limited liability company with a principal place of business at 15615 N. 71ST Street, Suite 205, Scottsdale, AZ 85254.

6. Defendant RWS's statutory registered agent is: Kingsley Law Firm PLC, 14362 N. Frank Lloyd Wright BLVD, #1000, Scottsdale, AZ 85260.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction over HomeSource's federal claim pursuant to 28 U.S.C. §§ 1331, 1338(a).

8. This court has personal jurisdiction over defendant RWS because RWS is engaged in the systematic and continuous conduct of business in the State of New Jersey. RWS's conduct in connection with the State of New Jersey required it reasonably to anticipate that it would be subject to the jurisdiction of the courts in the State of New Jersey.

9. Venue in the District of New Jersey is proper under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

A. **HomeSource and RWS**

10. HomeSource provides software and data solutions for retailers and manufacturers.

2

6820275 v1

11. HomeSource's proprietary software aggregates large amounts of data – including item numbers, product specs, training videos, and more – into one single, usable platform, which allows retailers and manufacturers to streamline various processes such as printing customized quotes, providing accurate shipping times, and real-time updating of sizes, colors, and options so dealers always have current and accurate information at their fingertips.

12. Upon information and belief, RWS offers a competitive tool called "RetailDeck/WebFronts."

13. Recently, GridIron Capital ("GridIron"), and its subsidiary Nationwide Marketing Group ("Nationwide"), considered investing in HomeSource, and all three parties entered into a non-disclosure agreement ("NDA").

14. Through the due diligence process, GridIron and Nationwide acquired a great deal of sensitive, proprietary information about HomeSource, its software, financial reports, and legal history.

15. GridIron and Nationwide ended up not investing in HomeSource, but they did invest in RWS, according to a press release from February 24, 2018.

16. Recently, several companies, including Appliance Dealers Cooperative ("ADC") and its members, have switched from using RWS's "RetailDeck/WebFronts" platform to using HomeSource's platform.

**B.     RWS's False and Misleading Advertising and Tortious Interference**

17. On or about July 20, 2018, RWS's CEO Jim Kane and COO Jennie Gilbert emailed a newsletter to HomeSource's customers and potential customers which contained materially false and misleading statements about HomeSource.  *See* July 20th Newsletter, attached as Exhibit A.

18. Under the heading, "Has HomeSource ever done anything like this before?", RWS stated, "The White family, owners of HomeSource and similar other businesses, appear to have a history of their business relationships ending in lawsuits against them. They were found guilty of making **negligent misrepresentations about the capabilities of their software in a federal lawsuit** (Civil Action NO. 3:12-CV-0090)."

19. The text "Civil Action NO. 3:12-CV-0090" contains a hyperlink to Judge Graham Mullen's Order ("Graham Order") on a motion for attorney's fees in the case of *Furniture Distributors, Inc. v. Software Support-PMW, Inc.* ("Furniture Lawsuit").

20. HomeSource was not a party in the Furniture Lawsuit and was not found "guilty" of making negligent misrepresentations about the capability of their software.

21. No member of the White family was a party in the Furniture Lawsuit, and no member of the White family was found "guilty" of making negligent misrepresentations about the capability of their software.

22. RWS further misrepresented: "The judge later deemed the counter-claims they alleged along the way 'totally meritless' and ordered them to pay Furniture Distributors, Inc. fifty thousand dollars to reimburse attorney fees in addition to the four hundred fifty thousand dollars already awarded them at trial."

23. RWS's use of "they" implies that HomeSource and the White family filed these counterclaims, but once again, they were not parties to the lawsuit, and it was actually Software Support-PMW, Inc. who filed these counterclaims in the action.

24. The Graham Order does not mention HomeSource or the White family at all.

25. RWS's newsletter misleadingly and falsely implies that HomeSource and/or its owners were found "guilty" of negligent misrepresentations, but they are not even parties to this lawsuit, and the Graham Order deals with a motion for attorney's fees.

26. RWS goes on to state in the newsletter: "Despite the ruling, **Furniture Distributors Inc sued Homesource again when Homesource failed to make any of the payments ordered** (Case 3:15-CV-00313)."

27. The text "Case 3:15-CV-00313" contains a hyperlink to a Complaint filed in the United States District Court for the Western District of North Carolina, *Furniture Distributors, Inc. v. James R. White, Jr.; James R. White, Sr.; Phyllis M. White; Gregory L. White; Courtney Murnane; Software-Support PMW, Inc.; The Homesource, Corp.; BBJ Corp., and Centerspec, LLC*.

28. RWS falsely states that HomeSource was sued for a second time by Furniture Distributors, Inc., but HomeSource was not a party to the original Furniture Lawsuit.

29. RWS falsely states that HomeSource failed to make any of the payments ordered, but HomeSource was not ordered to make any payments and it was not a party to the prior lawsuit.

30. RWS misrepresented that HomeSource failed to make payments in order to intentionally disparage HomeSource's business and damages its relationship with its customers and potential customers.

31. RWS further misrepresented that Martin Salas was a consultant hired by HomeSource, but HomeSource never hired or entered into any contract with Martin Salas directly.

**C.    RWS Misrepresented Security Vulnerabilities and Tried to Pose as a Customer to Acquire Access to HomeSource's Systems**

32. On July 19, 2018, at 11:58 p.m., Jim Kane, CEO of RWS, emailed HomeSource and Ken Miele, of ADC, to point out a potential security hole and vulnerability in HomeSource's systems.

33. Less than two hours later, RWS emailed the July 20th Newsletter to HomeSource's customers which states: "Our investigation unearthed a possible major security concern with HomeSource sites." *See* Exhibit A.

34. The July 20th Newsletter contained a link to a short video where Jim Kane explains how he believes one could hack into HomeSource's system, and he provides the steps one could take in order to do it.

35. The video misrepresents the security of customers' files and alleges that they are publicly available, when in fact, HomeSource does not store customer information in this "bucket" or online folder.

36. Upon information and belief, an employee at RWS left a voicemail for HomeSource in which he posed as a potential customer named Tony Bosto, who claimed to be opening a store for furniture and appliances called Kensington Appliance and Furniture, in order to deceive HomeSource and gain access to their data and methods.

37. Upon information and belief, although "Tony Bosto" alleged that he was from the suburbs of Pittsburgh, his phone number traced back to an RWS number.

**Count I – False and Misleading Advertising under the Lanham Act, 15 U.S.C. § 1125 (a)**

38. HomeSource repeats and incorporates all other paragraphs of the Complaint as if fully set forth herein.

39. Section 1125(a) of Title 15 of the United States Code states, in pertinent part, the following:

> Any person who, on or in connection with any good or services, … uses in commerce any word, term, name, symbol, … or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact… which – in commercial advertising or promotion, misrepresents the nature, characteristics, qualities… of another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

6

40. RWS's use of "HomeSource" in connection with materially false and misleading statements about HomeSource's reputation, legal history, security, and the quality of its goods and services, constitutes commercial advertising that misrepresents the nature, characteristics, and qualities of HomeSource's goods, services, and commercial activities.

41. RWS's conduct in disseminating emails and newsletters to HomeSource's customers and potential customers with materially false and misleading statements about HomeSource constitutes false advertising and unfair competition.

42. RWS's conduct constitutes false and misleading advertising in violation of 15 U.S.C. § 1125(a).

43. HomeSource has no adequate remedy at law.  RWS's conduct has caused, and if not enjoined, will continue to cause irreparable damage to the rights of HomeSource, its brand, reputation and goodwill.

44. As a result of RWS's conduct, HomeSource has been damaged.

## Count II – Defamation

45. HomeSource repeats and incorporates each paragraph of the Complaint as if set forth fully herein.

46. By engaging in the above-described conduct, RWS defamed HomeSource including, without limitation, by directly publishing and distributing emails and newsletters that deliberately, or at the very least negligently, (i) contain statements that are defamatory in nature and character; (ii) were published and disseminated by RWS to third parties, including HomeSource's customers and potential customers; (iii) were understood by their recipients to apply to HomeSource and to be defamatory; and (iv) caused special harm to HomeSource by virtue of such publications.

47. RWS's statements contained in the emails and newsletters impute both civil offenses and business and professional misconduct to HomeSource – including, but not limited to, allegations that HomeSource was found liable of negligent misrepresentation and allegations that HomeSource failed to pay a prior customer despite a court order.

48. RWS's statements contained in the emails and newsletters are the kind that would be particularly harmful to a business involved in e-commerce.

49. The statements contained in the emails and newsletters have caused and will continue to cause substantial pecuniary and reputational harm to HomeSource.

50. As a result, RWS is liable to HomeSource for damages caused by RWS's conduct.

## Count III – Tortious Interference with Prospective Economic Advantage

51. HomeSource repeats and incorporates each paragraph of the Complaint as if set forth fully herein.

52. HomeSource had a protected interest in its reasonable expectation of economic advantage, as it relates to HomeSource's prospective economic interests with potential customers of its goods/services.

53. RWS willfully, maliciously, and intentionally interfered with HomeSource's prospective economic advantage by publishing materially false and misleading statements about HomeSource in newsletters and emails that RWS sent to HomeSource's potential customers, customers, and its customers' buyers.

54. RWS's conduct was without justification.

55. There is a reasonable likelihood that RWS's conduct caused HomeSource a loss of prospective economic gain.

56. As a direct and proximate result of RWS's conduct, HomeSource has been and continues to be damaged.

57. By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

### Count IV – Tortious Interference with Contract

58. HomeSource repeats and incorporates each paragraph of the Complaint as if set forth fully herein.

59. RWS was fully aware of the contractual relationship existing between HomeSource's customers and HomeSource, including the fact that a valid and enforceable contract existed between these parties, and RWS was a not a party to this contractual relationship.

60. RWS willfully and intentionally interfered with the contractual relationship by publishing materially false and misleading statements about HomeSource in newsletters and emails that RWS sent to HomeSource's customers, and its customers' buyers.

61. RWS's conduct is without justification.

62. As a direct and proximate result of RWS's conduct, HomeSource has been and continues to be damaged.

63. By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

### Count V – Common Law and Federal Unfair Competition

64. HomeSource repeats and incorporates each paragraph of the Complaint as if set forth fully herein.

65. RWS's conduct constitutes unfair competition, in that RWS is attempting to benefit commercially by stealing HomeSource's customers and publishing materially false and misleading statements about HomeSource.

66. RWS's wrongful conduct arises directly out of and is connected to its advertising activities.

67. Such acts constitute unfair competition against HomeSource under 15 U.S.C. § 1125.

68. HomeSource has been and continues to be damaged by RWS's activities and conduct. Accordingly, HomeSource is entitled to recover its damages, pursuant to 15 U.S.C. §1117(a).

69. Unless RWS's conduct is enjoined, HomeSource and its goodwill and reputation will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

70. By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff HomeSource prays for relief and judgment, and requests that the Court:

(A) enter judgment against RWS and in favor of HomeSource with respect to each claim for relief alleged in this Complaint;

(B) award HomeSource injunctive relief, treble damages and its costs and attorneys' fees, pursuant to the Lanham Act; and

(C) award such other and further relief as the Court deems just and proper.

                                                Respectfully submitted,

                                                **FLASTER/GREENBERG P.C.**

Dated: July 23, 2018                By:   */s/ Alexis Arena*
                                                          Alexis Arena, Esq.
                                                          Eric R. Clendening, Esq.
                                                          1810 Chapel Avenue West
                                                          Cherry Hill, NJ 08002
                                                          (856) 661-1900
                                                          Fax:  (856) 661-1919
                                                          alexis.arena@flastergreenberg.com
                                                          *Attorneys for Plaintiff*

11