# McElroy, Deutsch, Mulvaney & Carpenter, LLP
### ATTORNEYS AT LAW

1617 JOHN F. KENNEDY BOULEVARD
SUITE 1500
PHILADELPHIA, PA 19103-1815
(215) 557-2900
FACSIMILE (215) 557-2990/2991

MATTHEW A. LIPMAN, ESQUIRE
ADMITTED IN PA AND NJ
Email: mlipman@mdmc-law.com

October 26, 2018

*Via ECF*
The Honorable Karen M. Williams
U.S. District Court, District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

Re: <u>The HomeSource Corp. v. Retailer Web Services, LLC</u>
D.N.J., Docket No. 1:18-cv-11970-JBS-KMW
Our File No. R0939-1001

Dear Judge Williams:

We represent Defendant, Retailer Web Services, LLC, in connection with the above-referenced matter. As you will recall from the recent conference with Your Honor, co-counsel for Retailer Web Services is Adam Wolek, Esquire who has been admitted *pro hac vice*.

I have attached a letter from Mr. Wolek setting forth our client's position in response to the letter recently filed on behalf of The HomeSource Corp.

Respectfully,

MATTHEW A. LIPMAN

MAL/pjb
Enclosure
cc: Alexis Arena, Esquire (via ECF)
Eric R. Clendening, Esquire (via ECF)
Adam Wolek, Esquire (via email w/ encl.)
William C. Wagner, Esq. (via email e/ encl.)

NEW JERSEY   NEW YORK   PENNSYLVANIA   CONNECTICUT   MASSACHUSETTS   COLORADO   DELAWARE   FLORIDA   RHODE ISLAND



Adam Wolek
P 312.836.4063
F 312.527.4011
C 312.860.9006
awolek@taftlaw.com

Taft Stettinius & Hollister LLP
111 East Wacker, Suite 2800 / Chicago, IL
60601 USA
Tel: 312.527.4000 / Fax: 312.527.4011
www.taftlaw.com

October 26, 2018

*Via ECF*

The Honorable Karen M. Williams
U.S. District Court, District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

Re:  *The HomeSource, Corp. v. Retailer Web Services, LLC, et al.*,
Case No. 1:18-cv-11970-JBS-KMW

Dear Judge Williams:

Contrary to Plaintiff The HomeSource Corp.'s assertions, the request for a discovery conference is not ripe and ignored the Court's direction: Defendant Retailer Web Services, LLC ("RWS") had already stated that it preserved its IP addresses and agreed to have the parties' experts confer as to what they needed for an orderly exchange and examination of information, as the Court directed in the October 4, 2018 Initial Status Conference. Yet Plaintiff ignored RWS's offer to have the expert conference as early as next week. Plaintiff even ignored its own unilateral deadline of October 26, 2018 for the conference, and instead filed its motion on October 24.[1] And fatally, Plaintiff failed to have a conference with RWS's counsel as required by Local Rule 37.1 for discovery motions, despite RWS's offers and efforts to do so.[2] For these reasons alone, Plaintiff's request for a discovery conference is meritless, premature, and should be denied.

During the Initial Status Conference, the Court directed the parties to have their experts confer on what information they needed, and to arrange a simultaneously exchange of those documents for the experts' review. RWS agreed and has repeatedly stated that it will abide by the

---

[1] Plaintiff has unilaterally moved its own deadlines ahead on several occasions – at times moving a deadline within the same day.

[2] In its request for a discovery conference, Plaintiff also omitted many of RWS's responses to its emails, which exhibit the efforts made by RWS to arrange the expert conferral, or otherwise to have a meet-and-confer prior to burdening the Court. We're unclear why Plaintiff omitted the response emails because they are pertinent to the points raised in its request.

Hon. Judge Williams
October 26, 2018
Page 2

Court's direction, and has preserved its IP addresses. Plaintiff disclosed its expert last week, and RWS has submitted and is awaiting approval from its insurance company to engage its expert. But now Plaintiff does not want to abide by that direction, and instead wants to unilaterally fish through RWS's information, despite the request for IP addresses falling outside its pleadings against RWS, and without providing any support to its new allegations.[3]

As a threshold matter, the premise behind Plaintiff's request for a discovery conference – that RWS's delay will cause evidence to be lost – is at best mistaken. Plaintiff claims that "If RWS delays long enough, the ISPs will no longer be able to identify the identity of the individuals behind the IP addresses." Dkt. 24, p. 2. But Plaintiff is seeking the IP addresses that belong to RWS, and because RWS owns these IP addresses, Plaintiff will not have to subpoena anyone to identify the owner. And these IP addresses have been preserved. Certainly, RWS is not preventing Plaintiff from subpoenaing any ISPs to identify the individuals behind the over 114,000 requests to search its customers' websites, which are presumably logged and allegedly in its possession.[4] Rather, RWS has agreed to proceed as the Court suggested during the scheduling conference, and will produce a list of its 1,000 IP addresses through a simultaneous information exchange between the parties' experts. Notably, Plaintiff never alleges how it has standing to pursue claims that purportedly belong to its customers.

Plaintiff further argues that RWS's wanting to follow the Court's direction amounts to it being "obstructionist," but Plaintiff throws stones from a glass house. In fact, Plaintiff has produced *zero* documents and *zero* support for its allegations. Whereas RWS has produced over 1,500 pages of documents thus far.[5] Furthermore, RWS has repeatedly requested that Plaintiff produce *any* evidence of the alleged hacks and DDoS attacks, and Plaintiff has thus far produced

---

[3] To be sure, even Plaintiff's requests for RWS's IP addresses are not relevant to any claims raised against RWS. The only allegations pled against RWS are false advertising, defamation, tortious interference, and unfair competition (Counts I-V) due in large part to statements made by RWS in its newsletter. The IP addresses are not relevant to those claims, and *Plaintiff explicitly did not plead Count VI (Computer Fraud and Abuse Act) and Count VII (tortious interference due to hacking) against RWS.* In fact, Plaintiff stated:

**As RWS acknowledges in its Initial Disclosures, Counts VI and VII are not asserted against RWS, they are asserted against the John Doe defendants. HomeSource does not know the identity of the John Doe defendants absent discovery.**

(Red and bold in original.)

If these claims are not plead against RWS, why would RWS be required to produce discovery directed to these unpled allegations? If Plaintiff seeks this information from RWS, it should at least plead these allegations against it, or at least agree to the simultaneous disclosure like the Court directed. Indeed, notwithstanding that these claims are not pled against RWS, RWS offered to aid in the investigation, and requested that Plaintiff provide evidence to help guide that investigation. Plaintiff inexplicably refused, and still refuses, to provide any of the evidence or support to help with that investigation. If it has that information, why not share it? We are at a loss why Plaintiff will not.

[4] *See* Dkt. 12, Am. Compl., ¶ 25. Plaintiff's further insinuation that RWS may be involved is further hollowed by the simple fact it implies that the webpages were allegedly visited by over 114,000 addresses, yet RWS only owns 1,000. Thus, even if RWS used *all* of its IP addresses – which it didn't – it still wouldn't have made a dent in that traffic as that would have comprised less than 1% of the traffic Plaintiff claims.

[5] RWS is further in the midst of assembling and processing additional responsive electronic files, which will likewise be produced in due course.

nothing. Plaintiff even refused to agree to let forensic experts or RWS's attorneys to aid in the investigation. For making such incendiary allegations, it has nothing to back them up. Rather, when pressed, Plaintiff said "**Counts VI and VII [of the Amended Complaint] are not asserted against RWS.**" (bold in original). Plaintiff's lack of cooperation to permit RWS to investigate these allegations, its lack of urgency in its investigation, and its lack of specificity of its allegations, all indicate that Plaintiff's inflammatory allegations are either unsupported or were trivial occurrences, and were presented solely to shock based on their incendiary nature.

Indeed, even a cursory look at Plaintiff's "support" to show the relevancy of its requests exposes its flimsiness and a lack of a sufficient pre-filing investigation. For instance, Plaintiff concludes with the argument that because "an exponentially disproportionate amount of website traffic [came] from Scottsdale," that insinuates RWS's involvement. Yet Plaintiff inexplicably fails to inform the Court that numerous companies in addition to RWS, like GoDaddy, are based in Scottsdale. Indeed, GoDaddy is the world's largest internet registrar, and a substantial portion of the world's internet traffic flows through it and thus Scottsdale. See https://icannwiki.org/GoDaddy ("GoDaddy has become the world's largest domain register company … and has more than 40 million domain names under its management"). Or that Scottsdale also has over a couple hundred thousand residents. Plaintiff has even failed to provide any specificity, or produce any evidence or support, for the claim that the web traffic originated from Scottsdale.

Plaintiff's other attempt to show a correlation with RWS based off alleged similar "timing" of RWS's newsletter and Plaintiff's hacks also doesn't hold up to scrutiny. By Plaintiff's own admission, the security vulnerability was known to the world for at least three-and-a-half weeks before the hack. As Plaintiff's Amended Complaint and motion point out, it knew of the security vulnerability in its customers' websites at the latest on July 20, 2018. The alleged hack presumably occurred August 13, 2018. That is eons in cyber-time. During that three-and-a-half weeks the security flaw was known, hackers worldwide would have been able to exploit it. On that score, the hacks appeared to be "ransomware" attacks that take webpages hostage in exchange for a "ransom," were written in Arabic, and listed an address in Turkey (a long way from Scottsdale).

Plaintiff's additional claim that because the victims were allegedly former RWS customers, that connects RWS, is also unpersuasive. First, Plaintiff has not identified the alleged hack victims, specified whether the alleged hack affected one or multiple third-parties, or provided any evidence or support for this allegation, so this claim cannot be verified. Nevertheless, by virtue of RWS having a significant share of the market, most of the customers that Plaintiff acquired would likely have originated from RWS, so any Plaintiff customers that become victims could fall into this category.

Plaintiff's further point about the timing of when RWS knew of Plaintiff's security hole is unclear and contradicts Plaintiff's prior allegations. It starts with stating that "RWS knew about the hacking before anyone else," yet ignores that if a malevolent hacker knew of the hole, it wouldn't point that out to Plaintiff. Indeed, RWS informed Plaintiff of the security flaw in its software on July 19, 2018. But the Amended Complaint states that the alleged hack took place on

Hon. Judge Williams
October 26, 2018
Page 4

August 13, 2018, which is three-and-a-half weeks after the newsletter. That is hardly indicative of fast knowledge by RWS, but rather sloppy security by Plaintiff, an allegedly sophisticated and professional website designer.

Finally, Plaintiff's forth point is inapposite – a salesman's purported call to ascertain Plaintiff's customer service responsiveness has nothing to do with hacking. Nor does Plaintiff's letter provide any guidance to its relevancy.

While Plaintiff's insinuations are specious, irrelevant to any pleadings made against RWS, and unsupported, RWS had agreed to the Court's recommendation for the parties' experts to confer on what information they needed, and to arrange a simultaneously exchange of those documents for the experts' review. If the Court still feels these requests are relevant to the claims pled against RWS, RWS will agree to have its expert confer as soon as possible.

Very truly yours,

TAFT STETTINIUS & HOLLISTER LLP

Adam Wolek

23792003.1