**Taft/**

One Indiana Square, Suite 3500 / Indianapolis, IN  46204-4609
Tel: 317.713.3500 / Fax: 317.713.3699
www.taftlaw.com

**WILLIAM C. WAGNER**
Direct:  (317) 713-3614
wwagner@taftlaw.com

December 14, 2018

**Via Email**

The Honorable Karen M. Williams
U.S. District Court, District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets Room 1050
Camden, NJ 08101
njdnef_Williams@njd.uscourts.gov

  Re: The HomeSource Corp. v. Retailer Web Services, LLC
    Case No. 1:18-cv-11970

Dear Judge Williams:

  We need your help. RWS requests clarification on who will control the development of the experts' search protocol – HomeSource or the experts. On December 6, HomeSource's expert (Kevin Tuten) and RWS's expert (Dr. Jennifer Bayuk) conferred on the parameters for a forensically-sound search protocol. A rough transcript is attached and the recording can be provided if the Court wishes. The experts agreed that the protocol should include the following:

  (1) **Review the chain of custody.**  The experts agreed it was important to verify that HomeSource's webserver logs and the mirror image of those logs are authentic, especially since HomeSource's expert has not seen the original logs and the experts "will not have ongoing access to the database" after the search is done. (Tr. at 4-5, 10.) HomeSource–on its own– extracted five data fields from those logs in order to create the mirror image to be searched. Because neither expert has seen the logs, or more importantly the data fields within those logs, neither expert can opine on whether this extracted data set is reasonable for their search. As Mr. Tuten stated, he doesn't know whether there are 5,000 data fields or 5, but he understands there are many. (Tr. at 10.) **HomeSource disputes the experts' need for understanding the chain of custody to ensure that the logs are authentic and not subject to manipulation.**

  (2) **Review the log content to provide context for any matching IPs.**  The experts agreed they need to understand what data fields are on the logs that are associated with the IPs. (Tr. at 10-11)(Tuten: "Gotta have, we've got to have the actual record type, a record designation

The Honorable Karen M. Williams
December 14, 2018
Page 2

with the field, per record. How many fields are in a record?") This information is critical for the experts to be able to later opine on whether a visit to a website was benign or malicious. This is especially important since HomeSource demands that the mirror image be destroyed immediately after the search and has stated that it cannot know in advance of the search whether any given entry reflects benign or malicious conduct. HomeSource's expert has even asked HomeSource for a copy of a record type to know what data fields are available on the logs for this purpose, but had not received that information at the time of the conference. The experts agreed this should include a timeframe for the records (e.g., a starting and ending date) and the total number of records to be searched, which HomeSource said is over 6 million. (Tr. at 10.) **HomeSource disputes the experts' need to review the data fields of its logs, even if those logs are marked AEO.**

(3) **Verify HomeSource's proposed search tool to identify the IPs in the logs.** Rather than having the experts devise their own search algorithm to locate matching IPs, HomeSource has developed a search query. The experts agreed that HomeSource's query had to be reviewed to make sure it was pulling data from the mirror image and not an external source because the code that actually connects to the data source is not visible to the experts, but is hidden behind a hypertext link (http://(redacted). (Tr. at 3, 10-11.) **HomeSource has refused to answer substantive questions about its proffered search query and disputed the experts' concerns.**

(4) **Ensuring an adequate output for the search.** The experts agreed the record produced as a result of the search must include at least unique identifiers for the data fields that the experts determine are germane to their search. (Tr. at 10.) Until the experts know what data fields are available, they cannot opine on whether the 5 fields HomeSource has identified are sufficient, nor ensure themselves that HomeSource has not manipulated the log data after the search. **HomeSource disputes the concerns on the adequacy of the output from the search.**

RWS has proposed a follow-up experts' conference. HomeSource has declined. RWS expects that once the protocol is agreed to, both parties will simultaneously produce their respective evidence for the search as previously directed by the Court. RWS requests a telephonic conference to resolve these issues with both parties' experts invited to participate. Dr. Bayuk is available Friday, Dec. 14 (except between 10 and 11 am), and is generally available Tuesday, Dec. 18, through Thursday, Dec. 20 with advance notice.

                      Sincerely,

                      */s/ William C. Wagner*

                      William C. Wagner

The Honorable Karen M. Williams
December 14, 2018
Page 3


cc:    Adam Wolec
        Matthew A. Lipman
        Monica T. Holland
        Jennifer Bayuk

24027002.1