## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE HOMESOURCE, CORP.<br><br>Plaintiff,<br><br>vs.<br><br>RETAILER WEB SERVICES, LLC and JOHN DOES 1-3,<br><br>Defendants. | Case No. 1:18-cv-11970 (JBS-KMW)<br><br>**Motion Day: February 4, 2019** |

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF
## DEFENDANT'S IP ADDRESSES

Dated: January 10, 2019

By:   */s/Alexis Arena*
     Alexis Arena, Esq.
     Eric R. Clendening, Esq.
     FLASTER/GREENBERG P.C.
     Commerce Center
     1810 Chapel Avenue West
     Cherry Hill, NJ 08002-4609
     *Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTS ................................................................................................................................... 1

    A.      HomeSource's and the Court's Exhaustive Efforts to Resolve this Dispute ....................... 1

    B.      HomeSource Investigates RWS's IP Addresses Through Other Means. ........................... 3

    C.      HomeSource Obtains Evidence that RWS's List of IP Addresses Is Incomplete, Which Undermines the Entire Proposed Search. ................................................................ 4

ARGUMENT ......................................................................................................................... 5

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Huertas v. City of Camden*,
　No. CIV A 06-CV-04676, 2008 WL 4845241 (D.N.J. Nov. 6, 2008)......................................6

**RULES**

FED R. CIV. P. 26(b)........................................................................................................5, 6

FED R. CIV. P. 34 ................................................................................................................5

FED R. CIV. P. 37(a)............................................................................................................6

Rule 26(d)(3)(b) ...................................................................................................................6

**INTRODUCTION**

Plaintiff The HomeSource Corp. ("HomeSource") files this Motion to obtain a list of defendant Retailer Web Services, LLC ("RWS") internet protocol ("IP") addresses.[1] HomeSource served its discovery requests seeking RWS's IP addresses on August 27, 2018, and the parties have had four conferences with the Court on this issue: on October 3, November 7, November 28, and December 17. (*See, e.g.*, Dkt. No. 37).

HomeSource files this Motion pursuant to the Court's Order of December 17, 2018, which held:

> "The parties shall submit an agreed upon search protocol by December 21, 2018. In the event the parties are unable to agree upon a search protocol, then, on or before January 11, 2019, Plaintiff is hereby granted leave to file a motion to compel the production of a list of Defendant's IP[s]."

Dkt. No. 39. For the reasons specified below, the parties could not agree on a joint search protocol and this Motion follows.

**FACTS**

**A.    HomeSource's and the Court's Exhaustive Efforts to Resolve this Dispute**

During all four prior Court conferences on this issue, the Court instructed RWS to provide its IP addresses to HomeSource in discovery:

1. *October 3 Conference*. RWS objected to providing its IP addresses on the grounds of relevance. The Court rejected this objection and stated that the IP addresses should be provided. Dkt. No. 24.

2. *November 7 Conference*. RWS agreed to provide its IP addresses and stated that its delay in doing so was the result of RWS's delay in retaining an expert. Dkt. No. 30.

3. *November 28 Conference*. RWS argued that it could only provide the IP addresses as "attorneys eyes only" material, which was a new argument that RWS raised in November. HomeSource disagrees that RWS's IP addresses are

---

[1] Specifically, HomeSource requests a list of all IP addresses utilized by RWS's principals, employees and agents between June 1, 2018 and the present.

      "attorneys eyes only" material, but could not get RWS to produce the IP addresses to HomeSource's expert and counsel, even as "attorneys eyes only" material. Dkt. No. 36.

4. <u>December 17 Conference</u>. RWS would not provide the IP addresses because the parties were unable to agree on a "joint search protocol" and what information would be provided to RWS's counsel and RWS's expert by HomeSource in exchange for the list of "attorneys eyes only" IP addresses. Dkt. No. 40.

Pursuant to the Court's December 17, 2018 order, the parties' experts worked on submitting an agreed-upon search protocol to the Court by December 21. The parties' experts were on the phone for approximately 5 hours, without counsel, trying to work out an agreed-upon search protocol. *See, e.g.*, Email Correspondence attached as Exhibits A and E. The parties' experts exchanged draft protocols, the parties' experts had a call with the CEO of HomeSource to obtain additional information, and the parties' counsel exchanged calls and emails separately in an attempt to work out an agreement. The parties missed the December 21 deadline for agreeing on a search protocol and continued working on the protocol into the holiday weekend.

HomeSource sent RWS a draft protocol that HomeSource would agree to on December 22 (Version 10 of the Protocol), but RWS did not want to agree to this draft and submitted a counterproposal on December 23 (Version 11), which was not acceptable to HomeSource. *See* December 22 and 23, 2018 Emails, Page 3 of Exhibit A.

Both parties' draft protocols stated under "Assumptions" that it was assumed that RWS's list of IP addresses included all IP addresses utilized by RWS employees, principals and agents, and that RWS did not utilize "masked" IP addresses.[2] *See* Exhibit A, at 1. This is because the search results would not be meaningful if the RWS IP address list was not complete. *Id*.

---

[2] HomeSource's counsel emailed RWS's counsel to nail down the definition of "masked" IP addresses, to specifically include any use of a "proxy" which hides a party's IP address. *See* December 11, 2018 Email, attached as Exhibit B.

2

The parties' counsel specifically discussed the importance of RWS's list of IP addresses being complete:

> *HomeSource's Counsel-* …To the extent that you know of [RWS] employee IP addresses - maybe they have a work-issued laptop that has its own IP address, or the CEO [of RWS] has his own IP address that he's using and used to go to HomeSource site…
> *RWS's Counsel* – yeah, and we are providing that.
> *HomeSource's Counsel* - you are providing that?
> *RWS's Counsel* – we are providing that.
> *HomeSource's Counsel* – good, I'm glad to hear it.

*See* December 4, 2018 Call transcript excerpts, attached as Exhibit B. While the parties were negotiating the search protocol, HomeSource learned that the assumptions that the search were based on were false. *See* Exhibits A, E.

## B.     HomeSource Investigates RWS's IP Addresses Through Other Means.

To mitigate the damages caused by RWS's delay in providing its IP addresses, HomeSource sought RWS's IP addresses from publicly available sources and through third party subpoenas. On December 17, the Court recognized that spoliation may occur because Internet Service Providers ("ISPs") with relevant evidence may not know to preserve that evidence, because they do not yet have notice of this lawsuit. HomeSource does not know what ISPs have relevant evidence, because RWS has not identified its ISPs or IPs for HomeSource. Following the December 17 conference, HomeSource's counsel emailed RWS asking for a list of RWS's ISPs (per the Judge's suggestion), but RWS never responded to that email. *See* December 18, 2018 Email, attached as Exhibit C.

HomeSource did receive some of RWS's IP addresses from third parties. For example, RWS's Chief Executive Office, Mr. James Kane, had created an online account at Vimeo.com, where he posted videos disparaging HomeSource. HomeSource sent a subpoena to Vimeo.com requesting all of the IP addresses that Mr. Kane utilized when he logged into his account. Likewise, Mr. Kane created a profile on the social media platform LinkedIn, and HomeSource

3

requested the IP addresses that Mr. Kane utilized when he logged into his LinkedIn account. LinkedIn's response was received on December 21, 2018, while the parties were attempting to agree on a draft protocol. *See, e.g,* December 21, 2018 Emails re: LinkedIn, attached as Exhibit D.

HomeSource ran searches of its logs for the Vimeo and LinkedIn IP addresses and produced documentation of those search results to RWS on December 28. *See* Exhibit E. This documentation supports HomeSource's conclusion that RWS engaged in various types of unlawful activity directed towards HomeSource and HomeSource will be amending its complaint to assert additional claims against RWS in this litigation as a result of this new evidence. *Id.*

**C.     HomeSource Obtains Evidence that RWS's List of IP Addresses Is Incomplete, Which Undermines the Entire Proposed Search.**

First, through publicly-available sources, HomeSource identified 1,094 IP addresses that are utilized by RWS. RWS's list of IP addresses only consists of 1,072 IP addresses. *See* Exhibit E. Based on that fact alone, RWS's list is incomplete.

Second, LinkedIn and Vimeo's responses revealed additional IP addresses that were not on RWS's list (bringing the total RWS IPs identified to 1,107 IPs). RWS's counsel stated that only 1 of the 7 IP addresses provided by Vimeo was already on its list, notwithstanding that all 7 IP addresses were utilized by Mr. Kane when logging into his Vimeo account. Although RWS has attempted to explain this discrepancy by arguing that Mr. Kane was just logging in at a location like a "hotel," and that is why the Vimeo and Linkedin IP addresses are not on RWS's list, Mr. Kane and RWS's COO (Ms. Gilbert) both used the same IP addresses, frequently, on different days/months/years and at different times of day, indicating that these IPs were not used as the result of isolated hotel stays. *See* Exhibit E. To rebut the "hotel argument," HomeSource then also subpoenaed the ISP associated with these IP addresses, to see if this was in fact a hotel.

4

On January 7, RWS's counsel sent a letter objecting to the subpoena and apparently indicating that the IP address is Mr. Kane's home IP address, notwithstanding that it was not on RWS's list of IP addresses. *See* Letter to Cox Communications, attached as Exhibit F. HomeSource's counsel had asked RWS's counsel whether Mr. Kane's home IP address was included as agreed in the list of RWS IP addresses. *See* Exhibit E. RWS did not respond.

Finally, HomeSource identified 36 proxy IP addresses that RWS has utilized (bringing the total to date to 1,143). The fact that RWS utilized a proxy to mask its IP addresses is a fact that RWS has repeatedly denied. *See, e.g.,* Exhibit E. The parties' draft search protocols both relied upon the incorrect factual assumption that RWS did not hide behind a proxy. *Id*. If RWS did utilize Google Proxy to mask its IP addresses, then RWS's list of IP addresses may never be complete due to the passage of time and the failure to preserve RWS's Google Proxy IP addresses. If RWS does not admit that it used a proxy, then how could RWS have preserved a list of the proxy IP addresses that RWS used?

HomeSource continues to seek the 48 IP addresses that RWS has not yet provided to HomeSource, so that it can compare that list against HomeSource's existing list of 1,143 IP addresses and demonstrate the full extent to which RWS's conduct has caused damage to HomeSource.

## ARGUMENT

FED R. CIV. P. 34 provides that a party may serve requests on another party for the production of documents, and the other party must produce those documents so along as the requests fall within the relevant scope of FED R. CIV. P. 26(b). A party is entitled to obtain discovery of:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to

5

relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED R. CIV. P. 26(b). Under Rule 26(d)(3)(b), "discovery by one party does not require any other party to delay its discovery."

FED R. CIV. P. 37(a) provides that a party may move for an order compelling discovery when the opposing party submits an "evasive or incomplete disclosure, answer, or response" to a discovery demand. *Huertas v. City of Camden*, No. CIV A 06-CV-04676, 2008 WL 4845241, at *4 (D.N.J. Nov. 6, 2008). If the court grants the motion to compel the discovery response, the court will require the party or party's attorney whose conduct necessitated the motion "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *See id.* (quoting FED R. CIV. P. 37(a)(5)(A)).

RWS does not deny that, in accordance with the Court's prior instructions in this matter, RWS's IP addresses should be produced. RWS is just declining to produce a list of its IP addresses unless and until the parties agree on a joint search protocol and exchange of information. *See* Exhibits A, E. Despite HomeSource's exhaustive efforts to come to an agreement, stretching into the holiday weekend, RWS has not been willing to agree to what HomeSource proposed. *See* Exhibit A. In the meantime, third parties have provided information that implicates RWS, supports HomeSource's claims, and undermines the entire idea behind the search, which was that the search would be based on a complete list of IP addresses. *See* Exhibit E. The search results will not be meaningful if the list of RWS IP addresses is not complete, because RWS could have used one of the IP addresses that is not on the list to attack HomeSource's websites. Discovery has already revealed that RWS's list of 1,072 IP addresses is incomplete. *Id.* Although Federal Rule 26(d)(3)(b), states that "discovery by one party does not

require any other party to delay its discovery," RWS has effectively delayed providing its IP addresses to HomeSource for four months.

HomeSource requests that this Motion be granted, that RWS be compelled to produce its IP addresses, and that HomeSource be awarded its reasonable attorneys' fees in making this Motion.

Respectfully submitted,

Dated: January 10, 2019

Alexis Arena, Esq.
Eric R. Clendening, Esq.
1810 Chapel Avenue West
Cherry Hill, NJ 08002
(856) 661-1900
Fax: (856) 661-1919
alexis.arena@flastergreenberg.com
eric.clendening@flastergreenberg.com
*Attorneys for Plaintiffs*