

1835 Market Street,
Suite 1050
Philadelphia, PA  19103
(215) 279-9393
Fax: (215) 279-9394
www.flastergreenberg.com

**ALEXIS ARENA, ESQUIRE**
Direct Dial:  (215) 279-9908
E-Mail:  alexis.arena@flastergreenberg.com

January 17, 2019

**_VIA ECF ONLY_**
The Honorable Karen M. Williams
U.S. District Court, District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

   Re: *The HomeSource, Corp. v. Retailer Web Services, LLC, et al.*
      Case No. 1:18-cv-11970-JBS-KMW

Dear Judge Williams:

  We represent the plaintiff The HomeSource Corp. ("HomeSource").  We filed a pending letter regarding a discovery dispute on January 7, 2019, (Dkt. No. 41) and Defendant responded on January 8, 2019 (Dkt. 42).  We write the Court to confirm that despite Defendant's response to the Court, the discovery deficiencies identified in our initial letter remain unresolved.

  The most relevant discovery HomeSource seeks in this matter is the list of RWS's IP addresses (see pending Motion to Compel, Dkt. No. 43), but the second most relevant discovery HomeSource seeks in this matter are RWS's emails regarding the hacking of HomeSource's computers on August 13, 2018, and RWS's knowledge of the identity of that "John Doe" hacker.  HomeSource has been specifically seeking that information from RWS in discovery since August 2018:

- On August 27, 2018, at the parties Rule 26(f) conference, HomeSource's counsel asked RWS's counsel for the source of RWS's information about the hacking of HomeSource's computers.  RWS's responded "I don't think I have to tell you that," noting that there was no pending claim about computer hacking in the litigation.

- On August 27, 2018, HomeSource served a discovery request specifically seeking that information, and on September 9, 2018, HomeSource filed an Amended Complaint adding a computer hacking claim against a John Doe defendant.

- On October 10, 2018, RWS responded to HomeSource's requests, but did not provide the requested information.

The Honorable Karen M. Williams
January 17, 2019
Page 2

- The parties conferred, and on November 5, 2018, RWS supplemented HomeSource's requests, but still did not provide the requested information.

- In December 2018, HomeSource obtained evidence of RWS's IP addresses from third parties, which resulted in HomeSource learning that RWS had specific knowledge of the hacking of HomeSource's computers. HomeSource wrote RWS: "[RWS] previously indicated that there were documents in RWS's (Jim Kane's) possession related to the HomeSource hack, possibly an email that links to the hacked websites. We expect that email to be produced this week." HomeSource received no response and no copy of the email.

- On December 4, 2018, the parties held a meet and confer, and RWS's counsel appeared to deny that RWS had any additional information about the identity of "John Doe", which was contrary to all of the evidence gathered by HomeSource:

  [HomeSource's Counsel]: For this [interrogatory No. 14], you have been withholding some information, I believe, so if you could provide it, that would be great…the source of the information about the hacking does not appear to have been identified. So Adam, I think you are aware of a third party but haven't let us know that yet.

  [RWS's Counsel]: We are not. No, we are not. We saw that the websites were hacked and after we saw that they were hacked, we don't know how long they were, but after we saw that they were, our client chose to inform HomeSource as a professional courtesy that their websites were hacked. We don't know who the third party who hacked them. We did take screenshots of those hacks, which we had provided…

  [HomeSource's Counsel]: Ok. So how did you see that they had been hacked? What was the source of the information that they had been hacked?

  [RWS's Counsel]: Uh, my understanding is that the client just went to the websites and saw they were hacked.

  [HomeSource's Counsel]: That is not really believable, or consistent with the information we have. Do you remember a conversation during the initial case management conference where you said "I don't think I have to tell you that" with regard to the hacking? What -

  [RWS's Counsel]: Well, it might have been because at that time, you had stated that you were not alleging this against RWS, but I've always stated that RWS did not do this nor did it know who did it. I think the extent of what I would have said is that I don't know exactly how they found out. At that time I didn't know. I'm not sure if I did. My understanding is that they just went to the websites and saw they were hacked. Whether you chose to view that as believable or not, that's not up to you or me. That is up to the factfinder - the believability of it.

The Honorable Karen M. Williams
January 17, 2019
Page 3

> [HomeSource's Counsel]: When you say it is your understanding, we are really interested in the right answer from your client. What the client's knowledge is. So, you would have to go back and confirm with the client that the only source of information related to the hacking was the Internet, what is publicly available on the Internet, and I'm not really sure that is true, or that I'm hearing that from you.
>
> [RWS's Counsel]: Let's be clear, that's not what the interrogatory asks for… It is asking whether we hacked into it or not. RWS answered that question…We stated that we did not do it, nor do we know who did it, nor do they know who did it. I can't imagine another answer would…I can confirm that once again.
>
> [HomeSource's Counsel]: OK, confirm that once again for me. That would be great. Number 16 is related too, if you want to go ahead to 16.
>
> [RWS's Counsel]: Yeah, my understanding, and I can confirm this, is that I have no idea who hacked the website. It saw that it happened, but I have no idea who did it, other than the documents that it produced.
>
> [HomeSource's Counsel]: OK, so I do just want to confirm, that these are all the sources of information that RWS possesses, all of the documents, related to the hacking. Everything related to who could have done this and their identity. Everything has been produced and the response is complete. Do you agree that you will provide us with that?
>
> [RWS's Counsel]: [silence] Hold on, I'm taking notes real quick. Ok, you said everything is produced, response is complete, confirm that. Yes.
>
> [HomeSource's Counsel]: All information that RWS possesses regarding the identity of the person.
>
> [RWS's Counsel]: Yes, understood. It will undoubtedly be the same response that we have for 14. That this is the extent of it.

RWS did not supplement its responses as promised by December 14, and HomeSource filed its letter to Your Honor on January 7. On January 16, 2019, HomeSource finally received supplemental interrogatory responses from RWS, but Interrogatory No. 16 was not supplemented. RWS is now admitting that it possesses additional relevant information and documents about the hacking, and that the source of RWS's was not "the Internet," but declines to provide the source of the information and the related documents.

This failure to provide discovery is extremely prejudicial to HomeSource, because HomeSource cannot take appropriate discovery from RWS without an understanding of who at RWS has information regarding the hacking and what documents and information that person possesses. The emails that HomeSource specifically asked for related to the hacking exist, but have not been produced. HomeSource has sent out third party subpoenas related to Mr. Kane, but there may be another person at RWS with more information regarding the hacking than Mr. Kane.

The Honorable Karen M. Williams
January 17, 2019
Page 4

RWS needs to disclose the name(s) of those person(s), so that discovery can be specifically targeted towards them.  RWS should also amend its initial disclosures to identify those person(s). HomeSource will file a formal motion to obtain this information as well if needed.

                Respectfully,

                FLASTER/GREENBERG P.C.

                Alexis Arena

**cc: All Counsel of Record**