

1835 Market Street,
Suite 1050
Philadelphia, PA  19103
(215) 279-9393
Fax: (215) 279-9394
www.flastergreenberg.com

**ALEXIS ARENA, ESQUIRE**
Direct Dial:  (215) 279-9908
E-Mail:  alexis.arena@flastergreenberg.com

February 25, 2019

*VIA ECF ONLY*
The Honorable Karen M. Williams
U.S. District Court, District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

Re: **HOMESOURCE'S REPLY IN SUPPORT OF HOMESOURCE'S MOTION TO AMEND ITS FIRST AMENDED COMPLAINT**

Dear Judge Williams:

The plaintiff The HomeSource, Corp. ("HomeSource") submits this short letter brief in lieu of a formal reply brief under Local Civ. Rule 7.1(d).  This responds to defendant Retailer Web Services, LLC's ("RWS") 46 page opposition to HomeSource's Motion for Leave to amend HomeSource's First Amended Complaint.  Plaintiff HomeSource filed its motion to amend in advance of the deadline for amending pleadings.  Defendant RWS does not consent to extending the deadline for amending pleadings, does not consent to extending any subsequent deadlines, and does not consent to HomeSource's amendment of pleadings.

**1. RWS's Argument of Factual Disputes is Inappropriate at This Stage, Particularly While RWS is Refusing to Produce Any Discovery Related to Those Factual Disputes.**

RWS's lengthy Opposition brief appears to primarily argue the merits of HomeSource's claims, going so far as to attach documentation that RWS argues is factually relevant.  As the Court is aware, this is a motion to amend.  At the pleadings stage, HomeSource's allegations are presumed to be factually true because HomeSource has not yet had the benefit of discovery.  HomeSource has certainly not yet had the benefit of discovery in this case.  RWS has refused to produce:

- A list of RWS's IP addresses (*see* pending motion to compel, Doc. No. 43);
- RWS's documents related to the hacking of HomeSource's websites on August 13, 2018 (*see* pending letters, Doc. No. 41, 44);

The Honorable Karen M. Williams
February 25, 2019
Page 2

- An identification of the RWS employee that learned of the hacking of HomeSource's websites (*id.*), so that HomeSource can specifically seek discovery from that RWS employee;[1]
- A supplemental response to HomeSource's Interrogatory No. 16, which requests an explanation of the source of RWS's knowledge about the hacking of HomeSource's websites (*see* pending letters, Doc. Nos. 41, 44);
- A single document request response that identifies whether or not responsive documents exist (*id.*);
- Documents responsive to HomeSource Document Request Nos. 1, 3-7, 9-11,13-14, 16-21;
- Complete responses to HomeSource Interrogatory Nos. 2, 4, 5, 8, 12, 13, 14, 16, 18;
- Responses that either "admit" or deny" in response to HomeSource's Requests for Admission No. 2, 8, and 9;[2]
- Although RWS has produced some emails, RWS has appeared to skip producing the relevant emails from around August 13, 2018 related to the hacking of HomeSource's sites, and the July 20, 2018 newsletter attached to HomeSource's Complaint as Exhibit A. RWS's email production appears to skip over those two key dates.  HomeSource raised this issue with RWS weeks ago, and RWS simply responded by saying that this was not an intentional "skip" and that more emails are forthcoming, but no additional emails have been received.
- RWS has verbally agreed to produce documents related to its use of a spider to crawl HomeSource's websites, but has not done so.

The document request and interrogatories referenced above were served in August. HomeSource has repeatedly conferred with RWS on these issues, to no avail.  RWS's hope appears to be that RWS will refuse to produce relevant discovery to HomeSource, RWS will refuse to agree to extend the case deadlines, and then HomeSource will simply run out of time.

---

[1] Despite RWS's statements that the RWS employee will be identified, and the passage of several months, the RWS employee has not yet been identified.

[2] HomeSource specifically notes that although RWS's Opposition argues that the related RWS entities are improperly named, RWS is simultaneously refusing to produce discovery as to the relationships between those entities, giving inaccurate information or non-answers in response to HomeSource's requests for information as to the relationships between these entities.  RWS has also refused to produce any documents about the relationships between the entities as requested in HomeSource's document requests.  RWS even let HomeSource know that RWS accidentally included a false allegation about the relationships between these entities in RWS's Answer to HomeSource's initial Complaint, and that RWS's Answer should therefore probably be amended.  However, RWS has not done anything to amend its Answer or clarify the Answer.

The Honorable Karen M. Williams
February 25, 2019
Page 3

### 2. RWS's "Futility" Argument is Undermined by the Facts That RWS Has Already Admitted in This Case.

RWS appears to admit the following key factual allegations made by HomeSource:

- **RWS used a spider to crawl HomeSource's websites in violation of the websites' terms of use, which prohibit crawling.** As a result of a third party subpoena, HomeSource discovered that RWS was crawling websites operated by HomeSource in violation of the websites' terms and conditions, which prohibit crawling. HomeSource produced this documentation to RWS and RWS does not contest using spiders to crawl the websites during the relevant time period. Opp., at 12.

- **RWS called HomeSource posing as a potential customer, using a fake name, a fake business name, and a fake location, to obtain information from HomeSource.** HomeSource produced a recording of the call to RWS and RWS does not appear to deny that this occurred.

- **RWS logged in to HomeSource's site using at least one HomeSource customer's (Yudin's Applicances, Inc.) username and password, without HomeSource's knowledge and without permission from HomeSource.** RWS argues that it had permission from Yudin's Appliances to log in to HomeSource's site,[3] which is insufficient. To be permitted to log in to HomeSource's website under the Computer Fraud and Abuse Act, RWS would have had to have permission from HomeSource. *See, e.g., Facebook v. Power Ventures*, 844 F.3d 1058 (2016) (Finding a CFAA violation and explaining "to access [a] safe deposit box, the person needs permission both from his friend (who controls access to the safe) and from the bank (which controls access to its premises). Similarly, for Power to continue its campaign using Facebook's computers, it needed authorization both from individual Facebook users (who controlled their data and personal pages) and from Facebook (which stored this data on its physical servers). Permission from the users alone was not sufficient"). *See also CollegeSource, Inc. v. AcademyOne, Inc.*, 597 Fed.Appx. 116, 130 (3d Cir. 2015) (Suggesting that a defendant can be liable under the CFAA for a "breach any technological barrier or contractual term of use."). Here, RWS did not **only** violate the websites' terms and conditions and scrape public information. RWS logged in to HomeSource's website using another company's username and password, essentially misrepresenting RWS's identity to HomeSource, to obtain non-public information. RWS admits this conduct.

- **RWS sent the newsletter attached as Exhibit A to the Complaint to HomeSource's customers and potential customers, which contains false and misleading information about HomeSource.** The newsletter went out on July 20, 2018, HomeSource filed suit shortly thereafter, and the cyberattacks followed the filing of HomeSource's initial complaint.

---

[3] Yudin's Appliances was not authorized to give this permission and agreed not to give out its username and password.

These admissions show a pattern of unfair competition by RWS, directed towards HomeSource.  The documents that RWS has produced thus far in the litigation, and the documents that HomeSource has obtained from third parties in discovery, show that this pattern was entirely intentional.  In fact, RWS specifically and intentionally directed a campaign of negative activity against HomeSource between July and September 2018, which is when the hacking attacks, the DDoS attacks, the fake customer complaints, and the defamatory newsletter all occurred.  RWS's position that the timing is a coincidence is not credible.  Accordingly, HomeSource's claims of false advertising, unfair competition, and violations of the Computer Fraud and Abuse Act are completely appropriate and should proceed.

### 3. RWS is Correct That HomeSource May Have to Amend Again after Obtaining the Discovery that RWS is withholding.

HomeSource sought RWS's agreement to extend the deadline for amending pleadings, in light of the pending discovery disputes.  This was a reasonable courtesy to extend under the circumstances.  RWS did not agree to extend the deadline and did not agree to the amendment.  It is therefore absurd for RWS to argue that the motion for leave to amend should be denied because HomeSource is likely to amend its complaint in the future again, once HomeSource obtains more discovery.  RWS could have avoided all of this motion practice by simply agreeing to the extension or to the amendment (or producing the discovery so that the case could move forward).  If HomeSource did not move to amend by the deadline, then RWS would have argued that there was no "good cause" to amend, particularly as HomeSource had missed the deadline for amending pleadings.  RWS's conduct, in refusing to extend reasonable courtesies, has created this motion practice.

In this case, RWS has simply refused to extend the courtesies that are normally extended between parties.  RWS has refused to cooperate in producing discovery (resulting in Doc. Nos. 41, 42, 43, 44, 45, 46, 47), refused to cooperate in resolving scheduling conflicts (resulting in Doc. Nos. 60, 61), refused to agree to extend deadlines where warranted (resulting in Doc. Nos. 48, 53, 54, 55, and 56), and refused to consent to this simple motion to amend a complaint before the pleadings deadline.  This list covers almost all of the activity in this case since October 2018.

As RWS acknowledges, leave to amend should be freely granted.  To the extent that the Court agrees with RWS's arguments as to specific allegations, and concludes that any claims or allegations should be amended, then HomeSource respectfully requests leave to amend its First Amended Complaint to correct any deficiencies.

Respectfully submitted,

Alexis Arena

cc:     All counsel of record