**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE HOMESOURCE, CORP.<br><br>                    Plaintiff,<br><br>    vs.<br><br>RETAILER WEB SERVICES, LLC and<br>JOHN DOES 1-3,<br><br>                Defendants. | Case No. 1:18-cv-11970 (JBS-KMW)<br><br><br><br>**Motion Day: September 16, 2019** |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**SANCTIONS PURSUANT TO RULES 37(c)(1) and 37(e)**

---

By:   */s/Alexis Arena*

         Alexis Arena, Esq.
         Eric R. Clendening, Esq.
         FLASTER/GREENBERG P.C.
         Commerce Center
         1810 Chapel Avenue West
Dated:  August 19, 2019         Cherry Hill, NJ 08002-4609
         *Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ............................................................................................ ii

**INTRODUCTION**......................................................................................................... 1

      1)      **RWS withheld the evidence of Nationwide's and Gridiron's liability in this matter until after the deadline for amending pleadings and adding new parties.** .................................................................................... 1

      2)      **RWS withheld evidence of its Internet Service Providers (ISPs) until April 12, 2019, when it revealed for the first time that RWS's ISP Verizon had possessed relevant information related to RWS's activities on HomeSource's websites, and the information is now destroyed.** ................................................................................................ 1

**FACTS** ........................................................................................................................ 3

      1)      **RWS Intentionally Withheld the Evidence of Nationwide's and Gridiron's Liability for Civil Conspiracy until after the Deadline for Amending Pleadings and Adding New Parties.** .................................. 3

      2)      **RWS Intentionally Withheld an Identification of Its Internet Service Providers and Its IP Addresses Until April 2019, and Did Not Preserve That Information as Requested, Resulting in the Destruction of Relevant Information.** ............................................................................ 8

**LEGAL ARGUMENT** .............................................................................................. 11

      1)      **The Court Should Impose Sanctions Pursuant to Fed. R. Civ. P. 37(c)(1) Because RWS Intentionally Withheld Highly Pertinent Discovery Documents without Justification in Order to Cause Undue Prejudice to HomeSource.** ............................................................................ 11

      2)      **The Court Should Impose Sanctions Pursuant to Fed. R. Civ. P. 37(e) Because RWS's Failure to Disclose All of Its ISPs in a Timely Manner, Despite Multiple Requests, Resulted in the Destruction of Evidence.** ......................................................................................... 14

**CONCLUSION** ......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Chiarulli v. Taylor*,
   No. 08-4400, 2010 U.S. Dist. LEXIS 32618, 2010 WL 1371944 (D.N.J. Mar.
   31, 2010) .........................................................................................................................13

*Edelson v. Cheung*,
   2017 U.S. Dist. LEXIS 5219 (D.N.J. Jan. 12, 2017) ........................................................14, 16

*Folino v. Hines*,
   2018 U.S. Dist. LEXIS 193564, 2018 WL 5982448 (W.D. Pa. Nov. 14, 2018)....................16

*Gallant v. Telebrands Corp.*,
   35 F. Supp. 2d 378 (D.N.J. 1998) .......................................................................................13

*Goldrich v. City of Jersey City*,
   2018 U.S. Dist. LEXIS 162044 (D.N.J. Jul. 25, 2018)....................................................14, 15

*Lexpath Techs Holdings, Inc. v. Welch*,
   No. 13-5379 (PGS), 2016 U.S. Dist. LEXIS 116597 (D.N.J. Aug. 30, 2016) .......................16

*Moore v. Lamas*,
   2018 U.S. Dist. LEXIS 165032 (M.D. Pa. Sep. 26, 2018) ...................................................14

*Nat'l Hockey League v. Metro. Hockey Club*,
   427 U.S. 639 (1976)...........................................................................................................12

*State Nat'l Ins. Co. v. Cty. of Camden*,
   Civ. No. 08-5128 (NLH) (AMD), 2011 U.S. Dist. LEXIS 164093, 2011 WL
   13257149 (D.N.J. June 30, 2011) ........................................................................................15

*Tolerico v. Home Depot*,
   205 F.R.D. 169 (M.D. Pa. 2002).........................................................................................12

*Trowery v. O'Shea*,
   2015 U.S. Dist. LEXIS 173155 (D.N.J. Dec. 30, 2015)....................................................12, 14

*Wachtel v. Health Net, Inc.*,
   239 F.R.D. 81 (D.N.J. Dec. 6, 2006) ..................................................................................2, 13

**FEDERAL STATUTES**

Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) ...............................................2, 8, 16

**RULES**

Fed. R. Civ. P. 37 ...................................................................................................................11

Fed. R. Civ. P. 37(c)(1) ............................................................................................... passim

Fed. R. Civ. P. 37(e) ....................................................................................................1, 14, 16

Rule 26(a).........................................................................................................................3, 4, 9

iii

## **INTRODUCTION**

Plaintiff The HomeSource, Corp. ("HomeSource") files this motion for sanctions under Federal Rules 37(c)(1) and 37(e) based on defendant Retailer Web Services, LLC's ("RWS") obstruction of discovery.  Specifically:

1) **RWS withheld the evidence of** ███████████████████████ **in this matter until after the deadline for amending pleadings and adding new parties.**

HomeSource sought certain discovery information ████████████████████ ████████████████████████████████████ beginning in August 2018. Specifically, HomeSource asked RWS ████████████████████████████ ████████████████████, which was attached to HomeSource's Complaint as Exhibit A, before the newsletter was sent.  The initial deadline for amending pleadings and adding parties was February 8, 2019.  RWS withheld the evidence that ████████████████ █████████████████████████████████ until after the deadline for amending the pleadings and adding parties.  Despite HomeSource repeatedly asking for the relevant documents and information in discovery between August 2018 and February 2019, HomeSource did not receive the highly relevant information that it specifically sought from RWS until March 13, 2019.  RWS finally produced the information the day after the March 12, 2019 hearing with Judge Williams, when Judge Williams rejected RWS's attempt to prevent HomeSource from being able to amend its pleadings and to add new parties.  RWS's delay is the reason that HomeSource was required to file a new motion to amend, which is still pending.

2) **RWS withheld evidence of its Internet Service Providers (ISPs) until April 12, 2019, when it revealed for the first time that RWS's ISP Verizon had possessed relevant information related to RWS's activities on HomeSource's websites, and the information is now destroyed.**

By the time HomeSource was able to subpoena Verizon, evidence had been destroyed by Verizon.  HomeSource asked for a complete list of RWS's ISPs and IP addresses repeatedly

since August 2018, and HomeSource advised RWS through e-mails and other correspondence that it was greatly concerned about potential spoliation since ISPs only retain IP addresses for a limited number of months. That evidence is now spoiled and is no longer discoverable.

HomeSource had numerous meet-and-confer phone calls, e-mails, and filed numerous requests for court intervention based on RWS's deficient responses, and specifically discussed RWS's destruction of evidence with RWS. With respect to the information concerning RWS that Verizon destroyed, there is no possible restoration or additional discovery that could resolve the issue at this point; HomeSource did every possible thing to obtain RWS's IPs and ISPs earlier (including filing a motion to compel), but RWS refused to provide them. Thus, HomeSource's only remedy at this point is sanctions. *See Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 94 (D.N.J. Dec. 6, 2006) (finding repeated requests for court invention over discovery disputes, specifically where opposing party obstructed the process, justified filing motion for sanctions). Similarly, HomeSource has already been forced to incur the cost of the pending motion to amend because of RWS's delay in producing the requested information, which was requested by HomeSource repeatedly in very specific detail.

Accordingly, HomeSource respectfully requests that the Court grants its Motion for Sanctions and provide the following relief: (1) RWS pays the attorneys' fees and costs incurred by HomeSource for having to file the Motion for Leave to File a Second Amended Complaint (ECF No. 87 and all responses/replies) and the instant Motion for Sanctions; and (2) the Court enter a default judgment against RWS on HomeSource's Count VI – Violation of Computer Fraud and Abuse Act, 18 U.S.C. §1030(a)(2)(C) claim against RWS (or, in the alternative, that the Court instruct the jury that it may presume the information was unfavorable to RWS).

HomeSource requests this relief in order to be put back in the position it would have been in absent the misconduct by RWS.

## FACTS

**1)    RWS Intentionally Withheld the Evidence of  until after the Deadline for Amending Pleadings and Adding New Parties.**

This case was filed because of the defamatory "newsletter" attached to HomeSource's Complaint as "Exhibit A," which was sent by RWS to all of HomeSource's customers and potential customers on July 20, 2018.  Several days after the newsletter was sent, HomeSource filed its Complaint asserting claims based on the newsletter for false advertising under the Lanham Act, unfair competition, tortious interference, and defamation.  HomeSource ███████

███████████████████████████████████████████

███████████████████████████████████████

███████████████

On August 27, 2018, HomeSource served the following discovery requests on RWS:

Interrogatory No. 3.  Identify and describe the July 20th Email, attached to Plaintiff's Complaint as Exhibit A, including (a) every person involved; (b) his/her role in researching, drafting, revising, and/or transmitting the email; (c) the research performed to draft the email; and (d) a list of all persons and entities that the email was sent to.

Interrogatory No. 11.  Identify all persons employed by or associated with Nationwide or Gridiron who provided information related to HomeSource to You, between August 2017 and the present.  Attach any documents or communications that You exchanged with Nationwide or Gridiron during that time period related to HomeSource.

Document Request No. 10.  All documents related to communications between You and GridIron, You and Nationwide, or You and ADC relating to HomeSource (including but not limited to relating to HomeSource's products/services, principals and employees).

Document Request No. 19.  All documents related to Nationwide's ownership of and/or investment in RWS.

*See* RWS's Discovery Responses and HomeSource's Requests, attached hereto as Exhibit A.

On October 10, 2018, RWS responded to HomeSource's requests with objections.  *Id.* RWS did not name ██████████████████████ as persons that had researched, drafted, revised and/or transmitted the email.  RWS did not produce any discovery indicating that anyone other than RWS had researched, drafted, revised and/or transmitted the email.  ████████████



The parties had several meet and confers between October 2018 and February 2019. HomeSource continued to press for complete document responses, to no avail.  *See* Discovery Letters to Judge Williams and Motion to Compel, ECF Nos. 24, 30, 37, 41, 43, 44, 47.  On February 11, 2019, HomeSource noted that RWS's responses to the document requests ████████ ████████████████████████ were incomplete.  *See* Alexis Arena's February 7th E-mail, attached as Exhibit C.  HomeSource's counsel also noted that documents related to the July 20, 2019 newsletter attached to HomeSource's complaint were missing from the production.  *See* February 11th E-mail, attached as Exhibit D.  The document production jumped chronologically from July 19, 2019 to July 21, 2019.  Whereas other newsletter drafts were reviewed, revised and

approved by ███████████████, there was no evidence in the production that ███████
████████ had reviewed, revised, and approved the July 20, 2019 Newsletter that prompted
this lawsuit.

The deadline for adding parties and amending the pleadings was February 8, 2019.
HomeSource was required to move to extend the deadline because of RWS's refusal to provide
discovery in a timely manner.  RWS opposed the motion to extend and would not agree to extend
the deadline.  *See* ECF Nos. 47 and 52.

On February 11, 2019, the parties' counsel had a phone conference, which was recorded.[1]
HomeSource's counsel raised the issue of the "missing documents," as follows:

> HomeSource's Counsel: I looked through [the documents recently produced] and
> there are a bunch of significant gaps there.  Specifically around the newsletter. …
> Those emails you produced; I assume that's not exhaustive.

> RWS's Counsel:  We're not fully done, but that was a good, uh, portion.

> HomeSource's Counsel: Ok, well, I noticed that ███████████████
> ████████████████████████████████ that are
> going out related to HomeSource, but it's … everything related to the newsletter,
> which we actually filed the lawsuit based on, is missing.  So you don't have the
> similar draft going to ████████████████, but I'd like to know if that exists.
> If those emails exist.  If ████████████████████ if they approved
> that email before it went out.  Similar to how they did the others.

> RWS's Counsel:  Which email?

> HomeSource's Counsel:  What?

> RWS's Counsel:  Which email?

> HomeSource's Counsel:  The one attached to our complaint.

---

[1] HomeSource's counsel asked that all calls be recorded or that the parties no longer speak on the
phone in September 2018, after RWS's counsel misrepresented what was said during phone calls
between the parties.  This is the only case in which the undersigned counsel has ever recorded
phone calls between counsel in 15 years of practicing in this district.  A recording of the call will
be provided to the Court upon request.

RWS's Counsel:  The newsletter?

HomeSource's Counsel:  Yes.

RWS's Counsel:  Yeah, um, ok.  All I can say is that we did the search you asked to do and we are doing the search under those parameters.  But we will not withhold relevant documents unless there is a valid objection like attorney-client privilege or others.  Right now we are not withholding anything yet.  I think we are just moving through the documents.

HomeSource's Counsel:  Ok, I did not see anything related to the newsletter at all, which was strange, given that for the other emails that preceded it, there was a lot of back and forth, and a lot of drafts, and a lot of different people involved.  So it therefore seems unlikely that [RWS] would have sent out that newsletter on their own, without any type of review.  So, that…

RWS's Counsel:  Which one are we on right now?  The interrogatories or did we move on to the document requests?

HomeSource's Counsel:  It's an aside.

RWS's Counsel:  Oh, ok, got you.  Yeah, I mean, I don't know what to tell you.  We are moving through the documents, you know, diligently.  We produced a whole slew of them.  Are we complete?  No.  But we are moving through them.  We are trying to get you as many documents as fast as possible.

HomeSource's Counsel:  Ok, well, obviously if there is a way to zone in on the … July 20 newsletter …

RWS's Counsel:  Hold on.  We are not going to do little piecemeal searches here or there, that's not efficient.  We are either going to do the search you asked us to do, or we could just do specific days, but the search you asked us to do presumably would have encompassed that.

HomeSource's Counsel:  Presumably.  That's why I thought it was strange.  That there weren't any there.  Because you did have dates before and after the newsletter, like –

RWS's Counsel:  Yeah, I did just tell you that we are not done.  So, we are moving through diligently.  I can assure you there was no calculation to do one day first or one day last.  That wasn't part of the calculus.


On February 11, 2019, HomeSource emailed RWS:

As discussed today, it is apparent that the documents are not complete and we look forward to a complete production.  Specifically, emails related to the hacking on August 13, 2018, and the "newsletter" RWS sent on July 20, 2018, appear to be missing from the production, and these are key documents.  Please clarify whether ████████████████████████████████████████████ before it went out and produce any related emails exchanged with these entities.

Exhibit D.

On March 8, 2019, HomeSource's counsel again emailed RWS's counsel:

Regarding RWS's rolling production, please note that there have been no emails/drafts produced concerning the July 20 newsletter that is attached to the complaint as Exhibit A.  This is odd because there are a lot of emails before July 19 and after the newsletter on July 20.  In addition, every other 'newsletter' in the 'campaign against HomeSource' went through several drafts, ████████ ██████████████.  Is it possible that your client did not turn over to you the July 20 emails?

Exhibit E.

On March 11, 2019, HomeSource's counsel again emailed RWS's counsel:

You have an obligation to ask your client what responsive documents exist for each request (if any), where they may be located, and to make sure they are gathered. …the lack of responsive documents, which is still unexplained and is definitely concerning.
**<u>Have you gotten all of the responsive documents from your client?</u>**

Exhibit F (emphasis in original).

HomeSource's motion to amend its complaint and to extend the deadline to add parties was heard by Magistrate Judge Williams on March 12, 2019.  Judge Williams stated that she would be granting the motion to amend and to extend the deadline.  Judge Williams asked HomeSource to refile the motion attaching a redlined version of the amended complaint, and HomeSource did that the next day.  *See* ECF. Nos. 69 and 71.

On March 13, 2019, the day after Judge Williams rejected RWS's attempt to disallow any further amendments of the pleadings, RWS finally produced thousands of pages of documents, some of which showed ████████████████████████████████████

7

████████████████████████████████████████████████

The documents showed that ███████████████████████████████████

██████████████████████████████ HomeSource then had to file

another amended complaint (the currently-pending version) ████████████████

███████████████████████

During the meet and confers, RWS's counsel informed HomeSource repeatedly that counsel had gotten all of the responsive documents from RWS early on in discovery.  It is therefore unclear why these documents were not produced by counsel for over 6 months, despite HomeSource's counsel repeatedly asking for the documents with a great deal of specificity.  In addition, this is not the only instance of this occurring in this case.  In another instance, one highly relevant document regarding the hacking was not produced until HomeSource's counsel learned of and specifically asked for the document in March 2019, although RWS's counsel apparently had the document in September 2018.  *See* Letter Motion to Judge Williams re discovery, ECF. No. 44).

### 2) RWS Intentionally Withheld an Identification of Its Internet Service Providers and Its IP Addresses Until April 2019, and Did Not Preserve That Information as Requested, Resulting in the Destruction of Relevant Information.

HomeSource has sought RWS's IP addresses, and a list of RWS's Internet Service Providers (ISPs) since August 2018.  HomeSource's Amended Complaint also asserts claims under the Computer Fraud and Abuse Act and tort claims based on unlawful online conduct directed at HomeSource's websites.  On August 15, 2018, HomeSource sent a preservation letter to RWS, stating:

> HomeSource hereby demands that you preserve all documents, devices, tangible things, and electronically stored information potentially relevant to the issues addressed in this letter…all data and documents related to software, programs, or bots that view websites, examine code, explore potential security issues; all audio and audiovisual recordings of Jim Kane or any other RWS principal or employee

8

related to HomeSource; all data and documents reflecting logs related to efforts to examine the code of HomeSource's customers' websites.

Exhibit G.

In its August 2018 Rule 26(a) initial disclosures, HomeSource also specifically identified as relevant "documents concerning RWS's (or a third party associated with RWS's) attempts at hacking and/or slowing down HomeSource's websites and/or its customers' websites through the use of programs, bots, and third parties." Exhibit H.

In its August 2018 discovery requests, HomeSource requested an identification of RWS's IP addresses and RWS's Internet Service Providers (ISPs). *See* Exhibit A at Interrogatory No. 18 and Document Request No. 16.

Between August and December 2018, HomeSource repeatedly raised the issue with RWS and the Court, that if RWS did not identify all of its Internet Service Providers ("ISPs") to HomeSource, the ISPs would destroy relevant information, such as which IP addresses were utilized by RWS prior to August 2018. *See*, *e.g.*, ECF Nos. 24, 30, 37. The ISPs would not be on notice of this lawsuit and therefore would not know to preserve relevant information. On October 23, 2018, for example, HomeSource informed RWS: "RWS's list of IP addresses was due …and there are spoliation concerns associated with that specific request. For this reason, we have been seeking a clear answer from RWS on whether it will produce its IP addresses, and RWS's production of that information, since August 27, when the discovery request was first served." *See* October 23, 2018 Email, attached as Exhibit I.

On December 17, 2018, in response to HomeSource's concerns about spoliation, Judge Williams suggested that RWS identify the names of its ISPs to HomeSource, so that the data could be preserved. *See* ECF No. 43.

On December 18, 2018, HomeSource's counsel wrote to RWS: "Per the Judge's comment yesterday, please identify all ISPs that possess RWS's IP addresses.  We would like to send them subpoenas so that the IP addresses are preserved and not spoiled.  When I say 'RWS' I am including the employees, principals and agents of RWS.  Thank you."  *See* ECF No. 43, at Exhibit C.  RWS did not respond to the email.

RWS never identified Verizon or disclosed that it was using a Verizon hotspot to monitor HomeSource's sites.  RWS never indicated that it had not identified all of its ISPs to HomeSource.

RWS successfully delayed producing its IP addresses from August 2018 to April 12, 2019, citing several reasons why the IP addresses would not be produced to the Court, including (1) a delay in retaining an expert; (2) "AEO" designation concerns; and finally (3) the fact that HomeSource was not producing information to RWS's satisfaction as part of a joint search protocol.  HomeSource filed letter motions to compel in November and December 2018, culminating in a formal motion to compel and for sanctions based on RWS's refusal to produce the IP addresses in January 2019.  The motion to compel was granted in April 2019.

Producing its IP addresses pursuant to the Court's order, on April 19, 2019, RWS finally revealed that one of its ISPs was Verizon.  RWS stated that it used the Verizon Hotspot to monitor HomeSource's websites, but did not preserve the IP addresses that were used.  *See* Exhibit J (filed under seal).  RWS's recent Opposition to HomeSource's Motion to Amend states:

> [I]n **late January or early February 2018**, RWS assigned an intern (Cat Wilson) to check the websites of certain ADC members to see if any members left RWS's services for another service provider.  About four days a week, Ms. Wilson would quickly review approximately 120 websites to determine which websites were still operated by RWS, or if any had changed to another service provider.  Ms. Wilson made a record of her visits to the ADC websites, many of which were

> produced to HomeSource in discovery.  Because search engines often default to
> showing cached content, Ms. Wilson used a Verizon hotspot device (typically
> used to connect to the internet during trade shows) to check the websites, which
> enabled viewing the websites as they appeared in real-time, as opposed to the old
> cached versions.  She also automated opening the websites simultaneously to
> avoid the inefficiency of opening each website individually.

*See* ECF No. 89 at 4.

HomeSource examined its logs and found hundreds of thousands of Verizon hits, which may or may not be associated with RWS.  Shortly after learning that Verizon was one of RWS's ISPs on April 12, 2019, HomeSource contacted Verizon and was informed that the IP range used by Verizon is constantly changing.  The relevant IP addresses are those that were utilized by RWS prior to September 2018, and that data was not fully preserved by Verizon.  No data was available prior to August 6, 2018, and only partial data was available between August 6, 2018 and September 2018.  *See* May 6, 2019 Letter from Verizon, attached as Exhibit K.  In other words, due to RWS's failure to disclose that Verizon was its ISP and to preserve the Verizon IP addresses that it used, HomeSource will never be able to "fact check" the factual allegations of RWS above or to determine what exactly RWS's intern was doing on HomeSource's sites between January 2018 and August 2018.

## LEGAL ARGUMENT

**1)      The Court Should Impose Sanctions Pursuant to Fed. R. Civ. P. 37(c)(1)
Because RWS Intentionally Withheld Highly Pertinent Discovery Documents
without Justification in Order to Cause Undue Prejudice to HomeSource.**

Fed. R. Civ. P. 37 authorizes the Court to issue sanctions for failure to provide discovery as required by the federal rules or a court order.  Specifically, Fed. R. Civ. P. 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule
> 26(a) or (e), the party is not allowed to use that information or witness to supply
> evidence on a motion, at a hearing, or at a trial, unless the failure was
> substantially justified or is harmless. In addition to or instead of this sanction, the
> court, on motion and after giving an opportunity to be heard:

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

"These sanctions are available not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Trowery v. O'Shea*, 2015 U.S. Dist. LEXIS 173155, at *16 (D.N.J. Dec. 30, 2015) (internal quotations omitted) (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)).

Pursuant to Fed. R. Civ. P. 37(c)(1), a party's failure to provide discovery is subject to sanctions when a party's conduct was not substantially justified or was not harmless. Substantial justification is present when there is "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Tolerico v. Home Depot*, 205 F.R.D. 169, 175-76 (M.D. Pa. 2002).

Here, RWS refused to produce relevant e-mails concerning the July 20, 2018 newsletter for several months ████████████████████████, but RWS produced other e-mails from same time period, such as July 19th and 21st. There is no justification for refusing to withhold e-mails about a newsletter on one specific date while producing e-mails both before and after that date. RWS cannot claim that it had not yet reviewed the July 20th e-mails as part of its rolling production, as RWS had already passed the July 20th date in reviewing its own e-mails whether it was going in chronological or reverse chronological order. HomeSource asked for the e-mails concerning the July 20th newsletter multiple times leading up to the deadline to amend the pleadings and add parties. Crucially, RWS only agreed to finally produce the smoking gun e-mails after the original deadline to amend the pleadings and add parties had passed, which

12

shockingly implies that RWS intentionally withheld highly pertinent documents in order to

prevent ███████████████████████████████████ Based on the foregoing,

there is absolutely no justification for RWS's conduct.

Courts consider four factors when assessing whether to impose sanctions under Rule

37(c)(1): "(1) prejudice or surprise to the Plaintiff[]; (2) the ability of Plaintiff[] to cure the

prejudice; (3) the likelihood of disruption; and (4) the Defendant['s] bad faith or unwillingness to

comply." *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 105 (D.N.J. 2006).  HomeSource was

highly prejudiced by RWS's belated production of the smoking gun e-mails.  As a result,

HomeSource had to withdraw its then pending motion to amend the pleadings and file a new

motion to amend the pleadings ████████████████████████████

HomeSource also had to file numerous discovery letters citing RWS's deficiencies with the

Court and engage in a high volume of correspondence over six months to compel RWS to

produce the e-mails concerning the July 20th newsletter that are highly relevant to the instant

matter.  Prejudice exists when as a result of one party withholding documents and delaying the

proceedings, it results in extra costs, additional filings, and repeated delays to the affected party.

*See Chiarulli v. Taylor*, No. 08-4400, 2010 U.S. Dist. LEXIS 32618, 2010 WL 1371944, at *3

(D.N.J. Mar. 31, 2010).  Accordingly, sanctions are appropriate due to RWS's bad faith conduct

and the resulting prejudice to HomeSource.  *See Gallant v. Telebrands Corp.*, 35 F. Supp. 2d

378, 404 (D.N.J. 1998) ("Where a party has willfully withheld highly relevant and highly

adverse material from discovery, despite specifically tailored and repeated requests for such

material, sanctions are appropriate.")

HomeSource requests that RWS be required to pay the attorneys' fees and costs

associated with filing its Motion for Leave to File a Second Amended Complaint (and all

responses and replies thereto) because due to RWS's refusal to produce the relevant e-mails regarding the July 20th newsletter back in 2018, HomeSource ███████████████████ ██████████████████████████████ HomeSource also requests that RWS be required to pay the attorneys' fees and costs associated with filing this motion for sanctions. *See Trowery v. O'Shea*, 2015 U.S. Dist. LEXIS 173155, at *16 (D.N.J. Dec. 30, 2015) (holding the sanctioned party be required to pay attorneys' fees and costs associated with filing the motions that resulted from the sanctioned party's conduct pursuant to Rule 37(c)(1)).

> 2)   **The Court Should Impose Sanctions Pursuant to Fed. R. Civ. P. 37(e) Because RWS's Failure to Disclose All of Its ISPs in a Timely Manner, Despite Multiple Requests, Resulted in the Destruction of Evidence.**

"Spoliation of evidence is defined as the 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Edelson v. Cheung*, 2017 U.S. Dist. LEXIS 5219, at *6 (D.N.J. Jan. 12, 2017) (internal quotations omitted). When a party fails to preserve information that cannot be restored or replaced through additional discovery, the Court has the authority to order corrective measures. *See Moore v. Lamas*, 2018 U.S. Dist. LEXIS 165032, at *5 (M.D. Pa. Sep. 26, 2018). The Court must first determine if spoliation has occurred, and if so, the Court next assesses what type of sanction is appropriate. *See Goldrich v. City of Jersey City*, 2018 U.S. Dist. LEXIS 162044, at *21 (D.N.J. Jul. 25, 2018).

Accordingly, to establish spoliation, HomeSource must show: "(1) certain ESI should have been preserved in anticipation or conduct of litigation; (2) that evidence was lost; (3) the ESI was lost because [RWS] failed to take reasonable steps to preserve it; and (4) that it cannot be restored or replaced." *Goldrich*, 2018 U.S. Dist. LEXIS 162044, at *23 (D.N.J. Jul. 25, 2018).

First, Verizon's IP addresses could have been preserved if RWS made a good faith effort to identify all of its ISPs back in August 2018, as requested by HomeSource.  The duty to preserve evidence arises when a party in possession of evidence "knows or reasonably should know that litigation is pending or probable." *State Nat'l Ins. Co. v. Cty. of Camden*, Civ. No. 08-5128 (NLH) (AMD), 2011 U.S. Dist. LEXIS 164093, 2011 WL 13257149, at *3 (D.N.J. June 30, 2011).  HomeSource sent the litigation hold letter back in August 2018, asking specifically that RWS preserve: "documents concerning RWS's (or a third party associated with RWS's) attempts at hacking and/or slowing down HomeSource's websites and/or its customers' websites through the use of programs, bots, and third parties."  *See* Exhibit G.

Second, RWS did not inform HomeSource that Verizon was one of its ISPs until April 12, 2019, despite the fact that HomeSource requested this information repeatedly since August 2018.  When HomeSource subpoenaed Verizon immediately thereafter, Verizon informed HomeSource that no data was available prior to August 6, 2018, and only partial data was available between August 6, 2018 and September 2018.

Third, HomeSource repeatedly informed RWS that timing was of the essence since ISPs only store their IP addresses for a limited time.  *See* ECF Nos. 24, 30, 37 and Exhibit I.  Despite the litigation hold letter, and despite receiving HomeSource's written correspondence stressing the importance of producing all ISPs immediately, RWS failed to identify the Verizon ISP until **eight** **months** **later**, at a time when the ISP had already destroyed the IP addresses.  RWS either intentionally withheld this information to prejudice HomeSource, or, at best, failed to take reasonable steps to identify all of its ISPs when HomeSource initially requested this information in August 2018. *See Goldrich v. City of Jersey City*, 2018 U.S. Dist. LEXIS 162044, *27 (D.N.J.

Jul. 25, 2018) (finding spoliation occurred because ESI was lost due to party's failure to take reasonable steps to preserve evidence and to restore the evidence once it was lost).

Finally, as explained above, this evidence cannot be restored or replaced.  Verizon's letter states that the IP addresses have been destroyed.  *See* Exhibit K.

When evaluating whether to impose certain spoliation sanctions pursuant to Rule 37(e), the Courts considers "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Lexpath Techs Holdings, Inc. v. Welch*, No. 13-5379 (PGS), 2016 U.S. Dist. LEXIS 116597, *16 (D.N.J. Aug. 30, 2016) (internal quotations omitted).

Here, some of the evidence which existed to prove that RWS unlawfully accessed HomeSource's computer using the Verizon ISP has been destroyed.  When evidence has been lost forever that is central to a party's claim, the severe sanction of default judgment can be warranted.  *See Folino v. Hines*, 2018 U.S. Dist. LEXIS 193564, *10-11, 2018 WL 5982448 (W.D. Pa. Nov. 14, 2018) (granting default judgment, attorneys' fees, and costs sanctions against party who destroyed the only electronic evidence that existed which could prove liability for the underlying claim as to who hacked plaintiff's computer).  Accordingly, HomeSource respectfully requests that the Court enter a default judgment against RWS on HomeSource's Count VI – Violation of Computer Fraud and Abuse Act, 18 U.S.C. §1030(a)(2)(C) claim against RWS.  In the alternative, and at the very least, HomeSource requests that the Court instruct the jury that it may presume the information was unfavorable to RWS.  *See Edelson v. Cheung*, 2017 U.S. Dist.

16

LEXIS 5219, at *11-12 (D.N.J. Jan. 12, 2017) (adopting lesser sanction of instructing the jury

that it may presume the information was unfavorable to the defendant).

## **CONCLUSION**

For the foregoing reasons, HomeSource respectfully requests that its Motion for

Sanctions and all relief requested above be granted.


Respectfully submitted,

Dated: August 19, 2019                    _____

Alexis Arena, Esq.
Eric R. Clendening, Esq.
1810 Chapel Avenue West
Cherry Hill, NJ 08002
(856) 661-1900
Fax:  (856) 661-1919
alexis.arena@flastergreenberg.com
eric.clendening@flastergreenberg.com
*Attorneys for Plaintiffs*

17