## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE HOMESOURCE, CORP.<br><br>                    Plaintiff,<br><br>     vs.<br><br>RETAILER WEB SERVICES, LLC,<br>RETAILER WEB SERVICES II, LLC,<br>NATIONWIDE MARKETING GROUP,<br>LLC, GRIDIRON CAPITAL LLC, and<br>JOHN DOES,<br><br>                    Defendants. | Case No. 1:18-cv-11970 |

### SECOND AMENDED COMPLAINT

1.     Plaintiff The HomeSource, Corp. ("HomeSource") asserts claims against defendants Retailer Web Services, LLC, and Retailer Web Services II, LLC ("RWS") for false advertising under the Lanham Act, defamation, tortious interference with commercial relationships, Federal and common law unfair competition, and violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) (the "CFAA").

2.     HomeSource asserts claims defendants Nationwide Marketing Group, LLC ("Nationwide"), and Gridiron Capital, LLC ("Gridiron"), for contributory liability under the Lanham Act, and for civil conspiracy, ███████████████████

3.     ███████████████████████████████.

4.     HomeSource also asserts CFAA claims against the John Doe defendants, based on cyberattacks targeting HomeSource's websites, which occurred between the filing of this lawsuit and the present.  These cyberattacks include two different types of cyberattacks:  DDoS attacks and hacking attempts.

5.      Based upon the information utilized in the attacks and the timing of the attacks, HomeSource believes that the John Doe defendants received information about HomeSource's websites from RWS, Nationwide and/or Gridiron, and utilized that information to carry out the attacks.

## PARTIES

6.      Plaintiff HomeSource is a New Jersey corporation with its principal place of business at 420 Ganttown Road, Sewell, NJ 08080.

7.      Defendant Retailer Web Services, LLC is an Arizona limited liability company with a principal place of business at 15615 N. 71ST Street, Suite 205, Scottsdale, AZ 85254.

8.      Defendant Retailer Web Services, LLC's statutory registered agent is: Kingsley Law Firm PLC, 14362 N. Frank Lloyd Wright BLVD, #1000, Scottsdale, AZ 85260.

9.      Defendant Retailer Web Services II, LLC is a Delaware limited liability company with a principal place of business at 15615 N. 71ST Street, Suite 205, Scottsdale, AZ 85254.

10.     Defendant Nationwide is a North Carolina limited liability company with a principal place of business at 723 Coliseum Drive, Suite 101, Winston Salem, North Carolina 27106.

11.     Defendant Gridiron is a Connecticut limited liability company with a principal place of business at 220 Elm Street, New Canaan, Connecticut 06840.

12.     Retailer Web Services, LLC and Retailer Web Services II, LLC are related entities and RWS has referred to both entities as "RWS."  Discovery is continuing as to the exact relationship between these two entities.

13.     The John Doe defendants are unknown individuals who directed cyberattacks at HomeSource's websites to disrupt and cause damage to HomeSouce's business.

## JURISDICTION AND VENUE

14.     This Court has federal question jurisdiction over HomeSource's Federal claims pursuant to 28 U.S.C. §§ 1331, 1338(a).

15.     This court has personal jurisdiction over defendant RWS because RWS is engaged in the systematic and continuous conduct of business in the State of New Jersey. RWS's conduct in connection with the State of New Jersey required it reasonably to anticipate that it would be subject to the jurisdiction of the courts in the State of New Jersey.

16.     Upon information and belief, this court has personal jurisdiction over defendant Nationwide because Nationwide is engaged in the systematic and continuous conduct of business in the State of New Jersey, and Nationwide expressly aimed tortious conduct at HomeSource, a New Jersey corporation, such that defendant could reasonably anticipate being haled into district court in New Jersey due to its tortious conduct.

17.     Upon information and belief, this court has personal jurisdiction over defendant Gridiron because Gridiron is engaged in the systematic and continuous conduct of business in the State of New Jersey, and Gridiron expressly aimed tortious conduct at HomeSource, a New Jersey corporation, such that defendant could reasonably anticipate being haled into district court in New Jersey due to its tortious conduct.

18.     Upon information and belief, this court has personal jurisdiction over defendant Does because Does expressly aimed tortious conduct at HomeSource, a New Jersey corporation, via the internet such that defendant Does could reasonably anticipate being haled into district court in New Jersey due to their tortious conduct.

19.     Venue in the District of New Jersey is proper under 28 U.S.C. § 1391.

## FACTS

**A.    HomeSource Ruins RWS's Monopoly**

19.    HomeSource and RWS are direct competitors.  Both HomeSource and RWS provide competitive technology services, including but not limited to operating websites for the same types of retail store customers.  Specifically, both companies market to the members of four groups of customers, called NEAG, ADC, Intercounty and DMI.

20.    The four groups are comprised of approximately 468 retail store customers.

21.    Prior to 2017, RWS was the only company that HomeSource was aware of providing this service to these groups.

22.    In August 2017, Nationwide and Gridiron learned that HomeSource was planning to launch a service that competed with RWS's service.

23.    Mr. Dev Mukerjee identified himself to HomeSource as a representative of both Nationwide and Gridiron.  He represented that Nationwide and Gridiron wanted to learn more about HomeSource's service and see a demo of the new product, because Nationwide/Gridiron were interested in investing in and/or acquiring HomeSource.

24.    HomeSource required Nationwide/Gridiron to sign a NDA, and the NDA was signed.

25.    Through the due diligence process, Gridiron and Nationwide acquired a great deal of sensitive, proprietary information about HomeSource, its services, business and legal history.

26.    ███████████ Nationwide ended up not investing in HomeSource, but ██████ invest in RWS, according to a press release from February 24, 2018.

27.    █████████████████████████████████████████████████
████████████████████

**B.**     **RWS** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Campaign against HomeSource**



31.     On or about July 16, 2018, RWS informed customers in a newsletter:

"RWS is its own separate and privately held company," and "We have a legal and binding confidentiality agreement in place with all of NECO that would strictly prohibit RWS from sharing any of this sensitive information with anyone at Nationwide, or any other buying group . . . . With or without that agreement, sharing trade secret information would violate several laws.  That's a line we would never cross and a risk we would never take.  And doing so would be unethical."

*See* July 16, 2018 Newsletter, attached as Exhibit B.

32.     This newsletter and the NECO agreement are false and misleading, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

33.     On or about July 20, 2018, RWS's CEO Jim Kane and COO Jennie Gilbert emailed a newsletter (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to HomeSource's customers and potential customers which contained materially false and misleading statements about HomeSource.  *See* July 20th Newsletter, attached as Exhibit A.

34.     Under the heading, "Has HomeSource ever done anything like this before?", RWS stated, "The White family, owners of HomeSource and similar other businesses, appear to

have a history of their business relationships ending in lawsuits against them.  They were found guilty of making **negligent misrepresentations about the capabilities of their software in a federal lawsuit** (Civil Action NO. 3:12-CV-0090)."

35.     The text "Civil Action NO. 3:12-CV-0090" contains a hyperlink to Judge Graham Mullen's Order ("Graham Order") on a motion for attorney's fees in the case of *Furniture Distributors, Inc. v. Software Support-PMW, Inc.* ("Furniture Lawsuit").

36.     HomeSource was not a party in the Furniture Lawsuit and was not found "guilty" of making negligent misrepresentations about the capability of their software.

37.     No member of the White family was a party in the Furniture Lawsuit, and no member of the White family was found "guilty" of making negligent misrepresentations about the capability of their software.

38.     RWS further misrepresented: "The judge later deemed the counter-claims they alleged along the way 'totally meritless' and ordered them to pay Furniture Distributors, Inc. fifty thousand dollars to reimburse attorney fees in addition to the four hundred fifty thousand dollars already awarded them at trial."

39.     RWS's use of "they" implies that HomeSource and the White family filed these counterclaims, but once again, they were not parties to the lawsuit, and it was actually Software Support-PMW, Inc. who filed these counterclaims in the action.

40.     The Graham Order does not mention HomeSource or the White family at all.

41.     RWS, ███████████████ newsletter misleadingly and falsely implies that HomeSource and/or its owners were found "guilty" of negligent misrepresentations, but they are not even parties to this lawsuit, and the Graham Order deals with a motion for attorney's fees.

42.     RWS goes on to state in the newsletter: "Despite the ruling, **Furniture Distributors Inc sued Homesource again when Homesource failed to make any of the payments ordered** (Case 3:15-CV-00313)."

43.     The text "Case 3:15-CV-00313" contains a hyperlink to a separate **collection** action filed in the United States District Court for the Western District of North Carolina, *Furniture Distributors, Inc. v. James R. White, Jr.; James R. White, Sr.; Phyllis M. White; Gregory L. White; Courtney Murnane; Software-Support PMW, Inc.; The Homesource, Corp.; BBJ Corp., and Centerspec, LLC*.

44.     RWS falsely states that HomeSource was sued for a second time by Furniture Distributors, Inc., but HomeSource was not a party to the original Furniture Lawsuit.

45.     RWS falsely states that HomeSource failed to make any of the payments ordered, but HomeSource was not ordered to make any payments, and it was not a party to the prior lawsuit.

46.     RWS misrepresented that HomeSource failed to make payments in order to intentionally disparage HomeSource's business and damage its relationship with its customers and potential customers.

47.     RWS further misrepresented that Martin Salas was a consultant hired by HomeSource, but HomeSource never hired or entered into any contract with Martin Salas directly.

48.     RWS falsely implied that HomeSource "stole" images from a third party (Plessers), without any understanding of the relationship between HomeSource and Plessers.

49.     Upon information and belief, after HomeSource filed the initial complaint in this action, RWS (███████████████████████████) continued to make false, misleading,

and/or defamatory statements about HomeSource to HomeSource's customers, potential customers, and third parties.

**C.      RWS Misrepresented Security Vulnerabilities and Tried to Pose as a Customer to Acquire Access to HomeSource's Systems**

50.      On July 19, 2018, at 11:58 p.m., Jim Kane, CEO of RWS, emailed HomeSource and Ken Miele, of ADC, purportedly to point out a potential security hole and vulnerability in HomeSource's systems.

51.      Less than two hours later, RWS emailed the July 20th Newsletter to HomeSource's customers which states: "Our investigation unearthed a possible major security concern with HomeSource sites." *See* Exhibit A.

52.      There was no such "major security concern."

53.      The July 20th Newsletter contained a link to a short video where Jim Kane explains how he believes one could hack into HomeSource's system, and he provides the steps one could take in order to do it.

54.      The video misrepresents the security of customers' files and alleges that they are publicly available, when in fact, HomeSource does not store customer information or files in this "bucket" or online folder.

55.      A RWS employee left a voicemail for HomeSource in which he posed as a potential customer named Tony Bosco, who claimed to be opening a store for furniture and appliances called Kensington Appliance and Furniture, in order to deceive HomeSource and gain access to their data and methods.

7468144 v1

**D.**  **The John Does Launched Cyberattacks against HomeSource's Customers' Websites, Following the ▮▮▮▮▮▮▮▮ Decision to Advertise HomeSource's Alleged Security Vulnerabilities Online**

56.     Following RWS's, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ decision to advertise HomeSource's alleged "security vulnerabilities" on the Internet, HomeSource was the victim of two different types of cyberattacks.

57.     First, between August and September 2018, John Doe(s) deployed several DoS and DDoS attacks through the use of bots and/or programs that only targeted HomeSource's customers who also used to be customers of RWS.

58.     In these DoS and DDoS attacks, the bots and/or programs would continually view the websites and run hundreds and thousands of searches in an effort to overload HomeSource's computer systems and software and crash the websites.

59.     Upon information and belief, the John Doe attacks came out of Scottsdale, Arizona, the same location as defendants RWS, due to the exponentially disproportionate volume of traffic coming out of the location.

60.     John Doe hid its operating system, browser, and many parts of its digital fingerprint when launching the attacks in order to conceal its identity.

61.     John Doe also deployed bots which are programmed to continually send hundreds and thousands of requests for service upon a single website in order to crash it, or at the very least, severely slow it down for other consumers trying to use the site.

62.     The only HomeSource customers that have been victimized by these attacks were all former customers of RWS, as HomeSource's remaining customers were not targeted.

63.     HomeSource subpoenaed GoDaddy in an attempt to identify John Doe, because John Doe used a GoDaddy account to deploy the DDoS attacks.

7468144 v1

64.     GoDaddy has informed HomeSource that GoDaddy cannot identify John Doe, because the GoDaddy account used was compromised at the time the attacks occurred.

65.     Upon information and belief, John Doe hacked a GoDaddy account and then used that GoDaddy account to commit the DDoS attacks.

66.     Second, three HomeSource websites were hacked on August 13, 2018.

67.     HomeSource was scheduled to meet with one of RWS's largest customers the next day on August 14, 2018, and RWS was aware that this meeting was going to occur.

68.     Around the time of the hack on August 13, 2018, RWS ran a spider script against the three hacked websites.

69.     In the days just prior to August 13, 2018, RWS was monitoring those three websites in a manner that would alert RWS when the websites were altered.

70.     Based on the foregoing, HomeSource believes that RWS was aware that the websites were going to be hacked, before those websites were actually hacked on August 13, and at the very least, encouraged such hacks with RWS's internet post.

71.     On September 26, 2019, HomeSource was scheduled to meet with and pitch its services to RWS customers located in the Pittsburgh area.  Around the time of the meeting, HomeSource was a victim of more cyberattack attempts.

72.     These cyberattack attempts failed, but HomeSource continues to note that these attempts occur shortly before HomeSource is scheduled to meet with and pitch RWS customers.

73.     Failed cyberattacks have occurred before multiple additional events such as trade shows and meetings in 2019 where HomeSource is pitching its services to RWS customers.

**E.      RWS Used HomeSource's Customer Names and Passwords to Log in to HomeSource's Systems as a HomeSource Customer, Without Authorization.**

74.      HomeSource has given usernames and passwords to certain of its customers, who pay for access to HomeSource's services.  This content is not otherwise publicly available.

75.      HomeSource only provides this access after each customer agrees to its Terms and Conditions, which require that the customer keep the username and password secure, and not provide the username and password to any other party.

76.      RWS has used the username and passwords of two HomeSource customers without authorization.

77.      RWS has logged into HomeSource's websites and obtained HomeSource's proprietary information without authorization, under the false pretense that RWS was logging in as a HomeSource customer.

**F.      RWS Designed and Deployed Software (Spiders or Crawlers) Specifically to Monitor and Download Information from HomeSource's Websites.**

78.      RWS concealed its identity when visiting HomeSource's websites through the use of a proxy server and virtual private network.

79.      Through discovery, HomeSource learned that RWS designed and deployed software ("spiders" or "web crawlers") to monitor and download information from HomeSource's websites.

80.      HomeSource believes that these activities were for the purpose of disrupting HomeSource's business and to gain an unfair competitive advantage.

81.      RWS engaged in this conduct despite knowing that it was unlawful and expressly prohibited.

7468144 v1

82.     This conduct did cause damage to HomeSource's websites, by slowing the functionality of the websites.

83.     Upon information and belief, RWS has continued to engage in this conduct and to deploy software spiders or web crawlers on HomeSource's websites.

84.     Upon information and belief, RWS incorporates the information it obtains during the crawls into its emails to HomeSource's customers.

## Count I – False and Misleading Advertising under the Lanham Act, 15 U.S.C. § 1125 (a) against RWS

85.     HomeSource repeats and incorporates all other paragraphs of this Complaint as if fully set forth herein.

86.     Section 1125(a) of Title 15 of the United States Code states, in pertinent part, the following:

> Any person who, on or in connection with any good or services, … uses in commerce any word, term, name, symbol, … or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact… which – in commercial advertising or promotion, misrepresents the nature, characteristics, qualities… of another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

87.     RWS's use of "HomeSource" in connection with materially false and misleading statements about HomeSource's reputation, legal history, security, and the quality of its goods and services, constitutes commercial advertising that misrepresents the nature, characteristics, and qualities of HomeSource's goods, services, and commercial activities.

88.     RWS's conduct in disseminating emails and newsletters and placing phone calls to HomeSource's customers and potential customers with materially false and misleading statements about HomeSource constitutes false advertising and unfair competition.

89.     RWS's conduct constitutes false and misleading advertising in violation of 15 U.S.C. § 1125(a).

90.     HomeSource has no adequate remedy at law.  RWS's conduct has caused, and if not enjoined, will continue to cause irreparable damage to the rights of HomeSource, its brand, reputation and goodwill.

91.     As a result of RWS's conduct, HomeSource has been damaged.

### Count II – Defamation against RWS

92.     HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

93.     By engaging in the above-described conduct, RWS defamed HomeSource including, without limitation, by directly publishing and distributing emails and newsletters that deliberately, or at the very least negligently, (i) contain statements that are defamatory in nature and character; (ii) were published and disseminated by RWS to third parties, including HomeSource's customers and potential customers; (iii) were understood by their recipients to apply to HomeSource and to be defamatory; and (iv) caused special harm to HomeSource by virtue of such publications.

94.     RWS's statements contained in the emails and newsletters impute both civil offenses and business and professional misconduct to HomeSource – including, but not limited to, allegations that HomeSource was found liable of negligent misrepresentation and allegations that HomeSource failed to pay a prior customer despite a court order.

95.     RWS's statements contained in the emails and newsletters are the kind that would be particularly harmful to a business involved in e-commerce.

96.     The statements contained in the emails and newsletters have caused and will continue to cause substantial pecuniary and reputational harm to HomeSource.

97.     As a result, RWS is liable to HomeSource for damages caused by RWS's conduct.

### Count III – Tortious Interference with Prospective Economic Advantage against RWS

98.     HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

99.     HomeSource had a protected interest in its reasonable expectation of economic advantage, as it relates to HomeSource's prospective economic interests with potential customers of its goods/services.

100.    RWS willfully, maliciously, and intentionally interfered with HomeSource's prospective economic advantage by publishing materially false and misleading statements about HomeSource in newsletters and emails that RWS sent to HomeSource's potential customers, HomeSource's customers, and its customers' buyers.

101.    RWS further willfully, maliciously and intentionally interfered with HomeSource's prospective economic advantage by engaging in the various unlawful cyber activities set forth above.

102.    RWS willfully, maliciously and intentionally interfered with HomeSource's prospective economic advantage by logging into HomeSource's websites using other companies' usernames and passwords, without authorization from HomeSource.

103.    RWS's conduct was without justification.

104.    RWS's conduct caused HomeSource a loss of prospective economic gain.

7468144 v1

105.    As a direct and proximate result of RWS's conduct, HomeSource has been and continues to be damaged.

106.    By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

**Count IV – Tortious Interference with Contract against RWS**

107.    HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

108.    RWS was fully aware of the contractual relationship existing between HomeSource's customers and HomeSource, including the fact that a valid and enforceable contract existed between these parties, and RWS was a not a party to this contractual relationship.

109.    RWS willfully and intentionally interfered with the contractual relationship by publishing materially false and misleading statements about HomeSource in newsletters and emails that RWS sent to HomeSource's customers, and its customers' buyers.

110.    RWS further willfully, maliciously and intentionally interfered with HomeSource's contractual relationships with its customers by engaging in the various unlawful cyber activities set forth above.

111.    RWS willfully, maliciously and intentionally interfered with HomeSource's contractual relationship with its customers by logging into HomeSource's websites using customers' usernames and passwords, without authorization from HomeSource.

112.    RWS's conduct is without justification.

113.    As a direct and proximate result of RWS's conduct, HomeSource has been and continues to be damaged.

15

114.    By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

**Count V – Common Law and Federal Unfair Competition against RWS**

115.    HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

116.    RWS's conduct constitutes unfair competition, in that RWS is attempting to benefit commercially by stealing HomeSource's customers through publishing materially false and misleading statements about HomeSource.

117.    RWS's wrongful conduct arises directly out of and is connected to its advertising activities.

118.    RWS's conduct further constitutes unfair competition because RWS engaged in the various unlawful cyber activities set forth above.

119.    RWS's conduct in logging into HomeSource's websites using other companies' usernames and passwords, without authorization from HomeSource, also constitutes unfair competition.

120.    RWS's conduct in pretending to be a potential HomeSource customer and HomeSource customers constitutes unfair competition.

121.    RWS's conduct in conspiring to hack and/or promoting the hacking of HomeSource's websites constitutes unfair competition.

122.    The aforementioned acts constitute unfair competition against HomeSource under 15 U.S.C. § 1125.

123.    HomeSource has been and continues to be damaged by RWS's activities and conduct.  Accordingly, HomeSource is entitled to recover its damages, pursuant to 15 U.S.C. §1117(a).

7468144 v1

124.    Unless RWS's conduct is enjoined, HomeSource and its goodwill and reputation will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

125.    By reason of the foregoing, HomeSource is entitled to injunctive relief, treble damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

## Count VI – Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) against RWS

126.    HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

127.    The Computer Fraud and Abuse Act ("CFAA") prohibits acts of computer trespass by those who are not authorized users or who exceed authorized use.  It creates criminal and civil liability for whoever "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains ... information from any protected computer." 18 U.S.C. § 1030(a)(2)(C).

128.    A defendant can run afoul of the CFAA when he or she has no permission to access a computer or when such permission has been revoked explicitly.

129.    RWS never had permission from HomeSource to log in to HomeSource's systems and review non-publicly available information as a HomeSource customer, using the username and password of another company.

130.    HomeSource requires its customers to proactively agree to its Terms before logging in, which prohibit giving out the customers' username and password.

131.    RWS logged in to HomeSource's websites using another company's username and password, despite understanding that such conduct was expressly prohibited and unauthorized.

17

132.    HomeSource further prohibits the crawling of the websites through spiders and has objected to this conduct by RWS.  Nevertheless, upon information and belief, RWS has continued to crawl HomeSource's websites.

133.    HomeSource's computer system and customers' websites are a protected computer under the CFAA because they are used in interstate commerce.

134.    As a direct result of the RWS's conduct, HomeSource has suffered at least $5,000 in damages in the past year through analyzing, investigating, and responding to RWS's unlawful access of its system and RWS's unlawful crawling of its websites, including by having to conduct a damage assessment and determine the extent of the breach after each unlawful act by RWS.

### Count VII – Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A) against Defendant John Does

135.    HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

136.    The John Doe(s) coordinated several DoS and DDoS attacks against HomeSource's computers systems and HomeSource's customers' websites that were designed to interfere with interstate commerce by dramatically slowing down and/or crashing the websites.

137.    The John Doe(s) also attempted to hack the websites on or about August 13, 2018.

138.    Through his or her conduct, the John Doe(s) knowingly caused the transmission of a program, information, code, or command with the intent to cause damage, without authorization, to a protected computer system.

139.    As a result of the John Doe(s) conduct, HomeSource's customers' websites crashed or were dramatically slowed down, interrupting the customers' ability to conduct e-commerce and other online business.

140.     HomeSource's computer system and customers' websites are a protected computer under the CFAA because they are used in interstate commerce.

141.     As a direct result of the John Doe(s) conduct, HomeSource has suffered at least $5,000 in damages in the past year through analyzing, investigating, and responding to the hacking, DoS, and DDoS attacks and hacking attempts.

**Count VIII – Civil Conspiracy against RWS** ████████████████

142.     HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

143.     RWS ███████████████████████ begin a smear campaign against HomeSource.

144.     ████████████████████████████████████████████
████████████████████████████████████.

145.     ████████████████████████████████████████████
████████████████████████████████████
████████████████████

146.     ████████████████████████████████████████████
████████████████████████████████████
████████████████████████████

147.     ████████████████████████████████████
████████████████████████████████████

148.     ████████████████████████████████████████
████████████████████████████: (1) false and misleading advertising under the Lanham Act, 15 U.S.C. § 1125 (a); (2) defamation; (3) tortious interference

with prospective economic advantage; (4) tortious interference with contract; and (5) common law and federal unfair competition.

149.    

150.

HomeSource has been damaged and continues to suffer special damages, including, but not limited to, loss of profits and damage to business reputation.

151.    By reason of the foregoing, HomeSource is entitled to injunctive relief, damages, special damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

**Count IX – Contributory Liability for False and Misleading Advertising under the Lanham Act, 15 U.S.C. § 1125(a) against Nationwide and Gridiron**

152.    HomeSource repeats and incorporates each paragraph of this Complaint as if set forth fully herein.

153.

154.

155.

156.    █████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

157.    █████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

158.    ███████████████████████████████████████████████

██████████████████████████

159.    HomeSource has no adequate remedy at law.  Nationwide and Gridiron's conduct

has caused, and if not enjoined, will continue to cause irreparable damage to the rights of

HomeSource, its brand, reputation and goodwill.

160.    As a result of Nationwide and Gridiron's conduct, HomeSource has been

damaged.

**[IN THE ALTERNATIVE]**

**Count X –** ██████████████████████████████████████████

161.    HomeSource repeats and incorporates each paragraph of this Complaint as if set

forth fully herein.

162.    █████████████████████████████████████████

████████████████████████████████████████████

█████████████████, HomeSource hereby alleges Count X ████████████████

██████████████████████████████

163.    █████████████████████████████████████████

████████████████████████████████████████████████████

███████████████

164. 

165.

166.

167. ██████████████████████ (1) defamation; (2) tortious interference with prospective economic advantage; (3) tortious interference with contract; and (4) common law and federal unfair competition.

168. ████████████████████████████ HomeSource has been damaged and continues to suffer special damages, including, but not limited to, loss of profits and damage to business reputation.

169. By reason of the foregoing, HomeSource is entitled to injunctive relief, damages, special damages, attorneys' fees and costs, and further relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff HomeSource prays for relief and judgment, and requests that the Court:

(A) enter judgment against RWS, Gridiron, Nationwide and John Doe(s) and in favor of HomeSource with respect to each claim for relief alleged against them in this Complaint;

(B) award HomeSource injunctive relief, treble damages and its costs and attorneys' fees, pursuant to the Lanham Act; and

7468144 v1

(C)     award such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff, The HomeSource, Corp., hereby demands a trial by jury for all issues that are so

triable.

Respectfully submitted,

**FLASTER/GREENBERG P.C.**

Dated: April 1, 2020                    By:   */s/ Eric. R Clendening*
                                               Eric R. Clendening, Esq.
                                               1810 Chapel Avenue West
                                               Cherry Hill, NJ 08002
                                               (856) 661-2210
                                               Fax:  (856) 661-1919
                                               eric.clendening@flastergreenberg.com
                                               *Attorneys for Plaintiff*