# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THE HOMESOURCE, CORP., | Civil Action No.: 1:18-cv-11970 |
| Plaintiff, | Hon. Eduardo C. Robreno |
| v. |  |
| RETAILER WEB SERVICES, LLC, et al., |  |
| Defendants. |  |

## BRIEF IN SUPPORT OF NATIONWIDE MARKETING GROUP, LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT[1]

Dated: June 15, 2020

Respectfully submitted,

*/s/ Ethan Hougah*
Louis R. Moffa
Ethan Hougah
Alexandra S. Jacobs
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
457 Haddonfield Road, Suite 600
Cherry Hill, New Jersey 08002
(856) 488-7700

---

[1] Nationwide joins RWS II's motion to dismiss and sever the Second Amended Complaint, also filed today. Nationwide joins that motion to the extent it applies to the causes of action in which it was directly (Counts VIII, IX, and X) or indirectly (Counts I-V) named or involved. Because the claims related to the Computer Fraud and Abuse Act do not involve Nationwide Marketing Group, LLC, it does not adopt those portions of RWS II's brief.

Adam Wolek (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601
Tel.: (312) 836-4063
Fax: (312) 966-8598
awolek@taftlaw.com

William C. Wagner (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Tel.: (317) 713-3500
Fax: (317) 713-3699
wwagner@taftlaw.com

*Counsel for Defendant Retailer Web Services II, LLC; Retailer Web Services, LLC; Nationwide Marketing Group, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. v

INTRODUCTION............................................................................................................. 1

BACKGROUND............................................................................................................... 1

   A.  Jurisdictional Facts........................................................................................... 1

       1.   Nationwide's alleged acts did not occur in or target New Jersey. ..................... 2

       2.   Nationwide has no jurisdictional connection with New Jersey. ........................ 3

   B.  HomeSource's Substantive Allegations Against Nationwide. ..................................... 4

       1.   Nationwide incorporates by reference the statement of facts set forth in RWS's Motion..................................................................................................... 4

       2.   HomeSource's conspiracy, contributory and vicarious liability allegations against Nationwide. ....................................................................................... 5

LAW AND ARGUMENT ................................................................................................. 6

   I.  HomeSource's claims against Nationwide should be dismissed for lack of personal jurisdiction. ........................................................................................... 6

       A.   Legal standard. ............................................................................................. 6

       B.   No operative allegations support general jurisdiction over Nationwide. .......... 7

       C.   No allegation, nor any evidence, supports specific jurisdiction. ..................... 8

       D.   Exercising personal jurisdiction over Nationwide would not comport with traditional notions of fair play and substantial justice. ..................................... 13

   II.  HomeSource's allegations against Nationwide fail to state a claim and should be dismissed under Rule 12(b)(6). ...................................................................... 14

       A.   Legal standard. ............................................................................................. 14

B.   Each of HomeSource's derivative claims against Nationwide fails to state a claim because HomeSource failed to plead an underlying tort against RWS...................................................................................................15

C.   HomeSource's contributory liability for false and misleading advertising claim (Count IX) should be dismissed for failure to state a claim. .........16

1.   Contributory liability for false or misleading advertising is not a cognizable claim for relief. ..................................................................16

2.   HomeSource did not plead a predicate Lanham Act violation. .......17

D.   Each of HomeSource's vicarious liability claims should be dismissed for failure to state a claim....................................................................................18

1.   No allegation establishes agency. .......................................................19

2.   HomeSource's vicarious liability claim fails because it failed to plead facts supporting a piercing of the corporate veil.............................20

CONCLUSION ...........................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*3 Lab, Inc. v. Kim*, No. CIV. 07-1056, 2007 WL 2177513 (D.N.J. July 26, 2007).............. 10

*Acad. of Doctors of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644 (E.D. Mich. 2017)..17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................................14, 18

*Baraka v. McGreevey*, 481 F.3d 187 (3d Cir. 2007)................................................ 15

*BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 15493 (2017) ................................................... 7

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017)........................................................................................................... 9

*Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985)* .........................................12, 13

*Calder v. Jones*, 465 U.S. 783 (1984).......................................................... 9, 10, 11, 13

*Canter v. Lakewood of Voorhees*, 420 N.J. Super. 508 (App. Div. 2011) ...........19, 20

*Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141 (3d Cir. 1992) ...........................6, 9

*Daimler AG v. Bauman*, 134 S.Ct. 746 (2014) .......................................................7, 8

*Destefano v. Udren Law Offices, P.C.*, No. CV167559, 2017 WL 2812886 (D.N.J. June 29, 2017), *aff'd*, 802 F. App'x 688 (3d Cir. 2020) ......................................................... 1

*Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248 (11th Cir. 2015) ...... 18

*Fantis Imports, Inc. v. Hellas Import, Ltd*, No. 07-0544, 2008 WL 1790425 (D.N.J. Apr. 18, 2008)........................................................................................................... 11

*Fisher v. Teva PFC SRL*, 212 Fed. App'x. 72 (3d Cir. 2006).................................... 12

*G&W Labs., Inc. v. Laser Pharm., LLC*, No. 3:17-CV-3974, 2018 WL 3031943 (D.N.J. June 19, 2018)....................................................................................................... 17

*Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915 (2011)....................7, 9

*IMO Indus. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998) ....................................7, 9, 11

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ..........................................7, 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ........................16, 17

*Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417 (D.N.J. 2019) ............12

*Marten v. Godwin*, 499 F.3d 290 (3d Cir. 2007).....................................................................9, 10

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406 (3d Cir. 2003) .............................................................................................................................................16

*N. Am. Steel Connection, Inc. v. Watson Metal Prod. Corp.*, 515 F. App'x 176 (3d Cir. 2013)..21

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007) ................................................9

*Patterson by Patterson v. F.B.I.*, 893 F.2d 595 (3d Cir. 1990)....................................................1, 6

*Pearson v. Component Tech. Corp.*, 247 F.3d 471 (3d Cir. 2001) .........................................19, 21

*Pinninti v. NRI Med. Coll. (NRIAS)*, No. CIV.A.09-5356MLC, 2010 WL 2483992 (D.N.J. June 4, 2010).......................................................................................................................12

*Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496 (D.N.J. 2009) .............................................19

*Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001) .....................................................................10

*Richard A. Pulaski Const. Co. v. Air Frame Hangars, Inc.*, 195 N.J. 457 (2008) ......................21

*Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010 WL 5392845 (D.N.J. Dec. 22, 2010)...............................................................................................................................20

*Sonic Supply, LLC v. Universal White Cement Co.*, No. 07-CV-04529, 2008 WL 2938051 (D.N.J. July 29, 2008) .....................................................................................................14

*State Capital Title & *180 Abstract Co. v. Pappas Bus. Servs.*, 646 F.Supp.2d 668 (D.N.J. 2009)...........................................................................................................................20, 21

*Stevens v. Welch*, No. CIV.A. 10-3928 SDW, 2011 WL 541808 (D.N.J. Feb. 7, 2011)........11

*Telebrands Corp. v. My Pillow, Inc.*, No. 18-CV-06318, 2019 WL 1923410 (N.D. Ill. Apr. 30, 2019).............................................................................................................................17

*Tennile v. Quintana*, 443 F. App'x 670 (3d Cir. 2011).............................................................16

*Vanz, LLC v. Mattia & Assocs.*, No. 2-13-CV-01392-SDW-SCM, 2016 WL 3148400 (D.N.J. May 17, 2016), report and recommendation adopted, No. 13-CV-1392-SDW-SCM, 2016 WL 3148386 (D.N.J. June 1, 2016) ..................................................................8

*Verni ex rel. Burstein v. Harry M. Stevens, Inc.*, 387 N.J. Super. 160 (App. Div. 2006) ........... 21

*Victory Int'l (USA) Inc. v. Perry Ellis Int'l, Inc.*, C.A. No. 07-0375, 2008 WL 65177 (D.N.J. Jan. 2, 2008) ................................................................................................................ 6, 8, 11

*Walden v. Fiore*, 571 U.S. 277 (2014) ................................................................. 9, 10, 11

*Waste Mgmt. v. Admiral Ins. Co.*, 138 N.J. 106 (1994) .............................................. 13

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ................................ 13

*Wrist Worldwide Trading GMBH v. MV Auto Banner*, No. CIV.A. 10-2326, 2011 WL 5414307 (D.N.J. Nov. 4, 2011) ................................................................................ 19

**Statutes**

15 U.S.C. § 1125(a) ................................................................. 4, 6, 15, 16, 17

**Rules**

Fed. R. Civ. P.  8(a)(2) ................................................................. 20

Fed. R. Civ. P. 12(b)(2) ................................................................. 1, 6, 13

Fed. R. Civ. P.  12(b)(6) ................................................................. 1, 14, 15, 22

## INTRODUCTION

Nationwide Marketing Group, LLC ("Nationwide") moves to dismiss The HomeSource Corp.'s ("HomeSource") claims against it for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) ("Rule").

Second, in the alternative, Nationwide moves to dismiss HomeSource's civil conspiracy, contributory liability, and vicarious liability claims under Rule 12(b)(6). These claims are deficient for the reasons expressed in Defendant Retailer Web Services II, LLC's Motion to Dismiss and Sever Plaintiff The HomeSource, Corp.'s Second Amended Complaint ("RWS's Motion"), which Nationwide joins and adopts as described in footnote one above, as if fully re-written here.[2]

Third, HomeSource's claims against Nationwide are also deficient because HomeSource alleges no facts to hold Nationwide vicariously or contributorily liable for any underlying tort, nor did it allege all elements needed for a civil conspiracy. These pleading deficiencies require dismissal of HomeSource's claims against Nationwide under Rule 12(b)(6).

## BACKGROUND

### A.    Jurisdictional Facts.

The Court's review of a Rule 12(b)(2) motion is not limited to the face of the pleadings; the Court may rely on factual evidence in addition to reviewing HomeSource's allegations. *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603-04 (3d Cir.

---

[2] *See Destefano v. Udren Law Offices, P.C.*, No. CV167559, 2017 WL 2812886, at *1 (D.N.J. June 29, 2017), *aff'd,* 802 F. App'x 688 (3d Cir. 2020) (observing that defendant joined co-defendant's motion to dismiss, granting both motions, and dismissing complaint).

1990). Nationwide will discuss HomeSource's allegations along with jurisdictional facts outside the pleadings below.

### 1.     Nationwide's alleged acts did not occur in or target New Jersey.

HomeSource alleges that Defendants Retailer Web Services, LLC and Retailer Web Services II, LLC (collectively, "RWS")[3] sent an allegedly defamatory newsletter about it to HomeSource's customers and potential customers at undisclosed locations. (Second Am. Compl. ("SAC") [D.E. 164] ¶ 30.) There are no allegations that Nationwide emailed the newsletter to anyone, let alone to anyone in New Jersey.

Instead, HomeSource alleges that RWS, Nationwide, and Gridiron, conspired to smear HomeSource by holding strategy meetings and exchanging emails about the content of the newsletter, with Nationwide providing "input and approval" before RWS sent the newsletter. (*Id.* ¶¶ 3, 28–33.) Nationwide's reply emails ostensibly went from its office in North Carolina to RWS's office in Arizona and Gridiron's office in Connecticut. (*Id.* ¶¶ 7, 9–11.) Finally, HomeSource concludes formulaically, with no notice as to the factual support behind the conclusion, that Nationwide exercised control over RWS and directed it to carry out the smear campaign. (*Id.* at 164.)

HomeSource seeks to litigate against Nationwide in HomeSource's home state of New Jersey on claims for civil conspiracy (Count VIII)[4] and contributory and/or vicarious liability (Counts IX and X). (*Id.* ¶¶ 30, 144–146.)

---

[3] HomeSource's SAC addresses both Retailer Web Services entities collectively, even though they are separate companies. (D.E. 164 ¶ 12.) Nationwide accepts this allegation as true for purposes of this motion only and does not concede that both RWS entities published the newsletter.

[4] HomeSource contends that Nationwide conspired with RWS and Gridiron for the torts related to the Newsletter: (1) false and misleading advertising under the Lanham

## 2.      Nationwide has no jurisdictional connection with New Jersey.

Nationwide is a North Carolina limited liability company, where its principal place of business is located. (D.E. 164 ¶ 10.) Nationwide's only corporate location is its headquarters in North Carolina. (Mukherjee Decl. (attached as Ex. A) ¶ 4.) Nationwide does not maintain corporate offices, own or lease any real property, or maintain any bank accounts in New Jersey. (*Id.* ¶ 5.) Nationwide currently has 123 employees, only one of whom covers New Jersey along with his responsibility to cover other east coast states, but he is not based in New Jersey. (*Id.* ¶ 7.) Nationwide is not registered to do business in, and does not maintain a registered agent for service of process for, New Jersey. (*Id.* ¶ 8.) Nationwide has no business relationship with HomeSource. (*Id.* ¶ 9–10.)

Nevertheless, HomeSource sued Nationwide in the District of New Jersey. HomeSource's jurisdictional allegations against Nationwide are conclusory and devoid of operative facts:

> Upon information and belief, this court has personal jurisdiction over defendant Nationwide because Nationwide is engaged in the systematic and continuous conduct of business in the State of New Jersey, and Nationwide expressly aimed tortious conduct at HomeSource, a New Jersey corporation, such that defendant could reasonably anticipate being haled into district court in New Jersey due to its tortious conduct.

(*Id.* ¶ 16.)

HomeSource asserts no other jurisdictional facts against Nationwide, but claims that it communicated with Nationwide a year earlier about an unrelated potential business

---

Act; (2) defamation; (3) tortious interference with prospective economic advantage; (4) tortious interference with contract; and (5) common law and federal unfair competition. (D.E. 164 ¶ 148.)

investment that never materialized. (*Id.* ¶¶ 22–26.) HomeSource alleges no facts regarding the location of this meeting, so insofar as HomeSource intended to suggest that this meeting establishes jurisdiction over Nationwide, the SAC is deficient on its face. Regardless, these discussions in fact occurred during a business exposition in Mashantucket, Connecticut. (Ex. A ¶ 10.)

HomeSource's lack of factual support for its jurisdictional allegations against Nationwide should not be surprising; Nationwide has no meaningful jurisdictional connections to New Jersey. In short, the SAC does not allege any facts to plausibly show that Nationwide expressly aimed tortious conduct at New Jersey. Forcing Nationwide to litigate in New Jersey, where it is far from home, would be exceedingly burdensome, particularly as the relevant Nationwide employees and records would be in North Carolina. (*Id.* ¶ 12.)

## B.   HomeSource's Substantive Allegations Against Nationwide.[5]

### 1.   Nationwide incorporates by reference the statement of facts set forth in RWS's Motion.

HomeSource alleges that RWS published a newsletter containing factual inaccuracies about HomeSource, its owners, and its business, giving rise to claims for false and misleading advertising under the Lanham Act, 15 U.S.C. § 1125(a) (Count I), defamation (Count II), tortious interference (Counts III and IV), and common law and federal unfair competition (Count V). These factual allegations are detailed in the motion to dismiss filed by RWS. In the interest of efficiency and judicial economy,

---

[5] These facts are drawn from HomeSource's SAC and are construed as true only for this Motion to Dismiss. Nationwide reserves all rights to deny or otherwise challenge HomeSource's factual assertions.

Nationwide joins in and adopts the statement of facts in RWS's Motion as if fully rewritten here.

### 2. HomeSource's conspiracy, contributory and vicarious liability allegations against Nationwide.

HomeSource alleges that Nationwide, Gridiron, and RWS are "related companies." D.E. 164 ¶ 3.[6] It alleges that Nationwide worked "in concert" to "minimize HomeSource's market share" by conspiring to regain customers lost by RWS to HomeSource. *Id.* ¶¶ 27–28. HomeSource alleges that Nationwide "exchanged email communications" and "held strategy meetings" with RWS and Gridiron. *Id.* ¶¶ 29–30. HomeSource alleges these meetings led to two email newsletters, which Nationwide "coordinate[d] the wording of" and "signed off" on, and which contained statements the HomeSource calls false and misleading. *Id.* ¶¶ 30, 144.[7] HomeSource states that the newsletters "misrepresent the nature, characteristics, and qualities of HomeSource's goods and services" and that Nationwide knew that they contained "false and misleading representations." (*Id.* ¶¶ 154–56.) HomeSource does not allege which statements Nationwide knew were false. HomeSource also recites formulaically that Nationwide "exercised control over RWS," "directed" it to send the newsletters, and

---

[6] HomeSource fails to plead that Nationwide and RWS are sister companies and wholly owned subsidiaries of the same parent, Local Retail Solutions, LLC. Gridiron owns a majority interest in Local Retail Solutions. RWS has identified this relationship to HomeSource and the Court previously. (D.E. 134 ¶¶ 10–11; D.E. 186.)

[7] HomeSource also suggests that RWS placed phone calls to HomeSource's customers [D.E. 164 ¶ 88], but provided no supporting facts regarding who received these alleged calls or the contents of the communications. HomeSource's counts against Nationwide make no reference to these supposed calls, thus, it does not appear that HomeSource believes Nationwide was responsible for them.

"[d]ue to the ownership interests within their corporate family, Nationwide … had the actual or apparent authority to control RWS…." (*Id.* ¶¶ 164–65.)

HomeSource claims that Nationwide is liable for (1) civil conspiracy (Count VIII), contributory liability for false advertising under the Lanham Act, 15 U.S.C. § 1125(a) (Count IX), and vicarious liability for defamation, tortious interference, and common law and federal unfair competition (Count X) because of its alleged knowledge of and signing off on RWS's newsletters. (*See id.*)

## LAW AND ARGUMENT

**I.    HomeSource's claims against Nationwide should be dismissed for lack of personal jurisdiction.**

### A.    Legal standard.

A defendant may assert that the court lacks personal jurisdiction over it. Rule 12(b)(2). Thereafter, "the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). The plaintiff's response cannot rely solely on the pleadings but must provide actual proof, through affidavits or other competent evidence, that jurisdiction is proper. *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603–04 (3d Cir. 1990). And "it is difficult for [a] Court to conclude that it has specific jurisdiction … when [Plaintiff's] allegations are based upon information and belief," *Victory Int'l (USA) Inc. v. Perry Ellis Int'l, Inc.*, C.A. No. 07-0375, 2008 WL 65177, at *8 (D.N.J. Jan. 2, 2008), as are HomeSource's jurisdictional allegations against Nationwide. D.E. 164 ¶ 16.

Determining whether jurisdiction exists involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal

jurisdiction violates due process. *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). "In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *Id.* at 259.

Here, HomeSource recites one jurisdictional conclusion as to Nationwide:

> Upon information and belief, this court has personal jurisdiction over defendant Nationwide because Nationwide is engaged in the systematic and continuous conduct of business in the State of New Jersey, and Nationwide *expressly aimed tortious conduct at HomeSource*, a New Jersey corporation, such that defendant could reasonably anticipate being haled into district court in New Jersey due to its tortious conduct.

(D.E. 164 ¶ 16) (emphasis added). Such a boilerplate allegation is insufficient to support personal jurisdiction over Nationwide under either general jurisdiction or specific jurisdiction grounds.

## B. No operative allegations support general jurisdiction over Nationwide.

The Supreme Court has made clear that general jurisdiction over a corporate defendant exists typically only in the two places where the defendant is "at home"— the defendant's state of incorporation and the location of its principal place of business. *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1552-53 (2017) (citing *Daimler AG v. Bauman*, 134 S.Ct. 746, 760 (2014)); *see also Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011) (general jurisdiction applies when the defendant's "affiliations with the State are so 'continuous and systematic as to render them essentially at home in the forum state.'" (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). The Court cautioned that finding general jurisdiction based on a corporation's affiliations with a forum state should be limited to exceptional cases, and that such affiliations should be

appraised in the context of the "corporation's activities in their entirety, nationwide and worldwide." *See Daimler AG* at 760-62, 761 n. 19, 762 n. 20.

While HomeSource fails to specify whether it contends general jurisdiction exists, it recites in conclusory fashion that Nationwide "is engaged in the systematic and continuous conduct of business in the State of New Jersey." D.E. 164 ¶ 16. But Nationwide is incorporated in and maintains its principal place of business in North Carolina. *Id.* ¶ 10. Nationwide is not registered to conduct business in New Jersey. (Ex. A ¶ 8.) It does not own or rent property, have employees, pay taxes, or have a service agent in New Jersey. (*Id.* ¶¶ 5, 8.) Thus, Nationwide is not "at home" in New Jersey and is not subject to general jurisdiction. HomeSource's allegation to the contrary is conclusory, unfounded, and "on information and belief." *Victory Int'l*, 2008 WL 65177, at * 5, 8. Thus, HomeSource cannot meet the "very high threshold of business activity" needed to establish general jurisdiction. *See Vanz, LLC v. Mattia & Assocs.*, No. 2-13-CV-01392-SDW-SCM, 2016 WL 3148400 (D.N.J. May 17, 2016), *report and recommendation adopted,* No. 13-CV-1392-SDW-SCM, 2016 WL 3148386 (D.N.J. June 1, 2016).

### C.      No allegation, nor any evidence, supports specific jurisdiction.

Specific jurisdiction exists only when (1) the defendant has "purposefully directed" his activities at the forum; (2) the litigation arises out of or relates to those activities; and (3) the exercise of jurisdiction otherwise comports with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted). The Supreme Court requires that, to establish that a defendant has sufficient "minimum contacts" with a forum to support specific jurisdiction, "there

must be an 'affiliation between the forum and the underlying controversy, principally [an] activity or occurrence that takes place in the forum State.'" *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.,* 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear,* 564 U.S. at 919, 131 S.Ct. 2846). In other words, for personal jurisdiction to attach, the non-resident defendant's "suit-related conduct must create a *substantial* connection with the forum State." *Walden v. Fiore,* 571 U.S. 277, 284 (2014) (emphasis added).

It is HomeSource's sole burden to come forward with evidence to establish that Nationwide "purposefully directed" activities toward New Jersey, and that this case arises out of those activities. *Carteret Sav. Bank,* 954 F.2d at 146; *O'Connor,* 496 F.3d at 317. No such evidence exists, so HomeSource cannot meet its burden to show that this Court has specific jurisdiction over Nationwide for purposes of this litigation.

The personal jurisdiction analysis in intentional torts cases is further governed by the "effects test." *See IMO Indus.,* 155 F.3d 259-60 (citing *Calder v. Jones,* 465 U.S. 783 (1984)). The Third Circuit has interpreted the *Calder* effects test to require the plaintiff to show: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm caused by that tort in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity. *IMO Indus.,* 155 F.3d at 256. The *Calder* test does not, however, "expand" the limits of specific jurisdiction. *Marten v. Godwin,* 499 F.3d 290, 297 (3d Cir. 2007). The focus of the minimum contacts inquiry remains on "'the relationship among the defendant, the forum, and the litigation.'" *Walden,* 571 U.S. at 291 (quoting *Calder,*

9

465 U.S. at 788). "And **it is the defendant**, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* (emphasis added).

Here, HomeSource has no evidence to satisfy the *Calder* effects test; indeed, even its allegations fall short. HomeSource needed to "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Marten*, 499 F.3d at 297. But the activities leading to the newsletter occurred entirely outside of New Jersey and were not directed to New Jersey in any way. *See Walden*, 571 U.S. at 291 (finding no personal jurisdiction when the relevant conduct occurred outside the forum, even though it affected plaintiffs in the forum); *Remick v. Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001) (no jurisdiction over defamation claim, since there was "no indication that the [defendant's conduct] was targeted at … anyone in [the forum] other than [the plaintiff]"). As HomeSource alleges, Nationwide sent emails from its office in North Carolina to RWS in Arizona and to Gridiron in Connecticut—not New Jersey. (*Id.* ¶¶ 28–30, 33.) And merely reviewing defamatory statements made by another, such as exchanging emails about the topic, is insufficient to confer personal jurisdiction. *See 3 Lab, Inc. v. Kim*, No. CIV. 07-1056, 2007 WL 2177513, at *6 (D.N.J. July 26, 2007) (where plaintiff alleged that foreign party "caused and/or contributed to the production and/or airing of the false and defamatory statements[,] … without any allegation of activity by the Defendants in New Jersey [is not a] sufficient basis to support specific jurisdiction. Stated another way, Plaintiffs fail to plead that any of the claims asserted arise out of any contact by any of the Defendants with the state of New Jersey"). The Court thus has no basis to find specific jurisdiction over HomeSource's alleged claims against Nationwide.

HomeSource's alleged presence in New Jersey falls far short of satisfying the requirements of the *Calder* test. *See IMO Indus.*, 155 F.3d at 266 (holding that knowledge that plaintiff is located in the forum is "insufficient" satisfy the effects test); *Fantis Imports, Inc. v. Hellas Import, Ltd.*, No. 07-0544, 2008 WL 1790425, at *7 (D.N.J. Apr. 18, 2008) ("Fantis fails to recognize the distinction between conduct directed at a corporation in New Jersey, and conduct directed at a corporation, which is fortuitously located in New Jersey."). Nor is it sufficient that HomeSource allegedly suffered harm in New Jersey. *Walden*, 571 U.S. at 290 ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum."); *see Victory Int'l*, 2008 WL 65177, at *8 ("That [plaintiff] had suffered harm in New Jersey does not necessarily mean that [defendant] aimed his tortious conduct at New Jersey"); *Esab Grp. in Stevens v. Welch*, No. CIV.A. 10-3928 SDW, 2011 WL 541808, at *6 (D.N.J. Feb. 7, 2011) (holding that defendants' awareness that their allegedly tortious conduct would damage plaintiff in New Jersey were insufficient). Instead, what is dispositive is whether New Jersey was the focal point of the asserted claims against Nationwide. *See IMO Indus.*, 155 F.3d at 265-66. HomeSource's SAC only contends that, at most, Nationwide, Gridiron, and RWS allegedly targeted *HomeSource*, not New Jersey. (*See e.g.* D.E. 164 ¶ 27) ("Thereafter, Gridiron, Nationwide, and RWS all worked in concert to minimize HomeSource's market share.").

Nor do HomeSource's alleged contract and business negotiations with Nationwide establish minimum contacts, particularly since HomeSource does not allege where the negotiations occurred, what they entailed, or whether they relate to the torts at issue in this case. *Compare* (D.E. 164 ¶ 24) *with Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479-

80 (1985) (stating that a contract with an out-of-state party cannot alone automatically establish sufficient minimum contacts in the other party's forum); *Pinninti v. NRI Med. Coll. (NRIAS)*, No. CIV.A.09-5356MLC, 2010 WL 2483992, at *8 (D.N.J. June 4, 2010) ("Generally, the act of entering into a contract within a foreign jurisdiction, without more, cannot serve as a basis for asserting personal jurisdiction over a nonresident defendant."). Thus, while HomeSource alleges that it communicated about a potential agreement with Nationwide in 2017 (D.E. 164 ¶¶ 22–24), these allegations cannot confer personal jurisdiction over Nationwide for the July 2018 newsletter, particularly as HomeSource alleges no details about the supposed negotiations, or whether they related to the torts directed at HomeSource in New Jersey. Nor did HomeSource assert breach of contract claims against Nationwide. (*See* D.E. 164 Counts VIII–X.)

Finally, if HomeSource argues that Nationwide is subject to personal jurisdiction in New Jersey based on its "relationship" with RWS, this argument likewise fails. Under an agency or alter-ego theory of jurisdiction, "a court may impute the contacts of a subsidiary corporation to a foreign parent corporation for the purpose of exercising specific jurisdiction, if the subsidiary corporation is merely operating as the parent corporation's alter ego, such that the 'independence of the separate corporate entities [may be] disregarded.'" *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 423 (D.N.J. 2019) (quoting *Fisher v. Teva PFC SRL*, 212 Fed. App'x. 72, 76 (3d Cir. 2006) (stating that this imputation occurs "only if" the subsidiary is an agent or alter ego)). As a threshold, HomeSource alleges no facts establishing that RWS was the alter ego of Nationwide. Nevertheless, RWS's and Nationwide's relationship is more distant than in the typical agency/alter ego scenario because they are corporate siblings. Ex. A

¶ 12. As a result, Nationwide's "relationship" with RWS is insufficient to confer jurisdiction.

For these reasons, HomeSource cannot satisfy the *Calder* effects test to establish specific jurisdiction and its claims against Nationwide should be dismissed under Rule 12(b)(2).

### D.   Exercising personal jurisdiction over Nationwide would not comport with traditional notions of fair play and substantial justice.

Even if the Court found HomeSource met its burden of proving the elements above, the Court must then analyze whether the exercise of personal jurisdiction is reasonable. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The exercise of jurisdiction is reasonable if it does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316; *see Burger King*, 471 U.S. at 477. Courts look to five factors here: (1) the burden on the defendants; (2) the forum state's interest in adjudicating the dispute; (3) plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477; *Woodson*, 444 U.S. at 292.

Here, general and specific jurisdiction are lacking, so the Court need not consider the due process analysis. *Waste Mgmt. v. Admiral Ins. Co.*, 138 N.J. 106, 121 (1994) ("However, a court may not weigh those other factors until it has found that the defendant has experienced sufficient minimum contacts to satisfy the threshold determination.") But if it did, the balance of factors favors dismissal. The burden on Nationwide to litigate here would be great because Nationwide is based in North

Carolina and Nationwide's records, as well as the relevant corporate employees, are located far from New Jersey. Ex. A ¶ 11. It is unduly prejudicial to force Nationwide to litigate far from home in a forum of which it did not avail itself. *Sonic Supply, LLC v. Universal White Cement Co.*, No. 07-CV-04529, 2008 WL 2938051, at *3 (D.N.J. July 29, 2008). HomeSource could have filed suit against Nationwide in Nationwide's home state of North Carolina; indeed, HomeSource has previously taken advantage of that ability by subpoenaing Nationwide in this case in 2018 and litigating a motion to quash in the U.S. District Court for the Middle District of North Carolina, Case No. 1:19-mc-00006. None of the remaining factors favor the exercise of personal jurisdiction.

Because Nationwide lacks minimum contacts with New Jersey and the remaining considerations weigh against personal jurisdiction, it would offend notions of fair play and substantial justice to subject Nationwide to personal jurisdiction in New Jersey.

## II. HomeSource's allegations against Nationwide fail to state a claim and should be dismissed under Rule 12(b)(6).

### A. Legal standard.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint must contain more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," or "labels and conclusions." *Id.* at 678 (citations and quotations omitted). Rather, a plaintiff must allege "sufficient factual matter" that, taken as true, allows the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court is "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" or "a legal

conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quotation omitted).

### B. Each of HomeSource's derivative claims against Nationwide fails to state a claim because HomeSource failed to plead an underlying tort against RWS.

HomeSource alleges three causes of action against Nationwide: (1) civil conspiracy (Count VIII); (2) contributory liability for false and misleading advertising under the Lanham Act, 15 U.S.C. § 1125(a) (Count IX); and (3) vicarious liability (Count X). These claims stem wholly from its alleged Lanham Act false advertising, defamation, tortious interference, and common law and federal unfair competition claims against RWS. As discussed in RWS's Motion, each of these predicate theories fails to state a cognizable claim for relief and should be dismissed under Rule 12(b)(6). And absent an underlying tort, Nationwide cannot be contributory or vicariously liable for RWS's actions, nor can be liable as a conspirator. In the interests of brevity and judicial efficiency, Nationwide incorporates the arguments set forth in RWS's Motion, as if fully re-written here. As argued in that Motion, Counts VIII, IX, and X asserted directly against Nationwide fail to state a claim; as do Counts I–V which are asserted against Nationwide indirectly. Because HomeSource failed to state a claim against RWS, Nationwide should likewise be dismissed from this case.

HomeSource does not allege sufficient operative facts to support its conspiracy claim. New Jersey's civil conspiracy requires "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,

15

331 F.3d 406, 414 (3d Cir. 2003). But "conclusory and unsupported allegations of a conspiracy are insufficient to state a claim." *Tennile v. Quintana*, 443 F. App'x 670, 674 (3d Cir. 2011). HomeSource recites the conclusions that the parties "conspired by concerted action to commit the following torts and causes of action." D.E. 164 ¶ 148. But no operative factual allegation plausibly supports the idea that the three entities *agreed* to take *unlawful* actions against HomeSource. Only such an agreement, plausibly alleged, would support a conspiracy claim. *Morganroth & Morganroth*, 331 F.3d at 414. HomeSource failed to meet that standard.

### C.   HomeSource's contributory liability for false and misleading advertising claim (Count IX) should be dismissed for failure to state a claim.

HomeSource's allegations for contributory liability for false and misleading advertising under the Lanham Act, 15 U.S.C. § 1125(a) failed to state a claim for two reasons: (1) contributory *false advertising* claims are not recognized as a matter of law; and (2) HomeSource failed to plead a Lanham Act violation.

#### 1.   Contributory liability for false or misleading advertising is not a cognizable claim for relief.

HomeSource's contributory liability claim fails for the threshold reason that such claims do not exist. In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Supreme Court addressed the limits of who may sue for false advertising under the Lanham Act, holding that a cause of action is "limited to plaintiffs whose injuries are proximately caused by violations of the statute." 572 U.S. at 132. The Court's formulation of proximate cause requires a plaintiff to plead and prove "economic or reputational injury flowing directly from the deception wrought by

[defendant's] advertising." *Id.* at 133. Following *Lexmark*, federal courts routinely reject contributory false advertising claims on the basis that they are "inconsistent with *Lexmark's* proximate cause formulation." *Telebrands Corp. v. My Pillow, Inc.*, No. 18-CV-06318, 2019 WL 1923410, at *3 (N.D. Ill. Apr. 30, 2019) (observing that a contributory false advertising theory "has not been adopted by either the Seventh Circuit or any other circuit."); *see Acad. of Doctors of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644, 666 (E.D. Mich. 2017) (explaining that the Sixth Circuit has not recognized a claim for contributory false advertising under the Lanham Act). This Court has similarly rejected a contributory liability theory on the basis that the defendant knew of or assisted in a co-defendant's false advertising. *G&W Labs., Inc. v. Laser Pharm., LLC*, No. 3:17-CV-3974, 2018 WL 3031943, at *19 (D.N.J. June 19, 2018). Here, the contributory liability allegations are similarly deficient because they are based on mere *knowledge or assistance of* an alleged false advertising under the Lanham Act, 18 U.S.C. § 1125(a), and not *direct* advertising. Thus, HomeSource's contributory false advertising claim (Count IX) should be dismissed.

### 2. HomeSource did not plead a predicate Lanham Act violation.

Even if this court recognized such a claim, HomeSource failed to sufficiently plead a Lanham Act claim, as discussed more fully in RWS's Motion. And HomeSource failed to sufficiently allege that Nationwide had the necessary state of mind to be liable for false advertising. Even in the Eleventh Circuit, the only circuit where such a legal theory is recognized, would require HomeSource to plead facts plausibly showing that Nationwide "intended to participate in" or "actually knew about" the false advertising, *and that* Nationwide "actively and materially furthered the unlawful conduct—either by

inducing it, causing it, or in some other way working to bring it about." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015).

HomeSource's allegations that Nationwide "induced" and "signed off on" the newsletters are conclusory and insufficient to show that Nationwide intentionally furthered unlawful conduct, particularly since HomeSource's factual allegations claim only that Nationwide exchanged emails regarding the "wording" of the newsletters. (D.E. 164 ¶ 153.) Moreover, HomeSource's operative allegation is that Nationwide exchanged emails on the wording of the newsletters, not that it advanced statements for RWS to communicate while knowing those statements were false. (*Id.* ¶ 30.) And while HomeSource claimed that Nationwide knew the newsletters would "misrepresent the nature, characteristics, and qualities of HomeSource's goods and services" and that Nationwide knew they contained "false and misleading representations" [*id.* ¶¶ 154, 156], these allegations are conclusory references to the elements of a claim and should be disregarded, *Iqbal*, 556 U.S. at 679 ("Threadbare recitals of the elements of a case of action, supported by mere conclusory statements, do not suffice."). Without facts that Nationwide intended to participate in or knew about the alleged false advertising, HomeSource cannot state a contributory false advertising claim.

### D. Each of HomeSource's vicarious liability claims should be dismissed for failure to state a claim.

HomeSource's theorizes that Nationwide is vicariously liable for RWS's activities, but fails to plead facts sufficient to hold Nationwide liable.[8] It is well-settled that "mere

---

[8] Again, Nationwide is not RWS's parent; rather, both Nationwide and RWS are subsidiaries of Local Retail Solutions, LLC. Even so, HomeSource's allegations are insufficient even if Nationwide were RWS's parent.

ownership of a subsidiary does not justify the imposition of liability on the parent." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001). Instead, HomeSource must prove that RWS was Nationwide's agent, or prove facts sufficient to pierce the corporate veil. *See Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 508 (D.N.J. 2009). HomeSource does not allege facts to satisfy either requirement.

### 1.    No allegation establishes agency.

HomeSource does not allege sufficient facts to plausibly establish that RWS acted as Nationwide's agent. Under an agency theory, "the issue of liability rests on the amount of control the parent corporation exercises over the actions of the subsidiary. The parent corporation will be held liable for the activities of the subsidiary only if the parent dominates those activities." *Ramirez*, 644 F. Supp. 2d at 508. On this question, courts look at "whether the subsidiary was grossly undercapitalized, the day-to-day involvement of the parent's directors, officers and personnel, and whether the subsidiary fails to observe corporate formalities, pays no dividends, is insolvent, lacks corporate records, or is merely a facade." *Canter v. Lakewood of Voorhees*, 420 N.J. Super. 508, 519 (App. Div. 2011) (internal quotes omitted). In *Wrist Worldwide Trading GMBH v. MV Auto Banner*, for example, the court dismissed agency claims when the plaintiff failed to assert facts showing the parent company exercised "control or dominion" over its subsidiary. No. CIV.A. 10-2326, 2011 WL 5414307, at *6 (D.N.J. Nov. 4, 2011). Similarly, in *Slack v. Suburban Propane Partners, L.P.*, No. 10-2548, 2010 WL 5392845, at *14 (D.N.J. Dec. 22, 2010), the court held that the plaintiff failed to plead agency when it relied on a "conclusory allegation" that a parent company "approved, authorized, enabled and/or ratified" its subsidiary's purportedly illegal conduct.

19

Here, HomeSource's vicarious liability allegations are conclusory and fail to meet Rule 8(a)(2)'s plausibility standard. No allegations establish Nationwide's exercise of control over RWS; HomeSource does not allege Nationwide owned RWS, that it controlled RWS's operations, or that RWS acted on Nationwide's behalf. Nor does HomeSource allege that Nationwide or RWS were grossly undercapitalized; failed to observe corporate formalities, paid no dividends, were insolvent, lacked corporate records, or were merely facades. *See Canter v. Lakewood of Voorhees*, 420 N.J. Super. At 519. Instead, HomeSource recites formulaically that Nationwide "exercised control over RWS," "directed it" to send the newsletter, and that Nationwide had apparent or actual authority to control RWS due to "the ownership interests within their corporate family." D.E. 164 ¶¶ 164, 165. Such conclusory allegations cannot establish agency.

### 2. HomeSource's vicarious liability claim fails because it failed to plead facts supporting a piercing of the corporate veil.

HomeSource failed to state a vicarious liability claim because it did not allege facts supporting veil-piercing. To "pierce the corporate veil" and hold a shareholder personally liable for a corporation's liabilities, two conditions must be met: first, "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," and second, "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *State Capital Title & *180 Abstract Co. v. Pappas Bus. Servs.*, 646 F.Supp.2d 668, 679 (D.N.J. 2009) (internal quotation marks omitted). In other words, the corporation must be the "alter ego" of the shareholder, such that the corporate form is effectively a legal fiction, and enforcing that legal fiction must result in some fundamental unfairness. *Verni ex rel.*

*Burstein v. Harry M. Stevens, Inc.*, 387 N.J. Super. 160, 199 (App. Div. 2006). The party seeking to pierce the veil bears the weighty burden of proving that those circumstances are present. *Richard A. Pulaski Const. Co. v. Air Frame Hangars, Inc.*, 195 N.J. 457, 472–73 (2008); *see also N. Am. Steel Connection, Inc. v. Watson Metal Prod. Corp.*, 515 F. App'x 176, 180 (3d Cir. 2013).

The Third Circuit's alter ego test analyzes the following: gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484–85 (3d Cir. 2001).

HomeSource alleges none of the factors required to pierce the corporate veil under the Third Circuit's test.[9] Nowhere does HomeSource allege that Nationwide or RWS was undercapitalized, funds were siphoned from one company to the other, directors or officers were nonfunctioning, corporate records were missing, or that one company was a facade for the other. While HomeSource alleges that Nationwide "exercised control over RWS" and had "actual or apparent authority" over it (D.E. 164 ¶¶ 164-165.), these conclusory allegations cannot satisfy any of the elements of the Third Circuit's alter ego test, even if Nationwide were RWS's parent. As a result, HomeSource's vicarious liability claim fails for this independent reason.

---

[9] Again, the connection between Nationwide and RWS is further removed than the typical parent-subsidiary veil-piercing scenario because they are sister companies. HomeSource's alleged veil-piercing is unfounded for the threshold reason that neither Nationwide nor RWS has an ownership stake in the other.

## CONCLUSION

For all these reasons, Nationwide respectfully requests that the Court grant its motion to dismiss Plaintiff The HomeSource, Corp.'s Second Amended Complaint for lack of personal jurisdiction. Additionally, as each of HomeSource's substantive allegations fails to state a claim upon which relief can be granted, all claims against Nationwide should be dismissed under Rule 12(b)(6).

Dated: June 15, 2020

Respectfully submitted,

*/s/ Ethan Hougah*
Louis R. Moffa
Alexandra S. Jacobs
Ethan Hougah
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
457 Haddonfield Road, Suite 600
Cherry Hill, New Jersey 08002
(856) 488-7700

Adam Wolek (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601
Tel.: (312) 836-4063
Fax: (312) 966-8598
awolek@taftlaw.com

William C. Wagner (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Tel.: (317) 713-3500
Fax: (317) 713-3699
wwagner@taftlaw.com

*Counsel for Defendant Retailer Web Services II, LLC; Retailer Web Services, LLC; Nationwide Marketing Group, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2020, a true and correct copy of the foregoing was served via the Court's electronic filing system upon the following counsel for the Plaintiff:

FLASTER/GREENBERG P.C.
Kenneth S. Goodkind, Esq.
Eric R. Clendening, Esq.
1810 Chapel Avenue West
Cherry Hill, NJ 08002
Tel.: (856) 661-1900
Fax: (856) 661-1919

*Counsel for Plaintiff The HomeSource, Corp.*

/s/ *Ethan Hougah*
Louis R. Moffa
Alexandra S. Jacobs
Ethan Hougah

*One of the attorneys for Defendant Nationwide Marketing Group, LLC*

24