Cassandra B. Roth
Patrick S. Doherty (*pro hac vice* pending)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY  10036
T: (212) 596-9000
F: (212) 596-9090
Cassandra.Roth@ropesgray.com
Patrick.Doherty@ropesgray.com

Daniel V. McCaughey (*pro hac vice* pending)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
T: (617) 951-7000
F: (617) 951-7050
Daniel.McCaughey@ropesgray.com

Timothy R. Farrell (*pro hac vice* pending)
**ROPES & GRAY LLP**
191 N. Wacker Dr., 32nd Floor
Chicago, IL 60606
T: (312) 845-1200
F: (312) 845-5522
Timothy.Farrell@ropesgray.com

*Attorneys for Defendant Gridiron Capital, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE HOMESOURCE, CORP. | ) |
| Plaintiff, | ) |
| | ) Case No. 1:18-cv-11970 |
| v. | ) |
| | ) Hon. Eduardo C. Robreno (EDPA) |
| RETAILER WEB SERVICES, LLC, | ) |
| RETAILER WEB SERVICES II, LLC, | ) **Oral Argument Requested** |
| NATIONWIDE MARKETING GROUP, | ) |
| LLC, GRIDIRON CAPITAL, LLC, and | ) Motion Day: July 20, 2020 |
| JOHN DOES, | ) |
| Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT GRIDIRON CAPITAL, LLC'S MOTION TO DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

FACTS ..................................................................................................................2

ARGUMENT.........................................................................................................5

I.     THE COURT SHOULD GRANT GRIDIRON'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION. .................................................................5

        A.  The Court Lacks General Jurisdiction Over Gridiron.............................................5

        B.  The Court Lacks Specific Jurisdiction Over Gridiron. .........................................7

II.    THE COURT SHOULD GRANT GRIDIRON'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.....................................................................9

        A.  Plaintiff's Purported Claim for Contributory Liability for False and Misleading Advertising Under the Lanham Act Does Not Exist At Law................................9

        B.  Plaintiff Fails to State a Claim for Civil Conspiracy Against Gridiron. ...............10

        C.  Plaintiff Fails to State Any Claims for Vicarious Liability................................12

             1.  Plaintiff Fails to Adequately Plead Any Agency .....................................13

             2.  Plaintiff Has Not Pled Facts to Support Piercing the Corporate Veil .......14

        D.  Plaintiffs Fails to State Any of Its Underlying Claims Against RWS. ................15

             1.  Plaintiff Has Not Pled An Underlying Lanham Act Violation Against RWS........................................................................................................16

             2.  Plaintiff Fails to State a Claim for Defamation.......................................21

             3.  Plaintiff Fails to State Any Claims for Tortious Interference...................21

             4.  Plaintiff Fails to State a Claim for Unfair Competition...........................24

CONCLUSION......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acad. of Drs. of Audiology v. Int'l Hearing Soc.*,
   237 F. Supp. 3d. 644 (E.D. Mich. 2017) ...............................................................................9

*Adv. Oral Techs., L.L.C. v. Nutrex Research, Inc.*,
   2011 WL 1080204 (D.N.J. Mar. 21, 2011) ..........................................................................23

*Altana Pharma AG v. Teva Pharm. USA, Inc.*,
   2012 WL 12906148 (D.N.J. Dec. 20, 2012)..........................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 9, 22, 23

*Bd. of Dirs. Of Sapphire Bay Condominiums West v. Simpson*,
   641 F. App'x 113 (3d. Cir. 2015).........................................................................................24

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*,
   137 S. Ct. 1773 (2017) .............................................................................................................5

*Cambridge Pavers, Inc. v. EP Henry Corp.*,
   407 F. Supp. 3d 503 (D.N.J. Sept. 10, 2019)........................................................................24

*Cannella v. Brennan*,
   2014 WL 3855331 (E.D. Pa. Aug. 6, 2014) .........................................................................19

*Cargill Glob. Trad. v. Applied Dev. Co.*,
   706 F. Supp. 2d 563 (D.N.J. 2010)  ............................................................................. 22, 23

*Carrier v. Bank of America, N.A.*,
   2014 WL 356219 (D.N.J. Jan. 31, 2014)..............................................................................10

*Collier v. CSX Transp., Inc.*,
   2016 WL 9185133 (E.D. Pa. Mar. 23, 2016)........................................................................16

*Creditors Relief LLC v. United Debt Settle. LLC*,
   2019 WL 7288978 (D.N.J. Dec. 30, 2019)...........................................................................21

*Croat v. Mission Fine Wines, Inc.*,
   2020 WL 1921955 (D.N.J. Apr. 21, 2020)..................................................................... 4, 5, 6

*Curtiss-Wright Corp. v. CNA Fin. Corp.*,
   2012 WL 1044493 (D.N.J. Jan. 26, 2012).............................................................................12

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ......................................................................................................5

*Desrivieres v. United States*,
   2013 WL 3285235 (D.N.J. June 27, 2013)..................................................................15

*Diversified Indus., Inc. v. Vinyl Trends, Inc.*,
   2014 WL 1767471 (D.N.J. May 1, 2014)....................................................................24

*Diversified Indus., Inc. v. Vinyl Trends, Inc.*,
   2014 WL 4199059 (D.N.J. Aug. 22, 2014) .................................................................23

*Edelman v. Croonquist*,
   2010 WL 1816180 (D.N.J. May 4, 2010)....................................................................21

*English Sports Betting, Inc. v. Tostigan*,
   2002 WL 461592 (E.D. Pa. Mar. 15, 2002) .................................................................8

*EP Henry Corp. v. Cambridge Pavers, Inc.*,
   383 F. Supp. 3d 343 (D.N.J. 2019) ............................................................................19

*Brown ex rel. Estate of Brown v. Philip Morris, Inc.*,
   228 F. Supp. 2d 506 (D.N.J. 2002) ............................................................................12

*Fatouros v. Lambrakis*,
   627 F. App'x. 84 (3d Cir. 2015) ...................................................................................5

*G.D. v. Kenny*,
   205 N.J. 275 (2011)....................................................................................................21

*Graco Inc. v. PMC Global, Inc.*,
   2012 WL 762448 (D.N.J. Feb. 15, 2012) ...................................................................23

*Griggs v. Swift Trans. Co., Inc.*,
   2018 WL 3966304 (D.N.J. Aug. 17, 2018) ...................................................................5

*Groden v. Random House, Inc.*,
   61 F.3d 1045 (2d Cir. 1995) .......................................................................................19

*Grupo Rayco C.A. v. Delta Air Lines, Inc.*,
   2020 WL 2189994 (D.N.J. May 6, 2020)......................................................................5

*Hassell v. Budd Co.*,
   2014 WL 3955061 (E.D. Pa. Feb. 27, 2014) ...............................................................9

*Hill v. Com. Bancorp, Inc.*,
   2011 WL 13146435 (D.N.J. Feb. 28, 2011) ...............................................................21

*Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*,
   659 A.2d 904 (N.J. App. Div. 1995) ............................................................................ 11, 22

*IMO Indus., Inc. v. Kiekert AG*,
   155 F.3d 254 (3d Cir. 1998) .......................................................................................... 7

*Intellect Design Arena, Inc. v. DataCubes Inc.*,
   2020 WL 2832568 (D.N.J. June 1, 2020) ....................................................................... 7, 8

*Interlink Prods. Int'l, Inc. v. F&W Trad. LLC*,
   2016 WL 1260713 (D.N.J. Mar. 31, 2016) .................................................................. 19, 20

*Koger, Inc. v. Klco*,
   2009 WL 905061 (D.N.J. Mar. 9, 2009) ..................................................................... 23

*Levy v. Jaguar Land Rover N.A., LLC.*,
   2020 WL 563637 (D.N.J. Feb. 4, 2020) .......................................................................... 5

*Linus Holding Corp. v. Mark Line Indus., LLC*,
   376 F. Supp. 3d 417 (D.N.J. 2019) .............................................................................. 14

*Luttmann v. Tiffany & Co.*,
   2009 WL 197520 (D.N.J. Jan. 26, 2009) ..................................................................... 22

*Marino v. Westfield Bd. of Ed.*,
   2017 WL 216691 (D.N.J. Jan. 18, 2017) ..................................................................... 20

*Marrakush Soc. v. N.J. St. Police*,
   2009 WL 2366132 (D.N.J. July 30, 2009) .................................................................. 17

*Marrin v. Cap. Health Sys., Inc.*,
   2015 WL 404783 (D.N.J. Jan. 29, 2015) ..................................................................... 12

*Marten v. Godwin*,
   499 F.3d 290 (3d Cir. 2007) ...................................................................................... 6, 7

*McKay v. Longman*,
   332 Conn. 394 (2019) .................................................................................................. 14

*Mendez v. Law Offices of Cohen & Slamowitz, LLP*,
   2011 WL 5828573 (D.N.J. Nov. 18, 2011) ................................................................... 6

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
   331 F.3d 406 (3d Cir. 2003) ...................................................................................... 10

*Murashko v. Hammer*,
   2018 WL 1022575 (D.N.J. Feb. 22, 2018) ................................................................. 18

*Neuss v. Rubi Rose, LLC*,
   2017 WL 2367056 (D.N.J. May 31, 2017) .............................................................. 12, 14, 15

*Prince v. Aiellos*,
   2010 WL 4025846 (D.N.J. Oct. 12, 2010) ...........................................................................11

*Purple Innovations, LLC v. Honest Reviews, LLC*,
   2017 WL 3172810 (D. Utah July 25, 2017) ........................................................................10

*Ramirez v. STi Prepaid LLC*,
   644 F. Supp. 2d 496 (D.N.J. 2009) .....................................................................................13

*Slack v. Suburban Propane Partners, L.P.*,
   2010 WL 5392845 (D.N.J. Dec. 22, 2010).........................................................................13

*Sprint Nextel Corp. v. iPCS, Inc.*,
   2008 WL 2737409 (Del. Ch. July 14, 2008) .......................................................................14

*Swift v. Pandey*,
   2014 WL 1745040 (D.N.J. Apr. 30, 2014)..........................................................................11

*TBI Unlimited, LLC v. Clearcut Lawn Decisions, LLC*,
   2013 WL 1223643 (D.N.J. Mar. 25, 2013) .........................................................................13

*Telebrands Corp. v. My Pillow, Inc.*,
   2019 WL 1923410 (N.D. Ill. Apr. 30, 2019) .........................................................................9

*Tennile v. Quintana*,
   443 F. App'x 670 (3d Cir. 2011) .......................................................................................10

*The Kinesis Grp., LLC v. Troy*,
   2013 WL 5793446 (D.N.J. Oct. 25, 2013) ..........................................................................11

*Trustees of Village of Arden v. Unity Const. Co.*,
   2000 WL 130627 (Del. Ch. Jan. 26, 2000)..........................................................................14

*Woloshin v. N.J. Trans. Bus Ops.*,
   2016 WL 5660427 (D.N.J. Nov. 3, 2014) ...........................................................................20

*Wrist Worldwide Trading GMBH v. MV Auto Banner*,
   2011 WL 5414307 (D.N.J. Nov. 4, 2011) ...........................................................................13

## PRELIMINARY STATEMENT

In 2018, Retailer Web Services, LLC (together with its affiliate, Retailer Web Services II, LLC, "RWS") circulated emails to its existing and prospective customers in which it answered customers' questions about its competitor, The HomeSource, Corp. ("HomeSource" or "Plaintiff"), and the White family, which controls HomeSource and other businesses. Apparently embarrassed by the emails' accurate descriptions of public litigation records, Plaintiff is now attempting to shift attention to RWS by filing this litigation and willfully misconstruing a handful of RWS's statements as somehow false and defamatory. However, as addressed below, and in more detail in Defendant RWS's motion to dismiss,[1] Plaintiff's Second Amended Complaint ("Complaint"), ECF No. 164, is comprised of nothing but conclusory and scattershot allegations, none of which make out a valid claim against RWS.

In addition to suing RWS to silence it as a competitor, Plaintiff has since amended its complaint in an attempt to entangle Defendant Gridiron Capital, LLC ("Gridiron") in the dispute, based on its assertion that RWS and Gridiron (as well as Defendant Nationwide Marketing Services, LLC ("Nationwide")) are "related companies." That nebulous term is presumably a reference to Gridiron's and Nationwide's alleged investment in RWS in February 2018. Of course, an investor does not become liable for claims against a limited liability entity as a matter of fundamental corporate law, and Plaintiff's other attempts to rope Gridiron into this lawsuit based on RWS's alleged conduct are even more flawed than its defective underlying claims against RWS.

As a threshold matter, Plaintiff fails to plead any facts sufficient to establish personal jurisdiction over Gridiron in New Jersey. Gridiron is organized under Delaware law and based in

---

[1] Whereas Gridiron's original date to file its answer or motion to dismiss was set for June 12, 2020 based upon the timing of its waiver of service, the parties agreed to extend that filing date to June 15, 2020, such that all responses to the Complaint would be filed on the same date.

Connecticut, and the Complaint fails to allege any conduct by Gridiron that occurred in or was directed toward New Jersey.

Further, Plaintiffs' add-on claims against Gridiron are purely dependent on its underlying claim against RWS. Apart from failing to allege facts sufficient to support those underlying claims, Plaintiff also fails to plead any basis for secondary liability against Gridiron. For instance, Plaintiff's claim for "contributory liability" under the Lanham Act does not even exist as a matter of law. And its "conspiracy" claim against Gridiron, through which Plaintiff seeks to hold Gridiron liable for various tort claims asserted against RWS, fails to allege requisite facts showing any agreement or meeting of the minds among the alleged conspirators. Plaintiff's "alternative" vicariously liability claims—which themselves confirm that not even Plaintiff believes its own conspiracy allegations—are likewise unsupported by any allegation that Gridiron controlled RWS or ignored RWS's corporate form, and necessarily fail as well.

Gridiron therefore respectfully requests that this Court grant its Motion to Dismiss.

## FACTS

On July 20, 2018, RWS emailed a newsletter to its existing and prospective customers. Compl. Ex. A (the "July 20 Newsletter," or the "Newsletter").[2] The July 20 Newsletter stated in part:

> Public trials are part of the public record; anyone can view the official documents and transcripts of the lawsuits a company and their officers have been involved in. The White family, owners of HomeSource and similar other businesses, appear to have a history of their business relationships ending in lawsuits against them.

---

[2] Plaintiff also references and attaches to the Complaint a newsletter sent on July 17, 2018 (Compl. Ex. B, the "July 17 Newsletter"), which Plaintiff incorrectly describes as having been sent "[o]n or about July 16, 2018." *See* Compl. ¶ 31. While Plaintiff alleges that RWS made an untrue statement about itself in the July 17 Newsletter, Compl. ¶¶ 31-32, the July 17 Newsletter and its contents are not referenced again elsewhere in the Complaint.

> They were found guilty of making **negligent misrepresentations about the capabilities of their software in a federal lawsuit** (Civil Action No. 3:12-CV-0090).   In a unanimous decision, the jury awarded their customer – Furniture Distributors Inc, a chain of furniture stores – $450,000.   The judge later deemed the counter-claims they alleged along the way "totally meritless" and ordered them to pay Furniture Distributors Inc. fifty thousand dollars to reimburse attorney fees in addition to the four hundred fifty thousand dollars already awarded them at trial.

*Id.* at 5 (emphasis in original).   The Newsletter went on to quote directly and at length from a decision from Judge Graham C. Mullen in that case, and then stated:

> Despite the ruling, **Furniture Distributors Inc sued Homesource again when Homesource failed to make any of the payments ordered** (Case 3:15-CV-00313).   In this federal lawsuit, their former customer alleged the White family **fraudulently transferred assets** to prevent having to pay the judgement and **engaged in unfair and deceptive trade practices**.
>
> Their 2nd suit against the Whites cited **yet another federal lawsuit Homesource was involved in** at the time (Case 3:15-CV-00122). This suit was filed by Martin Salas, a consultant Homesource hired after the previous judgement to sell their products and assist in the transferring of assets, when he alleges Homesource failed to pay his outstanding compensation of $10,000/month and document the ownership stake he was promised in the White family entities.   You can read his account in Exhibit B.

*Id.* at 6 (emphasis in original).   RWS provided hyperlinks to original litigation documents, and even included a screenshot from a portion of a deposition in one of the cases.   *Id.* at 5-7.

The Newsletter also remarked on HomeSource's service offerings, including statements that "HomeSource websites display[ed] product images with a Plessers.com watermark," and that RWS had "unearthed a possible major security concern with HomeSource sites."   *Id.* at 4-5.   These statements were accompanied by several hyperlinks to a video created by RWS, permitting readers "learn more" about this information.   *Id.* at 5.

-3-

Three days after the July 20 Newsletter was sent out, Plaintiff sued RWS, bringing claims for false and misleading advertising under the Lanham Act, defamation, tortious interference with prospective economic advantage, tortious interference with contract, and common law and federal unfair competition.  ECF No. 1.  Nearly two years later, on April 1, 2020, Plaintiff filed a Second Amended Complaint in which it named Gridiron as an additional defendant.  ECF No. 164.  In it, Plaintiff asserted claims against Gridiron for contributory liability for false and misleading advertising under the Lanham Act; civil conspiracy to commit false and misleading advertising under the Lanham Act, defamation, tortious interference with prospective economic advantage, tortious interference with contract, and common law and federal unfair competition; and, in the alternative, vicarious liability for defamation, tortious interference with prospective economic advantage, tortious interference with contract, and common law and federal unfair competition. *See generally* Compl.

Plaintiff's contributory liability and conspiracy claims with respect to Gridiron fundamentally turn on the conclusory allegation that "RWS, Nationwide, and Gridiron conspired to begin a smear campaign against HomeSource[.]"  *Id.* ¶ 28.  Specifically, Plaintiff alleges that Gridiron held strategy meetings and exchanged emails regarding the Newsletter, and that Gridiron ultimately approved its dissemination.  *Id.* ¶¶ 29-30.  Plaintiff's vicarious liability claims are based on Gridiron's alleged exercise of control over RWS during the relevant time period.  *Id.* ¶¶ 163-65.  These sparse allegations constitute the extent of Gridiron's purported involvement in this matter.

## ARGUMENT

I.     **THE COURT SHOULD GRANT GRIDIRON'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.**

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Croat v. Mission Fine Wines, Inc.*, 2020 WL 1921955, at *2 (D.N.J. Apr. 21, 2020) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004)).  Since "[t]he New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process," the "central inquiry is whether Defendant has 'certain minimum contacts with . . . [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Croat*, 2020 WL 1921955, at *2 (alterations in original) (first quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)); then quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Upon a motion to dismiss, the plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x. 84, 86-87 (3d Cir. 2015). The Supreme Court has "recognized two types of personal jurisdiction:  general and specific." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1779-80 (2017).  Here, Plaintiff has not pled facts showing Gridiron is subject to either in New Jersey, and the Complaint should be dismissed accordingly.

A.     **The Court Lacks General Jurisdiction Over Gridiron.**

"General jurisdiction applies where the defendant's 'affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state.'" *Grupo Rayco C.A. v. Delta Air Lines, Inc.*, 2020 WL 2189994, at *2 (D.N.J. May 6, 2020) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  For a corporation, its "place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Levy v. Jaguar Land Rover N.A., LLC.*, 2020 WL 563637, at *5 (D.N.J. Feb. 4,

2020) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)).  "Courts have applied the *Daimler* rules to limited liability companies with equal force."  *Griggs v. Swift Trans. Co., Inc.*, 2018 WL 3966304, at *2, *2 n.26 (D.N.J. Aug. 17, 2018) (listing cases and noting that "[a]lthough the language of *Daimler* speaks only in terms of corporations, the subsidiary at issue in *Daimler* was…an LLC, [and] the Court looked to [its] place of incorporation and principal place of business to determine whether it was essentially at home in [the forum state] and thus subject to general jurisdiction in the [s]tate").

As Plaintiff concedes in its Complaint, Gridiron is neither incorporated in New Jersey nor does it maintain its principal place of business there.  *See* Compl. ¶ 11.  Instead, Plaintiff makes a single, cursory allegation that "Gridiron is engaged in the systematic and continuous conduct of business in the State of New Jersey."  *See* Compl. ¶ 17.  However, such a conclusory allegation is insufficient to demonstrate general jurisdiction.  *See, e.g.*, *Mendez v. Law Offices of Cohen & Slamowitz, LLP*, 2011 WL 5828573, at *2 (D.N.J. Nov. 18, 2011).  Because Plaintiff fails to allege any incidents of Gridiron's systematic and continuous conduct of business in New Jersey— whether in maintaining offices in New Jersey, owning, leasing, or operating property in New Jersey, regularly conducting or transacting business in New Jersey, or otherwise—general jurisdiction is "clearly lacking."  *Croat*, 2020 WL 1921955, at *3.[3]

---

[3] Plaintiff has not pled facts sufficient to establish personal jurisdiction over Gridiron because it *cannot* do so.  Gridiron is a Delaware corporation; has its principal place of business in Connecticut; is not registered in New Jersey; does not maintain a registered agent for service of process in New Jersey; and does not maintain corporate offices, own or lease any property, or maintain any bank accounts in New Jersey.  *See* Ex. A (Declaration of Owen Tharrington In Support of Gridiron Capital, LLC's Motion to Dismiss For Lack of Personal Jurisdiction), filed herewith.

B.     **The Court Lacks Specific Jurisdiction Over Gridiron.**

A district court may exercise specific jurisdiction when a defendant has "purposefully directed his activities at the forum;" "the plaintiff's claim . . . arise[s] out of or relate[s] to at least one of those specific activities;" *and* "the assertion of jurisdiction otherwise comports with fair play and substantial justice." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).  In the case of an intentional tort, Plaintiff must sufficiently allege that "the defendant committed an intentional tort;" "[t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff;" *and* the defendant "expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." *IMO Indus.*, 155 F.3d at 265–66.  Critically, both standards require more than just a foreseeability of harm in the forum; rather, a defendant must have "intentionally targeted" the forum such that it "should reasonably anticipate being haled into court" there.  *Marten*, 499 F.3d at 297-98 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Here, Plaintiff pleads no facts establishing that Gridiron intentionally targeted New Jersey in any way.  Instead, Plaintiff asserts in purely conclusory terms that "Gridiron expressly aimed tortious conduct at HomeSource, a New Jersey corporation, such that the defendant could reasonably anticipate being haled into district court in New Jersey[.]"  *See* Compl. ¶ 17.  Even assuming that Gridiron knew that Plaintiff was located in New Jersey—which Plaintiff does not allege—this allegation alone would be insufficient to confer specific jurisdiction:  "**knowledge that the plaintiff is located in the forum . . . is insufficient to satisfy the targeting prong of the effects test**." *IMO Indus., Inc.*, 155 F.3d at 266 (emphasis added); *see also Intellect Design Arena, Inc. v. DataCubes Inc.*, 2020 WL 2832568, at *5 (D.N.J. June 1, 2020) (granting motion to dismiss for failure to establish specific jurisdiction, holding that, "Targeting Plaintiff, which is located in New Jersey, is not the same as targeting New Jersey.").

In cases involving allegedly defamatory or otherwise tortious communications, the Third Circuit and courts in this district have repeatedly focused on the state where the communications in question were sent and received for purposes of personal jurisdiction—not the domicile of the defendant.  For example, in *Remick v. Manfredy*, the Third Circuit expressly held that a district court lacked personal jurisdiction over claims related to allegedly defamatory letters distributed through plaintiff's professional community because, as is the case here, the plaintiff had not adequately pled that recipients had any "unique relationship" with the forum such that the alleged tort was targeted at said forum.  238 F. 3d 248, 259 (3d Cir. 2001) (upholding dismissal for lack of personal jurisdiction).  That forecloses personal jurisdiction over Gridiron in this case, because Plaintiff has not alleged that even a single recipient of the allegedly tortious communications received them in New Jersey, let alone that these recipients had any "unique relationship" with New Jersey such that New Jersey was the "focal point" of any alleged tort.

As recently as two weeks ago, a court in this district relied on *Remick* while dismissing claims almost identical to Plaintiff's for lack of personal jurisdiction.  In *Intellect Design*, the plaintiff sued defendants for false advertising under the Lanham Act, defamation, and common law unfair competition after the defendants allegedly sent the plaintiff's customers a message on LinkedIn containing allegedly false statements about the plaintiff.  2020 WL 2832568, at *1.  The court dismissed all claims, because "even assuming that Defendants directed the alleged attack at Plaintiff's clients across the country, and some of these clients are located in New Jersey[,] such allegations are insufficient to confer specific jurisdiction on Defendants, because they fail to show that Defendants *expressly aimed* their conduct at New Jersey."  *Id.* at *5.  As in *Intellect Design*, Plaintiff here has not "point[ed] to specific activity indicating that [Gridiron] expressly aimed [its allegedly] tortious conduct at New Jersey."  *Id.* (quoting *Remick*, 238 F.3d at 258).  Instead, the

"recipient audience" of Gridiron's alleged conduct "is not linked by geography but by a common interest," which is insufficient to establish personal jurisdiction over Gridiron.  *English Sports Betting, Inc. v. Tostigan,* 2002 WL 461592, *3-4 (E.D. Pa. Mar. 15, 2002) (granting motion to dismiss defamation claim related to purportedly defamatory articles posted online).

Against the backdrop of this controlling Third Circuit authority, Plaintiff has not pled in any way how Gridiron "expressly aimed" its alleged conduct at New Jersey, and Plaintiff's claims against Gridiron accordingly should be dismissed for lack of personal jurisdiction.

## II.    THE COURT SHOULD GRANT GRIDIRON'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM.

"To survive a 12(b)(6) motion to dismiss, 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact).'" *Hassell v. Budd Co.*, 2014 WL 3955061, at *1 n.1 (E.D. Pa. Feb. 27, 2014) (Robreno, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "The Court of Appeals for the Third Circuit has made clear that after *Ashcroft v. Iqbal*, 556 U.S. 662, 688 (2009), 'conclusory or bare-bones allegations will no longer survive a motion to dismiss:  threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible.'" *Hassel*, 2014 WL 3955061, at *1 n.1 (Robreno, J.) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d. Cir. 2009)).

## A.    Plaintiff's Purported Claim for Contributory Liability for False and Misleading Advertising Under the Lanham Act Does Not Exist At Law.

In *Lexmark International, Inc. v. Static Control Components, Inc.*, the U.S. Supreme Court held that a plaintiff suing for false or misleading advertising under § 1125(a) of the Lanham Act "must show economic or reputational injury *flowing directly from the deception wrought by the defendant's advertising*."  572 U.S. 118, 133 (2014) (emphasis added).  Based on that ruling, courts

throughout the country have repeatedly rejected contributory false advertising claims as inconsistent with *Lexmark*'s proximate cause formulation, since a plaintiff's injury by definition cannot flow directly from the actions of a contributory defendant. *See, e.g.*, *Telebrands Corp. v. My Pillow, Inc.*, 2019 WL 1923410, at *3 (N.D. Ill. Apr. 30, 2019) (finding that the Lanham Act does not provide for a contributory false advertising claim since such a claim would be inconsistent with the Supreme Court's proximate cause formulation in *Lexmark*); *Acad. of Drs. of Audiology v. Int'l Hearing Soc.*, 237 F. Supp. 3d 644, 666 (E.D. Mich. 2017) (noting that the Sixth Circuit has not recognized a contributory false advertising claim brought under the Lanham Act and thus finding such a claim fails as a matter of law); *Purple Innovations, LLC v. Honest Reviews, LLC*, 2017 WL 3172810, at *10 (D. Utah July 25, 2017) (declining to extend Lanham Act to allow a claim for contributory false advertising and noting no case law in the jurisdiction provides for such a claim). Neither the Third Circuit nor any district court within it has ever recognized a claim for contributory liability for false or misleading advertising. Plaintiff's cause of action should therefore be dismissed as a matter of law.

**B.**     **Plaintiff Fails to State a Claim for Civil Conspiracy Against Gridiron.**

Civil conspiracy under New Jersey law requires "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003). "[C]onclusory and unsupported allegations of a conspiracy are insufficient to state a claim." *Tennile v. Quintana*, 443 F. App'x 670, 673 (3d Cir. 2011).

Yet here, Plaintiff "only assert[s] bare allegations and legal conclusions unsubstantiated by facts in support of the alleged 'agreement' or 'common design'"—such allegations cannot survive a motion to dismiss. *Carrier v. Bank of America, N.A.*, 2014 WL 356219, at *9 (D.N.J. Jan. 31,

2014) (granting 12(b)(6) motion to dismiss civil conspiracy claim). The Complaint merely alleges that Gridiron "agreed" and "conspired" to "begin a smear campaign" with RWS and Nationwide, providing no facts supporting these conclusory allegations nor any context as to what Gridiron allegedly agreed or in what manner it did so. Compl. ¶¶ 28, 143. Plaintiff's only other allegation even arguably relevant to conspiracy is that the Defendants "exchanged [unspecified] e-mail communications to coordinate" publication of the Newsletters, yet it provides nothing to connect such emails—or Gridiron—to the allegedly false statements in the Newsletters or any broader conspiracy. Compl. ¶¶ 143-44; 147-48.[4]

Such conclusory allegations come nowhere close to stating a plausible claim for civil conspiracy, and courts in this district have routinely dismissed fact-poor conspiracy claims like Plaintiff's here. For instance, Plaintiff's Complaint "contains no factual allegations to support an *agreement* between the parties." *See Swift v. Pandey*, 2014 WL 1745040, at *10-11 (D.N.J. Apr. 30, 2014) (emphasis in original). "Plaintiff has [also] failed to allege the approximate time when the agreement was made or the period of the conspiracy." *See Prince v. Aiellos*, 2010 WL 4025846, at *9 (D.N.J. Oct. 12, 2010) (dismissing civil conspiracy action for failure to state a claim). Moreover, even if Plaintiff were able to present facts supporting its wholly conclusory allegation that the Defendants "agreed to begin a smear campaign," it would not support a civil conspiracy claim, since there is "no legal prohibition against targeting a specific competitor in the marketplace;" in fact, courts have regularly held that this is "the very essence of competition." *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 933 (N.J. App. Div. 1995).

---

[4] Plaintiff likewise offers no allegations even attempting to connect Gridiron to Plaintiff's tortious interference allegations regarding RWS's "various unlawful cyber activities" and "logging into HomeSource's websites . . . without authorization," Compl. ¶¶ 101-02, 110-11, but only makes the threadbare allegation that the defendants "conspired." Compl. ¶¶ 28, 143.

Thus, "[e]ven drawing inferences in favor of Plaintiff, the Complaint does not allege specific facts indicating that [the Defendants'] alleged collaboration [] was an agreement to inflict a wrong against Plaintiff" rather than the "obvious alterative explanation" of routine business competition. *The Kinesis Grp., LLC v. Troy*, 2013 WL 5793446, at *2 (D.N.J. Oct. 25, 2013) (quoting *Twombly*, 550 U.S. at 567-68)). Plaintiff's allegations here simply do not support a civil conspiracy claim, which should be dismissed.

Finally, and separately, "[c]ivil conspiracy is not an independent cause of action, and conspiracy liability depends on the presence of an underlying finding of tort liability." *Brown ex rel. Estate of Brown v. Philip Morris, Inc.*, 228 F. Supp. 2d 506, 517 n.10 (D.N.J. 2002). Because the torts underlying Plaintiff's civil conspiracy claim should be dismissed for the reasons summarized below and stated in RWS's Memorandum of Law in Support of its Motion to Dismiss, Plaintiff's civil conspiracy claim should also be dismissed. *Id.*[5]

## C.    Plaintiff Fails to State Any Claims for Vicarious Liability.

Plaintiff claims, in the alternative, that Gridiron is liable based on the same claims underlying its conspiracy theory because, "[d]ue to the ownership interests within their corporate family, . . . Gridiron had the actual or apparent authority to control RWS." Compl. ¶ 165. To the extent that Plaintiff is attempting to hold Gridiron "vicariously liable" based on its investment in RWS, it is "well-established that 'mere ownership[,] of a subsidiary does not justify the imposition of liability on the parent.'" *Neuss v. Rubi Rose, LLC*, 2017 WL 2367056, at *3 (D.N.J. May 31, 2017) (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001)). On the contrary, "[a] court may only disregard the corporate form and hold a parent company liable for

---

[5] In addition, to the extent that Plaintiff has successfully pled agency, its conspiracy claim should be dismissed since "in New Jersey, it is well settled that a corporation which acts through authorized agents . . . cannot conspire with itself." *Marrin v. Cap. Health Sys., Inc.*, 2015 WL 404783, at *10 (D.N.J. Jan. 29, 2015).

the act of its subsidiary if the plaintiff demonstrates that the subsidiary acted as the parent's agent or if a basis exists to pierce the corporate veil." *Curtiss-Wright Corp. v. CNA Fin. Corp.*, 2012 WL 1044493, at *5 (D.N.J. Jan. 26, 2012) (citing *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1476-78 (3d Cir. 1988)).  Yet here, Plaintiff has done neither, and is attempting to impose vicarious liability on Gridiron based on the vague allegations that it is related to RWS and that there are "ownership interests within their corporate family."    Compl. ¶¶ 3, 165. Consequently, all of Plaintiff's vicarious liability claims against Gridiron should be dismissed.

**1. <u>Plaintiff Fails to Adequately Plead Any Agency</u>.**

"A plaintiff may not simply assert in conclusory terms that a party is another party's agent for purposes of vicariously liability." *TBI Unlimited, LLC v. Clearcut Lawn Decisions, LLC*, 2013 WL 1223643, at *4 (D.N.J. Mar. 25, 2013).  Further, an ownership interest "does not, by that fact alone," create an agency relationship.  *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 2012 WL 12906148, at *7 (D.N.J. Dec. 20, 2012) (quoting *Phoenix Canada Oil Co.*, 842 F.2d at 1477). Instead, a business entity will be held liable for the activities of an affiliate only if it "dominates those activities.'" *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 508 (D.N.J. 2009) (quoting *Phoenix Canada Oil Co. v. Texaco, Inc.*, 658 F. Supp. 1061, 1084 (D. Del. 1987)).

Here, Plaintiff does not even attempt to show that Gridiron "dominates [the] activities" of RWS.  *Ramirez*, 644 F. Supp. 2d at 508 (dismissing claims were the complaint did "not set forth enough facts to raise a reasonable expectation that discovery will reveal evidence of an agency relationship").  Instead, Plaintiff relies entirely on the allegation that Gridiron is "related" to RWS, and Plaintiff's vague "ownership interests" allegation, to conclude that Gridiron "exercised control over RWS" and "directed" RWS to carry out the smear campaign (without alleging how).  *See* Compl. ¶¶ 164-65.  Such allegations are simply insufficient to plead agency, and Plaintiff's vicarious liability claims should be dismissed.  *See, e.g., Slack v. Suburban Propane Partners,*

-13-

*L.P.*, 2010 WL 5392845, at *14 (D.N.J. Dec. 22, 2010) (dismissing as insufficiently pled agency claims based on the "conclusory allegation" that a parent company "approved, authorized, enabled and/or ratified" its subsidiary's purportedly illegal conduct); *Wrist Worldwide Trading GMBH v. MV Auto Banner*, 2011 WL 5414307, at *6 (D.N.J. Nov. 4, 2011) (holding agency claims "cannot survive a Rule 12(b)(6) motion to dismiss" where the plaintiff pled corporate ownership but failed to assert facts showing the parent company exercised "control or dominion" over its subsidiary).

### 2. __Plaintiff Has Not Pled Facts to Support Piercing the Corporate Veil__.

Nor has Plaintiff pled anything close to meeting the stringent standard for piercing the corporate veil. Absent "extraordinary circumstances," courts "will generally decline to pierce the corporate veil. 'The party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of showing that the court should disregard the corporate entity.'" *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 425 (D.N.J. 2019) (quoting *State Dep't of Envir. Prot. v. Ventron Corp.*, 468 A.2d 150 (1983) ("Even in the case of a parent corporation and its wholly-owned subsidiary, limited liability normally will not be abrogated.")). "To state a claim for piercing the corporate veil under New Jersey law,[6] a plaintiff must show that: '(1) one corporation is organized and operated as to make it a mere instrumentality of another corporation, and (2) the dominant corporation is using the subservient corporation to perpetrate fraud, to accomplish injustice, or to circumvent the law.'" *Neuss v. Rubi*

---

[6] Note that even if the Court were to find that the law of Delaware (Gridiron's place of incorporation) or Connecticut (Gridiron's principal place of business) applied for the purposes of veil piercing, the analysis would be the same; both Delaware and Connecticut permits corporate veil piercing only under "exceptional" circumstances, such as where the corporation is a mere shell, serves no legitimate purpose, or is used primarily to perpetuate fraud or promote injustice. *See Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *11 (Del. Ch. July 14, 2008); *McKay v. Longman*, 332 Conn. 394, 433 (2019). Both Delaware and Connecticut use the same standards as New Jersey, requiring a showing of either instrumentality or complete domination. *See, e.g.*, *Trustees of Village of Arden v. Unity Const. Co.*, 2000 WL 130627, at *3 (Del. Ch. Jan. 26, 2000); *McKay*, 332 Conn. at 441.

*Rose, LLC*, 2017 WL 2367056, at *3 (D.N.J. May 31, 2017) (quoting *Bd. of Tr. of Teamsters Local 863 Pension v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002)).  Under the law, corporate veil piercing requires allegations of "gross undercapitalization[,] failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of other officers or directors, absence of corporate records, and the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders." *Id.*

Plaintiff has pled nothing of the sort.  Instead, Plaintiff relies solely on throwaway allegations that Gridiron "exercised control" over RWS and "directed it to carry out the unlawful conduct" using its "actual or apparent authority to control RWS" "[d]ue to the ownership interests within the corporate family."  Compl. ¶¶ 164-65.  Moreover, Plaintiff's position is belied, if not entirely estopped, by its previous argument in this case that the Defendants "do not have a single decision-making source exercising definitive control over all of them."  ECF No. 147 at 13; ECF No. 163 (Plaintiff "contends *inter alia* that RWS, RWS II, Nationwide, and Gridiron are independently controlled entities."); *see Desrivieres v. United States*, 2013 WL 3285235, at *2 (D.N.J. June 27, 2013) ("The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken by him in the same . . . proceeding.").  Having failed to demonstrate the "extraordinary circumstances" necessary to pierce the corporate veil, Plaintiff's claims for vicariously liability should be dismissed.

**D.     Plaintiffs Fails to State Any of Its Underlying Claims Against RWS.**

Notwithstanding that dismissal of Gridiron is warranted for lack of personal jurisdiction, and because the Complaint comes nowhere close to alleging the required elements for imposing conspiracy or vicarious liability, the Complaint also fails even to state any predicate claim against RWS.  For the reasons summarized below, and those outlined in more detail in RWS's

Memorandum of Law in Support of its Motion to Dismiss, which Gridiron fully incorporates herein, Plaintiff's tag-along claims against Gridiron must also be dismissed because its underlying claims against RWS fail.

**1. Plaintiff Has Not Pled An Underlying Lanham Act Violation Against RWS.**

- Plaintiff Fails to Allege That RWS Made False Statements. Plaintiff's Lanham Act claim is premised solely on five discrete statements, allegedly made about HomeSource in the Newsletters, which Plaintiff badly mischaracterizes and misconstrues. Compl. ¶¶ 34-49, 152-160.[7] Plaintiff's claims fails for the basic reason that none of these alleged statements are false.

  - *First,* the Newsletters did not contain any false statements about the legal history of businesses owned by the White family. The July 20 Newsletter stated, "The White family, owners of HomeSource and similar other businesses, appear to have a history of their business relationships ending in lawsuits against them." Compl. Ex. A at 5. In support of this statement—itself an opinion—the July 20 Newsletter provided summaries of three lawsuits filed in the U.S. District Court for the Western District of

---

[7] Unlike its Lanham Act claim against RWS, Plaintiff does not expand its contributory liability Lanham Act claim against Gridiron to include allegations that RWS "plac[ed] phone calls to HomeSource's customers and potential customers with materially false and misleading statements about HomeSource." *Compare* Compl. ¶ 88 *with* Compl. ¶¶ 152-160. However, to the extent such an allegation is included in Plaintiff's contributory liability Lanham Act claim—or incorporated into its civil conspiracy claim (discussed in *supra*, Section II.B and II.C)—such an allegation is not referenced or supported by any other factual allegations in the Complaint, and thus lacks the specificity and particularly required to survive a motion to dismiss. *Cf., e.g., Collier v. CSX Transp., Inc.*, 2016 WL 9185133, at *1 n.1 (E.D. Pa. Mar. 23, 2016) (Robreno, J.) (granting motion to dismiss pursuant to Rule 12(b)(6) and noting that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (quoting *Iqbal*, 556 U.S. at 688).

North Carolina against Plaintiff and Software Support-PMW, Inc.[8]  *Id.* at 5-6.  As the

White family itself has testified, both Plaintiff and Software Support-PMW were

founded by members of the White family, were and are solely owned by members of

the White family, simultaneously operated out of the White family garage, and shared

employees.[9]  Plaintiff pedantically objects to the Newsletter's use of the word "they"

and "again," focusing on the fact that neither it nor individual White family members

were named as defendants alongside Software Solutions-PMW, a White family-owned

business.  Compl. ¶¶ 36-37, 39-41.  Yet Plaintiff overlooks the fact that the relevant

section of the Newsletter—including the term "they"—pertains to the White family and

its businesses broadly.  Compl. Ex. A at 5-6.  It also entirely ignores the fact that

Furniture Distributors Inc. accused the defendants in the Second Lawsuit—all White

---

[8] These three lawsuits were *Furniture Distributors, Inc. v. Software Support-PMW, Inc.*, a breach of contract suit filled against Software Support-PMW, Inc. ("Software Support-PMW") in 2012 (the "First Lawsuit"); *Furniture Distributors, Inc. v. White, et al.*, a fraud suit filed against Plaintiff, Software Support-PMW, Greg White, James White, Sr., James White, Jr., Phyllis White, and other entities in 2015 (the "Second Lawsuit"); and *Salas v. White, et al.*, a breach of contract suit filed against Plaintiff, Software Support-PMW, Greg White, James White, Sr., James White, Jr., Phyllis White, and another entity in 2015 (the "Third Lawsuit").  The Court may take judicial notice of documents "filed in another court to establish the fact of such litigation and related filings," including "admissions in pleadings and other documents in the public record."  *See, e.g.*, Fed. R. Civ. Proc. 201(b)(2); *Marrakush Soc. v. N.J. St. Police*, 2009 WL 2366132, at *6 n.14 (D.N.J. July 30, 2009) (listing cases).

[9] *See, e.g.*, Ex. B. (*Furniture Distributors, Inc. v. White, et al.*, No. 3:15-cv-00313, ECF No. 44, Ex. D (Deposition of Gregory L. White) (W.D.N.C. Jan 11, 2016)) at 3 (Gregory L. White is sole member of Plaintiff and brother of James White, Jr.); Ex. C (*Furniture Distributors, Inc. v. White, et al.*, No. 3:15-cv-00313, ECF No. 31, Ex. 3 (Affidavit of Software Support-PMW by James White Jr.) (W.D.N.C. Nov. 12, 2015)) at 2 (James White, Jr. was an officer, director, and shareholder of Software Support-PMW); Ex. B at 7-8 (Plaintiff and Software Support-PMW shared employees); Ex. D (*Furniture Distributors, Inc. v. White, et al.*, No. 3:15-cv-00313, ECF No. 44, Ex. E (Deposition of The HomeSource, Corp.) (W.D.N.C. Jan 11, 2016)) at 3-4 (Plaintiff and Software Support-PMW simultaneously operated out of the White family garage); each filed herewith.

family members and businesses, including HomeSource—of being alter egos of one
another and of fraudulently transferring assets amongst themselves to avoid paying the
judgment from the First Lawsuit. *See* Ex. G (Second Lawsuit Complaint). In fact, the
entire Second Lawsuit was premised on the fact that HomeSource, Software Support-
PMW, and other White family businesses were so indistinguishable that they should be
considered one entity. *Id.*[10]

° *Second,* the Newsletter did not "misrepresent[] that Martin Salas was a consultant hired
by HomeSource." *Cf.* Compl. ¶ 47. Plaintiff claims this statement is inaccurate
because it "never hired or entered into any contract with Martin Salas *directly*." Compl.
¶ 47 (emphasis added). Yet the July 20 Newsletter never says Plaintiff hired Salas
directly, and Plaintiff conceded in its answer in the Third Lawsuit that it retained
Salas's company, S & S Management, Inc.,[11] "to perform certain ERP system
installation services and business development activities." Ex. I (*Salas v. White*, No.

---

[10] Plaintiff's other Lanham Act allegations all extend from this pedantic construction, yet the July
20 Newsletter accurately recounted each of the lawsuits. The jury in the First Lawsuit did in fact
find that a White family business negligently misrepresented the capabilities of their software. *Cf.*
Compl. ¶¶ 36-37; *see also* Ex. E (*Furniture Distributors, Inc. v. Software Support-PMW, Inc.* No.
3:12-cv-00090, ECF No. 43 (W.D.N.C. Sept. 18, 2013)), filed herewith. The court in that same
suit did in fact find that the counterclaims brought by a White family business were "totally
meritless," brought "as a defensive tactic," and factored their frivolity and bad faith into its award
of attorneys' fees. *Cf.* Compl. ¶ 38; *see also* Ex. F (*Furniture Distributors, Inc. v. Software
Support-PMW, Inc.*, No. 3:12-cv-00090, ECF No. 52 (W.D.N.C. Feb. 4, 2014)), filed herewith.
And HomeSource was in fact named in the Second Lawsuit alongside other White family members
and businesses who had not made payments ordered in the First Lawsuit. *Cf.* Compl. ¶¶ 45-46;
*see also* Ex. G. (*Furniture Distributors, Inc. v. White*, No. 3:15-cv-00313, ECF. No. 1 (W.D.N.C.
July 17, 2015)), filed herewith.

[11] North Carolina Secretary of State records confirm that Salas is the registered agent and president
of S & S Management, Inc. *See* Ex. H (Salas North Carolina Secretary of State Records) filed
herewith; *see generally* Fed. R. Civ. Proc. 201(b)(2); *Murashko v. Hammer*, 2018 WL 1022575,
at *1-2 (D.N.J. Feb. 22, 2018) (holding that a court may take judicial notice of public corporate
records).

3:15-cv-122, ECF No. 22 (W.D.N.C. May 29, 2015)) at ¶¶ 21, 23. While Plaintiff now seeks to quibble about *the manner* in which it hired Salas, its own prior court statements confirm that it did in fact hire Salas, as accurately stated in the July 20 Newsletter.

° *Third*, Plaintiff oddly claims that RWS "falsely implied that HomeSource 'stole' images from a third party (Plessers)." Compl. ¶ 48. It is unclear to what Plaintiff is referring, as neither the word "stole" nor any derivation thereof appears anywhere else in the Complaint or in any of the exhibits attached thereto. *See generally* Compl.; *id.* Exs. A-B.

° *Fourth*, RWS's statement about a "possible major security concern" is on its face a statement of opinion. *See* Compl. ¶ 51, Ex. A at 5. Indeed, Plaintiff itself concedes that this statement is an opinion, describing it as "Jim Kane explain[ing] *how he believes* one could hack into HomeSource's system." Compl. ¶ 53 (emphasis added). The law is clear that such statements are "not actionable under Section 43(a)" of the Lanham Act. *EP Henry Corp. v. Cambridge Pavers, Inc.*, 383 F. Supp. 3d 343, 349 (D.N.J. 2019); *see also Cannella v. Brennan*, 2014 WL 3855331, at *6 (E.D. Pa. Aug. 6, 2014) ("[O]pinions are not actionable, and only statements of fact capable of being proven false and/or verifiable are actionable under the Lanham Act."); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir. 1995) ("[S]tatements of opinion are generally not the basis for Lanham Act liability.").

• <u>Plaintiff Fails to Allege Deception or Materiality</u>. In addition to the fact that the statements at issue are true on their face, the Newsletter provided links to the case dockets and litigation documents referenced therein, providing recipients with a full and transparent opportunity to review and assess the lawsuits and their allegations themselves. Compl. Ex.

A at 5-6.  Thus, even if a reader somehow badly misconstrued the Newsletter in the way Plaintiff does here, RWS also provided full access to the source material such that there could be no such misunderstanding based on the complete disclosures made by RWS. Likewise, while Plaintiff repeats the throwaway allegation that the Newsletter misstatements were material, at no point in its Complaint does Plaintiff allege *how* the alleged deception was "material in that it [was] likely to influence purchasing decisions." *Interlink Prods.*, 2016 WL 1260713 at *3 (citing *Warner-Lambert Co.*, 204 F.3d at 91-92).

- <u>Plaintiff Fails to Allege Injury.</u> Plaintiff provides merely conclusory allegations that "[a]s a result of RWS's conduct, [Plaintiff] has been damaged."  Compl. ¶ 91; *see also id.* ¶¶ 28-55; 85-91.  The Complaint is entirely void, however, of any allegation as to how the five discrete statements underlying Plaintiff's claim injured Plaintiff or caused it to lose a single contract or prospective customer.  Such a "formulaic recitation of a cause of action's elements will not do" and cannot survive a motion to dismiss.  *Woloshin v. N.J. Trans. Bus Ops.*, 2016 WL 5660427, at *2 (D.N.J. Nov. 3, 2014) (dismissing claims for failure to plead facts suggesting "a causal relationship" between the alleged wrongdoing and an alleged injury) (quoting *Twombly*, 550 U.S. at 555; citing *Iqbal*, 556 U.S. at 678).[12]  Similarly, with respect to the "possible major security concern," Plaintiff itself acknowledges that the video linked from the Newsletter "provided steps" for recipients to demonstrate for

---

[12] Moreover, nowhere in its complaint does Plaintiff allege that the Newsletters, or any other product related to its Lanham Act claim, travelled in interstate commerce.  On the contrary, the only mention of interstate commerce in the Complaint pertains to Plaintiff's *own* websites as part of its Computer Fraud and Abuse Act claim against RWS and John Does.  Compl. ¶¶ 133, 136, 140.  Plaintiff has therefore failed to state a claim for false and misleading advertising.  *Interlink Prods.*, 2016 WL 1260713, at *3.

themselves the possible security issues, again negating the possibility of any deception. Compl. ¶ 53.

**2. Plaintiff Fails to State a Claim for Defamation.**

- <u>Plaintiff Fails to Allege Any False or Defamatory Statements.</u>  A defamatory statement must be false, and "statements of opinion and name-calling, which cannot be proved true or false, are not actionable." *Marino v. Westfield Bd. of Ed.*, 2017 WL 216691, at *9 (D.N.J. Jan. 18, 2017) (quoting *Edelman v. Croonquist*, 2010 WL 1816180, at *3 (D.N.J. May 4, 2010)).  Moreover, "[t]he law of defamation overlooks minor inaccuracies, focusing instead on 'substantial truth,'" and "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *G.D. v. Kenny*, 205 N.J. 275, 294 (2011).  A court must consider the statement as a whole. *Id.*  For the same reasons that Plaintiff's Lanham Act claim fails, so too does its defamation claim.

**3. Plaintiff Fails to State Any Claims for Tortious Interference.**

- <u>Plaintiff Has Not Adequately Pled the Existence of a Contract or Prospective Economic Relationship.</u>  "[T]ortious interference with contractual relations claim requires proof of an existing contract." *Creditors Relief LLC v. United Debt Settle. LLC*, 2019 WL 7288978, at *12 (D.N.J. Dec. 30, 2019).  Similarly, to plausibly plead a tortious interference with prospective economic relationship claim, Plaintiff must assert facts demonstrating that it was in pursuit of an economic opportunity; "[t]he law does not protect every hope or wish for profit." *Hill v. Com. Bancorp, Inc.*, 2011 WL 13146435, at *3 (D.N.J. Feb. 28, 2011).  Here, however, Plaintiff does not identify any such contract or relationship, and instead vaguely asserts a "contractual relationship existing between HomeSource's customers and Homesource" and that "a valid and enforceable contract existed between these [unnamed]

parties."   Compl. ¶ 108.   Such a conclusory allegation of a contractual relationship categorically fails the federal pleading bar for a tortious interference claim.   *See, e.g.*, *Creditors Relief*, 2019 WL 7288978, at *12-13 (dismissing tortious interference with contract claim where the plaintiff did not identify a single specific contract or lost customer and holding that plaintiff's assertion that it "had a reasonable expectation of economic advantage with respect to…clients and/or potential clients" amounted to a conclusory allegation insufficient to support a tortious interference with prospective economic advantage claim).

- <u>Plaintiff Has Not Pled Malice.</u>   Although Plaintiff baldly asserts that RWS's alleged interference was "willful[], malicious[], and intentional[]," it fails to allege any facts supporting the requisite allegation of malice.   Compl. ¶¶ 100-02; 109-11.   This alone is fatal.   *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do[;]' nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'").   Moreover, "[i]t is clearly established under New Jersey law that [a party] that gives truthful information to [another party] does not act with malice and that providing truthful information is simply not actionable." *Luttmann v. Tiffany & Co.*, 2009 WL 197520, at *2-3 (D.N.J. Jan. 26, 2009) (listing cases).   Because the statements in the Newsletters were demonstrably truthful, as noted above, by definition their publication and circulation cannot have been done with malice.   *See supra*, Section II.D.1.

  ○ Furthermore, "[t]here is no legal prohibition against targeting a specific competitor in the marketplace.   Courts have held that this is, in fact, the very essence of competition."

*Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 933 (N.J. App. Div. 1995). "[R]ivalry and rank animosity" simply do not meet the "legal standard for malice in tortious interference cases." *Id.* Thus, RWS's actions—even if "motivated by spite and [] directly aimed at hurting the [P]laintiff's business[—] did not rise to the level of tortious interference because [D]efendant[s] had a legitimate business reason to 'target' the plaintiff, regardless of any other motivation." *Cargill Glob. Trad. v. Applied Dev. Co.*, 706 F. Supp. 2d 563, 576 (D.N.J. 2010) (quotations and citations omitted).[13]

- **Plaintiff Has Not Adequately Pled Any Proximate Injury or Damages.** "Plaintiff must show that if there had been no interference, there was a reasonable probability that the victim of the interference would have received the anticipated economic benefits." *Diversified Indus., Inc. v. Vinyl Trends, Inc.*, 2014 WL 4199059, at *5 (D.N.J. Aug. 22, 2014). It must also identify economic damages "with a certain degree of specificity. Claimed loss of unknown customers is insufficient." *Graco Inc. v. PMC Global, Inc.,* 2012 WL 762448, at *17 (D.N.J. Feb. 15, 2012). The Complaint, however, fails to identify a single lost contract or business opportunity. Instead, Plaintiff puts forth only conclusory allegations that RWS "caused HomeSource a loss of prospective economic gain" and that "as a direct

---

[13] In addition, Plaintiff's tortious interference allegations with respect to RWS's "various unlawful cyber activities" and "logging into HomeSource's websites" are completely threadbare. Compl. ¶¶ 110-11, 118-19. "Interference is intentional when 'the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'" *Cargill*, 706 F. Supp. 2d at 575 (quoting *Dello Russo v. Nagel,* 358 N.J. Super. 254, 268 (App. Div. 2003)). Plaintiff fails to plead any facts at all regarding how this alleged cyber conduct was performed with a purpose or desire to interfere with one or more of Plaintiff's known contractual or business relationships. Compl. ¶ 77. Plaintiff's threadbare assertion that RWS acted "intentionally" does not save this otherwise deficient pleading. *See Iqbal*, 556 U.S. at 678; Compl. ¶¶ 102, 111.

and proximate result of RWS's conduct, HomeSource has been and continues to be damaged." Compl. ¶¶ 104-05, 113. These types of self-serving statements are insufficient to survive dismissal. *See Adv. Oral Techs., L.L.C. v. Nutrex Research, Inc.,* 2011 WL 1080204, at *4 (D.N.J. Mar. 21, 2011) ("Plaintiff 'must allege an injury that is more concrete than lost business of unknown, unsolicited, or hypothetical customers.'"); *Koger, Inc. v. Klco*, 2009 WL 905061, at *5 (D.N.J. Mar. 9, 2009) (dismissing tortious interference claim where the plaintiff merely claimed that "it has lost or may lose business as a result of Defendants' tortious conduct").

**4. Plaintiff Fails to State a Claim for Unfair Competition.**

- <u>Plaintiff's Claim for Competition Fails As a Matter of Law.</u>  Federal unfair competition is brought under Section 1125(a)(1)(A) of the Lanham Act and relates entirely to trademark infringement. *See Bd. of Dirs. Of Sapphire Bay Condominiums West v. Simpson*, 641 F. App'x 113, 114 (3d. Cir. 2015).  New Jersey common law unfair competition claims "generally parallel those under § 43(a) of the Lanham Act." *Cambridge Pavers, Inc. v. EP Henry Corp.*, 407 F. Supp. 3d 503, 509-510 (D.N.J. Sept. 10, 2019) (incorporating its Lanham Act analysis and dismissing claims).  Nothing in Plaintiff's allegations even remotely relate to a legally protected mark, and Plaintiff's federal unfair competition claim should therefore be dismissed.

- <u>Plaintiff's Common Law Claim For Unfair Competition Is Duplicative of Its Tortious Interference Claims and Should Therefore Be Dismissed.</u>  *See Diversified Indus., Inc. v. Vinyl Trends, Inc.*, 2014 WL 1767471, at *6-7 (D.N.J. May 1, 2014) (listing cases and dismissing claim as duplicative where the "factual basis for the unfair competition claim is the same as for the tortious interference [c]ount").

Thus, apart from failing to establish personal jurisdiction over Gridiron, and failing to make out any basis of liability against it, Plaintiff's predicate underlying claims against RWS are also fatally defective, requiring dismissal of the Complaint against Gridiron three times over.

## **CONCLUSION**

For the reasons stated above, Gridiron's motion to dismiss should be granted.

DATED:  June 15, 2020

Respectfully submitted,

ROPES & GRAY LLP

*s/ Cassandra B. Roth*
Cassandra B. Roth
Daniel V. McCaughey, *pro hac vice pending*
Timothy Farrell, *pro hac vice pending*
Patrick S. Doherty, *pro hac vice pending*
1211 Avenue of the Americas
New York, New York 10036
T: (212) 596-9000
F: (212) 596-9090
Cassandra.Roth@ropesgray.com
Daniel.McCaughey@ropesgray.com
Timothy.Farrell@ropesgray.com
Patrick.Doherty@ropesgray.com