# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THE HOMESOURCE, CORP., | Civil Action No.: 1:18-cv-11970 |
| Plaintiff, | |
| | Hon. Eduardo C. Robreno (EDPA) |
| v. | Hon. Ann Marie Donio |
| RETAILER WEB SERVICES, LLC, et al., | |
| Defendants. | |

## NATIONWIDE MARKETING GROUP, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [DOC. 196]

Dated: July 27, 2020

Respectfully submitted,

*/s/ Ethan Hougah*
Ethan Hougah
Louis R. Moffa
Alexandra S. Jacobs
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
457 Haddonfield Road, Suite 600
Cherry Hill, New Jersey 08002
(856) 488-7700

Adam Wolek (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601
Tel.: (312) 836-4063
Fax: (312) 966-8598
awolek@taftlaw.com

William C. Wagner (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Tel.: (317) 713-3500
Fax: (317) 713-3699
wwagner@taftlaw.com

*Counsel for Defendants Retailer Web Services II, LLC; Retailer Web Services, LLC; Nationwide Marketing Group, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iv

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................ 1

LAW AND ARGUMENT ...................................................................................... 4

I.   HomeSource fails to establish that the exercise of personal jurisdiction over Nationwide is proper or consistent with due process. ....................................... 4

   A.   HomeSource's Response fails to meet the Supreme Court's general jurisdiction standard over Nationwide. .......................................................... 4

   B.   HomeSource cannot show specific jurisdiction and ignores the Supreme Court's recent decision in *Walden v. Fiore*. ..................................................... 5

   C.   Exercising personal jurisdiction over Nationwide would violate Due Process. ............................................................................................... 7

   D.   HomeSource should not be permitted jurisdictional discovery. .............. 10

II.  HomeSource's Response fails to cure the deficiencies in its pleading and its substantive claims should be dismissed under Rule 12(b)(6). .......................... 11

   A.   HomeSource's vicarious liability claim is not properly pled and is legally insufficient regardless of its conspiracy claim. .......................................... 11

   B.   Neither the Third Circuit nor any district court within it has ever recognized a claim for contributory false advertising and the Court should not do so here. ........................................................................... 12

   C.   HomeSource misapprehends Nationwide's conspiracy argument. ......... 13

CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Acad. of Doctors of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644 (E.D. Mich. 2017) .. 12

*Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629 (D.N.J. 2004) ...................... 10

*Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 697 F. App'x 119 (3d Cir. 2017) ........... 10, 11

*Benitez v. JMC Recycling Sys., Ltd.*, 97 F. Supp. 3d 576 (D.N.J. 2015) .................................... 10

*BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549 (2017) ................................................................. 4, 5, 6

*Chavez v. Dole Food Co., Inc.*, 836 F.3d 205 (3d Cir. 2016) ........................................................ 4

*Cohen v. Starbucks Corp.*, No. CV 19-2062(FLW), 2019 WL 2591164 (D.N.J. June 25, 2019) ................................................................................................................................................... 8

*Daimler AG v. Bauman*, 134 S.Ct. 746 (2014) ................................................................. 4, 5, 6

*Duty Free Americas, Inc. v. Estee Lauder Cos.*, 797 F.3d 1248 (11th Cir. 2015) ...................... 12

*Ferguson v. Aon Risk Svcs. Cos., Inc.*, 2020 WL 914702 (D.N.J. Feb. 26, 2020) .................... 10

*G&W Labs., Inc. v. Laser Pharm., LLC*, No. 3:17-CV-3974, 2018 WL 3031943 (D.N.J. June 19, 2018) ............................................................................................................................. 12

*IMO Indus. v. Kiekert AG*, 155 F.3d 254 (3d Cir. 1998) ............................................................ 6

*Jeffs v. Ford Motor Co.*, No. 5-15-0529, 2018 WL 3466965 (Ill. App. Ct. 5th Dist. July 12, 2018) ............................................................................................................................................... 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ........................ 12, 13

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957) ...................................................................... 9

*Mellon Bank PSFA, Nat'l Ass'n v. Farino*, 960 F.2d 1217 (3d Cir. 1992) ................................ 6

*Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247 (2d Cir. 2014) ............................................ 12

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009) .......................................... 7

*Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, No. 4:14 CV 859 RWS, 2016 WL 1579195 (E.D. Mo. Apr. 19, 2016) ................................................................................................... 12

*Perkins v. Benquet Consol. Mining Co.*, 542 U.S. 437 (1952) .......................................................... 5

*Telebrands Corp. v. My Pillow, Inc.*, No. 18-CV-06318, 2019 WL 1923410 (N.D. Ill. Apr. 30, 2019) ........................................................................................................................................... 12

*Transdermal Prod., Inc. v. Performance Contract Packaging, Inc.*, 943 F. Supp. 551 (E.D. Pa. 1996) ........................................................................................................................................... 13

*Walden v. Fiore,* 571 U.S. 277 (2014) ........................................................................................ 6, 10

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) .................................................. 7

## Other Authorities

http://adc.coop/AboutADC.pdf ...................................................................................................... 3, 7

Rob Stott, *State By State Advocacy Efforts and Templates*, Nationwide Marketing Group, https://www.nationwidegroup.org/state-by-state-advocacy-efforts-and-templates/ ..... 2

## Rules

Fed. R. Civ. P. 12(b)(2) ................................................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1, 11, 14

## INTRODUCTION

HomeSource failed to show that personal jurisdiction is proper over Nationwide in this Court or that its allegations against Nationwide are sufficient to state a claim upon which relief can be granted. None of HomeSource's claimed facts establish that Nationwide is "at home" in New Jersey, nor do they show Nationwide targeted New Jersey with its alleged suit-related conduct. HomeSource's Second Amended Complaint ("SAC") should therefore be dismissed under Rule 12(b)(2).

Dismissal of the SAC is also proper under Rule 12(b)(6) for three reasons: (1) HomeSource failed to allege facts sufficient to hold Nationwide, RWS II's sister corporation, liable for a Newsletter RWS II sent; (2) the Third Circuit and this District do not recognize a cause of action for contributory false advertising under the Lanham Act and (3) HomeSource alleges no agreement to engage in unlawful conduct as required by conspiracy case law. As a result, each of HomeSource's substantive claims against Nationwide should be dismissed for failure to state a claim upon which relief can be granted.

Finally, Nationwide's motion to dismiss filing was not a "coordinated attack." Doc. 220, p. 1. Rather, Nationwide seeks to avoid litigating in a foreign jurisdiction and defending against HomeSource's baseless claims.

## BACKGROUND

HomeSource relies almost entirely on several attenuated jurisdictional "facts" to claim that Nationwide has "continuously and systematically" done business with New Jersey. Doc. 220, p. 5. It argues Nationwide (1) sent a letter to Gov. Murphy; (2) communicated with HomeSource; (3) met with HomeSource representatives in 2017

and (allegedly) signed a non-disclosure agreement; (4) assigned an employee to cover New Jersey; (5) worked with eight retailers who have stores in New Jersey; (6) leased a car in New Jersey in 2015; and (7) allegedly conspired to send the Newsletter to several recipients in New Jersey. *Id.* pp. 9-10. These "facts" are either misleading, unrelated to this case, or are tenuous contacts with New Jersey:

**The Letter to Gov. Murphy:** HomeSource cites one letter relating to COVID that Nationwide wrote to New Jersey Governor Phil Murphy on March 24, 2020, nearly two years *after* RWS's Newsletter. Doc. 220 p. 5. In reality, Nationwide sent advocacy letters about COVID-related shutdowns to all 50 governors and the federal government. All 50 COVID letters lobbied for essential service businesses to remain open during the pandemic. HomeSource cites no legal authority to support how a letter addressing an unprecedented public health and economic crisis exhibits an intent to be subjected to jurisdiction in New Jersey. The COVID letter is unrelated to this case and does not show that Nationwide continuously or systematically operates in New Jersey. *See* Letter, Doc. 226-1.[1]

**The Alleged Business and Communications with HomeSource:** Contrary to HomeSource's allegations, Nationwide has no business relationship with HomeSource and its discussions with HomeSource were brief, non-substantive, and unrelated to this

---

[1] Nationwide's webpage contains links to the letters. *See* Rob Stott, *State By State Advocacy Efforts and Templates*, Nationwide Marketing Group, https://www.nationwidegroup.org/state-by-state-advocacy-efforts-and-templates/ (last visited July 22, 2020).

lawsuit. Mukherjee Dec., Doc. 196-2, ¶ 9.[2]

**Meeting with HomeSource Representatives:** Nationwide only had brief, non-substantive conversations with HomeSource representatives twice in 2017, one of which was at an expo in Connecticut. Mukherjee Dec., Doc. 196-2, ¶ 10. Nationwide is unaware of any executed NDAs with HomeSource, nor did HomeSource attach one to the SAC or its Response.

**The Employee Servicing New Jersey:** Only one of Nationwide's 123 employees covers New Jersey—along with five other states—and he is not based in New Jersey, and does not live there. Mukherjee Dec., Doc. 196-2, ¶ 7.

**The Independent Appliance Dealers:** While HomeSource claims that Nationwide serves eight appliance dealers in New Jersey, it also states that the "Newsletter targeted HomeSource customers who are Appliance Dealer Cooperative ('ADC') members[.]" Doc. 220, p. 5. ADC's website claims that it is a "regional buying group" with "[o]ver 200 Members across nine states with over 275 storefronts."[3] So by HomeSource's own math, only 4% (8 out of more than 200) of the targeted ADC members were Nationwide clients in New Jersey.

**The Car Lease:** Nationwide once leased a car from a New Jersey dealer in 2015 (Lease, Doc. 226-3), but HomeSource provides no cogent argument for why that would be a jurisdictionally relevant fact, nor how a car leased five years ago relates to its claims.

---

[2] At most, Nationwide and HomeSource each service a similar California customer, and emailed about it. No business, contracts, or money was exchanged with Plaintiff. Such attenuated connections are unrelated to this lawsuit.

[3] Appliance Dealers Cooperative, adc.coop, *available at* http://adc.coop/AboutADC.pdf (last visited July 21, 2020).

**The Alleged Conspiracy:** HomeSource never alleges Nationwide sent the Newsletter, but that Nationwide "conspired" to draft the Newsletter. HomeSource concedes that RWS II, an Arizona company, sent the Newsletter. Doc. 220, p. 4. Thus, Nationwide never directed any allegedly defamatory statements to New Jersey, or to any forum; at most, HomeSource alleges that Nationwide communicated with an Arizona company (RWS II) and a Connecticut company (Gridiron) about it.

## LAW AND ARGUMENT

**I.    HomeSource fails to establish that the exercise of personal jurisdiction over Nationwide is proper or consistent with due process.**

### A.    HomeSource's Response fails to meet the Supreme Court's general jurisdiction standard over Nationwide.

HomeSource's Response fails to meet the Supreme Court's high standard to establish general personal jurisdiction over Nationwide in New Jersey. General jurisdiction typically exists only where a corporate defendant is "at home": 1) the defendant's state of incorporation, and 2) the location of its principal place of business. *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1552-53 (2017). Neither criterion is met here; Nationwide is not incorporated in New Jersey, nor is it based there. This alone should end the discussion on general jurisdiction.

This is also not an "exceptional case" where Nationwide's operations in New Jersey are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* (quoting *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 n. 19 (2014). After *Daimler*, establishing general jurisdiction over an out-of-state defendant is "incredibly difficult." *See Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016). Indeed, the Supreme Court signaled that an exceptional case will be rare and may be limited to situations

when a business is forced to temporarily relocate the center of its activities outside its "home" forum, as was the case in *Perkins v. Benquet Consol. Mining Co.*, 542 U.S. 437, 448 (1952), when the defendant had to relocate its business in response to a wartime environment. *See BNSF Ry. Co.*, 137 S.Ct. at 1558. No such facts are present here and HomeSource's reasoning would approve the exercise of general jurisdiction in every state in which a corporation did business, which has been flatly rejected. *Daimler*, 571 U.S. at 119 ("No decision of this Court sanctions a view of general jurisdiction so grasping.").

HomeSource claims that Nationwide has less than a dozen customers operating stores in New Jersey, that it sent a letter to Gov. Murphy (and 49 other governors); that it once leased a car in New Jersey five years ago; Nationwide shared a California-customer with HomeSource, a New Jersey company; Nationwide has an employee covering New Jersey and five other states; and Nationwide allegedly "conspired" with its co-defendants to draft a Newsletter that went to New Jersey. Doc. 220, pp. 9-10. These contacts bear no resemblance to the "exceptional" scenario under which Nationwide's contact with New Jersey was so pervasive and "substantial" so as to establish that Nationwide is essentially "at home" in New Jersey. To the contrary, nothing in HomeSource's brief shows more than inconsistent, happenstance, and tenuous connections to New Jersey. Thus, HomeSource has failed to carry its "incredibly difficult" and "exceptional" burden of establishing general jurisdiction.

**B.      HomeSource cannot show specific jurisdiction and ignores the Supreme Court's recent decision in *Walden v. Fiore*.**

HomeSource concedes that to establish specific jurisdiction over Nationwide, it has

to establish that Nationwide "expressly aimed [its] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." Doc. 220 p. 11 (*quoting IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998)). Yet HomeSource cannot establish that Nationwide targeted its alleged "suit-related conduct" towards New Jersey, let alone as the "focal point" of the alleged tortious conduct. *See* Doc. 220, p. 12 (citing *Mellon Bank PSFA, Nat'l Ass'n v. Farino*, 960 F.2d 1217 (3d Cir. 1992)[4]; *cf. Walden* v. Fiore, 571 U.S. 277, 284 (2014).

HomeSource ignores the mandate from *Walden v. Fiore* that it must show Nationwide targeted its "suit-related conduct" at New Jersey. It only makes conclusory claims that "Nationwide, RWS, and Gridiron purposefully directed the defamatory Newsletter about a New Jersey corporation, HomeSource, to its New Jersey actual and prospective customers," and HomeSource "lost customers and suffered financial and reputational damage in New Jersey." *Id.* pp. 11-12. HomeSource alleges nothing about how Nationwide had any role in sending the Newsletter into New Jersey. This alone should be fatal to HomeSource's jurisdictional claim because "defendant's relationship with a plaintiff or third party," like RWS, "is an insufficient basis for jurisdiction." *Walden*, at 286. Nor does HomeSource claim that the Newsletter was sent only to or to specifically *target* New Jersey recipients, tacitly admitting that it had a generalized recipient list

---

[4] HomeSource's reliance on *Mellon Bank* is inapt as it is distinguishable and pre-dates *Walden*, *Daimler*, and *BNSF*: it fails to address the personal jurisdiction limitations imposed by those more recent decisions, and the defendant in *Mellon Bank* engaged in business with the plaintiff in the forum state and that business was relevant to the suit. 960 F.2d at 1226. In contrast, HomeSource concedes that no purported investment occurred, and the parties do not have business with each other. SAC, Doc. 164, ¶ 26.

outside the state. Clendening Dec., Doc. 226, ¶ 4.[5]

Finally, HomeSource likewise does not explain how the alleged business investment by Nationwide into HomeSource, which never materialized, is related to its claims. *See* Doc. 220, p. 12.

Because HomeSource cannot establish that Nationwide targeted New Jersey, let alone as the "focal point," HomeSource cannot establish specific personal jurisdiction.

## C.   Exercising personal jurisdiction over Nationwide would violate Due Process.

HomeSource failed to carry its burden to establish general or specific jurisdiction over Nationwide. But even if HomeSource could establish either, the Court must then analyze whether the exercise of personal jurisdiction is reasonable. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). HomeSource has failed to show that the exercise of personal jurisdiction would be reasonable[6], as each factor weighs against jurisdiction in New Jersey, an additional and independent reason to grant Nationwide's motion to dismiss.

---

[5] Presumably, HomeSource never alleges that the Newsletter was sent only to New Jersey recipients because it also claims "[t]he Newsletter targeted HomeSource customers who are Appliance Dealers Cooperative ('ADC') members[.]" Doc. 220, p. 5. ADC is a regional group with members in nine states. Appliance Dealers Cooperative, adc.coop, *available at* http://adc.coop/AboutADC.pdf (last visited July 21, 2020). Thus, if the Newsletter targeted ADC members, it was aimed at recipients in nine states, rather than being targeted at New Jersey.

[6] HomeSource incorrectly claims that "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to … construe disputed **factors** in favor of the plaintiff." Doc. 220, p. 7 (emphasis added). The case cited by HomeSource states that the court must "construe disputed **facts**" in the plaintiff's favor. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (emphasis added). Thus, the Court need not construe any of the disputed factors in HomeSource's favor.

To the first factor, HomeSource claims "[t]here is very little burden on Nationwide to litigate in the District of New Jersey" because it has eight clients in the state, has one employee who covers the state, rented a car in New Jersey five years ago, and sent a COVID letter to New Jersey's governor. Doc. 220, p. 13. These arguments are complete non-sequiturs; there is no connection between, say, renting a car five years ago and the burden Nationwide would face today to litigate out of state.

HomeSource's claim that Nationwide has 8 clients in New Jersey must be taken in context: Nationwide merely provides software and services from its office in North Carolina, as it does with over 5,000 retailers nationwide; it does not "conduct business in New Jersey through eight appliance dealers." *Cf.* Doc. 220 p. 13. The one sales employee[7] who covers New Jersey also covers Pennsylvania, Maryland, Connecticut, Delaware, and Rhode Island. Doc. 196-2, ¶ 7.[8] And the COVID letter, which HomeSource claims to show "a significant presence in New Jersey" (Doc. 220, p. 13) was sent to ***all 50 state governors***, not just New Jersey's, to advocate for essential businesses, in response to a one-time, unprecedented public health and economic crisis. *See* Doc. 226-1. None of these points outweigh the clear, particularized burdens explained in Nationwide's opening brief.

---

[7] Out of 123 employees. Mukherjee Dec., Doc. 196-2, ¶¶ 7-8.

[8] ***Cf. Cohen v. Starbucks Corp.***, No. CV 19-2062(FLW), 2019 WL 2591164, at *3 (D.N.J. June 25, 2019) (finding no personal jurisdiction over Starbucks despite it having hundreds or thousands of stores in New Jersey and plaintiff's claim that it was "omnipresent" in the state); *Jeffs v. Ford Motor Co.,* No. 5-15-0529, 2018 WL 3466965, at *4, *6 (Ill. App. Ct. 5th Dist. July 12, 2018) (finding no personal jurisdiction over Ford even though it was registered to do business in the state, sold over 100,000 cars yearly, had 156 authorized dealers, 5,500 employees, and litigated numerous cases in the state).

HomeSource's claim that the second and third factors—the interests of the forum state and the plaintiff's interest in obtaining relief—favor New Jersey is also flawed. New Jersey has no more particular interest in this case than North Carolina (Nationwide's state of headquarters), Arizona (RWS's state of headquarters), or Connecticut (Gridiron's state of headquarters), each of which has an interest in protecting its residents from baseless lawsuits. Nor can HomeSource rely on *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957). *McGee* was an insurance dispute based on a contract delivered in California, the premiums were mailed from California, and the insured resided in California when he died; on these facts, the Court held that California "has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims." *Id.* Here, in contrast, Nationwide lacks the suit-related contacts of the *McGee* defendant. HomeSource also has already proved willing to appear in North Carolina by litigating the Furniture Distributors and Salas lawsuits in that state, and litigating a motion to quash filed by Nationwide.[9]

The remaining factors—the judicial system's interest in judicial efficiency and the interests of the several states in furthering social policies—also favor dismissal. It is socially prudent to litigate in North Carolina, where the parties have previously consented to jurisdiction, rather than foreign jurisdictions.[10] These remaining factors favor North Carolina, where Nationwide is at home and where HomeSource has

---

[10] Nationwide also notes that litigating in New Jersey will delay this case because travelers visiting New Jersey from North Carolina, where Nationwide is based, must quarantine for 14 days. North Carolina, in contrast, does not presently have a mandatory quarantine, so the parties will not face travel delays if the case is transferred.

repeatedly litigated in the past.

### D.    HomeSource should not be permitted jurisdictional discovery.

HomeSource argues it should "be entitled to jurisdictional discovery in order to learn more about Nationwide's business dealings in New Jersey and overall revenues from the state" (Doc. 220, p. 14), but those topics are irrelevant to Nationwide's purported "**suit-related conduct** [that] must create a substantial connection with [New Jersey]" such that it would support specific jurisdiction. *See Walden*, at 284 (emphasis added). In other words, those discovery topics would not help establish that Nationwide purposefully directed its alleged tortious conduct at New Jersey—HomeSource provides no cogent argument otherwise. Moreover, HomeSource has not presented any evidence that Nationwide may have contacts "so substantial and of such a nature to constitute the type of *exceptional case* where [Nationwide] is at home some place other than its principle place of business or its place of incorporation." *Ferguson v. Aon Risk Svcs. Cos., Inc.*, 2020 WL 914702, at *6 (D.N.J. Feb. 26, 2020) (denying jurisdictional discovery where plaintiff had alleged no such facts) (emphasis added). Any discovery regarding jurisdiction would therefore be futile. *See Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 697 F. App'x 119, 120 (3d Cir. 2017) (affirming denial of request for jurisdictional discovery where it "would have been futile").

Jurisdictional discovery is also unwarranted because HomeSource has had two years to conduct discovery, and further discovery into Nationwide's revenues would be no more than a fishing expedition. *See Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629, 636 (D.N.J. 2004) ("Since Plaintiff has already taken discovery and has not been improperly limited in its discovery, there is no basis for further discovery here."); *Benitez*

*v. JMC Recycling Sys., Ltd.*, 97 F. Supp. 3d 576, 584 (D.N.J. 2015) ("The Court will not permit Plaintiff to use jurisdictional discovery as a fishing expedition to support an otherwise improper assertion of personal jurisdiction."). Plaintiff has already learned through discovery from RWS that RWS sent the Newsletters to which Plaintiff objects, and that they were not directed at New Jersey in any meaningful sense. And Plaintiff's entire basis for seeking to impute RWS's conduct to Nationwide rests on "email communications with RWS to coordinate the wording of [the] newsletters" at issue—*emails that Plaintiff already has. See* Doc. 164 ¶¶ 30, 144, 153. Jurisdictional discovery is therefore unwarranted and should be denied. *Barth*, 697 F. App'x at 120.

## II. HomeSource's Response fails to cure the deficiencies in its pleading and its substantive claims should be dismissed under Rule 12(b)(6).

### A. HomeSource's vicarious liability claim is not properly pled and is legally insufficient regardless of its conspiracy claim.

HomeSource's claim that it may plead vicarious liability in the alternative misses the mark. As discussed in Nationwide's opening brief, HomeSource's vicarious liability claim should be dismissed under Rule 12(b)(6) because it is not independently viable. HomeSource cannot state a vicarious liability claim because it does not plead facts establishing that RWS II acted as Nationwide's agent in sending the Newsletter, nor does it plead facts sufficient to pierce the corporate veil. HomeSource tacitly concedes it has no support for this claim and that further discovery is unwarranted as it had "the true" corporate structures no later than November 2019 (Doc. 220, at 19), yet it provided no facts for the veil-piercing when it filed its SAC in April 2020. HomeSource had ample time to either strike its vicarious liability claim or amend its pleading, yet HomeSource never did so. As a result, HomeSource's vicarious liability claim fails and

should be dismissed.

**B.     Neither the Third Circuit nor any district court within it has ever recognized a claim for contributory false advertising and the Court should not do so here.**

As noted in Nationwide's opening brief, the Third Circuit has never recognized a cause of action for contributory false advertising. Doc. 196-1, pp. 16-17. The only case to address such a claim here rejected it. *G&W Labs., Inc. v. Laser Pharm., LLC*, No. 3:17-CV-3974, 2018 WL 3031943, at *19 (D.N.J. June 19, 2018). For its response, HomeSource sidesteps, but never rebuts *G&W Labs*. It further ignores numerous authorities barring contributory false advertising claims under the Lanham Act, and only cites an Eleventh Circuit and one non-binding case to support its position. Doc. 220, p. 20 (citing *Duty Free Americas, Inc. v. Estee Lauder Cos.*, 797 F.3d 1248 (11th Cir. 2015)). But no Third Circuit case has ever recognized such a cause of action, presumably because many courts outside the Eleventh Circuit have *expressly* refused to recognize such a claim. *See, e.g., Telebrands Corp. v. My Pillow, Inc.*, No. 18-CV-06318, 2019 WL 1923410, at *3 (N.D. Ill. Apr. 30, 2019) (characterizing the Eleventh  Circuit's ruling as "novel" and stating that it "has not been adopted by the Seventh Circuit **or any other circuit**") (emphasis added); *Acad. of Doctors of Audiology v. Int'l Hearing Soc'y*, 237 F. Supp. 3d 644, 666 (E.D. Mich. 2017) (stating that the Eleventh Circuit "appears to stand alone" in its recognizing a contributory false advertising claim); *see also Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, No. 4:14 CV 859 RWS, 2016 WL 1579195, at *3 (E.D. Mo. Apr. 19, 2016) (stating that the Eleventh Circuit's holding "it is not persuasive enough to compel me to reconsider my previous ruling or to reject the line of cases

holding that no such right exists.").[11]

These cases foreclose contributory liability for good reason. The Supreme Court, in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), held that "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury *flowing directly from the deception wrought by the defendant's advertising;* and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." 572 U.S. at 133 (emphasis added). HomeSource never addresses *Lexmark*, presumably because HomeSource cannot claim damage "flowing directly from the deception wrought by [Nationwide's] advertising"; instead, it claims damages from the Newsletter that RWS II sent. The remaining, non-binding case cited by HomeSource is similarly distinguishable because it related to contributory trademark *infringement*, not false advertising. Doc. 220, p. 20 (*citing Transdermal Prod., Inc. v. Performance Contract Packaging, Inc.*, 943 F. Supp. 551, 553 (E.D. Pa. 1996)).

HomeSource's contributory false advertising claim should be dismissed.

### C.   HomeSource misapprehends Nationwide's conspiracy argument.

HomeSource raises a conspiracy argument focusing on whether entities can theoretically conspire given a certain ownership structure, even though Nationwide did not argue along those lines in its brief. (*Compare* Doc. 196-1 *with* Doc. 220 pp. 17-18.) In any event, the conspiracy count fails *first* because the underlying counts fail to state viable claims. *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177-78 (2005) (conspiracy

---

Plaintiff also misrepresents the Second Circuit as having "explicitly recognized" such a claim. Resp. at 18. Not only did the Second Circuit not discuss the issue at all in *Merck Eprova AG v. Gnosis S.p.A.*, but it also heard the case before the Supreme Court even issued its ruling in *Lexmark*.  760 F.3d 247 (2d Cir. 2014).

requires underlying wrong). *Second*, even if the SAC had a viable claim to which a conspiracy *could* theoretically apply (it does not), HomeSource pled no agreement *to engage in unlawful conduct*. *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003). That is the deficiency with the conspiracy count in the SAC, which HomeSource's response failed to address.

## CONCLUSION

For all these reasons, as well as those in its opening brief, Nationwide respectfully requests that the Court grant its motion to dismiss Plaintiff The HomeSource, Corp.'s Second Amended Complaint for lack of personal jurisdiction. Additionally, as each of HomeSource's substantive allegations fail to state a claim upon which relief can be granted, all claims against Nationwide should be dismissed under Rule 12(b)(6).

Dated: July 27, 2020                Respectfully submitted,

                                    */s/ Ethan Hougah*
                                    Ethan Hougah
                                    Louis R. Moffa
                                    Alexandra S. Jacobs
                                    MONTGOMERY, McCRACKEN,
                                    WALKER & RHOADS, LLP
                                    457 Haddonfield Road, Suite 600
                                    Cherry Hill, New Jersey 08002
                                    (856) 488-7700

                                    Adam Wolek (*pro hac vice*)
                                    TAFT STETTINIUS & HOLLISTER LLP
                                    111 E. Wacker Drive, Suite 2800
                                    Chicago, IL 60601
                                    Tel.: (312) 836-4063
                                    Fax: (312) 966-8598
                                    awolek@taftlaw.com

William C. Wagner (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Tel.: (317) 713-3500
Fax: (317) 713-3699
wwagner@taftlaw.com

*Counsel for Defendants Retailer Web Services II, LLC; Retailer Web Services, LLC; Nationwide Marketing Group, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2020, a true and correct copy of the foregoing

was served via electronic mail upon the following counsel for the Plaintiff:

FLASTER/GREENBERG P.C.
Kenneth S. Goodkind, Esq.
Eric R. Clendening, Esq.
1810 Chapel Avenue West
Cherry Hill, NJ 08002
Tel.: (856) 661-1900
Fax: (856) 661-1919

*Counsel for Plaintiff The HomeSource, Corp.*

/s/  *Ethan Hougah*
Ethan Hougah
Louis R. Moffa
Alexandra S. Jacobs

*One of the attorneys for Defendants Retailer*
*Web Services II, LLC; Retailer Web Services,*
*LLC; Nationwide Marketing Group, LLC*

27599597.1

16