Cassandra B. Roth
Patrick S. Doherty (admitted *pro hac vice*)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY  10036
T: (212) 596-9000
F: (212) 596-9090
Cassandra.Roth@ropesgray.com
Patrick.Doherty@ropesgray.com

Daniel V. McCaughey (admitted *pro hac vice*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199
T: (617) 951-7000
F: (617) 951-7050
Daniel.McCaughey@ropesgray.com

Timothy R. Farrell (admitted *pro hac vice*)
**ROPES & GRAY LLP**
191 N. Wacker Dr., 32nd Floor
Chicago, IL 60606
T: (312) 845-1200
F: (312) 845-5522
Timothy.Farrell@ropesgray.com

*Attorneys for Defendant Gridiron Capital, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE HOMESOURCE, CORP.<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RETAILER WEB SERVICES, LLC,<br>RETAILER WEB SERVICES II, LLC,<br>NATIONWIDE MARKETING GROUP,<br>LLC, GRIDIRON CAPITAL, LLC, and<br>JOHN DOES,<br><br>　　　　Defendants. | Case No. 1:18-cv-11970<br><br>Hon. Eduardo C. Robreno (EDPA)<br>Hon. Ann Marie Donio<br><br>**Oral Argument Requested**<br><br>Motion Day: August 3, 2020 |

**<u>MEMORANDUM OF LAW IN FURTHER SUPPORT OF</u>**
**<u>DEFENDANT GRIDIRON CAPITAL, LLC'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

                                                                                                              **Page**

I.    Plaintiff Fails to Meet Its Burden to Establish Personal Jurisdiction Over Gridiron in This Court. ...................................................................................................................................1

        A.    Plaintiff Has Not Adequately Pled That Gridiron Expressly Aimed Its Alleged Conduct At New Jersey To Support Specific Jurisdiction. ..........................................1

        B.    Plaintiff Does Not, and Cannot, Argue That the Court Has General Jurisdiction Over Gridiron. .................................................................................................5

        C.    Jurisdictional Discovery Is Unwarranted. .................................................................6

II.    Plaintiff Failed to Establish It Has Adequately Pled Any Claim Against Gridiron. ...............8

        A.    Plaintiff Fails to State a Claim for Civil Conspiracy. .................................................8

        B.    Plaintiff Fails to Argue That It Has Stated Any Claims for Vicarious Liability. ...........9

        C.    Plaintiff Fails to State a Contributory Liability Claim for False and Misleading Advertising Under the Lanham Act. ........................................................................10

CONCLUSION ..............................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acad. of Drs. of Audiology v. Int'l Hearing Soc.*,
 237 F. Supp. 3d 644 (E.D. Mich. 2017) .................................................................................11

*Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., Solano Cty.*,
 480 U.S. 102 (1987) ..................................................................................................................5

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................................9, 11

*AT&T v. Winbach & Conserve Prog.*,
 42 F.3d 1421 (3d Cir. 1994) ...................................................................................................11

*Barth v. Walt Disney Parks & Resorts U.S., Inc.*,
 697 F. App'x 119 (3d Cir. 2017) ..............................................................................................7

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) .........................................................................................................5, 6, 7

*Duty Free Americas, Inc. v. Estee Lauder Cos..*,
 797 F.3d 1248 (11th Cir. 2015)...............................................................................................11

*East Coast Test Prep, LLC v. Allnurses.com, Inc.*,
 2015 WL 12781605 (D.N.J. Aug. 28, 2015) ............................................................................6

*English Sports Betting, Inc. v. Tostigan*,
 2002 WL 461592 (E.D. Pa. Mar. 15, 2002) .............................................................................4

*Ferguson v. Aon Risk Servs. Cos., Inc.*,
 2020 WL 914702 (D.N.J. Feb. 26, 2020) .................................................................................7

*G&W Labs., Inc. v. Laser Pharms., LLC*,
 2018 WL 3031943 (D.N.J. June 19, 2018).............................................................................10

*Genus Lifesciences Inc. v. Lannett Co., Inc.*,
 378 F. Supp. 3d 823 (N.D. Cal. 2019)....................................................................................11

*Hassel v. Budd Co.*,
 2014 WL 3955061 (E.D. Pa. Feb. 27, 2014) ............................................................................8

*Helicopteros Nacionales de Colombia, S.A. v. Happ*,
 466 U.S. 408(1984) ..............................................................................................................2, 7

*Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*,
    659 A.2d 904 (N.J. App. Div. 1995) ..................................................................................9

*IMO Indus. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998) ..................................................................................... 2, 5

*Intellect Design Arena, Inc. v. Datacubes, Inc.*,
    2020 WL 2832568 (D.N.J. June 1, 2020) ............................................................. 3, 4, 5

*Inwood Labs, Inc. v. Ives Labs., Inc.*,
    456 U.S. 844 (1982) ............................................................................................... 11

*Kinekt Design, LLC v. One Moment In Time, LLC*,
    2013 WL 3828508 (D.N.J. July 22, 2013) ............................................................... 6, 7

*L.T. Overseas, Ltd. v. Dabur India, Ltd.*,
    2017 WL 5707531 (D.N.J. Nov. 27, 2017) ..................................................................6

*Lexmark International, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ......................................................................................... 10, 11

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007) .................................................................... 1, 2, 3, 4, 7

*Mellon Bank PSFS, National Ass'n v. Farino*,
    960 F.2d 1217 (3d Cir. 1992) ..................................................................................2

*Merck Eprova AG v. Gnosis S.p.A.*,
    760 F.3d 247 (2d Cir. 2014). ................................................................................12

*Metcalfe v. Renaissance Marine, Inc.*,
    566 F.3d 324 (3d. Cir. 2009) ..................................................................................2

*Otsuka Pharm. Co. Ltd. v. Mylan Inc.*,
    106 F. Supp. 3d 456 (D.N.J. 2015) ..........................................................................6

*In re Outlaw Lab, LLP*,
    2020 WL 2797425 (S.D. Cal. May 29, 2020) .........................................................11

*Patterson v. FBI*,
    893 F.2d 595 (3d Cir. 1990) ....................................................................................1

*Remick v. Manfredy*,
    238 F. 3d 248 (3d Cir. 2001) ...................................................................................4

*Swift v. Pandey*,
    2014 WL 1745040 (D.N.J. Apr. 30, 2014) ................................................................8

*Telebrands Corp. v. My Pillow, Inc.*,
    2019 WL 1923410 (N.D. Ill. Apr. 30, 2019) ........................................................................ 11

*Theorem, Inc. v. Citrusbyte, LLC*,
    2019 WL 3812474 (D.N.J. Aug. 14, 2019) .......................................................................... 2

*Transdermal Prods., Inc. v. Performance Contract Packaging, Inc.*,
    943 F. Supp. 551 (E.D.P.A. 1996) ..................................................................................... 11

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) ................................................................................................................. 1

Fed. R. Civ. P. 15 ......................................................................................................................... 9

Defendant Gridiron Capital, LLC ("Gridiron") respectfully submits this Memorandum of Law in Further Support of its Motion to Dismiss (the "Motion") the claims brought against it by The HomeSource, Corp. ("Plaintiff" or "HomeSource") and in reply to HomeSource's Memorandum of Law in Opposition to the Motion ("Opposition" or "Opp.").

**I.    Plaintiff Fails to Meet Its Burden to Establish Personal Jurisdiction Over Gridiron in This Court.**

Plaintiff's Opposition does nothing to cure the Second Amended Complaint's ("SAC") failure to demonstrate grounds for personal jurisdiction over Gridiron in this New Jersey Court—which is Plaintiff's burden to meet. *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007). Once Gridiron raised its jurisdictional defense, Plaintiff was required to establish a *prima facie* case for exercise of personal jurisdiction by "respond[ing] with actual proofs, not mere allegations." *Patterson v. FBI*, 893 F.2d 595, 604 (3d Cir. 1990). Unable to do so, Plaintiff merely parrots in its Opposition and attached declarations the conclusory allegations in its SAC and submits three exhibits,[1] which in no way support personal jurisdiction under governing law. Because Plaintiff has failed to meet its burden as to personal jurisdiction over Gridiron, Plaintiff's claims against Gridiron should be dismissed under Federal Rule of Civil Procedure 12(b)(2).

**A.    Plaintiff Has Not Adequately Pled That Gridiron Expressly Aimed Its Alleged Conduct At New Jersey To Support Specific Jurisdiction.**

Plaintiff's Opposition does nothing to salvage Plaintiff's failure to establish specific jurisdiction as to Gridiron. As detailed in Gridiron's Memorandum of Law In Support of Its Motion ("Opening Brief" or "Br."), Plaintiff has pled no facts establishing, as it must, that Gridiron intentionally targeted New Jersey in any way such that it was the "focal point" of the allegedly

---

[1] While Plaintiff's Opposition only cites to Exhibits D and E of the Declaration of Eric Clendening, Esq. (ECF No. 225), it appears that its citation regarding Jeff Steinhorn was actually intended to cite to a third Exhibit F. *See* Opp. at 5 (mistakenly citing to Exhibit D).

1

tortious activity. Br. at 7-9; *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 256 (3d Cir. 1998); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d. Cir. 2009).[2] Faced with its pleading defects, Plaintiff scrambles to put forward a handful of new contentions, none of which supports the exercise of specific jurisdiction under well-settled Third Circuit law.

To start, Plaintiff's claim that Gridiron was "clearly aware that HomeSource is a New Jersey corporation" ignores clear Third Circuit precedent that "knowledge that the plaintiff is located in the forum . . . is insufficient to satisfy the targeting prong of the effects test." Opp. at 8-9; *IMO Indus., Inc.*, 155 F.3d at 266; *see also Theorem, Inc. v. Citrusbyte, LLC*, 2019 WL 3812474, at *3 (D.N.J. Aug. 14, 2019) ("Plaintiff's demonstration that [defendant] targeted [the plaintiff], knowing [the plaintiff] is located in New Jersey, does not equate with a demonstration that [defendant's] alleged unlawful conduct targeted New Jersey."). Nor is it relevant that Gridiron allegedly learned about Home Source's state of incorporation through its receipt of unspecified due diligence information about Plaintiff in 2017. Opp. at 9. Plaintiff has not alleged any factual connection between its claims in this lawsuit and any supposed due diligence information that it claims it shared with Defendants. The present claims accordingly do not "arise out of or relate to" those earlier purported interactions between Gridiron and Plaintiff. *Marten*, 499 F.3d at 296 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Happ*, 466 U.S. 408, 414 (1984)).[3]

---

[2] Plaintiff's reliance on *Mellon Bank PSFS, National Ass'n v. Farino*, 960 F.2d 1217, 1225 (3d Cir. 1992) is misplaced. *Mellon* notes that a defendant's lack of physical contact with the forum "is not dispositive" where "a defendant has received the benefits and protections of the forum's laws by engaging in business activities with a forum resident"; however, the nearly thirty years of subsequent case law requires these activities to either be so continuous and systematic as to render the defendant essentially at home in the forum state (for general jurisdiction) or arise out of or relate to the alleged tortious conduct (for specific jurisdiction). *See* Br. at 5-9. As stated herein and in Gridiron's Opening Brief, Plaintiff has established neither. *Id.*

[3] In fact, Gridiron did not sign a Non-Disclosure Agreement with Plaintiff, receive any due diligence from HomeSource, or meaningfully discuss any potential investment with HomeSource. Declaration of Dev Mukherjee, ECF No. 196-2 at ¶¶ 10-11 (noting that such contact

2

By the same token, Plaintiff's claim that it "lost customers and suffered financial and reputational damage in New Jersey" also does not satisfy the targeting prong of the effects test as a matter of law. *Intellect Design Arena, Inc. v. Datacubes, Inc.*, 2020 WL 2832568, at *5 (D.N.J. June 1, 2020) (holding that an allegation that the defendant knew the harm of its conduct would be felt by the plaintiff in New Jersey was insufficient to show that it "expressly aimed" its conduct at New Jersey). Plaintiff's additional allegations about Gridiron's investments in Dent Wizard and Dealer Tire (neither of which are based in New Jersey), and its employee, Jeff Steinhorn, equally have no connection to Plaintiff's claims and are irrelevant to specific jurisdiction for the same reasons. *See Marten*, 499 F.3d at 296.

Plaintiff also claims—for the first time in its Opposition—that "Gridiron . . . purposefully directed the defamatory Newsletter . . . to [HomeSource's] New Jersey actual and prospective customers" on the basis that the "Newsletter targeted HomeSource customers who are Appliance Dealer Cooperative ("ADC") members," 20 of which Plaintiff has purportedly identified as located in New Jersey.[4] Opp. at 3-4, 8; Declaration of James White, ECF No. 224 at ¶ 7 ("The July 20th Newsletter targeted HomeSource customers who are Appliance Dealer Cooperative ("ADC")

---

was limited to "brief, non-substantive" discussions at a 2017 business exposition in Connecticut "unrelated" to this lawsuit.). For purposes of this motion, the Court need not consider this factual dispute—nor entertain Plaintiff's request for jurisdictional discovery—because even if accepted at face value, Plaintiff's contention that it signed a Non-Disclosure Agreement with Nationwide and shared due diligence information with Nationwide and Gridiron has no bearing on specific personal jurisdiction over Gridiron in this case. Plaintiff is not suing Gridiron for any claim arising under the alleged NDA or for misuse of any supposed due diligence information. It is suing the Defendants for making unrelated statements regarding an unrelated lawsuit filed against Plaintiff and its affiliates. Plaintiff has not alleged that any information that it claims to have shared with Gridiron has anything to do with its present tort claims. As a result, this allegation, even if accepted as true, has no bearing on Plaintiff's argument for specific jurisdiction over Gridiron.

[4] Tellingly, Plaintiff's own affidavits undermine any suggestion that the New Jersey domicile of a subset of its customers was somehow self-evident to an outside observer. To the contrary, Plaintiff itself had to "compare[]" the list of alleged "Newsletter recipients" against "HomeSource's customer lists for New Jersey" in order to figure out which entities were located in New Jersey.

3

members, and ADC is based in New Jersey."). Yet this represents *less than 10%* of the total membership of ADC, whose own website indicates it has "Over 200 Members across nine states." "Home | ADC," *Appliance Dealers Coop.*, https://www.appliancedealerscooperative.com/ (last visited July 24, 2020). Moreover, Plaintiff's SAC specifically alleges that RWS (and Plaintiff) market to three additional conglomerations of customers, none of which Plaintiff connects to New Jersey. ECF No. 164 at ¶ 19 (identifying "NEAG [New England Appliance & Electronics Group], . . . Intercounty [Appliance Corporation], and DMI [Dynamic Marketing, Inc.]").[5]

In short, Plaintiff's assertion that *some* Newsletter recipients were based in New Jersey fails to meet its burden to establish that Gridiron's purported conduct was *expressly* aimed or targeted New Jersey as a matter of law. *See Intellect Design*, 2020 WL 2832568, at *5 ("[E]ven assuming that Defendants directed the alleged attack at Plaintiff's clients across the country, and some of these clients are located in New Jersey[,] such allegations are insufficient to confer specific jurisdiction on Defendants, because they fail to show that Defendants *expressly aimed* their conduct at New Jersey");[6] *English Sports Betting, Inc. v. Tostigan,* 2002 WL 461592, *3-4 (E.D. Pa. Mar. 15, 2002) (dismissing complaint for lack of personal jurisdiction where the recipients of

---

[5] The New England Appliance and Electronics Group, for example, has 105 members, none of which are located in New Jersey. *See* "Locate a Retailer," *NEAEG*, https://www.neaeg.com/dealer-map (last visited July 25, 2020) (listing members in Connecticut, Maine, Massachusetts, New Hampshire, New York, Rhode Island, and Vermont).

[6] Plaintiff's attempt to distinguish *Intellect Design* fails. While Plaintiff submits that, unlike the plaintiff in *Intellect Design*, it "has submitted declarations and additional evidence," Opp. at 9, the three new exhibits relied on by Plaintiff utterly fail to support specific jurisdictional. *See supra* at 2-3; *Marten*, 499 F.3d at 296. Plaintiff's further contentions that it "has shown that Gridiron conspired with RWS to send the Newsletter . . . to [its] New Jersey Customers" and that "Gridiron knew that HomeSource was a New Jersey corporation," Opp. at 9, simply rehash the conclusory allegations contained in the SAC and fail for the reasons stated above. *See supra* at 3-4. Indeed, the court in *Intellect Design* dismissed the defendants based on nearly identical allegations that some of the plaintiff's customers were located in New Jersey and the defendants knew that the plaintiff's principal place of business was in New Jersey. 2020 WL 2832568, at *4-6.

purportedly defamatory articles were linked by a common interest, instead of geography, and where there was no evidence that the defendant aimed its tortious conduct specifically at the forum); *Remick v. Manfredy*, 238 F. 3d 248, 259 (3d Cir. 2001) (upholding dismissal for lack of jurisdiction where allegedly defamatory letters were distributed throughout the plaintiff's professional community, which had no "unique relationship" with the forum state). Plaintiff simply does not offer anything to make out a *prima facie* case that Gridiron "expressly aimed" its conduct at New Jersey such that it is the "focal point" of the alleged conduct. *Intellect Design*, 2020 WL 2832568, at *5; *IMO Indus.*, 155 F.3d at 256. Plaintiff's claims against Gridiron should thus be dismissed.[7]

### B. Plaintiff Does Not, and Cannot, Argue That the Court Has General Jurisdiction Over Gridiron.

In its Opposition, Plaintiff does not dispute that this Court lacks general jurisdiction over Gridiron. Indeed, Plaintiff concedes in the SAC that Gridiron neither is incorporated in New Jersey nor maintains its principal place of business there. *See* ECF No. 164 at ¶ 11; *see also* Br. Ex. A at ¶ 4. New Jersey is therefore not one of the "paradigm all-purpose forums" in which Gridiron is subject to general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014) (citing *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011)). And while Plaintiff does not actually argue that Gridiron is subject to general jurisdiction in New Jersey, it repeats throughout its Opposition a handful of allegations regarding purported contacts with the forum. As discussed above, those limited contacts bear no connection to this dispute, making them irrelevant to Plaintiff's assertion of specific personal jurisdiction. Moreover, Plaintiff does not—

---

[7] Because Plaintiff fails to meet its burden to establish grounds for personal jurisdiction, the Court need not evaluate whether an exercise of such jurisdiction would also offend fair play and substantial justice under the factors originally articulated in *Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 113 (1987). However, on balance, those factors likewise weigh against imposing personal jurisdiction here.

5

and could not—suggest that such interactions establish contacts "so 'continuous and systematic' as to render [Gridiron] essentially at home" in the state and subject to its general jurisdiction. *Daimler*, 571 U.S. at 119 (quoting *Goodyear* at 919).

First, Plaintiff claims that "Gridiron has sought out and invested in businesses that operate New Jersey storefronts and generate massive revenues here," pointing to Gridiron's investment in *Missouri*-based Dent Wizard and its partnership with *Ohio*-based Dealer Tire, two national automotive retail chains that each operate a single storefront in New Jersey. *See* Opp. at 4-5, 10-12; ECF No. 225 Exs. D, E. Such contacts—*i.e.*, earning revenue in New Jersey or maintaining a single New Jersey store—come nowhere close to the "paradigmatic scenarios for 'at home' general jurisdiction under *Daimler*." *Otsuka Pharm. Co. Ltd. v. Mylan Inc.*, 106 F. Supp. 3d 456, 466 (D.N.J. 2015); *see also L.T. Overseas, Ltd. v. Dabur India, Ltd.*, 2017 WL 5707531, at *3 (D.N.J. Nov. 27, 2017) ("[A] foreign corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing business in that state.") (quoting *Lucas v. Gulf & Western Indus., Inc.*, 666 F.2d 800, 805-06 (3d Cir. 1981)).

Second, Plaintiff's claim that a single Gridiron operating partner lives in New Jersey and may be working from home during the COVID-19 pandemic, Opp. at 5, is entirely speculative and legally irrelevant. *See East Coast Test Prep, LLC v. Allnurses.com, Inc.*, 2015 WL 12781605, at *3 n.3 (D.N.J. Aug. 28, 2015) (holding that the presence of a single remote employee within the forum state does not confer general jurisdiction over a corporate defendant). In short, Plaintiff has plainly failed to establish that Gridiron is subject to general jurisdiction in this Court.

        C.      **Jurisdictional Discovery Is Unwarranted.**

Finally, Plaintiff fails to state any basis for why jurisdictional discovery is warranted. Jurisdictional discovery should be denied where a plaintiff fails to present "factual allegations that suggest *with reasonable particularity* the possible existence" of "the requisite contacts between

6

the [defendant] and the forum state." *Kinekt Design, LLC v. One Moment In Time, LLC*, 2013 WL 3828508, at *2 (D.N.J. July 22, 2013) (emphasis added) (denying request for jurisdictional discovery and quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).

With respect to general jurisdiction, Plaintiff come nowhere close to alleging how "Gridiron's business dealings in New Jersey and overall revenues from this state," Opp. at 12, are potentially "so substantial and of such a nature to constitute the type of *exceptional case* where [Gridiron] is at home some place other than its principle place of business or its place of incorporation." *Ferguson v. Aon Risk Servs. Cos., Inc.*, 2020 WL 914702, at *6 (D.N.J. Feb. 26, 2020) (denying jurisdictional discovery where plaintiff had not alleged any such facts) (emphasis added) (internal quotation marks omitted) (quoting *Daimler*, 571 U.S. n.19). Any discovery regarding general jurisdiction should therefore be denied as futile. *See Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 697 F. App'x 119, 120 (3d Cir. 2017).

Discovery as to specific jurisdiction is likewise unwarranted because none of the issues on which Plaintiff seeks discovery "arise out of or relate to" the alleged tortious conduct. *Marten*, 499 F.3d at 296 (quoting *Helicopteros*, 466 U.S. at 414); Opp. at 11-12 (seeking discovery on "how many New Jersey companies Gridiron solicited about a potential investment" and "Gridiron's business dealings in New Jersey and overall revenues from this state"). Moreover, Plaintiff's entire basis for attempting to impute RWS's conduct to Gridiron rests on "email communications with RWS to coordinate the wording of [the] newsletters" at issue—*emails that Plaintiff already has*. *See* ECF No. 164 at ¶¶ 30, 144, 153.[8] Despite having already received discovery of such communications, Plaintiff still has not alleged how Gridiron "expressly aimed"

---

[8] Further, Gridiron has attested that it does not believe it has any unique documents or witnesses relevant to HomeSource's allegations (Declaration of Owen Tharrington, ECF No. 200-2 at ¶ 8), and HomeSource has alleged nothing to the contrary.

7

any allegedly tortious activity at New Jersey at all, let alone with the "reasonable particularity" that would warrant jurisdictional discovery. *Kinekt Design*, 2013 WL 3828508, at *2. Jurisdictional discovery is therefore unwarranted and should be denied. *Id.*

## II. Plaintiff Failed to Establish It Has Adequately Pled Any Claim Against Gridiron.

At the outset, Plaintiff cannot avoid the fact that all of its underlying claims in the SAC derive entirely from Plaintiff's distorted construction of a handful of statements in RWS's Newsletter. Of course, in reality, RWS's statements not only fairly characterized the litigation history of HomeSource and its affiliates and their owners, but RWS also provided its readers with the actual court filings so they could review for themselves. *See* Br. at 15-25. That is no basis for defamation or any of Plaintiff's other claims. Plaintiff's failure to explain the defects in its underlying claims—which alone are fatal—is addressed in detail in RWS's Reply Brief in Support of its Motion to Dismiss, which Gridiron incorporates by reference herein. As discussed below, Plaintiff's claims against Gridiron are subject to dismissal twice over, because it does nothing to salvage its failure to establish any theory of indirect liability against Gridiron.

### A. Plaintiff Fails to State a Claim for Civil Conspiracy.

In its Opposition, Plaintiff does not address the fact that its SAC "contains no factual allegations to support an agreement between the parties." *Swift v. Pandey*, 2014 WL 1745040, at *10-11 (D.N.J. Apr. 30, 2014). Even though Plaintiff has the documents that it claims show how Defendants "exchanged email communications regarding drafts of newsletters to HomeSource's customers and potential customers," ECF No. 164 at ¶ 30, Plaintiff is unable to allege any facts to support the existence of any agreement. Rather, Plaintiff simply alleges in conclusory terms that such an agreement exists. *See* ECF No. 164 at ¶ 28. Under the law, Plaintiff's "conclusory" and "threadbare recital[] of the elements" of a civil conspiracy claim is simply insufficient to survive a motion to dismiss. *Hassel v. Budd Co.*, 2014 WL 3955061, at *1 n.1 (E.D. Pa. Feb. 27, 2014)

(Robreno, J.) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d. Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As a result, Plaintiff's civil conspiracy claim against Gridiron should be dismissed.[9]

In its Opposition, Plaintiff argues (but did not plead) that the Defendants "agreed to conduct a smear campaign against HomeSource in order to unlawfully acquire HomeSource's customers and regain lost customers by posting false and defamatory statements about HomeSource in newsletters and emails that were sent to actual and potential HomeSource customers." Opp. at 14. Even these unpled allegations merely restate the conclusion that an agreement existed, and then simply add Plaintiff's legal conclusions that the Newsletters were "unlawful[,] … false and defamatory." *Id.* This adds nothing to plausibly suggest any agreement involving Gridiron. Moreover, the SAC actually only alleges that the Defendants "conspired to begin a smear campaign against HomeSource" and to "otherwise damage HomeSource's reputation and business." ECF No. 164 at ¶ 28. As Gridiron noted in its Opening Brief, Br. at 11-12, an alleged agreement to disparage a business competitor is not some unlawful purpose, but rather "the very essence of competition." *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 659 A.2d 904, 933 (N.J. App. Div. 1995).

### B. Plaintiff Fails to Argue That It Has Stated Any Claims for Vicarious Liability.

Plaintiff entirely fails in its Opposition to address the fact that it simply did not adequately plead vicarious liability as against Gridiron. Opp. at 13-18. Instead, Plaintiff spends several pages arguing the unremarkable point that it is legally allowed to plead vicarious liability as an alternative

---

[9] Plaintiff argues that because the Court permitted it to file its SAC, Plaintiff therefore has met the federal pleading standard. Opp. at 15-16. Such an argument obviously ignores the stark difference between the "liberal" policy of allowing amended pleadings generally under Fed. R. Civ. P. 15 and the more demanding pleading standard set forth in *Iqbal*, 556 U.S. at 678 and its progeny—a difference in standards of which Plaintiff's counsel is certainly aware.

to civil conspiracy (a point that Gridiron has never disputed). But in order to state a claim holding Gridiron vicariously liable for the alleged actions of another entity, Plaintiff must plausibly allege that the other entity "acted as [Gridiron's] agent or [that] a basis exists to pierce the corporate veil." Br. at 12-13 (quoting *Curtiss-Wright Corp. v. CNA Fin. Corp.*, 2012 WL 1044493, at *5 (D.N.J. Jan. 26, 2012) (citing *Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.*, 842 F.2d 1466, 1476-78 (3d Cir. 1988)). As Gridiron explained in its Opening Brief, Plaintiff has pled neither. *See* Br. at 12-15.[10] Consequently, Plaintiff's vicarious liability claims against Gridiron should all be dismissed.[11]

### C. Plaintiff Fails to State a Contributory Liability Claim for False and Misleading Advertising Under the Lanham Act.

Following the U.S. Supreme Court's ruling in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), neither the Third Circuit nor any district court within it has ever recognized a claim for contributory liability for false or misleading advertising under the Lanham Act. Br. at 9-10. In fact, as Plaintiff itself concedes, Opp. at 19, courts in this District have correctly distinguished between contributory liability claims for false and misleading advertising—which, after *Lexmark*, must be dismissed as a matter of law—and contributory infringement claims, which are permissible. *G&W Labs., Inc. v. Laser Pharms., LLC*, 2018 WL 3031943, at * 19 (D.N.J. June 19, 2018) (dismissing claim for the former as not actionable under

---

[10] Plaintiff's claim that it needs discovery before it can plead vicarious liability against Gridiron is belied by its own Memorandum of Law in Opposition to RWS's Motion to Dismiss, which *admits* that Plaintiff already has sufficient discovery to determine the Defendants' relationship. ECF No. 219 at 24.

[11] Plaintiff's haphazard gambit to impose vicarious liability upon Gridiron without pleading any of the required facts supporting a control relationship or veil-piercing is particularly ironic: at the same time, Plaintiff is propping up its entire case with the hyper-technical argument that businesses all controlled by members of the White family and alleged to have been alter egos of one another in the course of litigation with a third party were not fairly characterized collectively with respect to their shared negative litigation history. *See* Br. at 16-21. These starkly inconsistent positions underscore the specious nature of Plaintiff's claims.

10

the Lanham Act, but permitting the latter). Courts throughout the country have repeatedly recognized this distinction and rejected contributory false and misleading advertising claims as inconsistent with *Lexmark*'s proximate cause formulation. Br. at 9-10 (listing cases). Plaintiff ignores this case law and attempts to extend the limited recognition of contributory infringement claims to contributory liability for *any* Lanham Act claim. Opp. at 18. Indeed, each case Plaintiff cites pertains solely to trademark infringement and predates *Lexmark* by between at least 18 and as many as 32 years. *See Inwood Labs, Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853 (1982) (reviewing claim for trademark infringement and not false and misleading advertising); *Transdermal Prods., Inc. v. Performance Contract Packaging, Inc.*, 943 F. Supp. 551, 552-53 (E.D.P.A. 1996) (same)*; AT&T v. Winback & Conserve Prog.*, 42 F.3d 1421 (3d Cir. 1994) (same).

Moreover, Plaintiff's allegations do not even pass the *Duty Free* test[12] outlined by the Eleventh Circuit—which, contrary to Plaintiff's assertion, is the lone Circuit to have recognized contributory liability for false and misleading advertising under the Lanham Act.[13] Thus, even if

---

[12] *First*, Plaintiff has failed to allege that Gridiron "had the necessary state of mind" or knowledge. *Duty Free Americas, Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1277 (11th Cir. 2015). Plaintiff does not allege, "for example, how or when [Gridiron] came to know" that the newsletters contained false advertising. *In re Outlaw Lab, LLP*, 2020 WL 2797425, at *8 (S.D. Cal. May 29, 2020). Its only scienter allegations are legally insufficient "conclusory" and "threadbare recitals of the elements." *See* ECF No. 164 at ¶¶ 154-56; *Iqbal*, 556 U.S. at 678. *Second*, Plaintiff does not allege how Gridiron "directly controlled [RWS's] false advertising, was a dispositive factor in enabling [RWS's] false advertising, explicitly or implicitly encouraged [RWS's] false advertising, or refused to halt [RWS's] false advertising in bad faith." *Cf. Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 848 (N.D. Cal. 2019) (granting dismissal for failing *Duty Free* without accepting *Duty Free* even applied). Its conclusory allegation that Gridiron "induced RWS to publish these newsletters" is unsupported by any factual allegations. ECF No. 164 at ¶ 156.

[13] Several courts have noted that the Eleventh Circuit "stands alone" in its post-*Lexmark* recognition of such a claim. *See, e.g.*, *Acad. of Drs. of Audiology v. Int'l Hearing Soc.*, 237 F. Supp. 3d 644, 666 (E.D. Mich. 2017) (noting the Sixth Circuit has not recognized such a claim and dismissing as a matter of law); *Telebrands Corp. v. My Pillow, Inc.*, 2019 WL 1923410, at *3 (N.D. Ill. Apr. 30, 2019) (disagreeing with *Duty Free* and finding that a claim for contributory false advertising is not permitted under *Lexmark*). Moreover, though Plaintiff misrepresents the Second Circuit as having "explicitly recognized" such a claim, Opp. at 18, that Circuit did not

this Court were to endorse a disputed, out-of-circuit test and become the first in this Circuit to recognize Plaintiff's purported cause of action, Plaintiff has still failed to state a contributory liability claim for false and misleading advertising claim under the Lanham Act.

## CONCLUSION

For the reasons stated above, Gridiron's motion to dismiss should be granted.

DATED:  July 27, 2020

          Respectfully submitted,

          ROPES & GRAY LLP

          /s/ *Cassandra B. Roth*
          Cassandra B. Roth
          Daniel V. McCaughey, *admitted pro hac vice*
          Timothy Farrell, *admitted pro hac vice*
          Patrick S. Doherty, *admitted pro hac vice*
          1211 Avenue of the Americas
          New York, New York 10036
          T: (212) 596-9000
          F: (212) 596-9090
          Cassandra.Roth@ropesgray.com
          Daniel.McCaughey@ropesgray.com
          Timothy.Farrell@ropesgray.com
          Patrick.Doherty@ropesgray.com

---

discuss the issue at all in *Merck Eprova AG v. Gnosis S.p.A.*, which it also heard before the Supreme Court even issued its ruling in *Lexmark*.  760 F.3d 247 (2d Cir. 2014).

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE HOMESOURCE, CORP., | Case No. 1:18-cv-11970 |
| Plaintiff, | Hon. Eduardo C. Robreno (EDPA) |
| v. | Hon. Ann Marie Donio |
| RETAILER WEB SERVICES, LLC, RETAILER WEB SERVICES II, LLC, NATIONWIDE MARKETING GROUP, LLC, GRIDIRON CAPITAL, LLC, and JOHN DOES, | **CERTIFICATE OF SERVICE** |
| Defendants. | |

**CASSANDRA B. ROTH** hereby certifies as follows:

On July 27, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                    /s/ *Cassandra B. Roth*
                                                    CASSANDRA B. ROTH