IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

THE HOMESOURCE, CORP.          :
                               :
    v.                         :  CIVIL ACTION NO. 18-11970
                               :
RETAILER WEB SERVICES, LLC,    :
et al.                         :

**O R D E R**

**AND NOW**, this **19th** day of **October, 2020**, upon consideration of the following motions and responses, and after oral argument on October 8, 2020, it is hereby **ORDERED** that:

    1.   the motion to dismiss filed by Retailer Web Services II, LLC (ECF No. 194) is **GRANTED in Part** and **DENIED in part**. The motion is **GRANTED** in that the John Does are **SEVERED** from this action for the reasons stated on the record during oral argument. In all other respects, the motion is **DENIED.**

    2.   the motion to dismiss filed by Retailer Web Services I, LLC (ECF No. 195) is **DENIED.**

    3.   the motions to dismiss filed by Nationwide Marketing Group, LLC and Gridiron Capital, LLC (ECF Nos. 196 & 200) are **GRANTED** and these two Defendants are **DISMISSED** for lack of personal jurisdiction.[1]

---

[1]    HomeSource contends that the Court may exercise both general and specific personal jurisdiction over Nationwide and Gridiron. First, neither Defendant is incorporated nor headquartered in New Jersey and there are no exceptional circumstances under which exercising general personal

jurisdiction would be appropriate. Therefore, the Court lacks general jurisdiction over these two Defendants. <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137-38 (2014).

Second, the Court also lacks specific personal jurisdiction over the two defendants. For specific jurisdiction to lie in a case such as this, a plaintiff must show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm caused by that tort in the forum; and (3) the defendant <u>expressly aimed</u> his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity. <u>IMO Indus. v. Kiekert AG</u>, 155 F.3d 254, 265-66 (3d Cir. 1998) (emphasis added). The parties seriously dispute only the third element.

HomeSource claims the third element is met based on its allegations in the Second Amended Complaint ("SAC") that Nationwide and Gridiron (along with Retailer Web Services) purposefully directed defamatory newsletters about HomeSource, a New Jersey corporation, to its New Jersey actual and prospective customers. HomeSource notes that ADC, one of HomeSource's four customer groups, is based in New Jersey and claims that "dozens" of recipients of the newsletters are New Jersey businesses. HomeSource also alleges that this conduct caused it to suffer financial and reputational damage in New Jersey.

The case law is clear that: (1) knowing HomeSource is in New Jersey; and (2) knowing the harm would be felt in New Jersey is insufficient to confer specific jurisdiction. <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254, 263 (3d Cir. 1998); <u>Intellect Design Arena, Inc. v. DataCubes Inc.</u>, No. CV1912184ESSCM, 2020 WL 2832568, at *5 (D.N.J. June 1, 2020). This Court has also found that "even assuming that Defendants directed the alleged attack at Plaintiff's clients across the country, and some of these clients are located in New Jersey such allegations are insufficient to confer specific jurisdiction on Defendants, because they fail to show that Defendants expressly aimed their conduct at New Jersey." <u>Intellect Design</u>, 2020 WL 2832568 at *5. Applying these concepts indicates that HomeSource's arguments fail unless, at a minimum, it can show that more than "some" of the recipients of the newsletters were New Jersey residents such that New Jersey, rather than merely HomeSource and businesses spread around the country, was the focal point of the allegedly tortious behavior. It has not.

2

4. the joint motion to dismiss the John Doe defendants (ECF No. 211) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Eduardo C. Robreno
**EDUARDO C. ROBRENO, J.**

---

HomeSource neglects to state how many businesses received the newsletters or the percentage thereof that are New Jersey businesses. According to the SAC, the Defendants sent the allegedly defamatory newsletters to HomeSource's "customers and potential customers." Plaintiff has explained that its customers and potential customers are members of four customer groups. As stated, HomeSource alleges that one of these four groups, ADC, is based in New Jersey. While that may be, ADC claims that it has over 200 members across nine states. Thus, targeting members of ADC is not the same as targeting New Jersey. The other three customer groups are presumably not based in New Jersey, weakening HomeSource's argument further.

HomeSource's counsel's declaration also lists "twenty of the dozens of dealers located in New Jersey to whom [Retailer Web Services] sent the Newsletter, with input and approval from Nationwide and Gridiron." Based on the allegation in the SAC that the four customer groups include 468 businesses, these "dozens" of New Jersey businesses would still be a mere fraction of the newsletters' recipients.

As a result, the Court concludes that HomeSource has not met its burden of showing that Nationwide and Gridiron expressly aimed the newsletters and their content at New Jersey. Ultimately, none of the evidence presented indicates that the Defendants targeted New Jersey rather than just HomeSource and its customers, regardless of where they were located. Therefore, the Court lacks specific personal jurisdiction over Nationwide and Gridiron.

3