**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE HOMESOURCE, CORP., Plaintiff, v. RETAILER WEB SERVICES, LLC, et al., Defendants. | Civil Action No.: 1:18-cv-11970<br>Hon. Eduardo C. Robreno (EDPA)<br>Hon. Ann Marie Donio |

**RETAILER WEB SERVICES II, LLC'S**
**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

Dated: December 24, 2020

Respectfully submitted,

*/s/Ethan Hougah*
Louis R. Moffa
Ethan Hougah
Alexandra S. Jacobs
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
457 Haddonfield Road, Suite 600
Cherry Hill, New Jersey 08002
(856) 488-7700

Adam Wolek (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601
Tel.: (312) 836-4063
Fax: (312) 966-8598
awolek@taftlaw.com

William C. Wagner (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Tel.: (317) 713-3500
Fax: (317) 713-3699
wwagner@taftlaw.com

*Counsel for Defendants Retailer Web Services II, LLC; Retailer Web Services, LLC; Nationwide Marketing Group, LLC*

## TABLE OF CONTENTS

Table of Contents ........ 3
Table of Authorities ........ 4
INTRODUCTION ........ 5
BACKGROUND ........ 5
A. HomeSource's pending claims. ........ 5
B. RWS seeks discovery as to the pending claims. ........ 6
C. The October 16, 2019 Court Order ordered HomeSource to produce this material. ........ 7
D. RWS has attempted to informally resolve these disputes ........ 9
ARGUMENT ........ 9
I. HomeSource should produce unredacted documents. ........ 10
II. HomeSource has not produced key financial information. ........ 12
III. HomeSource refused to produced payments to the White Family. ........ 15
IV. HomeSource failed to produce its webserver logs. ........ 16
CONCLUSION ........ 18

# TABLE OF AUTHORITIES

Cases

*Ana Cheri v. Linvas Corp.*, No. CV-178317-MCA-JAP, 2019 WL 11271377(D.N.J. May 31, 2019) .... 13, 14

*Barnes Found. v. Twp. of Lower Merion*, No. CIV. A. 96-372, 1996 WL 653114 (E.D. Pa. Nov. 1, 1996) .... 13

*Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186 (D.N.J. 2010) .... 11

*Bell v. Lockheed Martin Corp.*, No. CIV. 08-6292, 2010 WL 3724271 (D.N.J. Sept. 15, 2010) .... 10

*G.D. v. Kenny*, 205 N.J. 275 (2011) .... 15

*In re Mercedes-Benz Emissions Litig.*, No. 16-CV-881, 2020 WL 487288 (D.N.J. Jan. 30, 2020) .... 11

*Morrison v. Philadelphia Hous. Auth.*, 203 F.R.D. 195 (E.D. Pa. 2001) .... 12

*Orion Power Midwest, L.P. v. American Coal Sales Co.*, No. 2:05-cv-555, 2008 WL 4462301 (W.D. Pa. Sept. 30, 2008) .... 12

*Pacitti v. Macy's*, 193 F.3d 766 (3d Cir. 1999) .... 10

*Varrallo v. Hammond Inc.*, 94 F.3d 842 (3d Cir. 1996) .... 10

*Ward v. Zelikovsky*, 136 N.J. 513 (1994) .... 15

Rules

Rule 26(b) .... 9, 10

Rule 34 .... 9

Rule 37(a) .... 10

## INTRODUCTION

Defendant Retailer Web Services II, LLC ("RWS") files this Motion to Compel to make Plaintiff The HomeSource Corp. ("HomeSource") comply with its discovery obligations. A Court Order already governs much of this dispute, and this Motion to Compel seeks in large part to force HomeSource to comply with that Order. Despite diligent efforts at resolving these discovery disputes, RWS has been left with no choice other than to seek recourse from this Court.

## BACKGROUND

### A. HomeSource's pending claims.

HomeSource's Second Amended Complaint ("SAC"), ECF No. 164, is based largely on a single newsletter RWS published, combined with alleged cyber activity. HomeSource asserts causes of action for (1) Lanham Act violations, (2) Defamation, (3) Tortious Interference with Prospective Economic Advantage, (4) Tortious Interference with Contract, (5) Common Law and Federal Unfair Competition, (6) Computer Fraud and Abuse Act violations, and (7) Civil Conspiracy.[1] HomeSource's claims and legal theories are expansive, and HomeSource has asserted substantial damages (over $45 million). Necessarily, the Defendants have the right to investigate and defend themselves against those expansive claims.

RWS has summarized HomeSource's claims and the factual background behind those claims previously. *See* ECF No. 194-1 pp. 3–10. To summarize for purposes of

---

1 HomeSource asserted other claims against Nationwide and Gridiron, but those parties have been dismissed for lack of personal jurisdiction; other purported claims asserted against anonymous John Does have likewise been severed. ECF No. 242.

this motion, HomeSource and RWS provide similar services to independent appliance dealers. On July 20, 2018, RWS sent a newsletter to members of an appliance dealer industry group. SAC ¶ 33. HomeSource claims that Newsletter defamed it by pointing out a security issue on HomeSource's website, pointing to images HomeSource used with another company's watermark, and commenting on litigation involving companies with overlapping ownership interests and management as HomeSource. HomeSource also alleges that RWS used the usernames and passwords of two HomeSource customers to obtain unidentified proprietary information, SAC ¶¶ 74–77, and that RWS used cyber "spiders or crawlers" to obtain information from HomeSource's customers' publicly accessible websites. *Id.* ¶¶ 78–84.

**B. RWS seeks discovery as to the pending claims.**

This discovery dispute stems from discovery requests served on HomeSource on August 27, 2018. (HomeSource's responses to RWS's First Set of Interrogatories and First Set of Requests for Production are attached as Exhibits 1 and 2 respectively.) In relevant part, RWS's sought to investigate HomeSource's Tortious Interference claims by seeking

- all documents relating to customers allegedly lost by HomeSource as a result of Defendants' conduct;
- all documents relating to contracts and other agreements between HomeSource and any customer identified in response to Interrogatory No. 11 [which in turn sought the identity of "each customer HomeSource claims to have lost due to Defendants' statements"];
- and all documents relating to the payment histories of any customer identified

in response to Interrogatory No. 11.

(Ex. 1, ROG 11; Ex. 2, RFPs 21–23.) These requests go directly to the questions of whether any contracts or economic prospects were lost (necessary elements in a tortious interference cause of action), and, if so, the amount of damages.

RWS also sought documents showing payments made by HomeSource and any other person or entity referenced in the Complaint, Ex. 2, RFP 7, which would include members of the White Family or the other entities owned or operated by the White Family. These requests go directly to RWS's defense of HomeSource's defamation claim; if the other business entities (like Software Support PMW, Inc.) are related companies or alter egos of HomeSource, then RWS will establish truth or substantial truth as an absolute bar to HomeSource's defamation claim.

RWS sought "all documents relating to the revenue of HomeSource from January 1, 2016 … including but not limited to balance sheets, profit-loss statements, bank statements, accounts receivable, accounts payable, and correspondence related thereto." Ex. 2, RFP 24. Of course, this information goes directly to HomeSource's damages calculation.

**C. The October 16, 2019 Court Order ordered HomeSource to produce this material.**

Much of this discovery dispute has already been before the Court, and Judge Williams adjudicated these questions on October 16, 2019 (the "Order"), ECF No. 129. With the lift of the stay of discovery, ECF No. 243 ¶ 1, the need for this information has again become pressing.

As for the information related to the tortious interference claims, this Court agreed

that disclosure was warranted: "HomeSource shall identify each customer it allegedly lost and the purported damages HomeSource incurred as a result of each lost customer … The Court encourages plaintiff to consolidate the information in one document that clearly sets forth the name of each customer and damages asserted as to each customer." (Order, p. 3 ¶ 1.) The Order likewise required HomeSource to produce "any and all documents and records that form the basis of its experts' damages calculations." (*Id.* ¶ 2.) And the Order required HomeSource to disclose all of its alleged lost-customer contracts. (*Id.* ¶ 3 ("HomeSource shall produce each executed contract of the customers it contends were lost to RWS based on the conduct RWS allegedly engaged in that forms the basis of the instant lawsuit").

As to the financial information, the Court also ordered that HomeSource needed to do more. The Court found that HomeSource's summary accounting was inadequate and that actual documentation must be produced. (10/7/2019 Disc. Conf. Tr. 80:10–16.)

In addition to the disputes noted above, the Order addressed RWS's need to review weblog information. HomeSource's SAC sounds in web security, with allegations of hacking, improper website access, web spiders and crawlers, and allegedly false statements regarding the security of its website. RWS sought information regarding HomeSource's weblogs, and this Court already agreed that such access was relevant and appropriate in light of the subject matter of the case.

Thus, the Order ordered HomeSource to make a mirror image of its database, have the parties' respective experts meet and confer about RWS's expert review of the database, and then allow RWS's expert to review the mirror image. (Order, p. 4 ¶ 5.)

HomeSource's CEO James White has submitted a declaration indicating that it has produced information relating to cyberattacks, but his declaration clearly implies that HomeSource has withheld any such information that it unilaterally decided contained third-party data. ECF No. 153, Ex. G, ¶ 5 ("any and all information that we have identified as related to the cyber and/or hacking attacks, *and which we believe does not contain private third party data*, has been produced to RWS").

More than a year after the Order, HomeSource has not complied with its mandates.

**D. RWS has attempted to informally resolve these disputes**

RWS has attempted informally to get HomeSource to comply with its discovery obligations. That includes letters dated August 15, 2019 (ECF No. 105-1), August 22, 2019 (ECF No. 110-1), further letters on January 10, 23, 28, and February 2, 2020; and most recently another round of correspondence on November 4, 2020. (RWS's letter and HomeSource's response are attached as Exhibits 4 and 5.) This latest round of written correspondence was followed by a telephonic, hour-long meet and confer on November 23, 2020.

**ARGUMENT**

RWS propounded requests for documents under Rule 34, which requires HomeSource to comply and produce documents within the scope of Rule 26(b). Rule 26(b)(1) entitles a party to discover information that is "relevant to any party's claim or defense"; such information need not be "admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." "It is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v.*

*Macy's*, 193 F.3d 766, 777 (3d Cir. 1999). "The contemplated breadth of permissible discovery thus extends well beyond the more confined universe of evidence admissible at trial." *Bell v. Lockheed Martin Corp.*, No. CIV. 08-6292, 2010 WL 3724271, at *7 (D.N.J. Sept. 15, 2010).

Although Rule 26(b)(1) also imposes proportionality restraints, those factors include the importance of the issues at stake; the amount of controversy; and the parties' relative access to relevant information. Here, HomeSource seeks over $45 million in damages, and RWS seeks basic business records and information going to the heart of the claims, information that is in the sole possession of HomeSource—so all proportionality factors weigh heavily in RWS's favor.

Rule 37(a) provides that RWS may move for an order compelling discovery, including for documents not produced. Rule 37(a)(3)(B)(iv). If this Court grants discovery, it must award RWS its reasonable attorney fees unless this Court finds that HomeSource's refusal to provide discovery was substantially justified. Rule 37 (a)(5).

RWS seeks an order compelling discovery of four categories of information that HomeSource so far has refused to provide.

## I. HomeSource should produce unredacted documents.

HomeSource asserts two tortious interference claims (with prospective economic advantage, and with contracts), each of which involve the allegation that RWS's Newsletter unlawfully caused HomeSource's customers to abandon their economic relationship with HomeSource. *Varrallo v. Hammond Inc.*, 94 F.3d 842, 848 (3d Cir. 1996) (such claims include element of actual damages). And as noted above, the Order already mandated disclosure of this information. (Order, p. 3 ¶¶ 1–3.)

In response to the request to produce the contracts it alleges it lost, HomeSource has produced numerous documents marked "Attorney' Eyes Only," but those documents are also heavily redacted rendering them indecipherable and unusable. Given HomeSource's claim to confidentiality, RWS will not attach those here, but for reference these include documents Bates stamped 004104-004309, 014776-015098. HomeSource says it does not want to provide unredacted copies of these documents because, it claims, it does not trust RWS with customer information.

To be sure, the Discovery Confidentiality Order ("Confidentiality Order") allows parties to, in good faith, mark documents as "Confidential" or "Attorneys' Eyes Only." ECF No. 22. That AEO marking is the full solution to HomeSource's stated concerns; that discovery order does not allow for redactions of documents already marked AEO. HomeSource has never sought any amendment or modification of the Confidentiality Order.

The discovery rules do not permit redaction in these circumstances. *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 197 (D.N.J. 2010), *aff'd*, No. CIV. 08-6292, 2010 WL 3724271 (D.N.J. Sept. 15, 2010) (denying protective order, ordering company to produce unredacted documents). That is because the Confidentiality Order already protects HomeSource from its claimed concerns. *See In re Mercedes-Benz Emissions Litig.*, No. 16-CV-881, 2020 WL 487288, at *5 (D.N.J. Jan. 30, 2020) (affirming Special Master's "rul[ing] that considerations of international comity do not relieve the Mercedes Defendants of its obligations under U.S. law and that the Confidentiality Order provision sufficiently protects unredacted personal data of EU Citizens").

Although the party seeking an order compelling discovery starts with the burden

of showing relevance, *Morrison v. Philadelphia Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001), relevance has been conceded by HomeSource who produced the documents and by the Court's prior Order mandating disclosure. Thus the burden shifts to HomeSource as the party resisting full discovery of the unredacted copies to put forth a lawful basis for withholding information. *Id.*

HomeSource cannot meet that burden. Parties are not allowed to unilaterally redact discovery based on its own whims. *See Orion Power Midwest, L.P. v. American Coal Sales Co.*, No. 2:05-cv-555, 2008 WL 4462301, at *1–2 (W.D. Pa. Sept. 30, 2008) (affirming special master's finding, "that redaction of documents is disfavored and is appropriate only in limited circumstances" and finding that there is no express or implied support in the Federal Rules of Civil Procedure by "which a party would scrub responsive documents of non-responsive information").

The Confidentiality Order's AEO procedure renders HomeSource's claimed need for redaction moot. The Court should compel HomeSource to produce unredacted copies of any document previous produced with an "AEO" tag, because that tag already provides full protection to HomeSource. HomeSource's position that it could comply with this Court's prior Order by producing documents that have been redacted of any useful information is not "substantially justified," so this Court should award RWS's attorney fees accrued in compelling these documents.

**II. HomeSource has not produced key financial information.**

HomeSource claims substantial monetary damage from RWS's Newsletter, yet refuses to provide key financial information relevant to its damages claims. Specifically, HomeSource refuses to provide documents relating to its revenues during

the time it says RWS caused it damages. RWS needs this evidence to investigate the financial state of the company before and after the supposed effects stemming from RWS's Newsletter. HomeSource has responded that it would rather chose for itself what financial evidence RWS is allowed to see. HomeSource has refused to produce balance sheets, profit-loss statements, bank statements, accounts receivable information, or accounts payable information. Ex. 2, RFP 24.

Where a plaintiff claims economic damages to their business—particularly where a party claims damages of $45 million—the defendant must have the right to investigate the validity of those damages calculations. *Ana Cheri v. Linvas Corp.*, No. CV-178317-MCA-JAP, 2019 WL 11271377, at *4 (D.N.J. May 31, 2019) (where plaintiff claimed economic harm from defendants' appropriating her public image, "Information regarding the impact of Defendants' alleged actions on Plaintiffs' finances is, therefore, plainly relevant. This would include information, such as tax returns, that provide <u>a comprehensive picture of Plaintiffs' finances both before and after</u> Defendants' alleged misappropriation" (emphasis added)); *Barnes Found. v. Twp. of Lower Merion*, No. CIV. A. 96-372, 1996 WL 653114, at *4 (E.D. Pa. Nov. 1, 1996) (where party's financial status was at issue, court ordered plaintiff to produce "(A) tax returns and audited financial statements for 1995 and 1996 if they exist and, if they do not exist, the documents from which equivalent information can be derived; (B) all third party contracts relating to the income and expenses" and "(C) all source documents from which the financial summary data … was ultimately derived").

HomeSource has claimed it suffered $45 million in damages as a result of RWS's Newsletter. Given its claimed financial damage, its financial statements are clearly

relevant to prove whether or not HomeSource suffered this alleged financial loss. RWS is thus entitled to "a comprehensive picture of [HomeSource]'s finances both before and after" the alleged conduct. *Ana Cheri*, 2019 WL 11271377, at *4. Moreover, RWS has not asked HomeSource to engage in any type of burdensome analysis of these source documents; all of the document categories RWS seeks are surely kept in the ordinary course of business. It would likely take a matter of minutes for HomeSource to simply collect them and transmit them to RWS. And again, insofar as HomeSource intends to make any confidentiality protest, this Court's Confidentiality Order already permits HomeSource to mark financial documents as confidential or attorneys' eyes only, if HomeSource believes they qualify.

RWS's needs access to HomeSource's balance sheets, profit-loss statements, bank statements, accounts receivable, and accounts payable to obtain an accurate and reliable picture of HomeSource's finances during the relevant time, and whether it actually suffered the losses it claims. It is notable that this Court has already found that HomeSource's attempts to show the alleged financial ramifications of RWS's conduct—namely through spreadsheets created by HomeSource itself—were not "provided in a reasonable manner susceptible of discernment by defendant." Order p. 3 ¶ 1. Given the amount HomeSource claims is at stake, RWS must have direct access to this crucial financial information.

The question of whether HomeSource suffered the financial effects it claims is a central one in this case; accordingly, RWS should have access to reliable information relating to that question. The financial statements sought in RFP 24 must be produced.

**III. HomeSource refused to produce payments to the White Family.**

RWS sought production of documents showing any payments made from HomeSource to the White family, or other related entities. Ex. 2, RFP 7. HomeSource has refused to provide any such information.

HomeSource's defamation claim involves an allegation that HomeSource and members of the White Family and their companies are strictly separate; and that, therefore, RWS committed defamation against HomeSource by allegedly conflating HomeSource with the White family and their companies in RWS's Newsletter.

One of RWS's defenses is that these companies are not as distinct as HomeSource alleges. This goes to the heart of HomeSource's claim of defamation. For instance, in 2015 Furniture Distributors, Inc. ("FDI") sued Software Support-PMW, Inc. ("Software Support"), a company owned by Greg White, James White Jr. (HomeSource's executives), and their parents. (Ex. 3.) FDI's 2015 lawsuit sought to collect on an earlier judgment against Software Support; and where FDI alleged in detail that the White Family transferred assets freely across the Software Support and HomeSource entities and the White family in disregard for the corporate form to hide assets. (*Id.* ¶¶ 64–127.) FDI asserted, in particular, that Software Support and HomeSource have operated in each other's names. (*Id.* ¶ 122.) HomeSource's present defamation claim relies, in part, on the allegation that RWS repeated these allegations.

Blackletter New Jersey defamation law affords absolute protection to true statements. *Ward v. Zelikovsky*, 136 N.J. 513, 528 (1994). It also protects "substantially true" statements. *G.D. v. Kenny*, 205 N.J. 275, 292 (2011). Given that the truth or even substantial truth of RWS's statements would function as an absolute bar prohibiting

HomeSource's defamation claims, RWS must have the attendant right to discover the full relationship between HomeSource, Software Solutions, and members of the White Family. RWS needs these facts to show that all of the alleged statements about HomeSource were true or substantially true, and HomeSource should not be permitted to shield this information by refusing to provide it in discovery. This information should be compelled.

**IV. HomeSource failed to produce its webserver logs.**

HomeSource claims its customers' websites were attacked. HomeSource's CEO submitted a declaration stating that HS's webserver logs were the best evidence of the attacks. Decl. of J. White, ECF No. 153, Ex. G, ¶ 5 ("The primary evidence of the cyberattacks that we possess is contained in our logs of all traffic to our websites.") After motions practice and several hearings, Judge Williams ordered HomeSource to fingerprint its server logs by obtaining a hash value to verify its authenticity, to make its expert available to speak with RWS's expert to understand how HomeSource gathered the data, and to provide the mirror image of its webserver logs to RWS's expert to confirm HomeSource's search and to also run her own searches of the data. Judge Williams explained that the purpose of expert testimony is not just to confirm what HomeSource's expert did, but to also allow RWS's expert to run her own searches to offer an opinion that HomeSource's expert should have done additional searches. Despite Judge Williams' Order [ECF No. 129] requiring HomeSource to produce the mirror image and make its expert available, HomeSource has refused to produce the logs.

HomeSource claims that the logs are no longer relevant since this Court severed

HomeSource's claims against the John Doe Defendants. However, there are still many still-pending claims in HomeSource's SAC for which the logs constitute crucial material evidence, including the following allegations:

- that RWS's Newsletter said HomeSource's websites had a potential security hole and vulnerabilities (SAC ¶ 50); the weblogs will show whether that statement was true (and truth is a defense to HomeSource's defamation claim);
- that RWS used HomeSource's customers' usernames and password to obtain proprietary information, (SAC ¶¶ 74–77) which may be disclosed in the logs.
- that RWS deployed a spider to crawl HomeSource's customers' websites, which caused damage to HS's websites by slowing the functionality of the websites (SAC ¶ 82);
- that RWS conspired to hack and/or promoted the hacking of its websites so as to engage in unfair competition (SAC ¶ 121);
- and that it suffered money damages including having to conduct a damage assessment and determine the extent of the breach after each unlawful act by RWS (SAC ¶ 134).

In short, even without the John Doe claim, HomeSource's entire complaint sounds in web security, web access, and similar web-related issues. Notably, HomeSource never sought reconsideration of the Order that mandates RWS's ability to access this weblog information in some form or another. HomeSource cannot make allegations sounding in website security, and then deny RWS a chance to investigate those claims. Access to HomeSource's weblogs, as already ordered by Judge Williams, should be compelled.

## CONCLUSION

RWS respectfully requests that this Court grant this Motion to Compel, order HomeSource to produce (i) unredacted documents; (ii) the financial evidence RWS requested to obtain a full picture of HomeSource's alleged damages; (iii) documents showing financial transfers between HomeSource, the White Family, and Software Support; and (iv) a mirror image of HomeSource's weblog data base so that RWS's expert can review the contents (as already ordered more than a year ago).

Dated: December 24, 2020

Respectfully submitted,

*/s/Ethan Hougah*

Louis R. Moffa
Ethan Hougah
Alexandra S. Jacobs
MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
457 Haddonfield Road, Suite 600
Cherry Hill, New Jersey 08002
(856) 488-7700

Adam Wolek (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601
Tel.: (312) 836-4063
Fax: (312) 966-8598
awolek@taftlaw.com

William C. Wagner (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Tel.: (317) 713-3500
Fax: (317) 713-3699
wwagner@taftlaw.com

*Counsel for Defendants Retailer Web Services II, LLC; Retailer Web Services, LLC; Nationwide Marketing Group, LLC*