# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE HOMESOURCE, CORP., | Civil Action No.: 1:18-cv-11970 |
| Plaintiff, | |
| | Hon. Eduardo C. Robreno (EDPA) |
| v. | Hon. Ann Marie Donio |
| | |
| RETAILER WEB SERVICES, LLC, *et al.*, | **(ORAL ARGUMENT REQUESTED)** |
| Defendants. | |

## RETAILER WEB SERVICES II, LLC'S REPLY
## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL

Dated: January 20, 2021

Respectfully submitted,

*/s/  Ethan Hougah*

Louis R. Moffa
Ethan Hougah
Alexandra S. Jacobs
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
457 Haddonfield Road, Suite 600
Cherry Hill, New Jersey 08002
(856) 488-7700

Adam Wolek (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601
Tel.: (312) 836-4063
Fax: (312) 966-8598
awolek@taftlaw.com

William C. Wagner (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Tel.: (317) 713-3500
Fax: (317) 713-3699
wwagner@taftlaw.com

*Counsel for Defendants Retailer Web Services II,
LLC; Retailer Web Services, LLC; Nationwide
Marketing Group, LLC*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 3

TABLE OF AUTHORITIES ....................................................................................... 4

ARGUMENT ............................................................................................................... 5

I.    HomeSource provides no meaningful argument to support its unilateral
      redaction of responsive documents. ........................................................... 5

II.   HomeSource must provide financial documentation if it intends to claim
      $45 million in damages. .............................................................................. 7

III.  RWS has the right to investigate whether the Whites and their entities
      transferred assets across entities, ignored the corporate form, or operated
      in each other's names. .............................................................................. 11

IV.   HomeSource must produce the mirror image of its weblog database, as
      previously ordered by the Court. ............................................................... 14

CONCLUSION ......................................................................................................... 16

CERTIFICATION OF SERVICE ............................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Ana Cheri v. Linvas Corp.*, No. CV-178317-MCA-JAP, 2019 WL 11271377
(D.N.J. May 31, 2019) ............................................................... 10

*Barnes Found. v. Twp. of Lower Merion*, No. CIV. A. 96-372, 1996 WL 653114 (E.D.
Pa. Nov. 1, 1996) ................................................................... 9

*Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186 (D.N.J. 2010) ................. 5

*Cantor v. Equitable Life Assur. Soc. of U.S.*, No. CIV. A. 97-5711, 1998 WL 306208
(E.D. Pa. June 9, 1998) ........................................................... 7

*Condit v. Dunne*, 225 F.R.D. 100 (S.D.N.Y. 2004) ........................... 13

*G.D. v. Kenny*, 205 N.J. 275 (2011) ........................................ 12

*In re Mercedes-Benz Emissions Litig.*, No. 16-CV-881, 2020 WL 487288 (D.N.J. Jan.
30, 2020) .......................................................................... 5

*Orion Power Midwest, L.P. v. American Coal Sales Co.*, No. 2:05-cv-555, 2008 WL
4462301 (W.D. Pa. Sept. 30, 2008) .............................................. 6

*Ward v. Zelikovsky*, 136 N.J. 513 (1994) ................................... 12

# ARGUMENT

Retailer Web Services II, LLC ("RWS") seeks to compel four categories of information: (I) legible versions of documents HomeSource impermissibly redacted; (II) financial documents that can prove or rebut HomeSource's claim of $45 million in damages; (III) financial documents illuminating the relationship between HomeSource, individuals in the White Family, and entities associated with those individuals (a central question at the heart of HomeSource's defamation claim); and (IV) the mirror image of a webserver that can prove or rebut HomeSource's allegations regarding cyber activities. ECF No. 254.

This information is not extraneous or merely tangentially related to side issues in the case; to the contrary, it lies at the heart of HomeSource's claims and RWS's defenses. HomeSource's Response, ECF No. 255, fails to show why RWS cannot discover basic information related to its defenses, particularly under a Confidentiality Order. RWS's Motion to Compel should be granted.  RWS requests oral argument.

## I.   HomeSource provides no meaningful argument to support its unilateral redaction of responsive documents.

In its opening brief, RWS pointed out the basic discovery rule that prohibits litigants from unilaterally redacting documents, as HomeSource admits it has done here, especially when there is a Confidentiality Order in place to protect the information. *See Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 197 (D.N.J. 2010), *aff'd*, No. CIV. 08-6292, 2010 WL 3724271 (D.N.J. Sept. 15, 2010); *In re Mercedes-Benz Emissions Litig.*, No. 16-CV-881, 2020 WL 487288, at *5 (D.N.J. Jan. 30, 2020). That rule applies even when a party claims that it redacted non-responsive information from otherwise responsive documents. *Orion Power Midwest, L.P. v. American Coal Sales*

*Co.*, No. 2:05-cv-555, 2008 WL 4462301, at *1–2 (W.D. Pa. Sept. 30, 2008).

HomeSource's only argument in response—citing no authority—relies on the exact argument rejected in *Orion Power*, namely HomeSource's own say-so that the information is not important. *See* ECF No. 255 p. 2. The only wrinkle thrown in is HomeSource's suggestion that the parties burden the Court with reviewing *in camera* the documents HomeSource had no right to redact in the first place.

RWS does not agree that this Court should be burdened in that fashion. Nor should the Court be forced, in effect, to reconsider the Confidentiality Order entered in this matter over two years ago. ECF No. 22. That Confidentiality Order provides for AEO designations. If HomeSource wanted different confidentiality procedures—and surely HomeSource knew the contents of its documents at the time the Court entered the Confidentiality Order—then HomeSource should have asked for the extreme result advanced here: that *not even RWS's attorneys or retained experts* be permitted to view the entirety of otherwise responsive documents. To be sure, RWS would have fought such a request; but until its unilateral redaction of responsive documents, HomeSource never suggested such a procedure was permissible under the Rules of Civil Procedure (a suggestion that finds no support in the cases cited to the Court). The time to reconsider that Confidentiality Order is long past.

The only other argument HomeSource makes is to repeat its allegation—one that remains unproven—that RWS "accessed HomeSource's system without authorization and otherwise tried to hack into its system on multiple occasions." ECF No. 255 p. 2. To repeat a basic point, however: the redacted documents in question are *already marked AEO*. HomeSource has never made any allegation that RWS's *counsel* hacked

6

their website, nor that RWS's counsel have ever violated the Confidentiality Order by sharing AEO material with RWS personnel. HomeSource thus provides no argument against the notion RWS first advanced: that the AEO designation provides a complete solution to HomeSource's claimed concerns.

In sum, there is no basis—in the Rules of Civil Procedure, in case law, or in the two-year-old Confidentiality Order governing discovery in this matter—permitting HomeSource to redact documents before producing them. The Court should compel unredacted copies (again, still marked AEO), and should award RWS its fees in bringing this Motion.

## II. HomeSource must provide financial documentation if it intends to claim $45 million in damages.

HomeSource acknowledges that in October 2019, the Court ordered it to "produce any and all documents and records that form the basis of its experts' damages calculations." ECF No. 255 p. 3; ECF No. 129 ("the Order"). Despite a $45 million damages claim, HomeSource refuses to produce profit and loss statements, tax returns, or other financial documents it concedes it has.

Notably, the Order did not limit itself to the "documents physically sent to HomeSource's expert." Nor did it limit itself to the "documents HomeSource's expert personally viewed." It applied to "any and all documents and records *that form the basis* of its experts' damages calculations." The range of documents "forming the basis" of the damages calculations is much broader than the documents physically sent to an expert. *See Cantor v. Equitable Life Assur. Soc. of U.S.*, No. CIV. A. 97-5711, 1998 WL 306208, at *2 (E.D. Pa. June 9, 1998) (discovery request for "any and all documents

and reports that form the basis of [the] discontinuance of plaintiff's claims" satisfied where insurance company "produced the entire underwriting and claims file relating to plaintiff's claim, including the files given to and maintained by independent medical examiners and field representatives, which numbers well over 1,200 pages").

HomeSource argues, in essence, that it successfully sidestepped the plain import of the Order by doing a self-review of its own financial documents, summarizing its own findings of itself into a spreadsheet, and then orally relaying the spreadsheet's contents to its expert. ECF No. 255 p. 3. Thus, HomeSource's argument goes, since it strategically never *sent* financial records directly to its expert, it thereby evaded the Court's previous order to produce "any and all documents and records that form the basis of its experts' damages calculation." *Id.*

HomeSource cites no case for the remarkable notion that a party can avoid disclosing financial documents by orally relaying their contents to their expert, who can then turn around and say he did not rely on any physical documents so there is nothing to disclose. Notwithstanding HomeSource's attempt to place its own intervening step between the financial source documents (tax returns, profit and loss statements, other internal financial documents) and its expert, the source documents still "form the basis" of any financial or damages calculation.

Indeed, HomeSource's own citations to the Court's previous comments bolster this obvious conclusion. It concedes, the Court had in mind "[w]hatever documentation [was] utilized to extract these numbers, *all of the supporting financial documentation must be produced.*" (10/7/2019 Tr. 80:14–16 (emphasis added).) Even if the expert never personally laid eyes on the financial source documents, the source

documents were still ultimately "utilized to extract" the numbers the expert eventually calculated. *See, e.g., Barnes Found. v. Twp. Of Lower Merion*, No. CIV. A. 96-372, 1996 WL 653114, at *4 (E.D. Pa. Nov. 1, 1996) (similar to this Court's previous order, where party's financial status was at issue, court ordered plaintiff to produce "(A) tax returns and audited financial statements for 1995 and 1996 if they exist and, if they do not exist, the documents from which equivalent information can be derived; (B) all third party contracts relating to the income and expenses" and "(C) *all source documents from which the financial summary data … was ultimately derived*" (emphasis added)).

HomeSource says that while RWS asked for balance sheets, bank statements, accounts receivables, and accounts payable information, "many of these documents do not exist." ECF No. p. 4. This tacitly concedes that some *do* exist: they must be produced. To repeat the Court's words, "*whatever* documentation" was baked into the expert calculations, "all of the supporting documentation must be produced." HomeSource's CPA affidavit—stating that HomeSource does not keep accounts attributing funds to separate projects—is likewise a red herring. RWS does not ask that HomeSource create new documentation regarding its finances: it asked for the documentation HomeSource has. *See Ana Cheri v. Linvas Corp.*, No. CV-178317-MCA-JAP, 2019 WL 11271377, at *4 (D.N.J. May 31, 2019) (where economic damages were at issue, defendant was entitled to "information, such as tax returns, that provide a comprehensive picture of Plaintiffs' finances both before and after" the alleged acts). Accepting that this might involve sensitive information, the Confidentiality Order might well provide good cause for HomeSource to mark such documents as AEO: but neither the Confidentiality Order nor any other authority permits HomeSource to

withhold the documents altogether.

HomeSource then claims it would require hundreds of hours for it to "parse out" relevant bank information "which is disproportionate to the needs of the case." ECF No. 255 p. 4. Neither half of that statement makes sense. It would take next to no effort to simply print or otherwise transmit these financial documents in whatever form they exist. HomeSource's notion that it would spend hours "parsing" these records or "segregating" the information it deems worthy of investigation sounds eerily like its impermissible attempt to redact information from responsive documents, discussed above in section I. It should not take hundreds of hours to "parse out" information from bank records because HomeSource is not allowed to "parse out" information in the first place.

And the argument that disclosure of financial documentation would be "disproportionate" in a case where HomeSource claims $45 million in damages does not pass the plausibility test. Just as in *Ana Cheri*, 2019 WL 11271377, RWS (or its counsel) is entitled to a "comprehensive picture"—meaning one that has not been "parsed" or redacted to exclude information HomeSource does not want RWS's counsel to see—of HomeSource's finances before and after the conduct alleged in the Second Amended Complaint.

Simply put, when a plaintiff files a case in federal court claiming tens of millions of dollars in economic damage, it necessarily means the defendant (or its counsel) gets to review much if not all of the plaintiff's internal financial documents in order to substantiate or rebut the claim. The plaintiff does not get to orally describe its finances to its expert and thereby evade disclosure. Nor does the plaintiff get to

withhold the financial source documents, or spend hours "parsing" or "segregating" the financial information it decides for itself is worthy of defense counsel's review. HomeSource simply has a mistaken and truncated view of its discovery obligations in a case of the type and magnitude it decided to file.

Since these financial source documents ultimately "form the basis of" HomeSource's damages calculation, the Court already ordered HomeSource to produce them more than a year ago. Since HomeSource still refuses to provide them, the Court should compel them (again), and should award RWS its fees.

## III.   RWS has the right to investigate whether the Whites and their entities transferred assets across entities, ignored the corporate form, or operated in each other's names.

As part of its defense to HomeSource's defamation claim, RWS needs to investigate whether HomeSource, members of the White Family, and entities associated with them commingled assets or otherwise ignored corporate formalities. That question goes to RWS's defense of truth or at least substantial truth of the statements HomeSource claims were defamatory, and which is a complete defense to the claim. HomeSource has relied on its claim that it follows corporate formalities to say that mixing a description of one entity with another is defamatory; and yet HomeSource refuses to provide information about its observance of corporate formalities.

To be clear, there already is support for RWS's suspicion of commingling. Two different cases filed against HomeSource made similar charges. In 2015, Furniture Distributors, Inc. ("FDI") sued HomeSource, Software Support-PMW, Inc. ("Software Support," a company owned by James White Jr.), and individuals of the

White family. That lawsuit alleged that there is little *de facto* difference between these companies and these individuals because the entities and individuals freely transferred assets across entities, ignored the corporate form, and operated in each other's names. *See* ECF No. 194-5. Notably, that same allegation appears in another case referenced in the SAC, a case filed by Martin Salas and S & S Management, Inc. against Gregory White, James White, Phyllis White, James White Sr. ("the White Family") and their companies HomeSource, Software Solutions, and Centerspec, LLC. *See* ECF No. 194-6 ¶¶ 38–39 ("Upon information and belief, the White Family Defendants use the Corporate Defendants' assets as their personal assets without regard to corporate structure" … [they] commingle the assets and liabilities of their own and of the corporations").

To be sure, HomeSource put these questions into issue in *this* case by including them in its defamation claim. HomeSource's defamation claim against RWS alleges, in part, that RWS inaccurately described actions occurring to Software Support as occurring to the White Family or to HomeSource. SAC ¶ 33–46. As is beyond challenge, truth (or even substantial truth) is a complete defense to any defamation claim. *Ward v. Zelikovsky*, 136 N.J. 513, 528 (1994); *G.D. v. Kenny*, 205 N.J. 275, 292 (2011). Thus, whether Software Support, HomeSource, and members of the White Family *de facto* operated in each other's names or disregarded corporate formalities, is a central question in this case; it would mean that when RWS allegedly imputed Software Solution's adverse litigation outcome to HomeSource and the White Family generally, *see* SAC ¶ 34–37, RWS was at least substantially truthful in doing so. Thus, this is a question RWS has the right to attempt to answer through discovery.

Again, HomeSource simply misapprehends the nature of the litigation it filed.
Every would-be defamation plaintiff has to weigh whether to file the claim, since it
automatically opens the plaintiff to full discovery of the potential truth of the allegedly
defamatory statements—even of factual matters substantially more controversial than
those involved in this case. *See Condit v. Dunne*, 225 F.R.D. 100 (S.D.N.Y. 2004)
(former Congressman Gary Condit brought defamation claim against writer who
made statements implicating Condit in death of Chandra Levy and sexual
improprieties—as a result, writer could engage in discovery regarding Condit's sexual
relationship with Levy to attempt to prove or disprove the truth or falsity of all of his
statements).

By filing a defamation case, the plaintiff opens himself to a full investigation of the
truth of even salacious allegations involved in the case. *Id.* at 110–11 ("plaintiff's
counsel urged the Court to draw the line of discovery at the bedroom door,
prohibiting defendant Dunne from entering that realm … Unfortunately for plaintiff,
he opened that door himself by filing this lawsuit, the Court cannot allow plaintiff to
walk through freely while holding defendant in check at the gate").[1] HomeSource
opted to file its defamation claim; thus, RWS gets to discover the underlying facts to
attempt to establish the truth (or substantial truth) of its statements. HomeSource
cites no case explaining how it can have the former without the latter.

RWS's request for documents relating to payments between and among

---

[1] Notably, the Court also compelled Condit to provide information regarding all
property and financial holdings, as part of the defendant's investigation into
Condit's claimed damages—the same rationale that should compel HomeSource
to provide its financial documents to RWS.

HomeSource and any entity or person referenced in the Complaint (including Software Support and the members of the White Family), ECF No. 254-6 RFP #7, should be granted. Although HomeSource says it produced two licensing agreements, it does not say that it produced all evidence showing monetary transfers from HomeSource to Software Support and vice versa, or from each entity to each individual and vice versa. RWS requested information to investigate the truth or substantial truth of treating the entities as *de facto* the same entity; HomeSource refuses to provide an answer.

HomeSource's claim that it has provided all documents on this question is wrong even under HomeSource's view—in its discovery letters, it acknowledged that it refused to provide information regarding payments to the White brothers, ECF No. 255-3 p. 5, a question RWS needs to investigate to learn whether they receive their compensation from HomeSource, Software Solutions, or another entity.

By claiming to have followed all corporate formalities, such that treating Software Solutions and HomeSource as the same entity is allegedly defamatory, HomeSource has placed the issue into question. HomeSource now has no choice but to permit RWS to investigate that question.

## IV. HomeSource must produce the mirror image of its weblog database, as previously ordered by the Court.

The Court's previous Order instructed HomeSource to make the mirror image of its weblog database available to RWS's expert for inspection. The mirror image is important because it is the best evidence to rebut HomeSource's claims regarding alleged cyber activity. The parties do not dispute: HomeSource has not made the

mirror image available to RWS's expert for inspection. That should be reason enough to grant this Motion to Compel.

Aside from that, however, this mirror image contains crucial information regarding the still-pending claims in this matter. For instance, HomeSource claims that its web-server records show that RWS deployed spiders or web-crawlers to monitor and download information from HomeSource's customers' websites, and these devices slowed the functionality of those websites. SAC ¶ 82. HomeSource, however, refuses to permit RWS or its expert to examine the web-server. RWS outright disputes these claims and believes the mirror image of the server records exonerate it. An inspection of the mirror image of the web-server records may fully refute HS's claims.

As another technical matter: HomeSource alleged early on that its customers' websites averaged 150 to 300 visitors per day. *See* ECF No. 12 ¶ 26. HomeSource now alleges that web "spiders" slowed the functionality of its websites. SAC ¶ 82. The mirror image HomeSource has—but refuses to provide RWS's expert an opportunity to review—would prove or disprove the extent to which these sites slowed down during the time periods HomeSource alleges a spider slowed the sites' functionality.

As yet other technical matters: the mirror image logs will likely have evidence to defend against HomeSource's claim that RWS accessed "proprietary" information (SAC ¶ 77), would show the date and time of the alleged access, and would show the length of time access was allegedly obtained. Like all of the technical questions above, this information lies at the heart of HomeSource's case.

Further, HomeSource's mirror image will have evidence showing whether or not its website had "a potential security hole and vulnerability." This is another statement

15

HomeSource claims as defamatory. SAC ¶¶ 50–55; 92–97. For the reasons explained above, once HomeSource filed claims on the basis of that statement, RWS then has the right to fully investigate and discover whether its statements are true or substantially true. No doubt, HomeSource does not want to provide this information to RWS's counsel: but "[u]nfortunately for plaintiff, [it] opened that door [itself] by filing this lawsuit, the Court cannot allow plaintiff to walk through freely while holding defendant in check at the gate." *Condit*, 225 F.R.D. at 111.

In a similar theme to the first three categories of information, HomeSource says it does not want to share this information because it has "third-party private data." ECF No. 255 p. 8. Parties are not allowed to withhold a document or object from discovery on the grounds that a part of the document or object is not relevant; nor are parties permitted to shield crucial evidence on the grounds that it includes private material—again, the AEO provision in the Confidentiality Order solved HomeSource's claimed concern over two years ago.

## CONCLUSION

HomeSource chose to file a case in federal court, alleging that its customers left HomeSource (the basis of its tortious interference claims), that it affected its finances and profits, that it observed of corporate formalities, and that certain conduct occurred on its website. For this, HomeSource claims $45 million in damages.

But when RWS then attempted to investigate the allegations brought by HomeSource in order to prepare its defense, HomeSource seeks to withhold the information—on the grounds that the information is sensitive. Of course that is true; but it is an inevitable result of the nature of the claims *HomeSource* chose to file.

16

The AEO option provided by this Court two years ago in its Confidentiality Order, ECF No. 22, represents a full solution to HomeSource's claimed concerns. It balances any worry HomeSource might have of RWS using information gleaned during litigation for its competitive advantage, against RWS's counsels' ability to investigate the case and prepare a defense. HomeSource's argument—that its claims involve such sensitive information that no one, not even RWS's counsel, is allowed to see it—finds no support in the discovery rules or the standard practice courts have developed to handle discovery of confidential information. RWS's Motion to Compel should be granted, and it should be awarded fees.  RWS requests oral argument in connection with its application.

Dated: January 20, 2021        Respectfully submitted,

*/s/ Ethan Hougah*
Louis R. Moffa
Ethan Hougah
Alexandra S. Jacobs
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
457 Haddonfield Road, Suite 600
Cherry Hill, New Jersey 08002
(856) 488-7700

Adam Wolek (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601
Tel.: (312) 836-4063
Fax: (312) 966-8598
awolek@taftlaw.com

William C. Wagner (*pro hac vice*)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Tel.: (317) 713-3500
Fax: (317) 713-3699
wwagner@taftlaw.com

*Counsel for Defendants Retailer Web Services II,*
*LLC; Retailer Web Services, LLC; Nationwide*
*Marketing Group, LLC*

## CERTIFICATION OF SERVICE

I hereby certify that on January 20, 2021, a true and correct copy of the foregoing

was served via electronic mail upon the following counsel for the Plaintiff:

Flaster/Greenberg P.C
Kenneth S. Goodkind, Esq.
Eric R. Clendening, Esq.
1810 Chapel Avenue West
Cherry Hill, NJ 08002
Tel: (856) 661-1900
Fax: (856) 661-1919

*Counsel for Plaintiff The HomeSource Corp.*

<div style="margin-left:45%;">

*/s/ Ethan Hougah*
Louis R. Moffa
Alexandra S. Jacobs
Ethan Hougah

*One of the attorneys for Defendant Retailer Web
Services II, LLC*

</div>