Dominique J. Carroll
**Fox Rothschild LLP**
997 Lenox Drive
Lawrenceville, NJ 08648
Tel: (609) 896-3600
Fax: (609) 896-1469
djcarroll@foxrothschild.com

Melissa E. Scott
**Fox Rothschild LLP**
747 Constitution Drive, Suite 100
P.O. Box 673
Exton, PA 19341
Tel: (610) 458-7500
Fax: (610) 458-7337
mscott@foxrothschild.com

Adam Wolek (*pro hac vice*)
**Fox Rothschild LLP**
321 N. Clark Street, Suite 1600
Chicago, IL 60654
Tel: (312) 517-9299
Fax: (312) 517-9201
awolek@foxrothschild.com

*Attorneys for Defendants Retailer Web Services, LLC
and Retailer Web Services II, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE HOMESOURCE, CORP., | Civil Action No.: 1:18-cv-11970-ECR-AMD |
| Plaintiff, | Hon. Eduardo C. Robreno |
| v. | Hon. Ann Marie Donio |
| RETAILER WEB SERVICES, LLC, et al., | MOTION DATE:  JUNE 7, 2021 |
| Defendants. | **CORRECTED REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS** |
| | **ORAL ARGUMENT REQUESTED** |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................... 1

II.    ARGUMENT................................................................................... 2

    A.    HomeSource Has Not "Fully Complied" with the Orders.................. 2

    B.    HomeSource Cherry-Picks Transcripts and Manipulates the Orders Language to Claim "Full Compliance."................................... 3

        1.    HomeSource has Not Produced All Documents and Records Underlying its Damages Calculations........................................ 4

        2.    HomeSource Has Not Provided RWS's Expert Access to the Mirror Image. ....................................................................... 8

        3.    HomeSource Has Not Produced Its Lost Client-Contracts. .... 12

        4.    HomeSource Continues To Withhold Financials Between The White Family and Its Companies. .................................... 14

III.    CONCLUSION............................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Other Authorities**

Fed. R. Evid. 1002 ...................................................................................................12

## I.    INTRODUCTION[1]

HomeSource's Opposition fails to substantively address or deny its deficiencies. Red herrings aside, HomeSource has not produced its "lost customer contracts," profit-loss statements, transactional information, access to its mirror image, and many other documents. RWS requested this information 2½ years ago, and it was ordered twice. Rather than produce the ordered documents and access to the mirror image, HomeSource cherry-picks transcript excerpts and bends the Orders' language to claim "full compliance." Tellingly, HomeSource fails to definitively state *what* it actually produced, or articulate how RWS's discovery requests are unreasonable or prejudicial—particularly given HomeSource's $46 million claim and incendiary allegations that put the requests at-issue.

HomeSource spends much of its Opposition casting unfounded aspersions at RWS's counsel,[2] who have spent 2+ years trying to resolve what normally would be

---

[1] Unless otherwise stated, all capitalized terms used here have the same meaning as defined in RWS's Motion for Sanctions (the "Motion," ECF No. 274-1), and all exhibits cited refer to the exhibits attached to the Declaration of Dominique J. Carroll in Support of RWS's Motion. ECF Nos. 274-2– 74-16.

[2] HomeSource repeatedly implies, and in some cases outright alleges, that RWS or its counsel are seeking information or engaging in conduct only to achieve some yet unidentified malevolent purpose. *See*, *e.g.*, Opp., p. 6 (stating RWS's request for production of the unredacted contracts "is entirely irrelevant and not discoverable, and the only reason to seek such information would be for an improper purpose."). HomeSource's counsel has engaged in personal attacks on RWS's counsel in correspondence and in filings, while RWS's counsel has always been civil and professional. HomeSource's counsel has no basis for its allegations and RWS's

straightforward discovery issues. HomeSource's smokescreen seeks to distract from the merits of RWS's Motion and thwart RWS's defense. The Court should not countenance such conduct and should exclude the related information accordingly.

## II.   ARGUMENT

### A.   HomeSource Has Not "Fully Complied" with the Orders.

While HomeSource boldly claims it has "complied with each and every paragraph of [the Orders]" (Opp., at p. 1), this is discernibly false. HomeSource cannot dispute that it did not:

- produce each executed contract for the customers it contends it lost due to RWS's alleged conduct (ECF No. 129 p. 3, ¶ 3);
- produce any financials for 2016 and 2017 (ECF No. 264 ¶ 2);
- produce HomeSource's 2017, 2018, and 2020 tax returns (*id.*);
- produce a complete 2019 tax return (*id.*);
- produce complete bank ***balance*** statements from 2018 and 2019 (*id.*);
- produce any ***transactional*** documents, like transactional bank records, customer payment histories, or proofs of customer payments (*id.*; ECF No. 129, p. 3, ¶ 3);
- produce any financial documentation supporting HomeSource's partial 2019 tax return and 2018-2020 "trial balance" reports (ECF No. 264 ¶ 2);
- include in James White's Revised Declaration where and how HomeSource searched for documents and information relating to financial transactions by, between, and among HomeSource, the White family and Software Support (ECF No. 264 ¶ 3);
- produce documents related to the handful of financial transfers between

counsel welcomes an evidentiary hearing before the Court to address HomeSource's attacks on RWS and its counsel.

2

HomeSource, Software Support, and/or the White Family identified in the Revised Declaration (*id.*);

- produce all documents showing financial transfers that HomeSource or Software Support made to White family members through a third-party (*id.*); and

- provide RWS's expert the necessary access and login for the mirror image, or permit review of its structure to prepare a search protocol (ECF No. 264 ¶ 4).[3]

Each of the above actions and omissions represents a failure by HomeSource to comply with the Orders.

### B.     HomeSource Cherry-Picks Transcripts and Manipulates the Orders Language to Claim "Full Compliance."

HomeSource only produced a trickle of incomplete documents and snippets, rather than complete documents or files. It concedes that it *has* the original documents and files, yet offers no reasonable justification for not producing them. This stonewalling interferes with RWS's ability to verify information and violates the best-evidence rule. RWS details below HomeSource's false "full compliance" claim, which HomeSource bases on cherry-picked transcript excerpts and manipulating the Orders' language.

Despite HomeSource's refusal to produce this information for over 2 years, 50+ correspondence, several motions, and 2 Court Orders, HomeSource now claims

---

[3] HomeSource outright refused these requests despite RWS's offer that HomeSource's expert could observe the searches.

RWS's Motion is tactical and that it is being pushy.[4] This doesn't pass the smell test. HomeSource is simply playing games and stonewalling. This is not a one-sided litigation. As both Magistrate Judge Williams and Judge Robreno have stated, RWS need not accept HomeSource's theories, it is free to conduct its own discovery and analyses.

###### 1.    *HomeSource has Not Produced All Documents and Records Underlying its Damages Calculations.*

HomeSource does not deny that the Court ordered it to produce "all documents and records" underlying its damages calculations (regardless if its expert reviewed them), but it still did not produce any profit-and-loss statements, financial ledgers, accounts receivable, accounts payable, or other financial documents showing it received payments from its alleged "lost customers." Rather, it only

---

[4] HomeSource's reference to sanctions correspondence stemmed from RWS alerting it that its allegations had no factual or evidentiary support. For instance, HomeSource had (baselessly) alleged that RWS was involved in hacking attempts. After RWS demanded HomeSource show evidentiary or factual support, and after HomeSource's repeated refusals, RWS informed HomeSource of its Rule 11 obligations for making such allegations. HomeSource eventually filed modified amended complaints removing many of those allegations, but its pending amended complaint still strongly implies and infers such conduct (without any support).

What's more, HomeSource's implication that the Court disapproved of or rejected RWS's Contempt Motion is also untrue. The Court never reached the merits of RWS's Contempt Motion because discovery was stayed, so the Court asked RWS if it would agree to allow the Court to deny the Contempt Motion *without prejudice* and with leave to refile at a later date.

produced a partial tax return for 2019,[5] limited bank statements for parts of 2018 and 2019 *containing no transactional information*, 2018-2020 "trial balance" reports, and a 3-line "profit and loss" statement. HomeSource placed the financial documents and data at issue through its exorbitant $46 million damages and lost customer claims.

HomeSource proffers several excuses for its dearth of documents, none of which have merit. ***First***, HomeSource claims that it is a "start up" company, not a "Fortune 500 company," so it does not have "sophisticated financial documents." Opp., at p. 8. But HomeSource has operated for over 15 years and, even if it were "unsophisticated," it still has bank transaction records and tax returns.

HomeSource also argues it only needed to produce documents it has and not create documents for Paragraph 2 of the Second Order. Opp., at p. 8. While it is true that HomeSource need not "create" documents, HomeSource mischaracterizes *gathering* documents as creating. For instance, it has produced no documents with transactional information (such as bank transaction statements) or proof of payments from the customers it claims it lost. Sure, those statements may need to be downloaded from HomeSource's bank account or requested from its third-party vendors. But those documents are within its possession, custody or control, and are

_____

[5] It does not deny not producing its 2017, 2018 and 2020 tax returns, and the partial 2020 tax return it produced relates to 563 Systems, LLC, not HomeSource.

not "created," just downloaded. Indeed, Paragraph 2 ordered HomeSource to produce *not some* but "***all*** document and records" it has. Second Order, ECF No. 264 ¶ 2 (emphasis added).[6]

HomeSource further has not produced its 2017, 2018 or 2020 (or complete 2019) tax returns, and does not deny it possesses or has them in its custody or control.

***Second***, HomeSource has produced **<u>no</u>** financials from 2016 or 2017. Despite the Court's mandate for HomeSource to produce "all documents" related to damages, HomeSource refuses, now arguing that it does not think they are relevant. As the damages expert explains, financial data from 2016 and 2017 is necessary for a "common damages methodology—the before-and-after approach—to assess whether the alleged conduct had an effect…on HomeSource's business and finances." Malkiewicz Decl., ECF No. 274-20 ¶ 20.

These financial documents were put in-issue by HomeSource's exorbitant lost-profits claims. Motion, at pp. 11-18. And the Court compelled HomeSource to produce them in response to Document Request No. 24, which requested "[a]ll documents relating to the revenue of HomeSource from January 1, 2016 to date…." Ex. 1, at Req. No. 24. HomeSource does not allege, and Judge Robreno did not

---

[6] On the other hand, if HomeSource claims not having financial documents showing its credit and debit transactions, general ledgers, trial balances or tax related information, that simply would not pass the smell test.

impose, any time limits on the scope of the financial documents from Paragraph 2.

***Third***, HomeSource's claim it produced profit and loss statements is incorrect. Opp., at p. 8. HomeSource produced a 3-line document created in August 2020 that was modified by its attorney, Eric Clendening.[7] The 3-line document is not a "profit-loss statement" as it: (1) does not show any financials details; (2) was modified by attorneys; (3) was made for litigation purposes, and ***after*** the suit began; (4) was not a record as kept in the ordinary course of business; and, (5) provides no details about HomeSource's income sources, expenses or any other basic information. Nor can these numbers, or how HomeSource reached them, be assessed.[8] HomeSource's failure to produce its profit-and-loss statements and other financial information flouts the Orders.

Because of HomeSource's $46 million damages claim and its failure to comply with the Orders and produce key financial information, it should be barred from using its incomplete production to support its damages claim.

---

[7] The "info" page of the 3-line document ("HomeSource 15114") shows its August 2020 creation, and modification by HomeSource's attorney, Eric Clendening:



[8] HomeSource also claims that it has other businesses unrelated to RWS's business, so its 3-line document is further unhelpful as it does not delineate among them, and thereby hides what effect the Newsletter may have caused, rather than fluctuations in its other businesses.

### 2. *HomeSource Has Not Provided RWS's Expert Access to the Mirror Image.*

HomeSource falsely claims it provided RWS's expert with "access" to the mirror image. That is directly contradicted by correspondence HomeSource omitted from its Opposition. *See, e.g.,* Ex. 14; *see also* Ex. 1 to the Declaration of Dominique J. Carroll, Esq. submitted herewith. RWS has sought its expert's review of the mirror image countless times recently and over the past 2+ years, and still seeks it today. HomeSource refuses access. HomeSource should either (1) provide access to RWS's expert, or (2) be precluded from using evidence from its database against RWS.

HomeSource placed the mirror image of its database at issue through its many still-pending cyber-related and other allegations that it asserts against RWS.[9] For instance, HomeSource's SAC still (baselessly) asserts that RWS: (1) "designed and deployed software…to monitor and download information from HomeSource's websites," (2) "conspir[ed] to hack and/or promot[ed] the hacking of HomeSource's websites," and (3) "logged into HomeSource's websites and obtained HomeSource's proprietary information without authorization."[10] ECF No. 164 ¶¶ 76-77, 79-82 &

---

[9] The mirror image also needs to be reviewed for HomeSource's lost customer-contracts, which it claims also reside on its database. That is further discussed in Section II(B)(3) below.

[10] HomeSource only produced screenshots of select searches it performed allegedly on its database and claims those support its cyber-related claims. But it blocked RWS from reviewing the mirror image to assess these claims. In view of HomeSource's refusal, RWS offered to forgo reviewing the mirror image if HomeSource withdrew

121. These allegations can be proved or rebutted by reviewing the mirror image of its database, which ostensibly has (or doesn't have) the purported evidence. RWS is entitled to review the evidence asserted against it.

To help reach a compromise for its cyber-expert to review the mirror image, RWS explained the access and permissions its expert needed for the review.[11] Ex. 14, at p. 1. RWS also offered to have HomeSource's expert observe the review in real-time. Despite these concessions, HomeSource's counsel responded "ABSOLUTELY NOT." Ex. 15.

To be sure, the Orders do not limit the expert's review. Just the opposite. The Orders state: "HomeSource shall make the mirror image of the database available to Defendant's expert." ECF Nos. 129, 264.[12]

––––––––––––––––––––

its cyber-related allegations. While HomeSource offered to drop its CFAA claim, it refused to drop the other cyber-allegations. HomeSource is using the mirror image as a sword and a shield.

[11] The Court should disregard any argument that RWS's expert need not review the structure and organization of the mirror image before preparing a search protocol because she previously prepared a search protocol without viewing the mirror image. RWS's expert prepared the search protocol "blindly" as an accommodation when HomeSource refused to allow her access to the mirror image. Now that the Court has ordered HomeSource to provide RWS's expert access to the mirror image, RWS's expert should have a chance to view the structure and organization of the database to prepare the necessary, tailored search protocol.

[12] The Orders require only that the experts confer about the search protocol, and that RWS provide HomeSource with the search protocol. *Id.* The experts had conferred many times, and RWS provided a protocol, which HomeSource even produced as its Exhibit K.

Yet HomeSource seeks to restrict the expert's search using misdirection and red herrings. It conflates the mirror image (i.e., a copy) with its *actual database* and implies that RWS only wants to review it for a nefarious purpose. It also takes Judge Williams out-of-context and misstates the Orders.

***First***, RWS's expert seeks to review a copy (*i.e.*, the "mirror image") of the database, not the database itself. Thus, no information from HomeSource's database could be compromised, and its information would nevertheless be stale from the 2 years' prior when it was ostensibly preserved. And HomeSource's insinuations of nefarious intent (*see* Opp., p. 13) are without basis and not well taken.

***Second***, HomeSource repeatedly takes Magistrate Judge Williams' "willy-nilly" comment out of context. While discussing RWS's expert's search, Judge Williams at first commented that RWS share the search protocol with HomeSource "before it's run." Oct. 7, 2019 Disc. Conf. Tr., at 117:22-25. Judge Williams ***then*** said RWS's expert can run the search she pleases. *Id.*, at 119:16-25 (Mag. Judge Williams: "I've got to allow this expert to run the search that—that she believes is the proper search to determine whether or not RWS did whatever it did on your website").[13] In any event, HomeSource conceded it received RWS's expert's

---

[13] The excerpts HomeSource quoted from the October 2019 hearing occurred *before* Magistrate Judge Williams made the above statements. These later comments trump her earlier preliminary comments.

protocol and even attached it to its brief (Opp. at Ex. K), but HomeSource provided

no comments or edits to it. It still refused RWS's expert access.

　　　***Third***, the Orders do not limit the scope of RWS's expert's searches of the

mirror image. *See generally* ECF Nos. 129 & 264. And while Magistrate Judge

Williams at first reflected on whether to limit RWS's expert's search to the search

HomeSource's expert performed, she reversed course, stating RWS's expert could

run her own searches:

> THE COURT: …[W]hat is the role of the expert? …. Not only to say
> the search that you ran was wrong, but that a proper search would have
> done this, and had a proper search been done, these are the results that
> would have been had…. ***And so I've got to allow this expert to run
> the search that—that she believes is the proper search to determine
> whether or not RWS did whatever it did on your website***.  Right?

Oct. 7, 2019 Disc. Conf. Tr., at 119:16-25 (emphasis added).[14]

　　　The mirror image is the "best evidence" of the alleged cyber-related conduct

that HomeSource, *not RWS*, has placed at issue. Yet HomeSource has produced only

screenshots of *its* searches, while refusing to permit RWS to inspect it. HomeSource

cannot only rely on its selected screenshots to prove their allegations—particularly

---

[14] She continued:

> I'm not an expert. You articulate why their expert does what they do.
> You articulate it. I'm gonna put my expert on the stand and he's going
> to testify about this is what he did. ***Rebuttal expert, yeah, this is what
> he did. This is what he should have done. That's what rebuttal
> expert—that's the whole point of having experts***.

Oct. 7, 2019 Disc. Conf. Tr., 120:10-15 (emphasis added).

where the original exists. Fed. R. Evid. 1002 (original "required in order to prove its content"). By blocking access to the mirror image, HomeSource is withholding the "best evidence" and obstructing RWS's ability to prepare an adequate defense.[15]

The repeated roadblocks HomeSource has thrown up for RWS's expert amounts to obstructing access to the mirror image in violation of both Orders. Thus, HomeSource should either (1) not be able to use evidence from its database against RWS, or (2) provide access to RWS's expert and pay its fees.

### 3.    *HomeSource Has Not Produced Its Lost Client-Contracts.*

HomeSource also falsely states it has produced the customer **contracts** for each customer it purportedly lost because of RWS's alleged conduct. HomeSource previously produced wholly-redacted (except for a date) screenshots that it purported were its alleged lost-customer contracts.

But following RWS's receipt of nine[16] unredacted documents, it became clear the documents were not HomeSource's "lost-customer contracts."[17] The now-

---

[15] HomeSource does **not** dispute RWS's expert's review of the mirror image will not disrupt HomeSource's business or damage HomeSource's database since the mirror image is a copy, not the actual database. Nor does HomeSource dispute that there are no confidentiality concerns because the mirror image is "frozen in time" and does not contain current data. RWS's expert's has further reviewed and signed the Confidentiality Order entered in this case.

[16] Despite several requests, HomeSource produced the tenth document only *after* RWS filed its Motion.

[17] Many of these alleged "lost customer contracts" postdate the Newsletter and were

unredacted documents showed that HomeSource's "customer contracts" actually sit on its database—the same database HomeSource refuses to allow RWS's expert to inspect. While HomeSource claims these screenshots are proof of its customers' acceptances of online click-through agreements (Opp., at p. 5), they are not the actual contracts, verifiable, or testable without the actual access.

HomeSource argues RWS should just accept that the fields in the screenshots represent what HomeSource says they do. HomeSource claims the screenshots show the date on which each customer hit "accept" on its terms and conditions. It describes the other alphanumeric fields as internal coding and "gibberish."[18] But while it describes this internal coding as "gibberish" on the one hand, on the other hand it admits the alphanumeric codes are linked to specific clients and can be used to locate the actual acceptances in the database. *See* Opp., at pp. 5-6. But again, it won't permit RWS's expert to verify or review that database or those purported "acceptances."

Because HomeSource has blocked access to the mirror image, it should be unable to use the information from its database against RWS.

---

not entered into before, or lost because of, the Newsletter.

[18] HomeSource's lengthy dissertation on how the disclosure of the remaining fields shown on the screenshots could expose HomeSource to other hacking is yet another attack on the credibility of RWS's counsel and expert. The documents are marked Attorney's Eyes Only and thus cannot be shown to RWS business personnel. Only outside counsel and experts, who are bound under the Confidentiality Order, can review these materials. HomeSource's unfounded attacks are not a sufficient basis to withhold production of documents and information.

### 4.   *HomeSource Continues To Withhold Financials Between The White Family and Its Companies.*

While on the one hand HomeSource claims it fully complied with Paragraph 3 of Judge Robreno's Order, it concedes it has not revealed all payments to the White family, and it omits ordered information. HomeSource claims that because it used a third-party processor to make payments to the White Family, it did not pay them directly so it is not required to reveal those payments. That is an end-around and playing games with the Order's language.

HomeSource placed payments between the White family and its businesses at issue when it alleged RWS misled the public about the relationships between the White family and these entities. HomeSource now balks at identifying the transactions between them, despite it being ordered to.

HomeSource does ***not*** dispute it failed to produce documents relating to the financial transactions it did identify. Instead, HomeSource claims it need not produce such documents because it claims they are irrelevant. It argues it need not provide any information about payments made to James and Greg White as it claims they were just salary payments. Opp., at p. 10. The Second Order is not so limited, and Judge Robreno did not exclude salary payments from his ruling on production. HomeSource's selected cites from the hearing do not reflect Judge Robreno's directives and orders. Rather, the Court ordered HomeSource to "produce ***all*** documents showing financial transfers"; not only the documents HomeSource

14

deems relevant. HomeSource violated the Orders in failing to produce them.

HomeSource also tries to avoid disclosing financial payments to the White family by claiming that it used a third-party to make the payments, so did not pay them directly. Just because HomeSource uses a payment service to pay members of the White Family does not render the information outside the scope of the Second Order or absolve it of its duty to produce "all documents" related to payments to the Whites. If HomeSource paid the Whites or their companies through a service, that information is still in HomeSource's possession, custody and control.

Judge Robreno further ordered HomeSource to prepare an affidavit stating where it looked for responsive documents. Mar. 5, 2021 Hearing Tr., at 27:3-9. HomeSource did not provide this information.

## III.   CONCLUSION

For these reasons, and the reasons in RWS's Motion, RWS respectfully requests that the Court grant RWS's Motion and order the relief requested.

//

//

//

//

//

//

Dated: June 2, 2021                    Respectfully submitted,

**FOX ROTHSCHILD LLP**

*/s/ Dominique J. Carroll*
Dominique J. Carroll
997 Lennox Drive
Lawrenceville, NJ  08648
Tel: (609) 896-3600
Fax: (609) 896-1469
djcarroll@foxrothschild.com

Melissa E. Scott
747 Constitution Drive, Suite 100
P.O. Box 673
Exton, PA 19341
Tel: (610) 458-7500
Fax: (610) 458-7337
mscott@foxrothschild.com

Adam Wolek (pro hac vice)
321 N. Clark Street, Suite 1600
Chicago, IL  60654
Tel: (312) 517-9299
Fax: (312) 517-9201
awolek@foxrothschild.com

*Attorneys for Defendants*
*Retailer Web Services, LLC and*
*Retailer Web Services II, LLC*