**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE HOMESOURCE, CORP.,<br><br>Plaintiff,<br><br>vs.<br><br>RETAILER WEB SERVICES, LLC, et al.,<br><br>Defendants. | Case No.: 1:18-cv-11970-ECR-AMD |

---

**OPINION OF SPECIAL MASTER STEPHEN M. ORLOFSKY ON DEFENDANTS'
MOTION FOR SANCTIONS AND ATTORNEYS' FEES**

---

Appearances:

**Flaster Greenberg, PC**

Arthur Armstrong, Esq. (Argued)
1835 Market Street
Suite 1050
Philadelphia, PA 19103

Eric Clendening, Esq.
1810 Chapel Avenue West
Cherry Hill, NJ 08002

*Attorneys for Plaintiff The HomeSource Corp.*

**Fox Rothschild, LLP**

Adam Wolek, Esq. (Argued)
321 N. Clark Street
Suite 1600
Chicago, IL 60654

Melissa Scott, Esq.
747 Constitution Drive
Suite 100
Exton, PA 19341

Dominique Carroll, Esq.
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648

*Attorneys for Defendants Retailer Web
Services, LLC and Retailer Web Services II,
LLC*

## <u>TABLE OF CONTENTS</u>

I.    Relevant Background ................................................................................................. 1

    A.    Case Background and Special Master Appointment ............................................. 1

    B.    The October 7, 2019 Hearing and October 16, 2019 Order.................................. 2

    C.    The March 5, 2021 Hearing and Order .................................................................. 4

    D.    Post-Hearing Declarations ..................................................................................... 7

    E.    Motion for Sanctions and Attorneys' Fees ............................................................ 7

    F.    Post-Hearing Letters .............................................................................................. 7

II.   Legal Analysis ........................................................................................................... 8

    A.    Legal Standard for the Imposition of Discovery Sanctions ................................... 9

    B.    Lost Customer Contracts...................................................................................... 10

    C.    Financial Documents ............................................................................................ 12

    D.    Financial Exchanges Between HomeSource, The Whites and Software-Support PMW, Inc. .............................................................................................. 14

    E.    Access to the HomeSource Database .................................................................... 15

III.  Conclusion .............................................................................................................. 19

**STEPHEN M. ORLOFSKY, SPECIAL MASTER**

This matter comes before me on a motion for sanctions and attorneys' fees by Defendants Retailer Web Services, LLC and Retailer Web Services II, LLC, (collectively "RWS" or "Defendants") against Plaintiff The HomeSource, Corp., ("HomeSource" or Plaintiff).  For the reasons explained below, Defendants' Motion is denied without prejudice as to the sanctions and attorneys' fees sought, but I will compel Plaintiffs to produce certain documents as specified below and in the Order accompanying this Opinion.  Should HomeSource violate the attached order, RWS may renew the its motion for sanctions.

**I.      Relevant Background**

**A.            Case Background and Special Master Appointment**

This case arises from a dispute between two competitors who provide technology services to retailers.  Second Am. Compl. at ¶ 19 [hereinafter SAC].  In the SAC, the operative pleading in this matter, HomeSource alleges that RWS issued a defamatory newsletter which made false statements about HomeSource's involvement in various litigation and security vulnerabilities in HomeSource's web services, and that RWS improperly accessed HomeSource's systems through the unauthorized use of customer credentials and by deploying monitoring software on HomeSource's websites.  *See* SAC at ¶¶ 31-55, 74-84.[1]

The case, initially filed on July 23, 2018, was assigned to the Honorable Jerome B. Simandle and the Honorable Karen M. Williams.  ECF 1.  After Judge Simandle's passing, the case was reassigned to the Honorable Eduardo C. Robreno on September 4, 2019.  ECF 116.

---

[1] The SAC also alleged that an uncertain amount of John Does launched a series of Denial of Service (DoS) and Distributed Denial of Service (DDoS) attacks against customer websites using HomeSource's services.  SAC at ¶¶ 56-73.  HomeSource alleged that RWS was aware that the websites were going to be attacked before the attacks occurred, and encouraged the attacks.  *Id.* at ¶ 70.  However, in an order dated October 19, 2020 Judge Robreno severed HomeSource's claims against the John Doe defendants.  *See* ECF 242.

Throughout this litigation, the parties have had numerous discovery disputes, leading Judge Robreno to issue an order to show cause as to why a discovery special master should not be appointed.  ECF 275.  Neither party opposed the appointment of a special master, and Judge Robreno then issued an order appointing me as Special Master on June 8, 2021.  ECF 281.  That Order, entered pursuant to Federal Rule of Civil Procedure 53(c), provided me with the authority "to address all pre-trial discovery matters in this case," and specifically to "address the pending motion for sanctions and the discovery disputes revealed therein."  *Id.* at 2.

That motion for sanctions, and the discovery disputes revealed therein, evolve from two previous motions and hearings, which will be discussed briefly as relevant to this motion.

**B.      The October 7, 2019 Hearing and October 16, 2019 Order**

On October 7, 2019 Magistrate Judge Williams held a Discovery Conference with the parties, to discuss a variety of ongoing discovery disputes.

At that conference, in relevant part, the parties discussed an affidavit produced by RWS which stated that "RWS knows of no instance in which it purposely ran a spider or other website crawling program on any ADC member website operated by HomeSource."  Oct. 7, 2019 Tr. at 107:14-18.  However, HomeSource contended that the affidavit was rebutted by "logs" that identified spiders from RWS IP addresses on their websites.  *Id.* at 107:23-108:5.  In response, RWS asserted that they had only been provided with a summary of the actual logs, but had not been given access to the mirror image of the HomeSource database that produced the logs to verify their contents or how they were created.  *Id.* at 108:24-109:10; 110:13-22; 112:18-25.  Judge Williams noted that she had "asked [HomeSource] to create a mirror image so that [RWS's] expert can do the same search [HomeSource's] expert did."  *Id.* at 113:11-13; *see also id.* at 115:7-11 ("[T]he reason I had you create a mirror image with the hash value is so their

expert can search that mirror image to confirm that the data and output from the data being searched, otherwise how do they challenge your expert?").

At first, Judge Williams repeatedly instructed that RWS's expert would need to "run the same search that [HomeSource's] expert ran." *Id.* at 115:19-20, 116:7-9, 16-17. She also noted that any search "must be provided to HomeSource before it's run" because she was "not giving the expert willy-nilly access to th[e] database." *Id.* at 117:22-25. After additional back and forth regarding whether the search protocols previously submitted to HomeSource by RWS were too expansive for the purpose of rebutting HomeSource's expert, Judge Williams stated the protocol should be submitted to her, explaining that the purpose of the expert was:

> [n]ot only to say the search that [HomeSource] ran was wrong, but that a proper search would have done this, and had a proper search been done, these are the results that would have been had. . . And so I've got to allow this expert to run the search that – that she believes is the proper search to determine whether or not RWS did whatever it did on your website. Right?  But I want to see what this looks like.

*Id.* at 119:16-25. However, at no point did either party, or the Court, discuss the use of search protocols for any purpose other than rebutting HomeSource's expert's conclusion that spiders on HomeSource's websites originated from RWS IP addresses.

After the Conference, Judge Williams issued an order which stated, in relevant part, that:

> HomeSource shall make the "mirror image" of the database available to defendant's expert.  The experts shall meet and confer and confirm the search undertaken by plaintiff's expert and the search protocol to be undertaken by defendant's expert.  Defendant shall provide plaintiff with the search protocol.  If there are objections to defendant's proposed search protocol, the parties shall present the issue to the Court.

ECF 129 at 4.  In relevant part, that order also provided:

> 2.      HomeSource shall produce any and all documents and records that form the basis of its experts' damages calculations. *See* F.R.C.P. 26(a)(2)(B)(i) and (ii)

. . .

3.      HomeSource shall produce each executed contract of the customers it contends were lost to RWS based on the conduct RWS allegedly engaged in that forms the basis of the instant lawsuit.

*Id.* at 3.

### C.      The March 5, 2021 Hearing and Order

On March 5, 2021, now in front of Judge Robreno, the parties had another hearing in response to Defendants' motion to compel (ECF 254), which in large part continued the discovery disputes before Judge Williams.

First, RWS contended that HomeSource had failed to comply with Judge Williams' order that HomeSource must "produce each executed contract of the customers it contends were lost to RWS based on the conduct RWS allegedly engaged in that forms the basis of the instant lawsuit." ECF 129 at 4. In response to that portion of Judge Williams' order, HomeSource produced redacted logs that it stated reflected customers' acceptance of a "click through" agreement. March 5, 2021 Tr. at 11:19-12:9. After RWS stated that this production was deficient, Judge Robreno ordered that the parties "select ten samples of client contracts that were previously produced redacted" which would then be produced. The order further stated that after the unredacted samples were reviewed "counsel shall meet and discuss whether additional unredacted contracts are necessary or relevant . . . . Any disagreement regarding the necessity of producing additional unredacted contracts shall be brought to the Court's attention by letter briefs." ECF 264 at 1-2.

Second, RWS alleged that HomeSource failed to comply with Judge Williams' order that it produce "any and all documents and records that form the basis of its experts' damages calculations." ECF 129 at 3. HomeSource argued that, because the damages calculation was based on a discounted cash flow, and not a past review of profits, documents about past profits

were not relevant to their damages calculation and that further, because of the way HomeSource keeps its records many of the documents requested by Defendants did not exist.   March 5, 2021 Tr. at 20:18-22:22.  The Court noted that Defendants were entitled to pursue alternative theories of damages to a discounted cash flow, and therefore additional financial documents should be produced.  *Id.* at 24:7-21.  In his later order, Judge Robreno required that:

> Plaintiff shall produce all documents and records that underlie its experts' damages calculations, whether or not the experts considered or reviewed the actual documents. These documents shall be produced unredacted, are subject to the confidentiality order, and shall be marked "attorneys' eyes only." A breach of the confidentiality order by counsel will result in sanctions.

ECF 264 at 2.

Third, RWS contended that HomeSource had failed to produce documents showing financial transfers between HomeSource, the White family, and Software Support-PMW, Inc.  HomeSource alleged that there were no responsive documents regarding transactions between those entities, which is why no documents were produced.  March 5, 2021 Tr. at 25:2-5.  Based on that proffer, Judge Robreno stated HomeSource would need to put together a declaration to that effect, and HomeSource agreed.   *Id.* at 25:6-20.   RWS contested HomeSource's denial regarding the existence of payments on the basis that HomeSource had previously conceded members of the White family received salaries, and others received royalties on HomeSource's software.  *Id.* at 25:24-26:5.  RWS went on to argue the relevancy of those royalties, stating that they could demonstrate costs against future profits that were not included in Plaintiff's damages calculations.  *Id.* at 26:13-20.   After RWS began discussing the possible relevancy of the documents as to damages, Judge Robreno stopped counsel, stating "I think that's a different issue." *Id.* at 26:18-20.  Judge Robreno then issued an order in line with his determination that a declaration was necessary, stating that:

> Plaintiff shall produce all documents showing financial transfers between HomeSource, the White family, Software Support, and PMW, Inc. To the extent Plaintiff claims these documents do not exist, Plaintiff shall file an affidavit from a knowledgeable individual responsible for such records stating that he or she has searched for pertinent documents, but they do not exist.

ECF 264 at 2.

Fourth, RWS alleged HomeSource had not complied with Judge Williams' order to allow RWS's expert access to the mirror image of its database. HomeSource argued that access to the database was no longer relevant to the case, because in the intervening months after Judge Williams' order, the claims against the John Doe "hacking" defendants was removed from the case. March 5, 2021 Tr. at 28:24-30:1. RWS contended that there were still numerous allegations in the SAC that implicated the database. *Id.* at 31:14-24. Although Judge Robreno acknowledged there could be relevancy to the database despite the severance of the John Doe defendants, he questioned whether open access to the database was necessary and proportional to the needs of the case. *Id.* at 33:5-7. HomeSource also argued that RWS was attempting to expand the scope of Judge Williams' order, which HomeSource asserted had only been given in the context of allowing RWS's expert to determine if RWS IP addresses had visited HomeSource websites. *Id.* at 36:14-38:21. Judge Robreno did not take any position regarding the interpretation of Judge Williams' order, but further ordered that:

> Plaintiff shall make the mirror image of its database available to Defendant's expert. The experts shall meet and confer and confirm the search undertaken by Plaintiff's expert and the search protocol to be undertaken by Defendant's expert. Defendant shall provide plaintiff with the search protocol. If there are objections to Defendant's proposed search protocol, the matter will be referred to a court-appointed special master. The parties will each advance half of the special master's fee. However, at the conclusion of the litigation, the Court may adjust the percentage of the fee for which each party is responsible.

ECF 264 at 2-3.

### D.        Post-Hearing Declarations

After the hearing, HomeSource submitted a declaration from James White in response to Judge Robreno's order, stating that there were no additional documents in HomeSource's possession regarding transfers between HomeSource and the White family or Software Support-PMW, Inc., with the caveat that he understood that Judge Robreno's order did not require the production of he and his brother Gregory's payroll from HomeSource, which was made through a "professional employer organization."  Clendening Decl. at Ex. B.  Approximately a week later, James White submitted a supplemental declaration, also disclosing a payment of $650 to James and Gregory's father for medical insurance premiums, and four payments for rent in a building owned by James and Gregory's father.  *Id.* at Ex. C at ¶¶ 6-7.

### E.        Motion for Sanctions and Attorneys' Fees

On May 12, 2021, RWS filed this motion for sanctions and attorneys' fees, ECF 274, which was then referred to me as part of my appointment as Special Master, ECF 281.  The parties resubmitted their motion papers to me on June 23, 2021.  On June 30, 2021 I requested that the parties provide some additional information and discovery documents referenced in the parties' papers.  I provided the parties an opportunity to object to the review of those supplemental documents.  There were no objections from either party, and the additional information and documents were provided on July 9, 2021.  On July 16, 2021, oral argument was held before me via videoconference.

### F.        Post-Hearing Letters

After the oral argument on this motion, the parties exchanged additional letters regarding the ongoing discovery disputes.  In relevant part, on July 20, 2021, HomeSource contested statements made by RWS at oral argument that financial documents provided were improperly redacted, or were produced in a manner other than how they are found in the ordinary course of

business.  HomeSource alleged that HomeSource's "'usual course of business' does not consist of HomeSource storing its documents in chronological or alphabetical order" and therefore the organization of its production did not violate its discovery obligations.  Letter from A. Armstrong dated July 20, 2021 at 1-2.  HomeSource then asserted that it had now produced all bank statements from January 2017 to present, all customer invoices from January 2017 to present, all tax returns from 2017 to 2020 and all income statements from 2017 to 2020.  *Id.* at 3. In response to allegations at oral argument from RWS that pages were missing from these productions, HomeSource requested that RWS identify the specific pages.  *Id.* at 3.

In response, RWS contested HomeSource's assertions, noting that bank statements, which would have been downloaded directly from the bank's website, were produced out of chronological order.  Letter from M. Scott dated July 22, 2021 at 5-6.  They pointed to twelve bank statements that were missing pages, and that bank statements were missing for the periods January to May 2017, all of 2018, and January to April 2019.  *Id.* at 6-7.  RWS also contested that tax returns were produced for the 2017 to 2020 time period.  *Id.* at 8-9.

## II.    Legal Analysis

RWS seeks sanctions precluding HomeSource from relying on a variety of categories of evidence and payment of all attorney fees since the initial discovery requests were served on the basis that HomeSource has repeatedly failed to honor its discovery obligations.  *See* ECF 274-22. The alleged discovery violations include: (1) failure to produce contracts for the customers HomeSource alleges it lost as a result of RWS's actions; (2) failure to provide certain financial documents; (3) failure to provide documents regarding financial transactions between HomeSource, the Whites and Software-Support PMW, Inc.; and (4) failure to provide RWS's expert access to its database.  Each of these alleged violations will be addressed in turn.

A.        **Legal Standard for the Imposition of Discovery Sanctions**

Rule 37 gives courts discretion to impose sanctions "when a party 'fails to obey an order

to provide or permit discovery.'"  *Unimaven, Inc. v. Texas TR, LLC*, No. 17-12008, 2020 U.S.

Dist. LEXIS 164498 at *10 (D.N.J. Sept. 8, 2020) (quoting Fed. R. Civ. P. 37(b)(2)(A)).

However, any sanction issued must be "just" and "specifically related to the particular claim

which was at issue in the order to provide discovery." *Harris v. City of Phila.*, 47 F.3d 1311,

1330 (3d Cir. 1995).

Exclusion of evidence or particular matters as a discovery sanction is considered "an

extreme sanction." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003) (quoting *In re

TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999)).  It is "particularly extreme" where the exclusion

would be "tantamount to dismissing the claim"—a repercussion that would be the case if RWS

received the sanctions it seeks.  *Id.* at 221 (citing *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d

863, 868 (3d Cir. 1984)); *see also* ECF 274-22 (proposed order requesting that HomeSource be

"precluded from introducing *any* evidence to support its damages claim" as a sanction (emphasis

added)).   In those cases, Courts are required to consider six factors to determine whether the

sanction is appropriate:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the
> adversary caused by the failure to meet scheduling orders and respond to
> discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the
> attorney was willful or in bad faith; (5) the effectiveness of sanctions other than
> dismissal, which entails an analysis of alternative sanctions; and (6) the
> meritoriousness of the claim or defense

*Poulis*, 747 F.3d at 868.  Therefore, for each alleged discovery violation, to exclude evidence

that would result in a dismissal of claims, RWS must show that HomeSource: (1) failed to obey a

court order; and (2) the *Poulis* factors weigh in favor of exclusion.

However, irrespective of the *Poulis* factors, a court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C); *see also McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 249 (3d Cir. 2014) (same).

### B.        Lost Customer Contracts

Judge Williams initially required HomeSource to produce executed contracts of the customers it alleges were lost due to RWS's conduct.  In response, HomeSource provided redacted versions of logs from its database which it contends demonstrated when a particular customer entered into an agreement for HomeSource's services via an online "click through" agreement and a screen shot of Terms & Conditions that it claims each of these customers accepted.  *See, e.g.*, HOMESOURCE 14785; HOMESOURCE 015107-113.  After RWS filed a motion to compel, Judge Robreno ordered that 10 of the redacted contracts be produced in unredacted form, and that after that point "[a]ny disagreement regarding the necessity of producing additional unredacted contracts shall be brough to the Court's attention by letter briefs."  ECF 264 at 1-2.

RWS's contention is not necessarily that HomeSource did not comply with Judge Robreno's order, but that they violated Judge Williams' order because the documents produced in response to Judge Williams' order were not "contracts" in that they did not include any information regarding pricing or lengths of time of service.  Further, they point to the fact that some of these contracts were entered into *after* the allegedly defamatory newsletter was issued.  Logic would then dictate that, even if these logs did represent "contracts" they are not contracts which "were lost to RWS based on the conduct RWS allegedly engaged in that forms the basis of the instant lawsuit."  ECF 129 at 3; *see also* RWS Br. at 10-11, 32-33.  HomeSource contends

-10-

that they have produced the responsive documents, because these logs are the only records of the acceptance of the click through agreements it uses with its customers.  Opp. Br. at 5-6.

Based on the current record, I cannot find that HomeSource violated either court order warranting sanctions.  At oral argument, RWS pointed to three subscriber agreements, which appear to be more traditional contracts.  However, that is not evidence that other such paper agreements exist and were withheld.  Instead the question is whether HomeSource sufficiently produced documents to embody the "click through" agreements which its customers accept. Based on a reading of the transcript of the hearing before Judge Robreno, it appears that this is what Judge Robreno was attempting to determine by asking the parties to un-redact a sample of the produced logs, and requesting letter briefs regarding any disputes regarding additional unredacted contracts.

However, RWS's point is well taken that price and duration are essential terms of a contract.  Further, the SAC contains a count for Tortious Interference with Contract.  *See* SAC at Count IV.  Obviously, in order to sustain that claim, or defend against it, the contracts that are claimed to have been interfered with must be accessible to both parties.

Therefore, I will order that HomeSource produce any documents, including information from within its database, that HomeSource will use to demonstrate that its alleged lost customers were in fact customers, and those customers purchases.  If rows within other tables of the database are necessary to link the log of a particular "acceptance" to price terms and subscription lengths, those logs must also be produced, and labeled in a way that they can be connected to the same customer.  If that is the case, and these logs within the database are the only documents available to demonstrate the agreements between HomeSource and its alleged lost customers, it may indicate that this is a permissible subject to be explored by RWS's expert, under the

-11-

procedures established in Section II(E), *infra*.  Regardless, any documents HomeSource seeks to rely on to establish past contracts with its customers must now be produced.  If they are not produced within the timelines dictated by the Order accompanying this opinion, HomeSource will not be permitted to rely on them.  If the produced documents, in combination with any deposition testimony, fail to establish that contracts existed, RWS will have an opportunity to challenge that insufficiency at summary judgment.

### C.       Financial Documents

RWS next asserts that HomeSource violated Judge Williams' and Judge Robreno's orders to produce documents and records which "underlie" or "form the basis of" their experts' damages calculations, "whether or not the experts considered or reviewed the actual documents." ECF 264.

RWS interprets these orders to require the production of any profit and loss statements, financial ledgers, tax returns, bank statements and proofs of payment.  Br. at 12.  HomeSource alleged that, after the March 2021 order it produced "invoices, bank statements, trial balances, and tax returns for 2017 to as late as 2020."  Opp. Br. at 8.  HomeSource further alleged that it "does not prepare balance sheets or more detailed income statements and accounts receivable ledgers."  *Id.* at 8.

RWS challenges HomeSource's position that it has limited financial documents because of its "start-up" status.  The declaration from RWS's damages expert, Mr. Malkiewicz challenges the likelihood that HomeSource is able to operate its business without keeping certain types of accounting records as part of its normal course of business.  However, Mr. Malkiewicz is not able to speak to the actual inner workings of HomeSource based on his experience in economics and financial analytics.  However, that does not preclude him from, at a later date, reaching the conclusion that based on a lack of accounting records it is not possible to determine damages to a

degree of professional certainty, or otherwise rebut HomeSource's eventual expert. But, for the purposes of determining whether documents exist and have been withheld, that determination is not within Mr. Malkiewicz's role as an expert.

I conclude that HomeSource did not violate the court order, based on some ambiguity in the scope of the orders. The order did not specify which specific documents must be produced, and where a damages calculation did not rely on *any* financial records, there may be more than one interpretation of the directive that a party produce "all documents and records that underlie its experts' damages calculation, whether or not the experts considered or reviewed the actual documents." ECF 264.

However, as Judge Robreno mentioned at the hearing before him, the types of documents RWS seeks are reasonable given the scope of the case. Therefore, I will now order that the following specific items be produced by HomeSource for the years 2017 – 2020: (1) invoices for customers HomeSource claims to have lost due to RWS's actions; (2) all bank statements; (3) all tax returns; and (4) any other financial reports, statements, receipts, invoices or other documentation which HomeSource provided to its accountants for the preparation of its tax returns. These documents may be designated AEO as necessary. Any redactions must be placed in a log explaining the purpose for the redaction so that the redactions may be challenged as necessary.

It is understood that these documents may contain information for lines of HomeSource's business that are irrelevant to its web services, and that this distinction may not be readily discernable. However, that distinction is something that can be explored in depositions and ultimately will weigh on HomeSource's ability to support its own damages calculations, or RWS's ability to argue that HomeSource has no way of accurately calculating its own damages.

-13-

Needless to say, after it has produced the documents mentioned above, should HomeSource later attempt to use other financial documents or reports to support a damages calculation that have not been produced, any such damages calculation would be barred – as counsel for HomeSource conceded would be a likely result.  Oral Arg. Tr. at 88:8-11.

     **D.**       **Financial Exchanges Between HomeSource, The Whites and Software-Support PMW, Inc.**

Next, RWS alleges that HomeSource defied Judge Robreno's order to "produce all documents showing financial transfers" between HomeSource, the White family and Software-Support PMW, Inc., or if no such transfers exist, produce a declaration stating the same.  ECF 264 at 3.  HomeSource produced a declaration, however it identified a small handful of transactions between HomeSource and members of the White family, but did not produce documents related to those transactions, arguing that they are not within the scope of Judge Robreno's order.  Clendening Decl. at Ex. C.  RWS argues that withholding those documents contravenes Judge Robreno's order, as the order placed no restrictions on the documents that must be produced.

HomeSource argues that it is not required to produce documents for payments to members of the White family that are "ordinary salary payments" on the basis that, during oral argument, Judge Robreno allegedly stated that such payments were "a different issue."  Oral Arg. Tr. at 73:3-74:14. However a reading of that portion of the transcript does not support HomeSource's interpretation. Judge Robreno's comment regarding "a different issue" was in response to RWS's counsel explaining that the payments at issue could be relevant to a damages calculation:

> Mr. Wolek: . . . And secondly, if we're paying 20-percent or 50-percent or, you know, tens of thousands of dollars to these various family members for software licenses or otherwise, that also bears on the 45 million dollars damages claim. Are they subtracting that as part of the expenses for their damages claim? So, do their earnings take into account or do their expenses take into account the royalties that they should be paid?
>
> The Court: I think that's a different issue.  The issue here is, whether there was a comingling of assets.

March 5, 2021 Tr. at 26:13-23.  Judge Robreno's comment was not to distinguish "ordinary salary payments" from other transactions, but the relevancy arguments regarding co-mingling of assets and damages calculations.  Therefore, there was no basis to withhold the salary payments and documents regarding those payments should be produced.  This position is bolstered by the fact that Judge Robreno's order did not list any caveats to the general instruction that "Plaintiff shall produce all documents showing financial transfers" between the three entities.

Therefore, HomeSource did violate Judge Robreno's order.  However, that violation – presuming the documents regarding salary payments are produced promptly after the issuance of this order – does not warrant the extreme sanction of exclusion of evidence or costs.  It does not appear that HomeSource attempted to conceal that the documents existed, or the fact that payments occurred, as they were disclosed in Mr. White's declaration.

Therefore, documents regarding payroll given from HomeSource to the White family, whether directly or through a payroll processing company, shall be produced along with documents regarding the gifts and rent payments outlined in Mr. White's declaration, if not already produced.  Further, Mr. White shall submit a new declaration affirming that no other documents exist.  RWS is then welcome to challenge the veracity of that declaration in depositions should they so choose.

### E.        Access to the HomeSource Database

Finally, RWS contends that HomeSource has violated Judge Williams and Judge Robreno's orders by not providing its expert access to HomeSource's database.

RWS argues that both orders are explicitly clear that the database should be made available without limitation because they stated "Plaintiff shall make the mirror image of its database available to Defendant's expert."  Br. at 35-36.  Further, RWS states that its expert

-15-

requires access to the database in order to form proposed search protocols. *Id.* at 23-24. Finally, RWS argues that HomeSource is impermissibly attempting to restrict the types of searches run, and the information sought by the searches. *Id.* at 23, 36.

HomeSource argues that RWS is attempting to impermissibly expand the scope of the examination of the database from what was originally intended by Judge Williams. Opp. Br. at 12-13; Opp. Br. at Ex. K. They concede that, although Judge Williams determined RWS could run a different search than HomeSource's expert, RWS was required to search for the same thing: RWS IP addresses. *Id.* at 12. RWS also points to the fact that RWS previously submitted search protocols to the Court without having access to the database as evidence that access to the database is not required to form proposed protocols. *Id.* at 12.

First, a full reading of the transcript of the hearing between Judge Williams and the parties indicates that her intent was to allow RWS's expert to propose alternative search protocols for looking for RWS IP addresses, but did not consider allowing the expert to search the database for other factual inquiries. As recounted in Section I(B), *supra*, the entire discussion surrounding the database was in the context of whether or not a "spider" was run on HomeSource's website. RWS had a declaration stating it did not, and HomeSource purported to have evidence from its database that it did. The subsequent discussion was couched in RWS's ability to disprove HomeSource's evidence produced from the database.

Although the first statement in the relevant paragraph of the orders, taken in isolation, was absolute—"HomeSource shall make the 'mirror image' of the database available to defendant's expert"—it was then followed by a very specific method for going about making the mirror image available. This included agreeing on a search protocol, and if no such protocol could be agreed to, presenting the issue to the court. The idea that a protocol must be approved

-16-

*before* searches are run is further bolstered by Judge William's statements at the end of the discussion on this point:

> And so I've got to allow this expert to run the search that -- that she believes is the proper search to determine whether or not RWS did whatever it did on your website. Right? But I want to see what this looks like. . . .
>
> . . . .
>
> I still want to see the search protocol because I'm going to hold her to it. And -- and HomeSource and its expert have the opportunity to review what the search *is going to do* or be.

Oct. 7, 2019 Tr. at 119:22-25; 120:17-20 (emphasis added).

It is at this search protocol phase that the parties stalled. This stalemate appears to be due in large part to their differing views regarding the scope of the searches that Defendants' expert was allowed to perform—a search to look for RWS IP addresses in whatever manner she deemed appropriate or searches related to any issue within the SAC. If the parties cannot agree on what is substantively allowed to be searched for, they cannot agree on a methodology for those searches.

When this conflict regarding the scope of the searches was presented to Judge Robreno, he acknowledged that the database may have relevance beyond the search for IP addresses, but questioned whether additional search topics would be proportional to the needs of the case. March 5, 2021 Tr. at 30:22-33:17. Judge Robreno did not directly address that issue at argument, and later issued his order, which was largely the same as Judge Williams, but stated that any disputes regarding search protocols would be referred to a special master. ECF 264 at 3. Given Judge Robreno's acknowledgment of the possibility of additional relevant evidence within the database, I interpret this order to encompass disputes regarding both the scope of the searches and the methodology for conducting those searches.

-17-

As the parties were never given explicit instruction as to the permissible scope of the searches to be performed, and this core disagreement permeated the parties' attempts to establish search protocols, I cannot find that HomeSource violated either of the orders since no search protocols were ever agreed to, and such an agreement was a pre-requisite to access to the database.  However, as Judge Robreno noted, I agree that there may be relevant discoverable information in the database aside from potential RWS IP addresses.  Therefore, I will order the following procedure regarding this matter:

1.  RWS will provide a list of each question it seeks to answer through a search of the database, how that topic is related to specific paragraphs in the SAC, and why it believes the database will contain information related to that question.  RWS shall also provide a declaration from its expert as to what specific access and permissions she would need in order to develop a search protocol for those questions.

2.  HomeSource may submit written objections to the questions under the scope of Rule 26(b).  The objections and reasons therefore should not exceed one page per question, using double spaced, 12-point font.  HomeSource may also submit a rebuttal declaration from its expert if it wishes to challenge the scope of access RWS's expert claims she requires to develop her search protocols.

3.  RWS can then respond to HomeSource's objections, and is similarly limited to one page per response, using double spaced, 12-point font.

4.  If needed, a hearing will be held on the objections and I will rule on each objection.

5.  After that, the parties will meet and confer regarding a time for RWS's expert to access the mirror image of the database solely for the purpose of obtaining the information to develop search protocols for any questions that were not stricken.  HomeSource will be entitled to have its expert monitor RWS's expert while she examines the database.

6.  After the search protocols are developed, RWS will send them to HomeSource and the parties should meet and confer regarding any issues with the search protocols.  If the issues cannot be resolved during that time the parties will submit letter briefs regarding the outstanding disputes.

7.  Once any disputes are resolved, the parties will again meet and confer regarding a time during which RWS's expert will execute the proposed search protocols.  HomeSource will be entitled to have its expert monitor RWS's expert while the protocols are executed.

**III.    Conclusion**

For the foregoing reasons, RWS's motion for sanctions and attorneys' fees is denied without prejudice.  However, HomeSource is required to produce documents and follow the procedures outlined above, and in the attached order.  Should HomeSource fail to do so, I will reconsider my decision to award sanctions and attorneys' fees in a subsequent motion.

The record before me is replete with correspondence and e-mails between the parties alleging discovery misconduct.  I urge the parties to meet and confer in good faith to resolve these disputes.  I will make myself available to assist the parties in resolving those disputes via discovery conferences should the parties so desire.

Dated: August 2, 2021                                               *s/ Stephen M. Orlofsky*
                                                                                        **Stephen M. Orlofsky**
                                                                                        **Special Master**