**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE HOMESOURCE, CORP.,<br><br>Plaintiff,<br><br>vs.<br><br>RETAILER WEB SERVICES, LLC, et al.,<br><br>Defendants. | Case No.: 1:18-cv-11970-ECR-AMD |

**OPINION OF SPECIAL MASTER STEPHEN M. ORLOFSKY ON PLAINTIFF'S MOTION TO COMPEL AND DEFENDANTS' DEFICIENCY LETTER**

Appearances:

**Flaster Greenberg, PC**

Arthur Armstrong, Esq. (Argued)
1835 Market Street
Suite 1050
Philadelphia, PA 19103

Eric Clendening, Esq. (Argued)
1810 Chapel Avenue West
Cherry Hill, NJ 08002

*Attorneys for Plaintiff The HomeSource Corp.*

**Fox Rothschild, LLP**

Adam Wolek, Esq. (Argued)
321 N. Clark Street
Suite 1600
Chicago, IL 60654

Melissa Scott, Esq.
747 Constitution Drive
Suite 100
Exton, PA 19341

Dominique Carroll, Esq.
Princeton Pike Corporate Center
997 Lenox Drive, Building 3
Lawrenceville, NJ 08648

*Attorneys for Defendants Retailer Web Services, LLC and Retailer Web Services II, LLC*

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | PLAINTIFF'S MOTION TO COMPEL | 1 |
| | A. Relevant Background | 1 |
| | B. Legal Analysis | 2 |
| |     1. Scope of Request | 2 |
| |     2. Additional Arguments | 6 |
| II. | RWS'S LETTER REGARDING ALLEGED DISCOVERY DEFICIENCIES | 7 |
| III. | CONCLUSION | 8 |

**STEPHEN M. ORLOFSKY, SPECIAL MASTER**

This matter comes before me on a motion to compel by Plaintiff, The HomeSource, Corp., ("HomeSource" or Plaintiff) against Defendants, Retailer Web Services, LLC and Retailer Web Services II, LLC, (collectively "RWS" or "Defendants"), and Defendants' October 7, 2021 letter regarding alleged discovery deficiencies against Plaintiff.  For the reasons explained below, Plaintiffs' motionis is granted in part.  Additionally, I will not make any determination as to the deficiency of Plaintiffs' production in response to my August 2, 2021 Order and Opinion.  However, as requested by Defendants, I reiterate that HomeSource will be precluded from introducing at trial any documents that were in HomeSource's custody or control but were not produced.

I.      **PLAINTIFF'S MOTION TO COMPEL**

    A.      **Relevant Background**

As the parties are familiar with the facts and procedural history of this case, I recite them here only to the extent that they are relevant to HomeSource's motion to compel.  This case arises from a dispute between two competitors who provide technology services to retailers.  Second Am. Compl. at ¶ 19 [hereinafter SAC].  Relevant to HomeSource's motion to compel, HomeSource alleges that RWS improperly used the name "HomeSource" in connection with "materially false and misleading statements about HomeSource's reputation, legal history, security, and the quality of its goods and services."  SAC at ¶ 87.  HomeSource alleged that this, along with phone calls to HomeSource customers, constituted false advertising and unfair competition in violation of the Lanham Act.  *Id.* at ¶¶ 85-91.  HomeSource alleged it had "been damaged" by this conduct, *id.* at ¶ 91, and in its request for relief sought "injunctive relief, treble damages and its costs and attorneys' fees, pursuant to the Lanham Act," *id.* at 22.

On August 20, 2021, HomeSource submitted a letter brief requesting an order compelling "RWS to produce financial records relating to its monthly revenues from January 1, 2017 to present." HomeSource Ltr. Br. at 1. RWS filed a letter brief in opposition on September 10, 2021. On October 1, 2021, after seeking leave to do so, HomeSource filed a reply in support of its motion. On October 28, 2021 I held oral argument remotely via zoom.

**B.      Legal Analysis**

The standard a requesting party must satisfy to demonstrate a right to discovery is a broad one. Under the Federal Rules, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Because of the inclusion of a proportionality analysis to this standard, a court "may limit or deny otherwise appropriate discovery when the information sought is not proportional to the needs of the case." *Schick v. Cintas Corp.*, No. 17-7441, 2020 U.S. Dist. LEXIS 66420 at *5-*6 (D.N.J. Apr. 15, 2020).

1.      Scope of Request

The parties do not contest that, under the Lanham Act, disgorgement of wrongfully gained profits are a possible measure of damages. However, the parties disagree as to what scope of financial information is proportional to the needs of the case given this uncontested relevancy.

HomeSource argues that it is entitled to financial statements from 2017 to present, on the basis that information prior to the alleged violation can be indicative of what amount of post-violation profits were attributable to the wrongful conduct. HomeSource also argues that it

should be entitled to this date range because I previously compelled the production of its financial documents for that same date range.

In contrast, RWS argues that the bulk of the requested financial data is irrelevant and disproportionate to the needs of the case because: (1) it seeks financial information from before the alleged Lanham Act violation occurred; (2) it includes financial information for lines of business unrelated to those which HomeSource and RWS compete over; and (3) HomeSource has a purported lack of evidence of causation or the contractual terms for its alleged lost customers.

HomeSource is entitled to seek financial information for a limited time period from before the alleged violation. Under the Lanham Act, a plaintiff may seek "the disgorgement of an infringer's profits." *Kars 4 Kids Inc. v. Am. Can!*, 8 F. 4th 209, 223 (3d Cir. 2021). In order to determine that figure, courts have permitted parties to seek discovery regarding an infringer's financials both before and after the alleged violation. *See Garner v. Yarnall*, No. 03-4967, 2005 U.S. Dist. LEXIS 6077, at *3 (E.D. Pa. Apr. 12, 2005) (ordering the production of tax returns for two years before and after an alleged Lanham Act violation). This pre-violation information is relevant because it is "possible that the amount of any rise in Defendant's profits after [a Lanham Act violation] could, in conjunction with a drop on Plaintiffs' profits, . . . aid Plaintiffs' expert in showing the amount" of damages to a plaintiff in the form of the defendant's profits. *Id.* at *6-*7.

Further RWS is not permitted to limit its production on the basis of its view of the strength of HomeSource's evidence of the non-damages elements of its Lanham Act claim. RWS notes that it has produced financial information for any alleged lost customer for whom HomeSource has produced what it perceives to be sufficient evidence of a contractual

relationship. As to the financials for any other customers, RWS argues that those requests are disproportionate to the needs of the case in the absence of evidence of causation or a contractual relationship as to those customers. A limitation on that basis is improper. This is not a bifurcated trial, and therefore a party is not required to prove up certain elements of its claim before seeking discovery on others. Further ill-gotten profits from a Lanham Act case may not only be a customer who left HomeSource for RWS. It may consist of customers who would have left RWS but for the alleged violation, or customers who previously did not do business with either party, and eventually chose to do business with RWS over HomeSource on the basis of the alleged violation.

RWS points to a number of cases that support the proposition that HomeSource has the burden to demonstrate that any Lanham Act violation was the cause of RWS's profits before those profits may be disgorged. Tellingly, none of those cases dealt with discovery. Instead, they dealt with summary judgment or trial-related motions. *See, e.g.*, *Coverted Fabricating, Inc. v. TVM Bldg. Prods., Inc.*, 855 F.3d 163, 177 (3d Cir. 2017) (post-trial motion); *Ceasars World, Inc. v. Venus Lounge, Inc.*, 520 F.2d 269, 274 (3d Cir. 1975) (appeal of final judgment); *KoninKijke Philips Electronics N.V. v. Hunt Control Sys., Inc.*, No. 11-3684, 2016 U.S. Dist. LEXIS 84299 (D.N.J. June 29, 2016) (summary judgment); *MB Imps., Inc. v. T&M Imps., LLC*, No. 10-3445, 2016 U.S. Dist. LEXIS 178530 (D.N.J. Dec. 23, 2016) (summary judgment). *Trilink Saw Chain, LLC v. Blount, Inc.*, No. 1:07-cv-0409, 2009 WL 10668571 (N.D. Ga. May 7, 2009) (motion in limine); *Labware, Inc. v. Thermo Labsystems, Inc.*, No. 04-2545, 2005 U.S. Dist. LEXIS 12993 (E.D. Pa. June 28, 2005) (trial opinion). RWS will certainly have the opportunity challenge HomeSource's use of this information at summary judgment, through

*Daubert* motions, or during the examination of HomeSource's experts. But any evidentiary holes in HomeSource's liability case are not bars to obtaining damages information.

Outside of an alleged lack of evidence as to liability, RWS has not demonstrated that this production would be disproportionate under the factors enumerated in Federal Rule of Civil Procedure 26. Evidence closely related to damages, possessed only by Defendants, in what is alleged to be a multi-million dollar case weighs heavily in favor of proportionality. Further, HomeSource has not demonstrated that production of pre-existing financial documents for an approximately five-year period would be disproportionately burdensome or expensive in the context of this litigation.

However, there is validity to the argument that financial information on lines of business that HomeSource does not compete with RWS on are not relevant to RWS's Lanham Act claims – a point that HomeSource did not contest at oral argument. Therefore, RWS may limit its production to revenue information only related to the product lines or business units that compete with HomeSource if such documents are kept in the normal course of business.

If such documents do not exist, I recognize that this ruling may require RWS to produce financial information that includes revenue figures unrelated to the issues in this case. However, this information can be produced with an Attorneys' Eyes Only designation. Further, as previously stated, once the information is produced the onus will be on HomeSource to demonstrate the appropriate figures to determine a disgorgement figure that is causally related to the alleged violation. RWS can then attack the admissibility of that calculation on the basis that it includes profits for unrelated lines of business.

      2.      Additional Arguments

RWS also argues that HomeSource did not properly raise its claim for disgorgement in the operative complaint, and that the Lanham Act is inapplicable because the newsletter did not constitute commercial speech.

First, HomeSource sufficiently alleged disgorgement in the operative complaint. Where a plaintiff raises a Lanham Act claim—a statute that specifically provides for disgorgement as a form of damages—a plaintiff is not required to specifically enumerate a disgorgement theory. Here, plaintiff raised a Lanham Act claim, stated it had "been damaged" by RWS's conduct, SAC at ¶ 91, and requested relief in the form of "injunctive relief, treble damages and its costs and attorneys' fees, pursuant to the Lanham Act," *id.* at 22. By raising a Lanham Act claim and acknowledging it would seek monetary damages HomeSource put RWS on notice that it may seek damages in the form of disgorgement. *See Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 343 (D.N.J. 2001) (rejecting argument that plaintiff failed to plead disgorgement in its complaint where the complaint requested monetary damages, "the Lanham Act unequivocally provides for recovery of a defendant's profits by a prevailing plaintiff," and plaintiff never waived that recourse). Further, RWS has not alleged it is prejudiced by the purported lack of notice – it is in possession of any relevant documents, depositions have not started in the case, and expert reports have not been submitted.

Second, whether the newsletter is the type of speech that is subject to the Lanham Act is not a question for discovery but a legal question on the merits of the case. RWS essentially raised this argument in its motion to dismiss (ECF 194-1 at 23), and the Court denied that motion, (ECF 242 at ¶ 2). It may raise this argument at summary judgment, but it is of no moment in the context of a discovery dispute.

## II. RWS'S LETTER REGARDING ALLEGED DISCOVERY DEFICIENCIES

Defendants previously filed a motion for sanctions and attorneys' fees based upon HomeSource's alleged failure to produce documents related to its financials and customer contracts, among other issues. ECF 274. On August 2, 2021 I denied the motion for sanctions and attorneys' fees, but ordered in part that HomeSource must produce

> Any other documents, including information from within its database, that HomeSource will use to demonstrate that HomeSource's alleged lost customers entered into a contract with it and those customers' purchases. Any documents not produced will not be admissible at trial.

ECF 284 at ¶ 2.

On October 7, 2021 RWS submitted a letter alleging that HomeSource's production in response to that order was deficient and therefore, under the August 2, 2021 Order, HomeSource should be barred from introducing additional evidence regarding customer contracts or purchasing histories. On October 14, 2021 HomeSource responded to RWS's letter, arguing that they should still be permitted to introduce evidence in the form of deposition testimony, affidavits or expert reports related to those topics.

To the extent that RWS seeks to bar HomeSource from introducing testimonial evidence on these issues, that request is denied. However, as stated in my August 2, 2021 order any documents in HomeSource's custody or control that it seeks to use to establish the contracts of its lost customers was required to have been produced. It cannot later attempt to use documents it withheld to establish its case, especially after all parties have expended significant time and resources litigating discovery issues related to this production. However, that does not preclude HomeSource from using deposition testimony, affidavits, or expert reports related to this topic.

### III. CONCLUSION

For the foregoing reasons, HomeSource's motion to compel is granted in part. Within ten days of the filing of this opinion RWS shall produce financial documents regarding its revenues from 2017 to present, but may limit that production to figures related to lines of business in which HomeSource and RWS compete, if separate documents for those lines of business exist.

Additionally, I will reaffirm my previous order that HomeSource may not use documents that were in its custody or control at the time of my August 2, 2021 order but were not produced to establish its case.

Dated: November 1, 2021

*s/ Stephen M. Orlofsky*
**Stephen M. Orlofsky**
**Special Master**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE HOMESOURCE, CORP., <br><br> Plaintiff, <br><br> vs. <br><br> RETAILER WEB SERVICES, LLC, et al., <br><br> Defendants. | Case No.: 1:18-cv-11970-ECR-AMD |

## ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL AND DEFENDANTS' REQUEST TO AFFIRM THE AUGUST 2, 2021 ORDER

**AND NOW**, this 1st day of November 2021, upon consideration of Plaintiff's motion to compel, and the response and reply thereto, and Defendants' letter regarding discovery deficiencies and the response thereto, and after a hearing held via remote video conference on October 28, 2021:

**IT ORDERED** that RWS shall produce financial documents related to its revenues on lines of business that compete with lines of business offered by HomeSource from 2017 to present within ten days of the entry of this Order.

**IT IS FURTHER ORDERED** that HomeSource may not use documents that were in its custody or control at the time of my August 2, 2021 Order to demonstrate that HomeSource's alleged lost customers entered into a contract with it and those customers' purchases. Any documents that come into HomeSource's custody or control after that time may only be used if they are promptly produced to Defendants.

*s/ Stephen M. Orlofsky*
**Stephen M. Orlofsky, Special Master**
**Special Master**