# BLANK**ROME**

300 Carnegie Center | Suite 220 | Princeton, NJ 08540
A Pennsylvania LLP | Stephen M. Orlofsky, New Jersey Administrative Partner
blankrome.com

| | |
|---|---|
| *Phone:* | *(609) 750-2646* |
| *Fax:* | *(609) 897-7286* |
| *Email:* | *stephen.orlofsky@blankrome.com* |

May 16, 2022

**BY E-MAIL**

Arthur Armstrong, Esq.
Flaster Greenberg PC
1835 Market St.
Suite 1050
Philadelphia PA 19103
Arthur.armstrong@flastergreenberg.com

Adam Wolek, Esq.
Fox Rothschild LLP
321 N. Clark St.
Chicago IL 60654
awolek@foxrothschild.com

Eric Clendening, Esq.
Flaster Greenberg PC
One Tower Bridge
100 Front Street, Suite 100
Conshohocken PA 19428
eric.clendening@flastergreenberg.com

Melissa E. Scott, Esq.
Fox Rothschild LLP
747 Constitution Drive
Suite 100
Exton, PA 19341-0673
mscott@foxrothschild.com

Dominique J. Carroll, Esq.
Fox Rothschild LLP
Princeton Pike Corporate Center
Lawrenceville NJ 08648-2311
djcarroll@foxrothschild.com

Re:   The HomeSource Corp. v. Retailer Web Services, LLC, et al., Civil
Action No. 1:18-cv-11970

Dear Counsel:

I write in response to the parties' letters dated April 26, 2022 and May 3, 2022, related the to the production of additional financial documents by RWS.

**Relevant Procedural History**

On November 1, 2021, I issued an opinion and order which, in relevant part, ordered RWS

# BLANKROME

May 16, 2022
Page 2

to produce "financial documents related to its revenues on lines of business that compete with lines business offered by HomeSource from 2017 to present." ECF 296 at 12. The basis of this decision was that HomeSource's Lanham Act claim permitted them to seek damages in the form of the disgorgement of RWS's ill-gotten gains, and that the case law supported the disclosure of both pre- and post-violation financial information to determine those damages. *Id.* at 5-6. In ordering that production, I rejected an argument by RWS that HomeSource's request was disproportionate to the needs of the case, because RWS's argument focused on a perceived weaknesses in the liability portion of HomeSource's claims, instead of the factors enumerated in Federal Rule of Civil Procedure 26. *Id.* at 8.

On February 25, 2022 HomeSource submitted a letter seeking clarification regarding the November order, namely whether it covered the production of "client contracts, invoices, records of payment, bank statements or other financial documents." Homesource ltr. dated Feb. 25, 2022 at 2. Again, I rejected a proportionality argument proposed by RWS, because that argument was based on the strength of the liability portion of HomeSource's case. ECF 310 at 2-3. Therefore, based on the record before me, I stated that:

> the November Opinion should be read to mean that RWS should produce any financial documents in its custody or control, related to its revenues for competing business lines for the years 2017 to the present. It is impossible for me to know what forms these documents will take, but RWS should be guided by the broad standards for discovery, and my repeated holding that information related to revenues starting in 2017 for lines of business in which RWS and HomeSource compete are relevant and discoverable for the purposes of Lanham Act damages calculations.

*Id.* at 3.

On April 26, 2022, HomeSource submitted a letter stating that RWS had still failed to meet its discovery obligations because it had not produced "all client contracts, tax returns, other records of payments or expenses, and any communications concerning RWS's revenues with investors, auditors, financial institutions, or business partners, or materials prepared by RWS which otherwise reflect or discuss its revenues or profitability." HomeSource ltr. dated April 26, 2022 at 2. RWS submitted a response on May 3, 2022. In that letter, RWS represented that it has produced:

> bank statements from 2017 to the present, financial records identifying the dates and amounts of monthly fees and commissions collected from RWS's customers from 2017 to the present, spreadsheets containing, among other things, RWS's

# BLANKROME

revenue from 2017 to the present for all lines of RWS's business, streamlined spreadsheets containing RWS's revenue from 2017 to the present for only those competing lines of business, profit and loss statements, and contracts for those customers that HomeSource alleges are lost customers.

RWS ltr. dated May 3, 2022.  RWS argued that the remaining documents HomeSource seeks are either overly burdensome, duplicative of documents already provided, do not exist, or are irrelevant.  *Id.* at 3-12.  I will discuss each category of documents, and the parties' respective arguments, in detail below.

**Standard for Discovery**

Under Federal Rule of Civil Procedure 26, parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  However, that entitlement is limited by requirements that discovery also be proportional to the needs of the case, and not be unreasonably cumulative or duplicative.  Fed. R. Civ. P. 26(b)(1), (b)(2)(C)(i); *Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 233 (D.N.J. 2013) ("Even if discovery is relevant the Court has discretion to impose limits where the discovery sought is unreasonably cumulative or duplicative, or where the burden or expense of the proposed discovery outweighs the likely benefit.").  To determine whether a request is proportionate to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

**Disputed Document Categories**

HomeSource has named four categories of missing documents it argues make RWS's production of financial documents deficient: (1) customer contracts; (2) invoices; (3) tax returns; (4) communications that discuss RWS's finances.  I will review each category in turn.

Customer Contracts

RWS has produced 46 customer contracts, which it has represented were for the customers HomeSource has identified as potential lost customers due to RWS's alleged wrongful conduct.  RWS ltr dated May 3, 2022 at 4.  HomeSource argues that:

HomeSource not only has a claim for tortious interference with contract but also

BLANKROME

May 16, 2022
Page 4

> tortious interference with prospective economic advantage, in addition to its
> Lanham Act and defamation claims. Quite simply, all of RWS's customer contracts
> in related lines of business are relevant, and RWS is not permitted to limit the list
> to those customers that HomeSource identified as lost customers.

HomeSource ltr. dated Apr. 26, 2022 at 3.

First, HomeSource's claims for tortious interference with contract and tortious interference with prospective economic advantage do not make all of RWS's customer contracts relevant. Even at the pleading stage, it is the responsibility of a plaintiff asserting a tortious interference with prospective economic advantage to identify "either the likelihood of a particular contract being actualized, or a specific business relationship with which Defendants have interfered." *Am Millenium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, No. 07-cv-3400, 2008 U.S. Dist. LEXIS 19619 at \*15 (D.N.J. Mar. 12, 2008), *aff'd*, 332 Fed. App'x 787, 790 (3d Cir. 2009) ("[W]e agree with the reasoning of the District Court and its conclusion that AMI failed . . . to identify a single, specific customer that AMI either lost or could have acquired but for Appellees' conduct."). Similarly, a plaintiff must demonstrate the existence of a contract with a third party to prevail on a tortious interference with contract claim. *FMHUB, LLC v. MuniPlatform, LLC*, No. 19-15595, 2021 U.S. Dist. LEXIS 72761 at \*24-\*25 (D.N.J. Apr. 15, 2021) (collecting cases for the proposition that a tortious interference with contract claim requires "the same elements as a claim for tortious interference with a prospective economic relationship, plus the additional element of a contract"). Because a pre-existing relationship with the third party is required for each claim, HomeSource invariably already knows the universe of clients that could possibly form the basis for either of these claims. As a result, neither of these claims support a request for *all* RWS client contracts, and HomeSource should be able to narrow its request to those clients whom it had a preexisting relationship with.

Further, on a relevancy theory of contributing to the calculation of Lanham Act damages, production of the additional contracts does not appear to be proportional to the needs of the case. RWS has provided an affidavit from Kristen Pietragallo, its Controller and head of its operations team. Ms. Pietragallo attested that collecting these contracts would take approximately 150 hours. RWS ltr. dated May 3, 2022 at Ex. 2 ¶ 20. In contrast, HomeSource has not articulated what new information the contracts contain that will be helpful to its damages calculations. RWS's initial production consisted of financial statements that aggregated lines of business that both did and did not compete with HomeSource. Therefore, additional documents were still important to resolve the question of damages, because HomeSource would need to separate competing and non-competing lines of business, and it is unlikely that that parsing could be done through aggregate documents and deposition testimony. Since that time, RWS has provided bank statements for the

BLANKROME

May 16, 2022
Page 5

relevant period, giving HomeSource a granular look at its finances, as well as financial statements "containing RWS's revenue from 2017 to the present for only those competing lines of business." RWS ltr. dated May 3, 2022 at 1. With that additional information, it is not clear what HomeSource seeks to learn from the contracts that is not already contained in the documents produced. Therefore, although the question of damages is an important issue in this litigation, there is no indication that these contracts are important to resolving that issue given the documents already provided. As a result, under the Rule 26 factors, the additional contracts are proportionate to the needs of the case.

<u>Invoices or Similar Records of Billing</u>

HomeSource next argues that "RWS needs to confirm that it does not possess [invoices or other records of billing] and RWS should not be permitted to produce any invoices at a later date or use them as evidence if they are not produced immediately. HomeSource ltr. dated Apr. 26, 2022 at 3. In its response RWS confirmed that it does not issue invoices to its clients. However it did recently begin creating internal invoice documents starting in January 2022, but those are not issued to customers. Given that representation from RWS, I agree with HomeSource that RWS will be barred from later producing an invoices or records of billing, not can they use them as evidence.

<u>Tax Returns</u>

HomeSource next requests RWS's tax returns for the relevant period. RWS has represented that it does not file individual returns. Instead, its parent company files one return that contains the aggregate financial figures of RWS and a number of other related companies. Therefore, the tax returns have no probative value, since they not only aggregate RWS's competing and non-competing lines of business but the businesses of multiple companies not involved in this lawsuit. However, if the tax return of RWS's parent company contains any schedules that pertain only to RWS, those should be extracted and produced. Given there would only be 5 years of returns at issue, this would pose a relatively small burden on RWS.

<u>Communications Discussing Finances</u>

Finally, HomeSource contends RWS's production is deficient because it failed to produce "communications and other documents which reflect or discuss its revenues." HomeSource ltr. dated Apr. 26, 2022 at 3. It is unclear how communications describing, summarizing or discussing the company's revenues would not be duplicative of the financial statements already provided which specifically quantify those figures. The theory of relevancy of RWS's financial information

BLANKROME

May 16, 2022
Page 6

was very narrow: to allow HomeSource to calculate Lanham Act damages under a theory of disgorgement of profits.  It is not clear, and HomeSource does not explain, how the characterization or description of financial figures HomeSource already possesses would aid in the mathematical calculation of damages.

Therefore, for the reasons stated above, RWS shall produce any schedules to its parent company's tax returns from 2017 to the present that exclusively deal with RWS.  Further, RWS may not later produce or use as evidence, any of its invoices.  However, HomeSource has not demonstrated that RWS should be compelled to produce the remainder of its customer contracts or communications about its revenues.

I intend to file this letter on the public docket.  If either party believes it contains information that should be redacted, please submit proposed redactions by Thursday, May 26, 2022.

Very truly yours,

/s/ Stephen M. Orlofsky

STEPHEN M. ORLOFSKY
Special Master