# EXHIBIT 1



Adam Wolek
P 312.836.4063
F 312.527.4011
C 312.860.9006
awolek@taftlaw.com

Taft Stettinius & Hollister LLP
111 East Wacker, Suite 2800 / Chicago, IL
60601 USA
Tel: 312.527.4000 / Fax: 312.527.4011
www.taftlaw.com

September 8, 2018

*Via Email*

Alexis Arena
Flaster/Greenberg P.C.
1835 Market St.
Suite 1050
Philadelphia, PA  19103
alexis.arena@flastergreenberg.com

  Re: *The HomeSource, Corp. v. Retailer Web Services, LLC, et al.*

Dear Ms. Arena:

  Retailer Web Services, LLC ("RWS") respectfully requests that The HomeSource, Corp. reconsider its refusal to provide expedited discovery concerning the very serious allegations of cyber-attacks, hacking attempts, and fake customer reviews it attributes to RWS, as described in the First Amended Complaint ("FAC"). HomeSource's initial agreement to provide the requested discovery on an expedited basis, followed by its recanting of that agreement, evidences HomeSource's intentional failure to mitigate its alleged damages and defies logic.

  Because of the serious nature of the allegations, within days of HomeSource's surprise filing of the amended complaint, I reached out to you, as lead counsel for HomeSource, and offered to help promptly investigate the allegations. I take HomeSource's allegations that my client has engaged in wrongdoing very seriously. As counsel for RWS, I requested that HomeSource simply provide the evidence described in the amended complaint so that I could promptly investigate and, as necessary, remediate the purported damages if those actions were in fact caused by RWS. RWS has gone above and beyond its obligations, and has even offered to perform this investigation confidentially through only its attorneys and computer forensics experts. HomeSource agreed to this compromise on Thursday, September 6, but then recanted midday on Friday, September 7, thereby frustrating any efforts for RWS to expeditiously investigate the specifics of HomeSource's claims and allegations.

Ms. Alexis Arena
September 8, 2018
Page 2

It is very disconcerting that HomeSource made these explosive allegations, then reversed its agreement to provide the evidence described in the amended complaint, and is now stonewalling discovery by refusing to provide this information on a protective attorneys' and experts' eyes only basis. Indeed, the sequence of events leading to HomeSource's allegations, HomeSource's refusal to cooperate, and HomeSource's lack of urgency to remedy or mitigate any of its alleged damages, all suggest that HomeSource's allegations are unsupported, overstated, and/or fabricated.

**I.      HomeSource's Timeline of the "New Allegations" and Key Missing Events**

According to your timeline:

- On August 9, an unknown individual ("Cyber-Attack Doe") "engaged in a series of denial of service ('DoS') and/or distributed denial of service ('DDoS') attacks on HomeSource's customers' websites, in an apparent effort to slow down, interrupt, and/or crash those websites" (FAC ¶ 7);

- On August 13, after the close of business, a different unknown individual "attempted to 'hack' into HomeSource's platform, or to gain unauthorized access to HomeSource's customer data," and "entered in the website addresses and IP addresses of customers that had switched from RWS to HomeSource, even where that information was not publicly available" (FAC ¶¶ 9, 12);

- On August 18, another different unknown individual ("Fake-Customer Doe") "sen[t] emails to HomeSource's customers complaining about HomeSource's website functionality," for which HomeSource "uncovered that Fake-Customer Doe went to great lengths to hide its digital fingerprints" (FAC ¶¶ 13-14);

- On August 27, Cyber-Attack Doe "launched another set of DoS and/or DDoS attacks through the use of bots, using a different method," and HomeSource "observed an exponentially disproportionate amount of website traffic coming from Scottsdale, Arizona," "which appears to be within a mile of RWS's office" (FAC ¶¶ 15, 17); and

- On September 4, late Tuesday, HomeSource filed its FAC alleging claims under the Computer Fraud and Abuse Act, which provides for treble damages and attorneys' fees, for which is seeks to hold RWS responsible for the alleged actions of the three unknown John Doe defendants (FAC, Prayer for Relief ¶ (A)).

What the amended complaint significantly omits is that you and I engaged in a Rule 26(f) discovery conference on August 27. At no time during that hour-long conference did you mention the DoS or DDoS cyber-attack, or specify the first hacking attempt, or the second hacking attempt. I do not understand why you did not share this information at the time these events were occurring or during the discovery conference if HomeSource, as alleged, reasonably believed that RWS caused these events.

Ms. Alexis Arena
September 8, 2018
Page 3

HomeSource further refused to share any evidence to help suppress any alleged cyber-attacks or hacks. In fact, HomeSource did not even file a temporary restraining order to try to stop these attacks, failed to file any injunctions, and never requested any expedited discovery about the potential source of these alleged "cyber-attacks" or "hacks."

Instead, HomeSource **waited nearly 4 weeks** after the first alleged cyber-attack allegedly began to file an amended complaint. And HomeSource never consulted with or forewarned RWS that it was going to file an amended complaint during those 4 weeks of cyber-attacks and other allegedly damaging conduct.

II.   Our Agreement to Investigate the New Allegations, and HomeSource's Subsequent Stonewalling

In stark contrast to HomeSource's delays, RWS reached out to HomeSource less than two days after HomeSource filed its amended complaint (September 6, 2018) to discuss the allegations. After I called and left a message that we needed to speak urgently, you returned the call a few minutes later, and we discussed the seriousness of the allegations. I stated that as officers of the court, we felt a duty to investigate your allegations immediately, and you stated that you were happy to help us investigate. To aid in that investigation, I asked that HomeSource provide the information and evidence described in the amended complaint to support its new allegations as soon as possible.

You agreed to present all such evidence of the alleged hacking and cyber-attacks during that call, but requested that we treat the material as confidential and for attorney's eyes only, with the only exceptions being disclosure to computer forensic experts and preapproved individuals. We also discussed the possibility of having RWS's Chief Technology Officer ("CTO") assist in the effort, but you wanted to consult HomeSource about allowing his participation. You further stated that you or your client may contact the "District Attorney" to criminally investigate RWS for "their conduct." However, as you know, New Jersey Rule of Professional Conduct 3.4 states in pertinent part that "[a] lawyer shall not . . . threaten to present criminal charges to obtain an improper advantage in a civil matter." N.J. RPC 3.4(g).

After you called back at 2:38pm Eastern that same day (September 6), you stated that your client does not want to permit RWS's CTO to assist with the investigation. We accordingly agreed to keep the information confidential and permit only RWS's attorneys and computer forensic experts to review it. I sent a follow up email that same day memorializing that conversation and our agreement.

However, you recanted the agreement the next day on September 7, and said that HomeSource refuses to provide the information and will not let RWS review the materials on an expedited basis. You further stated that it was no longer urgent for RWS to investigate these allegations, and that the alleged "cyber-attacks" had stopped. HomeSource even refused to provide the information under a protective attorney's eyes only basis, that RWS would have to wait weeks to receive the information, and that HomeSource refuses to provide the information any sooner.

Ms. Alexis Arena
September 8, 2018
Page 4

It is quite troubling that the moment RWS offered to promptly act in a manner that would mitigate HomeSource's alleged damages, HomeSource suddenly refused to provide the information and claimed that the parties do not have an "agreement," despite actually agreeing to provide the information the day before. HomeSource's lack of cooperation to permit RWS to investigate these allegations, its lack of urgency to remedy or mitigate damages, and its lack of specificity of its allegations, all indicate that HomeSource's inflammatory allegations are either unsupported or were trivial occurrences, were presented solely to shock based on their incendiary nature, and merely constituted an attempt to increase any alleged damages at trial.

**III.    A Request to Adhere to Our Prior Agreement: To Permit the Investigation of the New Allegations**

We hope HomeSource reconsiders its recanting of its prior agreement, agrees to produce its evidence of the alleged cyber-attacks and hacks immediately, and permits RWS to investigate these allegations as soon as possible. HomeSource knows the evidence described in the amended complaint is relevant and inevitably will be disclosed during discovery anyhow. Please confirm by 5pm Eastern on **September 10, 2018** that HomeSource agrees to produce the evidence we discussed and as described in the amended complaint on an expedited basis. Again, RWS renews its offer to conduct this investigation confidentially and solely through its counsel and computer forensic experts.

Please note, nothing in this letter should be construed as a waiver, relinquishment, or election of rights or remedies by RWS, and RWS expressly reserves all rights and remedies under all applicable federal and state laws. Our investigation of HomeSource's allegations remains ongoing.

Very truly yours,

TAFT STETTINIUS & HOLLISTER LLP

Adam Wolek

23492609.1